**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

—————————————————————————— :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                      :    CIVIL ACTION
        v.                            :    NO. 24-3993
                                      :
BLACKBAUD, INC., et al.               :
—————————————————————————— :
                                      :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                      :    CIVIL ACTION
        v.                            :    NO. 24-3998
                                      :
WHITEPAGES, INC., et al.              :
—————————————————————————— :
                                      :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                      :    CIVIL ACTION
        v.                            :    NO. 24-4000
                                      :
HIYA, INC., et al.                    :
—————————————————————————— :
                                      :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                      :    CIVIL ACTION
        v.                            :    NO. 24-4037
                                      :
WE INFORM, LLC                        :
——————————————————————————

                    May 7, 2024

                  STATUS CONFERENCE

                     -  -  -


        Ann Marie Mitchell, CRR, RDR, CCR, Official Court Reporter
             AnnMarie_Mitchell@njd.uscourts.gov
                     (856) 576-7018

        Proceedings recorded by mechanical stenography; transcript
             produced by computer-aided transcription.

*United States District Court*

```
 1  _____:_____
    ATLAS DATA PRIVACY CORPORATION, et al.:
 2                                   :
                                     :
 3            v.                     :   CIVIL ACTION
                                     :    NO. 24-4041
 4  INFOMATICS, LLC, et al.          :
                                     :
 5  _____:_____
    ATLAS DATA PRIVACY CORPORATION, et al.:
 6                                   :
            v.                       :   CIVIL ACTION
                                     :    NO. 24-4045
 7  THE PEOPLE SEARCHERS, LLC, et al.:
                                     :
 8  _____:_____
                                     :
 9  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
10            v.                     :    NO. 24-4073
                                     :
11  COMMERCIAL REAL ESTATE EXCHANGE, INC.,:
    et al.                           :
12  _____:_____
                                     :
13  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
14            v.                     :    NO. 24-4075
                                     :
15  DM GROUP, INC., et al.           :
                                     :
16  _____:_____
                                     :
17  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
18            v.                     :    NO. 24-4077
                                     :
19  CARCO GROUP INC., et al.         :
                                     :
20  _____:_____
                                     :
21  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :   CIVIL ACTION
22            v.                     :    NO. 24-4080
                                     :
23  DELUXE CORPORATION, et al.       :
                                     :
24  _____:_____

25
```

*United States District Court*

```
 1  _____:_____
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
 3          v.                             :    NO. 24-4095
                                           :
 4  TWILIO INC., et al.                    :
                                           :
 5  _____:_____
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
 7          v.                             :    NO. 24-4096
                                           :
 8  DELVEPOINT, LLC, et al.                :
                                           :
 9  _____:_____
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
11          v.                             :    NO. 24-4098
                                           :
12  QUANTARIUM ALLIANCE, LLC, et al.       :
                                           :
13  _____:_____
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
15          v.                             :    NO. 24-4103
                                           :
16  YARDI SYSTEMS, INC., et al.            :
                                           :
17  _____:_____
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
19          v.                             :    NO. 24-4104
                                           :
20  6SENSE INSIGHTS, INC., et al.          :
                                           :
21  _____:_____
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                           :   CIVIL ACTION
23          v.                             :    NO. 24-4105
                                           :
24  LIGHTBOX PARENT, L.P., et al.          :
                                           :
25  _____:_____
```

*United States District Court*

```
 1  _____:_____
                                             :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :  CIVIL ACTION
 3          v.                               :  NO. 24-4106
                                             :
 4  SEARCH QUARRY, LLC, et al.               :
                                             :
 5  _____:_____
                                             :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :  CIVIL ACTION
 7          v.                               :  NO. 24-4107
                                             :
 8  ACXIOM, LLC, et al.                      :
                                             :
 9  _____:_____
                                             :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :  CIVIL ACTION
11          v.                               :  NO. 24-4110
                                             :
12  ENFORMION, LLC, et al.                   :
                                             :
13  _____:_____
                                             :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :  CIVIL ACTION
15          v.                               :  NO. 24-4111
                                             :
16  COSTAR GROUP, INC., et al.               :
                                             :
17  _____:_____
                                             :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :  CIVIL ACTION
19          v.                               :  NO. 24-4112
                                             :
20  ORACLE INTERNATIONAL CORPORATION, et  :
    al.                                      :
21                                           :
                                             :
22  _____:_____
                                             :
23  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :  CIVIL ACTION
24          v.                               :  NO. 24-4113
                                             :
25  RED VIOLET, INC., et al.                 :
                                          ___:_____
```

*United States District Court*

```
 1  _____:_____
                                            :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :   CIVIL ACTION
 3              v.                          :    NO. 24-4114
                                            :
 4  RE/MAX, LLC, et al.                     :
                                            :
 5  _____:_____
                                            :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :   CIVIL ACTION
 7              v.                          :    NO. 24-4141
    DIGITAL SAFETY PRODUCTS, LLC, et al.   :
 8                                          :
                                            :
 9  _____:_____
                                            :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :   CIVIL ACTION
11              v.                          :    NO. 24-4143
                                            :
12  CIVIL DATA RESEARCH                     :
                                            :
13  _____:_____
                                            :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :   CIVIL ACTION
15              v.                          :    NO. 24-4160
                                            :
16  SCALABLE COMMERCE, LLC, et al.          :
                                            :
17  _____:_____
                                            :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :   CIVIL ACTION
19              v.                          :    NO. 24-4168
                                            :
20  EPSILON DATA MANAGEMENT, LLC, et al.   :
                                            :
21  _____:_____
                                            :
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                            :   CIVIL ACTION
23              v.                          :    NO. 24-4171
                                            :
24  PEOPLE DATA LABS, INC., et al.          :
                                            :
25  _____
```

```
 1  _____:_____
                                             :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :   CIVIL ACTION
 3           v.                              :    NO. 24-4174
                                             :
 4  LABELS & LISTS, INC.                     :
                                             :
 5  _____:_____
                                             :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :   CIVIL ACTION
 7           v.                              :    NO. 24-4175
                                             :
 8  CLARITAS, LLC, et al.                    :
                                             :
 9  _____:_____
                                             :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :   CIVIL ACTION
11           v.                              :    NO. 24-4176
                                             :
12  INNOVIS DATA SOLUTIONS INC., et al.      :
                                             :
13  _____:_____
                                             :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :   CIVIL ACTION
15           v.                              :    NO. 24-4178
                                             :
16  ACCURATE APPEND, INC., et al.            :
                                             :
17  _____:_____
                                             :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :   CIVIL ACTION
19           v.                              :    NO. 24-4181
                                             :
20  DATA AXLE, INC., et al.                  :
                                             :
21  _____:_____
                                             :
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :   CIVIL ACTION
23           v.                              :    NO. 24-4182
                                             :
24  REMINE INC., et al.                      :
                                             :
25  _____
```

*United States District Court*

```
_____ :  _____
                                     :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
        v.                           :  NO. 24-4184
                                     :
LUSHA SYSTEMS, INC., et al.          :
_____ :  _____
                                     :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
        v.                           :  NO. 24-4217
                                     :
TELTECH SYSTEMS, INC., et al.        :
                                     :
_____ :  _____
                                     :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
        v.                           :  NO. 24-4227
                                     :
PEOPLECONNECT, INC., et al.          :
                                     :
_____ :  _____
                                     :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
        v.                           :  NO. 24-4230
                                     :
CORELOGIC, INC., et al.              :
                                     :
_____ :  _____
                                     :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
        v.                           :  NO. 24-4233
                                     :
BLACK KNIGHT TECHNOLOGIES, LLC, et al.:
                                     :
_____ :  _____
                                     :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :  CIVIL ACTION
        v.                           :  NO. 24-4256
                                     :
ZILLOW, INC., et al.                 :
_____ :  _____
```

*United States District Court*

```
 1  _____:_____
                                     :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
 3            v.                     :     NO. 24-4261
                                     :
 4  EQUIMINE, INC., et al.           :
                                     :
 5  _____:_____
                                     :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
 7            v.                     :     NO. 24-4269
                                     :
 8  THOMSON REUTERS CORPORATION, et al. :
                                     :
 9  _____:_____
                                     :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
11            v.                     :     NO. 24-4271
                                     :
12  CHOREOGRAPH LLC, et al.          :
                                     :
13  _____:_____
                                     :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
15            v.                     :     NO. 24-4288
                                     :
16  TRANSUNION, LLC, et al.          :
                                     :
17  _____:_____
                                     :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
19            v.                     :     NO. 24-4292
                                     :
20  MELISSA DATA CORP., et al.       :
                                     :
21  _____:_____
                                     :
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
23            v.                     :     NO. 24-4298
                                     :
24  EQUIFAX INC., et al.             :
                                     :
25  _____:_____
```

```
_____ :  _____

ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
        v.                           :    NO. 24-4299
                                     :
SPOKEO, INC., et al.                 :
                                     :
_____ :  _____

ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
        v.                           :    NO. 24-4324
                                     :
RESTORATION OF AMERICA, et al.       :
                                     :
_____ :  _____

ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
        v.                           :    NO. 24-4345
                                     :
i360, LLC, et al.                    :
                                     :
_____ :  _____

ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
        v.                           :    NO. 24-4354
                                     :
TELNYX LLC, et al.                   :
                                     :
_____ :  _____

ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
        v.                           :    NO. 24-4380
                                     :
GOHUNT, LLC, et al.                  :
                                     :
_____ :  _____

ATLAS DATA PRIVACY CORPORATION, et al.:
                                     :    CIVIL ACTION
        v.                           :    NO. 24-4383
                                     :
ACCUZIP, INC., et al.                :
                                     :
_____ :  _____
```

*United States District Court*

```
 1  _____:_____
                                       :
 2  ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :    CIVIL ACTION
 3           v.                        :    NO. 24-4385
                                       :
 4  SYNAPTIX TECHNOLOGY, LLC, et al.   :
                                       :
 5  _____:_____
                                       :
 6  ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :    CIVIL ACTION
 7           v.                        :    NO. 24-4389
                                       :
 8  JOY ROCKWELL ENTERPRISES, INC., et al.:
                                       :
 9  _____:_____
                                       :
10  ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :    CIVIL ACTION
11           v.                        :    NO. 24-4390
                                       :
12  FORTNOFF FINANCIAL, LLC, et al.    :
                                       :
13  _____:_____
                                       :
14  ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :    CIVIL ACTION
15           v.                        :    NO. 24-4392
                                       :
16  MYHERITAGE, LTD., et al.           :
                                       :
17  _____:_____
                                       :
18  ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :    CIVIL ACTION
19           v.                        :    NO. 24-4434
                                       :
20  E-MERGES.COM, INC.                 :
                                       :
21  _____:_____
                                       :
22  ATLAS DATA PRIVACY CORPORATION, et al.:
                                       :    CIVIL ACTION
23           v.                        :    NO. 24-4442
                                       :
24  WILAND, INC., et al.               :
                                       :
25  _____:_____
```

```
_____      :_____
                                             :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :      CIVIL ACTION
        v.                                   :      NO. 24-4447
                                             :
ATDATA, LLC, et al.                          :
                                             :
_____      :_____
                                             :
JOHN DOE-1, et al.                           :
                                             :      CIVIL ACTION
        v.                                   :      NO. 24-4566
                                             :
LEXISNEXIS RISK DATA MANAGEMENT, LLC,        :
et al.                                       :
_____      :_____
                                             :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :      CIVIL ACTION
        v.                                   :      NO. 24-4571
                                             :
PRECISELY HOLDINGS, LLC, et al.              :
                                             :
_____      :_____
                                             :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :      CIVIL ACTION
        v.                                   :      NO. 24-4609
                                             :
NUWBER, INC., et al.                         :
                                             :
_____      :_____
                                             :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :      CIVIL ACTION
        v.                                   :      NO. 24-4664
                                             :
ROCKETREACH LLC, et al.                      :
                                             :
_____      :_____
                                             :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                             :      CIVIL ACTION
        v.                                   :      NO. 24-4696
                                             :
OUTSIDE INTERACTIVE, INC.                    :
_____      :_____
```

*United States District Court*

```
_____:_____
                                         :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                         :    CIVIL ACTION
           v.                            :    NO. 24-4770
                                         :
VALASSIS DIGITAL CORP., et al.           :
_____:_____
                                         :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                         :    CIVIL ACTION
           v.                            :    NO. 24-4850
                                         :
THE LIFETIME VALUE CO. LLC, et al.       :
                                         :
_____:_____
                                         :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                         :    CIVIL ACTION
           v.                            :    NO. 24-4949
                                         :
BELLES CAMP COMMUNICATIONS, INC., et    :
al.                                      :
                                         :
_____:_____
                                         :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                         :    CIVIL ACTION
           v.                            :    NO. 24-5334
                                         :
FIRST AMERICAN FINANCIAL CORPORATION, :
et al.                                   :
_____:_____
                                         :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                         :    CIVIL ACTION
           v.                            :    NO. 24-5600
                                         :
PROPERTYRADAR, INC., et al.              :
_____:_____
                                         :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                         :    CIVIL ACTION
           v.                            :    NO. 24-5656
                                         :
THE ALESCO GROUP, L.L.C.                 :
_____:_____
```

*United States District Court*

```
                                          :
_____ :  _____
                                          :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :    CIVIL ACTION
           v.                             :     NO. 24-5658
                                          :
SEARCHBUG, INC.                           :
_____ :  _____
                                          :
ATLAS DATA PRIVACY CORPORATION, et al.:
                                          :    CIVIL ACTION
           v.                             :     NO. 24-5775
                                          :
AMERILIST, INC., et al.                   :
_____ :  _____
```

          Mitchell H. Cohen Building & U.S. Courthouse
          4th & Cooper Streets
          Camden, New Jersey 08101
          May 7, 2024
          Commencing at 1:57 p.m.


**B E F O R E:**        **THE HONORABLE HARVEY BARTLE, III,**
                        **UNITED STATES DISTRICT JUDGE**


**A P P E A R A N C E S:**


          BOIES SCHILLER FLEXNER LLP
          BY: ADAM R. SHAW, ESQUIRE
          30 South Pearl Street, 12th Floor
          Albany, New York 12207
          For the Plaintiffs

<u>**A P P E A R A N C E S (cont.'d)**</u>:

        BOIES SCHILLER FLEXNER LLP
        BY:  HSIAO (MARK) C. MAO, ESQUIRE
        44 Montgomery Street, 41st Floor
        San Francisco, California 94104
        For the Plaintiffs


        BOIES SCHILLER FLEXNER LLP
        BY:  JAMES LEE, ESQUIRE
        100 S.E. 2nd Street, Suite 2800
        Miami, Florida 33131
        For the Plaintiffs


        MORGAN & MORGAN
        BY:  RYAN JOSEPH McGEE, ESQUIRE
        201 N. Franklin Street, 7th Floor
        Tampa, Florida 33602
        For the Plaintiffs


        PEM LAW LLP
        BY:  RAJIV D. PARIKH, ESQUIRE
        1 Boland Drive, Suite 101
        West Orange, New Jersey 07052
        For the Plaintiffs


        TROUTMAN PEPPER HAMILTON SANDERS LLP
        BY:  ANGELO A. STIO III, ESQUIRE
        BY:  MICHAEL A. SCHWARTZ, ESQUIRE
        301 Carnegie Center, Suite 400
        Princeton, New Jersey 08543
        For the Defendants CARCO Group Inc.; Acxiom, LLC; AtData,
        LLC; Deluxe Corporation; DM Group, Inc.; Enformion, LLC;
        Red Violet, Inc.; Remine Inc.; RocketReach LLC; CoreLogic
        Inc.


        VEDDER PRICE, P.C.
        BY:  BLAINE C. KIMREY, ESQUIRE
        222 North LaSalle Street
        Chicago, Illinois 60601
        For the Defendants Whitepages, Inc. and Hiya, Inc.,
        et al.

1    **<u>A P P E A R A N C E S (cont.'d)</u>:**

2

3        SEYFARTH SHAW LLP
         BY:  ROBERT T. SZYBA, ESQUIRE
4        620 Eighth Avenue, 32nd Floor
         New York, New York 10018
5        For the Defendants Infomatics, LLC; The People Searchers,
         LLC; and We Inform, LLC, et al.

6

7        GREENSPOON MARDER
         BY:  KELLY MAGNUS PURCARO, ESQUIRE
8        1037 Raymond Boulevard, Suite 900
         Newark, New Jersey 07102
9        For the Defendant Joy Rockwell Enterprises, Inc.

10       FISHERBROYLES, LLP
         BY:  JASON A. SPAK, ESQUIRE
11       6460 Broad Street, #5262
         Pittsburgh, Pennsylvania 15206
12       For the Defendant Innovis Data Solutions, Inc.

13

14       LATHAM & WATKINS LLP
         BY:  ROBERT C. COLLINS III, ESQUIRE
15       330 North Wabash Avenue, Suite 2800
         Chicago, Illinois 60611
16       For the Defendants CoStar Group, Inc.; CoStar Realty
         Information, Inc.; Lightbox Parent, L.P.; Lightbox
17       Holdings, L.P.; Oracle International Corporation; Oracle
         America, Inc.; Oracle Corp.; PeopleConnect Holdings,
18       Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC

19       LOWENSTEIN SANDLER LLP
         BY:  GAVIN J. ROONEY, ESQUIRE
20       One Lowenstein Drive
         Roseland, New Jersey 07068
21       For the Defendant LexisNexis Risk Data Management, LLC

22

23       RKW LAW GROUP
         BY:  H. MARK STICHEL, ESQUIRE
         10075 Red Run Boulevard, Suite 401
24       Owings Mills, Maryland 21117
         For the Defendant eMerges.com, Inc.

25

1  A P P E A R A N C E S (cont.'d):

2

3      WADE CLARK MULCAHY
       BY:  ROBERT  JAMES COSGROVE, ESQUIRE
4      955 South Springfield Avenue
       Springfield, New Jersey 07081
5       For the Defendant Delvepoint, LLC

6      McCARTER & ENGLISH, LLP
       BY:  SCOTT S. CHRISTIE, ESQUIRE
7      Four Gateway Center
       100 Mulberry Street
8      Newark, New Jersey 07102
       For the Defendant Black Knight Technologies, LLC and
9      Black Knight, Inc.

10  **A L S O   P R E S E N T**:

11      DAVID BRUEY,  Courtroom Deputy

12

13                           -  -  -

14

15

16

17

18

19

20

21

22

23

24

25

1             (PROCEEDINGS held in open court before The Honorable

2    HARVEY BARTLE, III at 1:57 p.m.)

3             THE COURT:  Good afternoon.  You may be seated.

4             Good afternoon.  As you all know, we're here for a

5    status conference in connection with the 71 Daniel's Law cases

6    and also deal with the case of John Doe v. LexisNexis, which

7    is not one of the Daniel's Law cases.

8             There are a number of matters we need to cover today,

9    and I think we should start with the motions to remand.

10            Let's discuss that subject.  I don't know, we have 39

11   of those.  And I know there were several cases where I gave

12   you a little more time because they were removed later.

13            Have those been dealt with also?

14            MR. SHAW:  Good afternoon, Your Honor.

15            THE COURT:  Good afternoon.

16            MR. SHAW:  Adam Shaw for plaintiffs.

17            THE COURT:  Yes.

18            MR. SHAW:  Yes.  We've filed --

19            THE COURT:  Covered the bases.

20            MR. SHAW:  -- almost all of them.  All of them.

21            THE COURT:  All right.  So the question then is how

22   we should deal with those.  And I think we should talk about

23   that issue first since it deals with subject matter

24   jurisdiction.

25            There is a question that has been raised on whether

1   there should be discovery in connection with those.

2          Is there anyone who wishes to address that subject?

3          MR. STIO:  Your Honor, I will.

4          THE COURT:  Okay.

5          MR. STIO:  Your Honor, we submitted a letter to the

6   Court --

7          My name is Angelo Stio.  I represent many of the

8   defendants.

9          THE COURT:  Yes.  I've read it.

10          MR. STIO:  There are about 54 defendants who signed

11   on to that letter.

12          We've discussed the motions for remand, and we think

13   that the best way to proceed is to stay those while the

14   parties focus their effort on the constitutional challenges.

15   And I say that because the facial constitutional challenges

16   deal with a potentially dispositive issue.  All the cases

17   could go away.

18          Two, we have a number of parties here or defendants

19   who have personal jurisdiction arguments, motions to compel

20   arbitration and a slew of other motions for 12(b).  And

21   there's a concern about waiver by dealing with any type of

22   discovery.

23          And then we also note --

24          THE COURT:  Well, we're talking about subject matter

25   jurisdiction.  That's different than other issues, isn't it?

```
 1              MR. STIO:  Subject matter jurisdiction is different.
 2              THE COURT:  That's a --
 3              MR. STIO:  But there is discovery that is going to be
 4   involved in that.  There could be discovery fights.  I know
 5   lawyers don't typically do that, but sometimes we do.  And I
 6   think that there's a real concern of spending significant
 7   time, effort, and resources when we would like to focus on
 8   sequencing, which the Court at least indicated they wanted to
 9   go down that route, on a dispositive issue that could result
10   in the cases going away.
11              THE COURT:  But there's no reason why we can't
12   proceed on two tracks, and particularly when you're talking
13   about subject matter jurisdiction.  There are 39 cases where
14   that's an issue, so that's a pretty important matter.  So I
15   don't know why we can't go down two tracks, deal with remand
16   and also deal with a motion facially challenging the
17   constitutionality of Daniel's Law.
18              MR. STIO:  I think that from an efficiency
19   standpoint, it could result in a lot of briefs.  It's going to
20   result in discovery, because for the defendants' side, we are
21   going to need discovery on --
22              THE COURT:  Let's talk about the discovery on the
23   remand.
24              I know the issue of collusion has been raised.
25              MR. STIO:  Correct.
```

```
 1            THE COURT:  And also the question about the number of
 2    plaintiffs in terms of CAFA.
 3            MR. STIO:  Correct.
 4            THE COURT:  And that all is intertwined with the
 5    issue of assignments.
 6            MR. STIO:  Correct.
 7            THE COURT:  So why can't that all be dealt with in
 8    terms of expedited discovery?  In other words, what would you
 9    need in terms of discovery on remand?
10            MR. STIO:  Sure.
11            THE COURT:  Let's just talk about that.
12            MR. STIO:  So, Your Honor, if we were going to do
13    that, I think -- and I'll start with four buckets, right, of
14    discovery, based on what was in the consolidated --
15            THE COURT:  Right.
16            MR. STIO:  -- motion for remand.
17            One is the Long John Silver factors.  They cited the
18    case in their brief.  And they talk about a number of factors.
19    And we would want, in addition to documents related to the
20    assignment, we need to know, you know, what other documents
21    exist.
22            And I say that because if you look at the assignment
23    that they produced, the assignment they produced is from
24    February 4, 2024.
25            They sent out all their notices with regard to the
```

1    cases here in December and January.

2         THE COURT:  December of '23?

3         MR. STIO:  Of 2023 and January 2024.

4         THE COURT:  You say the model form was dated February

5    of 2024?

6         MR. STIO:  February the 4th, 2024.  And I believe

7    it's Exhibit E to the plaintiffs' counsel's certification.

8         So there's going to be other documents.  Or -- and

9    they can say there aren't any other documents, and these

10    people, 20,000 of them signed up to something that they had no

11    idea what they were signing up for.  But we need information

12    on that.

13         We need information under the *Long John Silver*

14    factors of a motive of Atlas.

15         We need information about whether or not --

16         THE COURT:  Motive for bringing the lawsuit?

17         MR. STIO:  Correct.

18         And the assignments.  And then whether Atlas had any

19    independent interest that predated the assignment.  Again,

20    that's a *Long John Silver* factor.

21         But as we go down this path, Your Honor, there's

22    personal jurisdiction arguments.  And we're getting into a lot

23    of discovery on issues that the parties are going to be

24    concerned about.

25         THE COURT:  Let's focus on subject matter

```
 1   jurisdiction for a moment.

 2           MR. STIO:  Okay.

 3           THE COURT:  The assignments.  Now, there are a lot of

 4   plaintiffs.  I'll call them plaintiffs just as a lay term.  A

 5   lot of law enforcement officials, I'll call them, who made

 6   assignments to Atlas.

 7           Now, I don't know that it would be necessary to get

 8   every one of those assignments, but you certainly need copies

 9   of whatever types of assignments that they were using at the

10   relevant time, wouldn't you?

11           MR. STIO:  Correct.  So, Your Honor, we need copies

12   of, among other things, the terms of use.  They gave us terms

13   of use from February 4, 2024.  We need all the iterations that

14   have been used.  And we --

15           THE COURT:  I know we used that term when we were

16   here before.

17           Refresh my recollection, is that the assignment?

18           MR. STIO:  Yeah.  The assignment is contained in the

19   terms of use.  So what they have -- they produced as an

20   Exhibit E is a document that's called Daniel's Law terms of

21   use.

22           THE COURT:  Right.

23           MR. STIO:  And within that Daniel's Law terms of use

24   is a provision that purports to be an assignment.

25           THE COURT:  Right.
```

```
 1            MR. STIO:  But --
 2            THE COURT:  Now, are we talking about one form for
 3  this whole period of time?
 4            Maybe, Mr. Shaw, you can answer that.
 5            Or was this changed over the relevant period?
 6            MR. SHAW:  One form, Your Honor.
 7            THE COURT:  One form.  All right.  Used for all
 8  thousand or whatever the number is.
 9            MR. SHAW:  The terms of service, yes.  And then the
10  assignment confirmation, yes.
11            MR. MAO:  Your Honor --
12            THE COURT:  The same one document?
13            MR. MAO:  Mr. Mao for the plaintiffs.
14            Assignment provisions are completely unchanged for
15  the entire period that counsel --
16            THE COURT:  I understand.
17            We're talking, the assignment is included in the
18  terms of use.  And what Mr. Shaw has told me is that the form
19  of assignment and the form of the term of use was the same
20  during the relevant time period involved in these cases.
21            Is that correct?
22            MR. MAO:  Yeah.  Your Honor, pursuant to your order
23  from the last hearing, you ordered us to produce the relevant
24  assignment provisions and terms, and that's exactly what we
25  did.
```

1          THE COURT:  Give us your name, please.

2          MR. MAO:  Mr. Mao, Mark Mao, Boies Schiller Flexner,

3     for the plaintiffs.  Thank you.

4          MR. STIO:  So, Your Honor, if the only assignment is

5     the assignment dated February 4, 2024 --

6          THE COURT:  Right.

7          MR. STIO:  -- I understand what you're saying.

8          THE COURT:  All right.

9          MR. STIO:  However --

10          THE COURT:  And, obviously, that is a relevant

11     document, according to your view, for subject matter

12     jurisdiction.

13          MR. STIO:  Not according to my view, no.

14          THE COURT:  Well --

15          MR. STIO:  If they're saying it's the only

16     document --

17          THE COURT:  Oh, I understand.  I agree.

18          MR. STIO:  -- they're not going to say that there's a

19     document that they used --

20          (Court reporter clarification.)

21          MR. STIO:  They're not going to say that there's a

22     document that they used or any of these covered people signed

23     before February 4, 2024, okay.

24          THE COURT:  Well, simply because the document you've

25     received is dated February 4th doesn't mean it wasn't the same

1   document that was used in December or any other time.  I don't

2   know -- I haven't studied the document.

3          But they are representing as officers of the court

4   that there is one term of use document which includes the

5   assignment form.  It's just one document.  They haven't

6   changed it.

7          Law Enforcement Officer X didn't sign a different

8   document than Law Enforcement Officer Y.  That's what they're

9   telling me.

10          MR. STIO:  Your Honor, I understand that.

11          THE COURT:  Now, I'm just trying to determine about

12   discovery.

13          MR. STIO:  Yeah.

14          THE COURT:  Now, you and I aren't inside the Atlas

15   office.  Discovery depends on the good faith of people.  And

16   if they tell me that's the only document and they tell you

17   that's the only document, that's the only document, unless we

18   learn to the contrary.

19          And if we do learn to the contrary, there will be

20   serious consequences.

21          MR. SHAW:  Let me just say, my colleagues just tell

22   me that there was one slight tweak in the document, but we

23   will make both of those available.  It did not affect the

24   assignment.

25          MR. STIO:  Your Honor, let me --

```
 1              (Court reporter clarification.)

 2              THE COURT:  No, wait a minute.

 3              Listen.  Let's get your act together.  Tell me --

 4              MR. SHAW:  It did not affect the assignment.  It was

 5   some other part of the terms of service.  But we want to make

 6   that clear.

 7              THE COURT:  What I am saying, Mr. Shaw, you told me

 8   that there was one term of use and one assignment.  They were

 9   all the same for all thousands of law enforcement officers who

10   made assignments.

11              Now you're telling me that it's slightly different.

12              Now, which is it?

13              MR. MAO:  Your Honor, the terms of use, I believe,

14   was updated once.

15              THE COURT:  Was --

16              MR. MAO:  The terms of use was updated once, I

17   believe, maybe twice.  The -- how do I explain this?

18              Atlas's service has been around even a year before

19   the lawsuits began, because they started -- the service

20   actually started with a removal --

21              THE COURT:  I'm not interested in that.

22              MR. MAO:  Right.  All I'm simply saying, Your Honor,

23   is the assignment provision has never changed, which is what

24   was ordered to be produced.

25              THE COURT:  That's somewhat different than what
```

1   Mr. Shaw told me; is that correct?

2           MR. MAO:  No.  It's what I was trying to explain,

3   Your Honor.  I apologize.

4           THE COURT:  It is different from what Mr. Shaw told

5   me.

6           Now, you can correct it, but isn't that right?

7           MR. SHAW:  Yes, Your Honor.  The terms of service

8   changed slightly, so there is two versions of it.

9           THE COURT:  Right.  What I'm trying to get at here is

10  what type of discovery is going to be needed for a remand

11  motion.  You know, is it thousands of different assignments

12  and terms?  Because ultimately, if we decide to go forward,

13  you're going to have to produce it.  And I want that to be

14  done.  And if there are two different documents or five, but

15  they all have to be produced.  And with dates when the changes

16  were made.  Understand?

17          MR. SHAW:  Absolutely, Your Honor.

18          THE COURT:  All right.  Now, that's --

19          What else, Mr. Stio?

20          I'm just trying to -- look.

21          MR. STIO:  Yeah.

22          THE COURT:  I want to deal with remand.  I want to

23  determine what type of discovery would be needed in terms of a

24  remand motion, because it's likely we may go forward with

25  that.

1    Is it going to be -- is it going to take five years

2  to do all this, or is it going to be -- okay.

3    MR. STIO:  Your Honor, the other thing that we

4  need -- so we want the versions of the terms of use.

5    THE COURT:  I agree with that.

6    MR. STIO:  The terms of use reference documents

7  within those terms that relate to the relationship.  There are

8  privacy policies that are referenced and linked in the terms

9  of use and --

10    THE COURT:  In other words, you want -- you would

11  want all documents that are referenced in the terms of use or

12  in the assignment, which makes perfect sense.

13    MR. STIO:  Correct.

14    THE COURT:  Okay.

15    MR. STIO:  And then, Your Honor, the other thing that

16  we want is -- the way that this works, what I think works,

17  based on what I read, is there's a registration process.  And

18  that's also outlined in the terms of use in Section 2.

19    We would want to see -- and we don't need it for

20  everyone; they can make a representation everyone went through

21  this process -- but the screenshots of the entire process of

22  what a law enforcement official will see when they log in,

23  what disclosures are made to that law enforcement official

24  when they go through that process.  And it's something that is

25  done in a lot of these cases, the screenshots of every step of

```
 1   the process for the registration.

 2          THE COURT:  Would that be difficult to produce,

 3   Mr. Shaw?

 4          MR. PARIKH:  Your Honor --

 5          THE COURT:  Your name.

 6          MR. PARIKH:  Yes, Your Honor.  Raj Parikh, PEM Law,

 7   on behalf of plaintiffs.

 8          So I think it would be difficult to produce, Your

 9   Honor.  We can check with our client.

10          But the screenshots of someone registering for a

11   privacy tool is unrelated to the issue of assignments, which

12   is the subject matter jurisdiction issue that the defendants

13   have raised.

14          THE COURT:  Right.

15          MR. PARIKH:  And I agree with Your Honor on terms of

16   use, but in terms of the registration process for someone to

17   sign up for a service, it's unrelated to the assignments

18   essentially.

19          THE COURT:  What else would you -- Mr. Stio, just so

20   I can get some understanding of what discovery would be

21   needed.

22          MR. STIO:  The terms of use reference subscription

23   tiers.  So there's different levels of relationship with Atlas

24   between these covered people and Atlas.  And that's on page 58

25   of what the filing was.  But they talk about subscription
```

```
 1   tiers.

 2           THE COURT:  Right.

 3           MR. STIO:  And it's relevant for a couple reasons.

 4           One is the services or the impact of the assignment.

 5           Two, one of the levels they talk about are what the

 6   individual plaintiffs here have.  So the individual plaintiffs

 7   somehow did not give an assignment, according to their

 8   documents, to Atlas.  What type of disclosures and what

 9   process did they go through, and how is that different than

10   what --

11           THE COURT:  That has nothing to do with subject

12   matter jurisdiction.  They're plaintiffs.  They're named

13   plaintiffs, so --

14           MR. STIO:  But here's why I think it goes to who are

15   the real parties in interest.  And I know that they have given

16   us a document that says these covered people retain a

17   65 percent interest in the recovery less attorneys' fees and

18   expenses.  And Atlas would get the 35 percent.

19           But what rights do these named plaintiffs have, and

20   how are they able to go through the same automated process and

21   not have an assignment?

22           THE COURT:  Well, I don't see that.

23           MR. STIO:  Okay.

24           THE COURT:  Now, also, in terms of documents, I think

25   it seems pretty clear what you're certainly going to need
```

 1   here.  And you're going to need a 30(b)(6) deposition clearly

 2   of somebody from Atlas.

 3            MR. STIO:  Correct, Your Honor.

 4            There may be a deposition that we would want of

 5   someone or one or two of the covered persons to verify some of

 6   the allegations that are in their motion for remand.

 7            THE COURT:  What do you mean, the covered persons?

 8   You mean --

 9            MR. STIO:  The people who are the assignees.

10            THE COURT:  No.  You mean the assignors?

11            MR. STIO:  Assignors, sorry, Your Honor, yeah.

12            And their papers talk about communications and

13   disclosures that were made to the New Jersey PBA, the New

14   Jersey State Troopers Association, there's a Metropolitan

15   Transit Association, and how they led to the process of

16   getting these assignments, what disclosures were made, what

17   was said about the rights that the individuals have, the

18   rights that Atlas have.

19            Then it gets back to real party in interest and

20   whether or not there is subject matter jurisdiction.

21            We think we have subject matter jurisdiction.  And we

22   think that these will bear on that and show it.

23            And then, Your Honor, again, I can't stress enough,

24   because I've beaten over the head by it, by some of my other

25   co-defendants, there can't be a waiver of personal

```
 1   jurisdiction or any motion to compel arbitration.

 2           THE COURT:  Of course not.  Of course not, there

 3   wouldn't be any waiver.

 4           MR. STIO:  Okay.

 5           THE COURT:  Any time -- I mean, this isn't an unusual

 6   situation.  I've had many cases where subject matter

 7   jurisdiction and diversity, potentially a diversity action has

 8   been raised.

 9           So what do you do?  Is you just take discovery on

10   subject matter jurisdiction and everything else is held in

11   abeyance.  The Court rules on whether there's subject matter

12   jurisdiction.

13           If there is, then we go forward with all the other

14   issues, venue and personal jurisdiction and 12(b)(6) motions.

15           And if there is no subject matter jurisdiction, the

16   case is either dismissed or remanded back to the state court.

17   There's nothing complicated about that.

18           So where would the waiver come in if you deal with

19   subject matter jurisdiction?

20           MR. STIO:  I just wanted it clear that there isn't

21   any --

22           THE COURT:  I can't imagine --

23           MR. STIO:  Thank you.

24           THE COURT:  Because that's --

25           MR. STIO:  And then, Your Honor, I have one other
```

1    thing --

2            THE COURT:  Yeah.

3            MR. STIO:  -- before I let any other defendants

4    speak.

5            There is a provision in the terms of use entitled

6    consent to receive communications.  And it talks about Atlas

7    communicating with these individuals related to terms of the

8    agreement, notices, disclosures and other communications.

9            THE COURT:  Uh-huh.

10           MR. STIO:  We would want any of those communications

11   that are referenced or the subject of --

12           THE COURT:  Every communication with every assignor?

13           MR. STIO:  No.  Related to the subject matter

14   jurisdiction, which would be assignments, the assignment

15   confirmations, and the rights and recovery that's at issue

16   here.

17           THE COURT:  Mr. Shaw, let's -- let me just hear from

18   Mr. Shaw --

19           MR. STIO:  Sure.

20           THE COURT:  -- on what discovery would be needed

21   here.

22           MR. SHAW:  Thank you, Your Honor.

23           THE COURT:  I know in your motion to remand, you say

24   there's no possibility of collusion, but I think the

25   defendants would have a right to deal with that.

 1          MR. SHAW:  Well, in some way, but we can't divorce
 2    the context from the situation.
 3          THE COURT:  No.  I understand.
 4          MR. SHAW:  And we're saying, you know, you would have
 5    to suspend belief to think that the officers colluded to have
 6    some random set of people lose jurisdiction.
 7          THE COURT:  Right.
 8          MR. SHAW:  I mean, as we've said, we don't mind being
 9    in this court.
10          THE COURT:  Right.
11          MR. SHAW:  But we can't just consent to jurisdiction.
12          THE COURT:  No.  I understand.
13          MR. SHAW:  So that's why I think a lot of this
14    discovery goes too fair afield, really.
15          I mean, they have the assignment, and we have one
16    other version we're going to give them.
17          THE COURT:  Right.
18          MR. SHAW:  They have that.  So they have all of the
19    terms of it.
20          THE COURT:  Uh-huh.
21          MR. SHAW:  Getting it to a 30(b)(6) of motive doesn't
22    seem to -- doesn't seem to make sense, again, because, you
23    know, how are you going to get the motive of this massive
24    group of people, number one.
25          THE COURT:  Right.

1          MR. SHAW:  But, number two, it doesn't make sense in

2   this context.  It just --

3          THE COURT:  Right.

4          MR. SHAW:  You know, in an individual case with a

5   couple of defendants, it makes sense.  But it just doesn't in

6   this context.

7          THE COURT:  Right.

8          MR. SHAW:  And all of that can be gleaned from the

9   documents we've already gave them.

10          To the extent that there's a date or something like

11   that, where they want to find out, when did the assignment

12   take place or something, that's something we can stipulate to.

13   We don't have a problem with that.

14          THE COURT:  But if you produced or either have

15   produced or will produce the terms of use, whatever versions

16   you used during the relevant time period, and the assignment

17   which you say hasn't changed, and then a 30(b)(6) deposition

18   of someone at Atlas, I'm just wondering what else there would

19   need to be at this point.

20          I know that there's the CAFA issue of whether there's

21   a hundred individuals and whether the assignors can be

22   considered --

23          MR. SHAW:  Right.

24          THE COURT:  That may be -- I mean, maybe there's some

25   facts that have to be elicited, but that's really more of a

*United States District Court*

1    matter of law, it seems to me.

2            MR. SHAW:  I agree, Your Honor.

3            As to the CAFA, we could stipulate that it's more

4    than a hundred people that's involved.  If the Court were to

5    even consider them -- I mean, there's more than a hundred

6    assignors, without a doubt, so that would be easy to --

7            THE COURT:  You would agree that there's more than a

8    hundred?

9            MR. STIO:  Yes, Your Honor.

10           MR. SHAW:  Right.

11           THE COURT:  So that's really not an issue here.  It's

12   just --

13           MR. SHAW:  Right.  And I don't even think they need a

14   30(b)(6) on motive, because you could glean it and you could

15   discern it from the facts.  The assignment is what it is.  You

16   can see -- you can see the assignment.  You can see the

17   termination.  And I think as Your Honor will see in the case

18   law, the courts say, you know, whether the assignment was real

19   or effective under state law is meaningless to this -- or is

20   not dispositive or really informative to the decision Your

21   Honor has to make.  You're trying to figure out whether there

22   was a sham.

23           THE COURT:  Right.

24           MR. SHAW:  And, you know --

25           THE COURT:  That's the issue.

1          MR. SHAW:  That's the issue.  And if you look at the

2     context here, again, you would have to suspend disbelief to

3     suggest that there's a sham.

4          But I don't think you need to get into those far

5     afield facts.  They have the assignment.  If they want to say

6     the assignment, you know, has terms in it that result in X,

7     let them say that.  They have it.

8          THE COURT:  Apparently the terms of use makes

9     reference to some additional documents?

10         MR. SHAW:  Yeah.  But those, my understanding, do not

11    relate to the assignment.  There's a privacy terms he

12    mentioned.  I'm not sure what other things they're trying to

13    get at.  But I don't think that those tend to prove or

14    disprove whether there was a sham.

15         THE COURT:  Mr. Stio, what about that?

16         MR. STIO:  Your Honor, the other documents include --

17         THE COURT:  Please rise when you speak.

18         MR. STIO:  Oh, I'm sorry, Your Honor.

19         Your Honor, I'm not trying to go in full-blown

20    discovery.

21         They've given us a document that says terms of use.

22    It incorporates by reference other documents --

23         THE COURT:  All right.

24         MR. STIO:  -- including the privacy policy, the terms

25    of indemnification insurance that they provide here.  All I

```
 1   want is to be able to analyze what they say is the operative

 2   document and what documents are incorporated within it.

 3           THE COURT:  So if you got all the documents that are

 4   incorporated by reference -- you know, I can't tell at this

 5   point whether they're relevant or not -- and you had those,

 6   and you had a 30(b)(6) deposition, why wouldn't that be

 7   enough?

 8           Let's move this along.

 9           MR. STIO:  Yeah.  The other thing we need is just the

10   assignment confirmation, but I think they said there's only

11   one and they produced it.

12           THE COURT:  So if we did that, we could get whatever

13   facts you can glean.  And then the responses can be filed.

14   And that shouldn't take too long.

15           I assume whatever documents that have not yet been

16   produced can be produced promptly.

17           MR. SHAW:  Adam Shaw for plaintiffs.  Yes, Your

18   Honor.

19           THE COURT:  In a few days?

20           MR. SHAW:  Yes.

21           MR. STIO:  Your Honor, the only other thing that you

22   didn't mention -- and I think they said it was -- I think they

23   said they would produce it -- are the screenshots of the

24   process.

25           THE COURT:  Well, I don't know that that's going to
```

1    be necessary at this point.

2            But let me hear from other counsel.

3            MR. STIO:  Sure.

4            THE COURT:  Good afternoon.

5            MR. KIMREY:  Good afternoon, Your Honor.  Blaine

6    Kimrey from Whitepages and Hiya.  How are you doing?

7            THE COURT:  Hi.

8            MR. KIMREY:  Good to see you.  May it please the

9    Court.

10            So the lodestar is the terms and conditions.  And

11    Mr. Stio has highlighted that these terms and conditions

12    actually post-date the suppression requests that were made, so

13    that's why we thought there were other terms and conditions.

14            THE COURT:  Right.

15            MR. KIMREY:  Because how could terms and conditions

16    apply to something that happened before the terms and

17    conditions were adopted?

18            So we now know that there's at least one other

19    version of these terms and conditions, which we'll now get,

20    and we'll get all versions of the terms and conditions --

21            THE COURT:  Right.

22            MR. KIMREY:  -- if there are multiple versions.

23            The terms and conditions, as with many contracts,

24    cross-reference a bunch of other terms and conditions.  These

25    are terms and conditions not only of Atlas but also of other

```
 1  entities that Atlas says the terms and conditions apply to.
 2  These terms and conditions apply to the assignors.
 3          THE COURT:  Right.
 4          MR. KIMREY:  So we -- and these are terms and
 5  conditions that the assignors are supposed to be on notice of,
 6  so these are not state secrets, they're not trade secrets.
 7          THE COURT:  Right.
 8          MR. KIMREY:  So we should be able to get all of
 9  those.
10          THE COURT:  Okay.
11          MR. KIMREY:  Additionally -- so I think we've covered
12  all of that.
13          The one thing I wanted to add --
14          THE COURT:  Yeah.
15          MR. KIMREY:  -- was that Atlas also has other terms
16  and conditions on its website.
17          So we've discovered that there are terms and
18  conditions that are not these terms and conditions that are on
19  the website that purport to apply to the assignors.  So we
20  want all of those terms and conditions as well, which are not
21  cross-referenced here but are on the website.
22          THE COURT:  Right.
23          MR. KIMREY:  We also want all versions of the privacy
24  policy that's cross-referenced in those terms and conditions,
25  which are not necessarily -- although we don't know, we
```

1   haven't seen it -- referred to in these.

2          So basically we just want all of the terms and

3   conditions over the relevant period of time that apply to

4   these assignors and may color the rights of them in

5   assigning -- allegedly assigning these claims to Atlas.

6          Because, Your Honor, if just these terms and

7   conditions that were produced as Exhibit E of the consolidated

8   motion to remand --

9          THE COURT:  Right.

10          MR. KIMREY:  -- were the only terms and conditions,

11  then the assignments arguably are all invalid, because the

12  terms and conditions post-date the suppression requests that

13  were made.

14          So we're just trying to get to the bottom of that.

15          THE COURT:  All right.  I understand.  That's fine.

16          MR. KIMREY:  Okay.  Thank you, Your Honor.

17          THE COURT:  I think we all understand each other

18  that -- produce all copies of the terms of use that were in

19  effect during the relevant time period, including any

20  documents referenced or policies referenced in those

21  documents.

22          MR. KIMREY:  As well as, Your Honor, just to be

23  clear, any other separate terms and conditions applicable to

24  the assignors and --

25          THE COURT:  Sure.

1          MR. KIMREY:  -- their relationship with the assignee

2    and any privacy policies or any other contractual provisions

3    that apply.

4          THE COURT:  I think any contractual provisions that

5    apply.  Terms of use and any other terms -- contractual

6    provisions.  That seems to me to make sense.

7          MR. SHAW:  We could do that, Your Honor.  I don't

8    know that it makes sense because I think they're very far

9    afield, but --

10          THE COURT:  Well, we don't know yet.

11          MR. SHAW:  Okay.

12          THE COURT:  And I think it on its face sounds pretty

13    reasonable to me --

14          MR. SHAW:  Okay.

15          THE COURT:  -- that if we're talking about collusion,

16    we ought to have all the documents or terms of -- between the

17    assignors and the assignee, any written documents, whether

18    it's one set of documents, five sets of documents, whatever it

19    is, that are relevant.

20          MR. SHAW:  Sure, Your Honor.  I think some of those

21    relate to things other than the assignment, but that's -- I

22    hear you.

23          THE COURT:  Well, I think at this point let's not try

24    to parse it too finely.

25          MR. SHAW:  Okay.

1          THE COURT:  We'll be here forever going through each

2    one.  I think it makes sense that that can be done.

3          MR. SHAW:  It can be.

4          THE COURT:  I think we all -- and then we would

5    have -- there would be a 30(b)(6) deposition.

6          Now, what about this business about deposing an

7    assignor?  Is that relevant to this issue?

8          MR. SHAW:  Your Honor, Adam Shaw for the plaintiffs.

9          We don't think so.

10          THE COURT:  Okay.

11          MR. SHAW:  Again --

12          THE COURT:  I'm having trouble with that, but --

13          Mr. Stio, is that something you feel strongly about?

14          MR. STIO:  Your Honor, the reason I asked for that is

15    we want to know just the understanding that the assignor had

16    here.

17          THE COURT:  If the assignor has signed a contract

18    with the assignee, we're not going to get into parol evidence,

19    are we, about what the assignor understood?

20          That's what you'd be doing, wouldn't you?

21          MR. STIO:  There are allegations in their papers that

22    discuss what the assignors were told and represented at the

23    time they signed up.

24          Your Honor, I think that -- look, I hear what you're

25    saying.  If we can get the 30(b)(6) of Atlas and what we're

*United States District Court*

 1  dealing with are the terms of the documents --

 2          THE COURT:  Right.

 3          MR. STIO:  -- and there's not going to be any

 4  evidence put in outside of those documents and --

 5          THE COURT:  That's right.

 6          MR. STIO:  -- the 30(b)(6), I understand what Your

 7  Honor is saying.

 8          THE COURT:  Thank you.

 9          We have -- we want to hear from -- good afternoon.

10          MR. SZYBA:  Good afternoon, Your Honor.  My name is

11  Rob Szyba on behalf We Inform, The People Searchers and

12  Infomatics.

13          THE COURT:  Yes.

14          MR. SZYBA:  I just wanted to advise the Court about

15  one nuance of the District of New Jersey practice --

16          THE COURT:  I'm interested in nuance.

17          MR. SZYBA:  -- that may impact some of the

18  conversation here, although maybe not as much.

19          Local Rule 7.1.1 requires disclosure of third-party

20  litigation funding.

21          The only reason I bring it up is because that hasn't

22  happened in this case.  It's not a discovery vehicle, so it

23  doesn't --

24          THE COURT:  It requires what?

25          MR. SZYBA:  It requires disclosure of third-party

1   litigation funding.  So it is not a discovery vehicle.  It's

2   not a discovery rule.  It's really just a subpart of Rule 7.1,

3   and it's corporate disclosure requirements.

4           But we've touched on the issue of collusion and what

5   parties in this case were told or understand or how the

6   relationship formed.  And we know from the complaints that

7   were filed that there are other actors that were involved in

8   the formation of this relationship, go-betweens.

9           THE COURT:  Relationship between the assignors and

10  assignees?

11          MR. SZYBA:  Correct.  The assignors --

12          THE COURT:  Right.

13          MR. SZYBA:  -- are union members that somehow came

14  into this relationship by way of their union.  Whether it was

15  directly or indirectly, it's unclear --

16          THE COURT:  That wouldn't surprise me.

17          MR. SZYBA:  That wouldn't surprise me either, Your

18  Honor, but --

19          THE COURT:  The individuals may not know about all

20  the nuances of the law, so they have -- that's why the union

21  does that.

22          MR. SZYBA:  That may be all be true, and that's not

23  really the point.

24          The point is, if there are other parties or other

25  entities, the local rules in the District of New Jersey

1   require disclosure of any other parties that have a financial

2   interest in the outcome of this litigation.

3           THE COURT:  Okay.

4           MR. SZYBA:  That may create a need for additional

5   discovery, it may not, but it is a relatively procedural,

6   non-controversial rule here.

7           THE COURT:  All right.  Very good.

8           Anybody else want to speak about remand?

9           It seems to me we can -- we'll go forward with the

10  remand.

11          We'll write up a discovery order requiring the

12  production of the documents that we've talked about to the

13  defendants.  And there will be an opportunity after that for a

14  30(b)(6) deposition of someone at Atlas.

15          Now, we have 39 motions that you filed.  We're

16  obviously not going to have 39 depositions of an Atlas

17  representative, so we have to deal with that.

18          Now, I did notice that in looking at some of these,

19  that seven of the motions are for defendants who are

20  represented by Mr. Stio; is that correct?  I think seven out

21  of your 11 clients face a motion to remand.

22          MR. STIO:  That's correct, Your Honor.

23          THE COURT:  So that's roughly one-fifth of the group.

24          And I don't know whether we can agree that you would

25  take the lead on that, because you have seven.

```
 1          Is there anyone else who has more than seven
 2   defendants on the remand issue?
 3          Nobody is raising a hand.
 4          That we could start with that, and then maybe we
 5   could have some procedure where the discovery would be done
 6   and the -- which would be produced to all 39.
 7          You would take the 30(b)(6) deposition, would obtain
 8   an expedited transcript, provide it to all other defendants
 9   who have -- are facing motions to remand, and that those
10   defendants would have a period of time in which to petition or
11   move me for the right to take -- ask additional questions of
12   the 30(b)(6) deponent so that they would have a further
13   opportunity.
14          I don't know another way of doing it.  I'm not going
15   to have 39 depositions.
16          Does that make sense?
17          MR. SHAW:  Your Honor --
18          THE COURT:  Does anybody object to that?
19          Yeah.
20          MR. SHAW:  Your Honor, Adam Shaw.
21          I think that's a good way.
22          But would it also be okay if the other defendants,
23   you know, listened in and perhaps suggested their --
24          THE COURT:  Absolutely.
25          MR. SHAW:  -- questions to Mr. Stio at the time
```

```
 1    rather than come back to the Court, in case there's just a few
 2    questions.
 3              THE COURT:  Maybe that would be a better procedure to
 4    do it that way.  All 39 of you can gather in a conference room
 5    somewhere, the lawyers for the other 31 defendants, and pass
 6    questions.
 7              Do you want to do it that way?
 8              MR. STIO:  Your Honor, what I would suggest is maybe
 9    the defense group will get together, we would have three
10    people representing the questions.
11              THE COURT:  Fine.
12              MR. STIO:  We'll still have -- it wouldn't be three
13    separate depositions, but let us almost have like a committee
14    for this.  We'll try to get all the questions down --
15              THE COURT:  That's fine.
16              MR. STIO:  -- issue the expedited transcript.  And if
17    there are things that we miss, they can petition the Court.
18    But that's the way I think maybe we can do it.
19              THE COURT:  That makes perfect sense, Mr. Shaw, if we
20    do it that way?
21              MR. SHAW:  Adam Shaw for plaintiffs.
22              That's fine, Your Honor.  And hopefully, you know,
23    with the admonition that the questions are limited to this
24    subject matter jurisdiction issue and not --
25              THE COURT:  That goes without saying, that it be
```

1   limited to subject matter jurisdiction.

2           MR. SHAW:  Thank you.

3           THE COURT:  Yes.

4           MR. KIMREY:  Blaine Kimrey again, Your Honor.

5           THE COURT:  Yeah.  You want to be part of the

6   committee?

7           MR. KIMREY:  Federal default limit of seven hours on

8   the record?

9           THE COURT:  Well, it should be limited to that unless

10  you get permission from the Court.

11          MR. KIMREY:  Okay.  I just wanted to clarify.

12          THE COURT:  Oh, yes.  Definitely.

13          All right.  So I'll fashion an order to that effect.

14          Now, let's -- do we need to have a request for

15  production?  Do you want to serve that?

16          I know we've talked about it within a certain period

17  of time, limited to the -- as we've described it here,

18  Mr. Stio.

19          MR. STIO:  Yeah, Your Honor.

20          We can either serve that, or if the Court would like,

21  we can submit a draft order for you to look at, and it would

22  have the request.

23          THE COURT:  Why don't we do this:  Why don't you

24  submit a draft request for production of documents to me

25  within a couple of days.

1          And then, Mr. Shaw, you can look at it, see if there

2   are any objections.

3          And consistent with what we've talked about here now.

4   I don't want to reargue the whole thing.

5          So today is -- why don't you submit it to me -- today

6   is what, Tuesday?  Why don't you get it to me by 3:00 on

7   Thursday.

8          Can you do that?

9          MR. STIO:  Yes, Your Honor.

10          THE COURT:  Is that too soon?

11          MR. KIMREY:  There are a lot of lawyers who are going

12   to be providing input on that, Your Honor.

13          THE COURT:  Well, see --

14          MR. KIMREY:  That's fine.  We can do it.

15          THE COURT:  Maybe I'll -- then I'll just have to --

16          MR. KIMREY:  Never mind.

17          THE COURT:  We need to move this along.  And if we're

18   going to have --

19          MR. STIO:  We'll get it done by Thursday.

20          THE COURT:  Maybe I'll just draft it.

21          I'll tell you what we'll do.  Why don't you, Mr. Stio

22   and Mr. Shaw, get together and submit something to me by

23   Thursday afternoon at 3:00 on what would be the request for

24   production of documents.  And you can send it out to everybody

25   else.  And everybody else can look at it, see if you can come

1    up with an agreement.  And Monday morning I'll put in an

2    order.

3            If anybody has any objection, get it to me by 10:00

4    on Monday morning.  Email it, whatever.  Okay?  So we're going

5    to move this along.

6            So Monday morning, I'll enter the discovery -- or

7    Monday at some point I'll enter the discovery order.

8            And then you'll have five days to respond.  You can

9    start working on it now.

10           And then within 15 days thereafter, take the 30(b)(6)

11   deposition.

12           And then what we'll say is that within maybe a couple

13   weeks after that, three weeks maybe, the motion -- the

14   response to the motion to remand be filed.

15           And I'll put this all in an order early next week.

16           And then maybe 10 days thereafter, or 15 days

17   thereafter, a reply brief on the remand issue.

18           MR. STIO:  May I ask a question?

19           THE COURT:  Go ahead.  Sure.

20           MR. STIO:  Your Honor, on the opposition, because

21   we're dealing with the Memorial Day holiday, the number of

22   defendants, if we could have 30 days just to coordinate so

23   that we don't file 39 separate briefs.

24           And it also will give time for people who want to

25   petition the Court --

```
 1            THE COURT:  All right.  That's fair.  That sounds --
 2   after --
 3            MR. STIO:  And then --
 4            THE COURT:  That will be 30 days after the deposition
 5   is taken?
 6            MR. STIO:  Correct, Your Honor.
 7            THE COURT:  Yeah.  And you'll order an expedited
 8   transcript, I assume, of that.
 9            MR. STIO:  I will, Your Honor.
10            The only thing you have to build in there is if
11   someone gets the transcript and petitions the Court for
12   questions.  We can deal with that.
13            THE COURT:  If they do, then we'll have to revise the
14   schedule.  If someone does.
15            You'll obviously make that transcript available to
16   all 39 defendants.  31, because you --
17            MR. STIO:  Yes, Your Honor.
18            And then in terms of page length, the District of New
19   Jersey has rules, and I know Your Honor has personal
20   practices.
21            THE COURT:  I do.
22            I'm glad you raised that, because it seems to me
23   that -- what are you suggesting for your -- are you possibly
24   going to file a joint brief, is that it, what you're hoping to
25   do ultimately?  If not, there may be some outliers who want to
```

1  file their own briefs.

2          MR. STIO:  Our hope would be to have a consolidated

3  brief.

4          THE COURT:  Makes sense.

5          MR. STIO:  There could be outliers that would file

6  just on a specific issue, if we could do that.

7          THE COURT:  Right.

8          MR. STIO:  Your Honor, maybe we would ask for the

9  40-page limit under the New Jersey court rules for that.

10          THE COURT:  40 pages for your brief, your

11  consolidated brief?

12          MR. STIO:  Correct.

13          THE COURT:  Yeah, that's fine.

14          And anyone else who files separately will have 25

15  pages.

16          MR. STIO:  Thank you.

17          THE COURT:  All right.  That takes care --

18          Oh, the one other issue on remand that I almost

19  forgot.

20          The plaintiffs have made reference in Footnote 6 that

21  there are four defendants who were untimely in their motion to

22  remand.

23          What about those?

24          MR. SHAW:  Adam Shaw for the plaintiffs.

25          Your Honor, I think we should have to put that into

1    the briefs.  I mean, they bear the burden of proof on these

2    issues.  I recognize that the timeliness is not

3    jurisdictional, in other words, that that's dispositive in and

4    of itself, but Your Honor can take that into consideration.  I

5    think, you know --

6            THE COURT:  Well, if it's not jurisdictional then and

7    you're happy to be in federal court, are you going to fight

8    that issue?

9            MR. SHAW:  No.  But I --

10           THE COURT:  It's an inconsistent argument you're

11   making.

12           MR. SHAW:  I was hoping it would color the rest of

13   their presentation.

14           THE COURT:  Well, are you --

15           MR. SHAW:  No, that's fine.

16           THE COURT:  Are you withdrawing that objection?

17           MR. SHAW:  I will withdraw that part of our motion to

18   remand.

19           THE COURT:  All right.  It's in Footnote 6.

20           MR. SHAW:  Correct, Your Honor.

21           THE COURT:  Nobody will have to address the issue of

22   timeliness of removal.

23           MR. SHAW:  No, Your Honor.

24           And I note that some defendants even filed amended

25   motions to remove, which I don't know are proper.  They didn't

 1  get leave of court.  But we're not going to raise that either.

 2         THE COURT:  Okay.  That takes care of that.  Very

 3  good.

 4         Now we now turn to the issue of a facial

 5  constitutional challenge in the remaining cases, the 32 cases.

 6         Anybody want to discuss briefing on that?  That

 7  obviously won't require any discovery.

 8         MR. STIO:  Your Honor, Angelo Stio again.

 9         On the briefing schedule, we set forth a schedule

10  that we think is fair and efficient and allows time to get

11  input from the defendants for a consolidated brief, but also

12  importantly, it allows time for the Attorney General to get

13  the required notice and the ability to intervene and advise

14  the Court of the date that they --

15         THE COURT:  Has the Attorney General been formally

16  notified of this matter?

17         MR. STIO:  The Attorney General has not been notified

18  by any of the defendants who would be bringing this facial

19  challenge.

20         I believe there was some notice that may have been

21  given in the Delvepoint case, but I'm not sure it was done

22  pursuant to 5.1 or if the judge certified it to the Attorney

23  General as required by the Federal Rules of Civil Procedure.

24         So what I'm saying is I don't know if their deadline

25  is run or not.

```
 1            THE COURT:  Yeah.  Well, that can be easily remedied.
 2    The Attorney General can be notified about the case, about
 3    these cases, and about whenever the motion is going to be
 4    filed.
 5            MR. STIO:  Correct.
 6            THE COURT:  So I don't know that that's any reason
 7    for delay.
 8            They've got a big office in Trenton.
 9            MR. STIO:  But what we were considering, Your Honor,
10    is the defendants would have June 27th to file either a
11    consolidated brief or for those defendants who need to file
12    their own brief on the constitutional challenge.  And again,
13    we hope that it would be a consolidated brief.
14            They would do that.  At the same time, we would serve
15    the brief on the Attorney General so that they have notice --
16            THE COURT:  Right.
17            MR. STIO:  -- unless the Court wants to send a notice
18    prior to that and start their time running and just put a
19    concise statement of what our challenges are.
20            We would ask -- we would give the defendants until
21    April 12th to address --
22            THE COURT:  April 12th?
23            MR. STIO:  Excuse me, August 12th to address the
24    opposition.  That would be pretty far out.  But August 12th to
25    address the opposition.
```

1          The Attorney General during that time would advise

2    whether or not they're going to intervene.  I had their date

3    as August 29th.  That was assuming they got notice on June

4    27th.

5          And the Attorney General could submit any position

6    statement by September 19th, give them three weeks from the

7    time they intervene.

8          And reply briefs by the defendant group by October

9    26th.

10          THE COURT:  Sounds like an awful long time.

11          MR. STIO:  It --

12          THE COURT:  I mean, the issue is obviously an

13    extremely important one, but it's a somewhat narrow issue,

14    isn't it?

15          MR. STIO:  It's somewhat narrow issues, but there are

16    a number of defendants who are involved in this.  Right?  It's

17    not just the 39, it's everyone.

18          Two, we have the Attorney General, and we don't know

19    what the Attorney General is going to do.

20          Three, we want to be able to coordinate to try to

21    avoid submitting 71 briefs to Your Honor.  And I think we can

22    do that --

23          THE COURT:  There would be only 32.

24          MR. STIO:  And then on top of that, though, we

25    also --

```
 1            THE COURT:  And you represent four of them, so
 2    that's --
 3            MR. STIO:  Right, correct.
 4            THE COURT:  So that gets us down to 28.
 5            MR. STIO:  The other thing we have, though, Your
 6    Honor, we have depositions and the motion for remand we're
 7    briefing at the same time.  I'm not up here saying it can't be
 8    done, but I do think that allowing the time for us to
 9    coordinate, allowing the time to see if the Attorney General
10    is going to come in, and also from the plaintiffs' point of
11    view, giving them time to respond to however many briefs are
12    submitted I think is fair and efficient, especially if we're
13    going on these parallel tracks of the summary -- the subject
14    matter jurisdiction motion and the constitutional motion.
15            I don't think it's unreasonable given the importance
16    of the issue, the dispositive impact it could have on the
17    case, and the fact that we are moving things forward with the
18    remand motions.
19            THE COURT:  Okay.  Mr. Shaw?
20            MR. SHAW:  Your Honor, I think one important thing
21    happened in the interim since we were here last, and that was
22    the Appellate Division of New Jersey issued an opinion about
23    the constitutionality of Daniel's Law.
24            And I know when we were here last, a number of
25    defendants said they were following that closely.
```

1          So I just wanted to update the Court if it was not

2    aware of that.

3          But I do think that the issue is relatively

4    straightforward, and I think the timeline that counsel has

5    suggested is too long.  We've suggested something much

6    shorter.

7          I don't think you need to build in a separate time

8    period for the Attorney General.  They'll be notified, and

9    they'll either come in or they won't come in.

10          THE COURT:  Right.

11          MR. SHAW:  And I also think, you know, at the last

12   conference counsel said something like -- which I think is

13   important, which is essentially this is an MDL, maybe a`

14   reverse MDL.  And I think there's got to be some coordination

15   on their side.

16          You know, we came into this court telling Your Honor

17   that we wanted to protect the safety of these officers.  You

18   asked us to make productions of covered persons list.  We did

19   that immediately.  We responded to the motions to remand

20   immediately.  And we think that asking them to coordinate to

21   file briefs that are in -- in a fashion that's helpful to the

22   Court is not a lot to ask.  And we would ask for a schedule

23   that's faster than they've proposed.

24          THE COURT:  Yes, sir.

25          MR. KIMREY:  Thank you.  Blaine Kimrey again, Your

```
 1   Honor.

 2            THE COURT:  Yes.

 3            MR. KIMREY:  During our last hearing you talked about

 4   this notion of having the non-remand set of briefs on the

 5   facial constitutional challenge and then what you termed an

 6   amicus set of briefs on the constitutional challenge by those

 7   defendants who were --

 8            THE COURT:  I raised that.  I don't know whether

 9   that's practical or not.  But go ahead.

10            MR. KIMREY:  -- subject to motions to remand.

11            Both of my clients, Whitepages and Hiya, are subject

12   to jurisdictional challenges on the consolidated motion to

13   remand.

14            THE COURT:  Right.

15            MR. KIMREY:  We removed on diversity, arguing that

16   Atlas's Delaware registration should be disregarded.

17            THE COURT:  Right.

18            MR. KIMREY:  And under the relevant factors, you

19   don't actually have to show it can, you just have to show that

20   Atlas is not the real party in interest.  I just note that.

21            THE COURT:  Right.

22            MR. KIMREY:  So I would very much -- Mr. Stio and I

23   are working together a lot, and we are going to opt in to that

24   consolidated brief if at all possible.

25            THE COURT:  Right.
```

```
 1          MR. KIMREY:  Even though we're subject to motions to

 2   remand, we think the Court does have subject matter

 3   jurisdiction, and we would appreciate the opportunity to be

 4   heard and participate on the First Amendment facial challenge.

 5          THE COURT:  Right.

 6          MR. KIMREY:  And that --

 7          THE COURT:  How would you do that?  Would you do it

 8   with an amicus brief, or would you do it as part of their

 9   brief?  Or --

10          MR. KIMREY:  I think what -- in the first instance

11   what we're going to try to do is join the consolidated brief

12   for purposes of efficiency.

13          THE COURT:  Right.

14          MR. KIMREY:  But if we have unique issues, and I know

15   we do because of the nature of our business, I want to be able

16   to address those in perhaps supplemental briefing, if it

17   doesn't fit into the consolidated briefing.

18          THE COURT:  On the facial challenge?

19          MR. KIMREY:  On the facial challenge, yes, Your

20   Honor.

21          THE COURT:  You might have a different argument

22   related to facial challenge than some of the other defendants.

23          Is that what you're saying?

24          MR. KIMREY:  Right.  So there's an exception under

25   Daniel's Law for a directory, and Whitepages and Hiya are
```

 1   directories of sorts.

 2           THE COURT:  Uh-huh.

 3           MR. KIMREY:  So arguably the Court could avoid the

 4   constitutional issue with respect to my clients --

 5           THE COURT:  Right.

 6           MR. KIMREY:  -- if the Court interpreted Daniel's Law

 7   to exclude my clients from its purview.

 8           That's a point that we would like to make, for

 9   instance.  That would be something that we would file as a

10   separate brief potentially if we can't fit it in the main

11   brief.

12           THE COURT:  How is that going to be done without

13   discovery?  Because how do I know whether you fit within that

14   definition without knowing a little bit about what your

15   company is all about?

16           MR. KIMREY:  These are facts that can be judicially

17   noticed and aren't subject to reasonable dispute.

18           THE COURT:  Really?

19           MR. KIMREY:  Yes.  Now, I realize Your Honor may view

20   it differently or the opposition may view it differently, but

21   this is just one example, this directory issue.

22           I obviously liked your notion of the potential for

23   briefing beyond the one consolidated brief on the

24   constitutional issues.  These are -- this is a very important,

25   potentially case dispositive issue.

1          THE COURT:  Absolutely.

2          MR. KIMREY:  So I'm just wondering if like with the

3    consolidated motion to remand where you said the consolidated

4    brief would be 40 pages and if anybody else wants to file

5    anything, those would be limited to 25, we can have a similar

6    approach to the motion to dismiss based on the facial

7    challenges, with the understanding that if I can avoid filing

8    a separate brief or if any of us can avoid filing a separate

9    brief, we absolutely will, and we'll opt into the consolidated

10   brief.

11         But I definitely don't want it to appear from the

12   transcript as if we are muzzled as --

13         THE COURT:  Right.

14         MR. KIMREY:  -- defendants subject to motions to

15   remand, because we are currently parties before this Court.

16         THE COURT:  You are.

17         MR. KIMREY:  And we want to be heard on the

18   constitutional issues, which I think will matter even if we do

19   get remanded, which I don't think we will, because if this

20   Court ultimately finds that Daniel's Law is unconstitutional,

21   that's going to mean something in state court.

22         Additionally, I want to note with respect to the ACLU

23   challenge, that during the last hearing, they argued that that

24   was immaterial because it was an as-applied challenge.

25         Now that the New Jersey Supreme Court has found that

1    the as-applied challenge fails, they're saying that the ACLU

2    case should be a lodestar for you.

3            I want --

4            THE COURT:  Did the New Jersey Supreme Court decide

5    the case?

6            MR. KIMREY:  It was the New Jersey Court of Appeals.

7    Did I misspeak, Your Honor?

8            THE COURT:  The Appellate Division?

9            MR. KIMREY:  Yeah.  It was the New Jersey Court of

10   Appeals.  And it's probably going to be -- there's going to be

11   a petition for cert to the New Jersey Supreme Court in the

12   case.

13           THE COURT:  Right.

14           MR. KIMREY:  And just a heads up, there may be

15   motions for amicus participation in the traditional sense --

16           THE COURT:  Right.

17           MR. KIMREY:  -- here.

18           It is possible -- I don't have authority for this,

19   but it is possible that the ACLU may move for amicus

20   participation.

21           THE COURT:  Right.

22           MR. KIMREY:  And there may be other press and First

23   Amendment and civil rights related organizations that may be

24   filing motions for leave.

25           THE COURT:  Right.

```
 1            MR. KIMREY:  Just a heads up.

 2            But I really would like it to be clear on the record,

 3   Your Honor, that you're not foreclosing --

 4            THE COURT:  No.

 5            MR. KIMREY:  -- the defendants subject to motions for

 6   remand --

 7            THE COURT:  Right, right.

 8            MR. KIMREY:  -- for remand from participating in the

 9   First Amendment facial challenge and due process facial

10   challenge process.

11            THE COURT:  I would have no objection.

12            Does anybody have any objection to their

13   participation?

14            MR. SHAW:  Adam Shaw for the plaintiff.

15            No objection, Your Honor.

16            THE COURT:  Good afternoon.

17            MS. PURCARO:  Good afternoon, Your Honor.  Hi.  Kelly

18   Purcaro, P-U-R-C-A-R-O.

19            THE COURT:  Yes.

20            MS. PURCARO:  And I represent defendants in four

21   different cases.  The docket numbers are 04389, 05775, 05658

22   and 05656.

23            THE COURT:  Thank you.

24            MS. PURCARO:  Thank you, Your Honor.

25            Similar to some of what's been said, I represent
```

1  defendants in the cases that are not subject to remand but

2  also don't want to burden the Court with additional briefing

3  and would like to participate in an expeditious process to

4  address some of these facial issues.

5          Having said that, I have no horse in the race on the

6  remand motions.  But in terms of the briefing, we generally

7  agree with the signatory defendants that submitted a proposed

8  briefing schedule.

9          However, I have a tweak that I would like to

10 recommend on behalf of my clients and a couple other

11 defendants that are similarly situated.

12         And that is to say, after the initial briefing, if we

13 could then have a period of time where if and only if

14 necessary other defendants would like to submit supplemental

15 briefing or their own briefing, that there be an opportunity

16 to do so after reviewing that joint brief.

17         So the way that the schedule is set forth now, the

18 one that was proposed by defendants, they have a June 27th

19 date for the initial consolidated briefing.

20         THE COURT:  Right.

21         MS. PURCARO:  If there are defendants who don't agree

22 with that brief, they need to first see it --

23         THE COURT:  Absolutely.

24         MS. PURCARO:  -- to know whether or not they agree

25 with it.  And if they need to supplement, they need to first

1    see it.

2         So what I would propose is that two weeks later, July

3    12th about, if any other defendant has something briefly they

4    want to add or some short supplemental briefing, even limited

5    to 10 pages, that we'd be allowed to do so.  And that would

6    not interrupt any of the scheduling that was proposed by the

7    other defendants.

8         There would still be -- the next response date of

9    plaintiffs would be a month later, August 12th, on that

10   briefing.

11        I don't have a position on the Attorney General.  I

12   don't presume to know their schedule or their briefing

13   capacity.  I defer to my other co-defendants here on those

14   issues.

15        And while I have Your Honor, I just want to clarify

16   that we do intend generally to join on the constitutional

17   challenges facially.

18        THE COURT:  Right.

19        MS. PURCARO:  I would presume that that means that a

20   stay would be in place for any motions to dismiss on Rule 8,

21   you know, the facial pleadings, any other basis or responsive

22   pleadings.  And I just want to clarify that we're not waiving

23   that ability and that is stayed.

24        I do also want to mention that counsel referenced on

25   the record, and I believe a letter was filed while I was

1  driving here, that they produced the lists of the covered

2  persons --

3          THE COURT:  Right.

4          MS. PURCARO:  -- to all defendants.

5          I did not receive any of those lists for any of my

6  four cases, and I am one of the attorneys that's been

7  requesting for over four months the lists and have yet to

8  receive one.

9          THE COURT:  Well --

10         MS. PURCARO:  So I do want to say that on the record.

11 I will speak with counsel after and continue my efforts.

12         Their deadline has not run yet.  They are not

13 deficient on Your Honor's order.

14         THE COURT:  Right.

15         MS. PURCARO:  They still have time.  But we did not

16 all receive it.

17         THE COURT:  All right.

18         MS. PURCARO:  So I just wanted to make that clear.

19         And as a final note, so that everybody can get along

20 with this --

21         THE COURT:  We all want to get along.

22         MS. PURCARO:  -- I just wanted to ask if we could

23 address for a moment, as a practical matter, any ongoing

24 requests.

25         Speaking of the lists of the covered person

```
 1   requests --
 2              THE COURT:  Right.
 3              MS. PURCARO:  -- I would ask that if there are any
 4   further requests by the represented or the assigned people,
 5   that they be made through counsel.
 6              Because some of the issues we are not addressing yet
 7   are the as-applied challenges, the individual challenges.  And
 8   speaking on behalf of my defendants, many have not received --
 9   and this is why we got the list, have not received the
10   requests.  And they want to comply.
11              And some old emails are being used, some privacy
12   websites that we have set up for compliance are being
13   sidestepped, and emails are being sent to various defunct
14   emails.
15              So for our purposes, we do want to make sure everyone
16   who wants to be protected is protected.  Anyone whose
17   information that they want it to be redacted, whether a
18   covered person or not, we don't want to disclose anyone's
19   information that doesn't want it disclosed.
20              So to avoid any further confusion with the receipt of
21   these requests, I would ask that counsel direct those requests
22   directly to defense counsel so that we don't have these issues
23   of where the email is going, did we get them, all of that.
24              And that's all I have to address at this moment.
25              And I thank you, Your Honor, for your time.
```

```
 1          THE COURT:  Thank you.
 2          In terms of the motions, we haven't gotten to that
 3  subject yet, but I do agree that if someone is going to file a
 4  motion facially challenging the constitutionality of Daniel's
 5  Law, then we'll have to have a provision that that's without
 6  prejudice to filing subsequent motions if the case continues:
 7  Venue, personal jurisdiction, a challenge to the
 8  constitutionality as applied, whatever else you may want to
 9  raise.
10          So that leads to the issue of what about the
11  defendants who aren't going to file a motion facially
12  challenging the statute?  We have 32.  And some may not.
13          So the question then becomes, should they have to
14  file an answer within a certain period of time?
15          MS. PURCARO:  Right.
16          THE COURT:  And those who are going to file a
17  challenge, a facial challenge, they may have other motions in
18  the pipeline.  And we're going to have to work out a provision
19  so that if they file a motion challenging the statute on its
20  face, that they're not waiving all the other defenses which
21  they may have.  And they would then, at some later point, have
22  to file an answer or file other motions.  So we're going to
23  have to work that out, because obviously there shouldn't be
24  any thought that there's a waiver as a result of that.
25          MS. PURCARO:  Right.  And just as a practical point,
```

1    I have not heard of -- and I don't know that there is -- a

2    defendant that would not at minimum join in the facial

3    challenges.  I don't know that there is any in the group or

4    that we've heard of, so --

5            THE COURT:  Well, I don't -- I don't know that

6    there's any.

7            MS. PURCARO:  -- I don't know that we need to worry

8    about --

9            THE COURT:  I thought there was some reference to

10   that, Mr. Shaw, in your letter.

11           MS. PURCARO:  I don't know that that's true.  I can

12   tell you all of my defendants will join one way or another,

13   whether joining the brief or supplementing in those

14   challenges.  And I have not heard of any defendant that does

15   not have a similar desire to join.

16           MR. KIMREY:  That was news to us.

17           THE COURT:  Give us your name again.

18           MR. KIMREY:  Blaine Kimrey.

19           So the letter that opposing counsel sent today

20   indicated that there were defendants who may not join in the

21   facial challenge.

22           I don't know who they are.  They haven't identified

23   themselves to us.

24           Are you out there?  Anybody?

25           There's no hand being raised.

```
 1           THE COURT:  A couple of people are standing.
 2      Come up.
 3           Good afternoon.
 4           MR. McGEE:  Good afternoon, Your Honor.  Ryan McGee
 5  for the plaintiffs.
 6           At the last hearing, if we want to pull --
 7           THE COURT:  For the plaintiffs?
 8           MR. McGEE:  Yes, sir.  With the plaintiffs.
 9           We can pull up the transcript.  There were numerous
10  attorneys who came up here and said, we are not considering
11  facial.  We may consider as applied.
12           That was the entire basis of our letter.
13           THE COURT:  I see.
14           MR. McGEE:  We aren't going out there and trying to
15  group everyone into, you know, whether you're doing it or not.
16  They came before Your Honor and represented that.  And that's
17  why we thought that next track was appropriate that you were
18  going down.
19           So, no, we don't have a list of every single
20  defendant checked yes or no and whether it's going to be
21  facial or as applied or just no in general.  We've tried to do
22  that.  We've not received responses from all of the
23  defendants.
24           THE COURT:  Well, just so we can anticipate, if there
25  are defendants who are not going to do it, they should
```

1   probably be required to file an answer, of course with various

2   defenses, and with the right, it seems to me, to make a

3   separate motion at a later time.

4          So they wouldn't have to wait until trial to raise

5   the motion, that they --

6          MR. McGEE:  Right.  And, Judge --

7          THE COURT:  Assuming that they would have to -- of

8   course, if they have three or four other affirmative defenses,

9   that they would have to raise them all at the one time if it's

10  appropriate under -- they couldn't just continue to do it

11  piecemeal.

12         MR. McGEE:  Right.

13         THE COURT:  I have one exception for the piecemeal

14  motion.

15         MR. McGEE:  And I think at the last hearing, Your

16  Honor, you recommended that.

17         And I think that we were generally on board with

18  that, is that if they didn't file a facial challenge, they

19  would file an answer with all of the defenses that they would

20  be asserting, and it would preserve all of those defenses,

21  jurisdictional, possibly even as applied or anything else.

22         THE COURT:  Right.

23         MR. McGEE:  So that Your Honor would have an idea of

24  what all of the other defendants are -- have in the pipeline

25  so that you would be able to manage your docket.

1          So I don't think we had a problem with that.  My
2    colleagues may speak differently.  But I did think there was
3    some elegance to that, of getting an idea of who would be
4    challenging what, whether we're looking at, you know, personal
5    jurisdiction for 5 defendants or 15 defendants or whatever the
6    numbers are.
7          So I do recall you mentioning that, and I do think we
8    think there was elegance to that.  And I don't think that we'd
9    be arguing that there would be waiver because Your Honor is
10   trying to manage the docket on these cases.
11         THE COURT:  Yes, sir.
12         MR. MAO:  Good afternoon, Your Honor.  Mark Mao,
13   Boies Schiller Flexner, for plaintiffs.
14         Your Honor, so, I concur with my colleague Mr. McGee.
15   And I think the main point that I want to make is if you look
16   at the schedule, Your Honor, it is a little long.  I don't
17   think it's going to take two months for defendants to decide
18   who is going to join in, you know, the main omnibus
19   constitutional-on-its-face challenge versus some other
20   statements.
21         And I also believe that the Attorney General is going
22   to find it useful for there to be some type of consolidated
23   statement as to what exactly they're challenging.  That way
24   the Attorney General can actually have time to consider
25   whether or not they're going to deliberate, participate and

1    possibly respond.

2           If you look at the schedule, you know, this

3    supplemental that's being proposed by counsel would be -- take

4    place on July 12th, which is well over two months from today.

5    They've been talking -- humming and, you know, preluding the

6    fact that they may do a constitutional challenge, you know,

7    well -- at least two months ago.  So I think they're already

8    prepared, and they should already know their positions.

9           Just to be very clear, we did ask -- last week or the

10   week before we did ask counsel to provide us a list of all of

11   the defendants' counsel who are participating in these

12   proceedings.

13          I assume that if we ask them for their own

14   discussions amongst each other, they're going to claim that

15   there's a common interest privilege.  With the common interest

16   privilege, I presume that there's going to be a list of

17   counsel who are common to each other in terms of -- you know,

18   who are mounting the defense.

19          THE COURT:  Well, you can go through the dockets,

20   can't you?  There are 72 dockets and you see who the attorneys

21   are.

22          MR. MAO:  Yeah.  Well, I think perhaps one of the --

23   the last speaker, I'm sorry, I forgot the lady's name, but she

24   mentioned that she did not receive a copy, because, you know,

25   her clients want to protect, you know, the covered persons and

1    whatnot.

2          But we did --

3          THE COURT:  Excuse me, are you on the docket?

4          MS. PURCARO:  I'm on four dockets.

5          THE COURT:  All right.

6          MR. MAO:  Well, I mean, Your Honor, I hope you can

7    appreciate that just providing covered persons and their

8    personal information, that's a sensitive topic.  Right?

9          THE COURT:  Sure.

10          MR. MAO:  So we're providing them with a password.

11    You know, it's well protected behind the wall.  So we're

12    trying to make sure, you know, the covered persons are not

13    only giving notice, but they're also being, you know,

14    protected, just as, you know, she indicated -- opposing

15    counsel indicated they want to protect that.

16          And the reason why that is also important, Your

17    Honor, is because, you know, it sounds like everybody here is

18    in agreement that, you know, we want to protect the covered

19    persons in the interim.  And what we're trying to do is just

20    make sure that that's done in an organized, efficient, right,

21    and thoughtful way.

22          And part of that is going to require people telling

23    us, you know, they're not receiving a copy of the packet.  If

24    they want that packet, they should let us know.  I mean, we've

25    been affirmatively asking that ever since Your Honor ordered

1    that.

2          So, you know, that -- I also heard that opposing

3    counsel get up here and said that, you know, can we take care

4    of everybody that's potentially asking for opt-out.

5          Your Honor, Daniel's Law has been passed since 2021.

6    There should be compliance tools that are in place to make

7    sure that things are done with or without the assistance of an

8    attorney.  And we don't necessarily represent all of the

9    requests that may be coming in from covered persons.  If

10   covered persons send their own emails, there's no way for us

11   to get ahead of that or to stop that.  And I'm not sure how to

12   comply with that request.

13         But, Your Honor, if opposing counsel, right, I think

14   all of them last hearing indicated that they too are

15   interested in protecting the safety of the officers.  We're

16   happy to oblige.  They have their email or just tell us what

17   that list is.  We've been asking.

18         MR. PARIKH:  Your Honor, if I --

19         THE COURT:  Let's hear from -- go ahead.

20         MR. PARIKH:  Raj Parikh on behalf of plaintiffs.

21         I'll talk to Ms. Purcaro after the hearing today.

22         THE COURT:  Very good.

23         MR. PARIKH:  We have sent to -- every defendant

24   should have gotten multiple emails from me yesterday,

25   including a ShareFile link.

1          There have been some that have emailed this morning,

2     some that I've talked to in Court.  There are little glitches,

3     there might be a typo, whatever it may be, but we will sort

4     all of that out and ensure that all of the defendants here

5     have the covered persons list as well as the assignment

6     documents by the end of this weak.

7               THE COURT:  Yes.

8               MR. KIMREY:  Your Honor, I did not -- Blaine Kimrey.

9          I didn't receive the email last night.  I know about

10    it because others told me about it.

11         So apparently what happened with us is only one of

12    our lawyers was copied on that transmission, even though I am

13    pro hac vice admitted and I'm counsel of record.  I'm lead

14    counsel for Whitepages and Hiya.

15              THE COURT:  Right.

16              MR. KIMREY:  So I ask that all counsel of record be

17    copied on all correspondence from plaintiffs' counsel.

18              THE COURT:  That shouldn't be a problem in this

19    technological age, should it?

20              MR. PARIKH:  It should not, Your Honor.  And just so

21    we're very clear, we asked counsel, all of them, last week for

22    a defense counsel list to make sure we had all the right

23    folks.

24         What we did was we pulled names right off the docket,

25    so with some lawyers their local counsel are getting it,

 1  pursuant to the New Jersey court rules.

 2          THE COURT:  Right.

 3          MR. PARIKH:  I'm sure that may be what happened here.

 4          But I'm confident that Mr. Kimrey can stand up and

 5  tell the Court that someone on his team received those

 6  documents yesterday.

 7          And so --

 8          THE COURT:  Well, I understand.  Let's just try to

 9  work together.

10          MR. PARIKH:  Sure.

11          And to that end, Your Honor, I think if defendants

12  have a consolidated list of, you know, the seven lawyers

13  involved in the case, whether there's only two on the docket

14  and five more that are working in the office, we'd be happy to

15  take that list from them and coordinate and make sure that all

16  communications go to everyone.  Obviously for us to send

17  another email, it's not an issue.

18          THE COURT:  So I think it would make sense for

19  defense counsel just out of an abundance of caution to send to

20  plaintiffs' counsel the list of lawyers who should be getting

21  the emails, not just rely on the docket, so that there's no

22  confusion.  Just take that step and do that.

23          MR. PARIKH:  Thank you, Judge.

24          MR. KIMREY:  Okay.  Yes, Your Honor.

25          THE COURT:  Now, the one suggestion that was made

1  about having a consolidated brief and then a few extra days to

2  file a supplemental brief, the problem with that is everybody

3  may decide that they're in the second category and you're

4  going to be filing on the second date.

5          So that's -- I'm not sure that that would necessarily

6  work.  So you may just -- everybody will have to file.  You

7  know, if you're unhappy, maybe what those who are running the

8  consolidated brief can do is to try to get a draft out to

9  other counsel before the deadline and take a look at it and

10  file something.

11         I mean, I just -- I'm afraid that we'd be pushing --

12  we may get one brief on the first date and 15 briefs on the

13  subsequent date.

14         MS. PURCARO:  Thank you, Your Honor.  Kelly Purcaro

15  again for the record.

16         THE COURT:  Yeah.

17         MS. PURCARO:  And that was my concern with the

18  proposed order the way it's framed, because it calls for the

19  consolidated brief and all other briefs all on that one day.

20  And so you do run the risk of anyone whose opinion is not

21  considered by the person filing, everybody filing all these

22  briefs.  And that's going to be a disaster for everybody

23  reading them and for the Court.

24         And I think that a supplemental approach to be used

25  only if necessary would be -- would make the most sense,

1   because we don't always have time to circulate.

2           THE COURT:  I understand.

3           MS. PURCARO:  There's not -- we don't all work for

4   the same firm.  We all have separate clients.

5           THE COURT:  I understand.

6           MS. PURCARO:  And we don't all have authority to

7   join.  So we need -- for myself.  I'll speak for myself.

8           THE COURT:  Right.

9           MS. PURCARO:  These are fantastically brilliant

10  attorneys on both sides.  They're all going to make wonderful

11  arguments.  I happen to have some wonderful arguments as well.

12  They may not agree with my wonderful arguments, as they didn't

13  with the instant letter and I couldn't join.

14          I don't want to lose the ability to advocate for my

15  clients in four different cases because of the majority rule

16  and I basically can't efficiently represent my client.

17          THE COURT:  Well --

18          MS. PURCARO:  So as a compromise, even if it's a

19  seven-page supplement due a week or two later, give me a

20  chance to review what it is the majority of the defendants

21  file, and then maybe I join by letter and there is no

22  supplement.  And that may very well be the case, but I can't

23  waive the right without having the ability to control what's

24  going to be filed or visibility.

25          THE COURT:  What I can do is just take it on faith

 1   that there will be a consolidated brief, from what everybody

 2   has been representing.  And then we'll give the outliers a few

 3   extra days to file a supplemental brief limited to maybe 10

 4   pages or something of that kind.

 5           MS. PURCARO:  Thank you, Your Honor.

 6           THE COURT:  Mr. Stio.

 7           MR. STIO:  Just very quickly, Your Honor.  The reason

 8   why our submission had the June 27th date is to allow time for

 9   us to circulate the consolidated brief in draft form and give

10   enough time to get input from all the other defendants who are

11   going to join in that brief.  And, you know, it's not a

12   situation, as Ms. Purcaro said, where we all work in the same

13   firm.

14           THE COURT:  No.  I understand.

15           MR. STIO:  And that's why we needed to get -- you

16   know, we thought it was a reasonable amount of time, June

17   27th, for us to draft the brief, circulate it, and then give

18   the attorneys time to not only confer with their clients but

19   to get back with comments so that we can try to reach

20   agreement on the content of that.

21           I have no issue with what Ms. Purcaro is proposing of

22   a supplement a few days later.

23           But the reason why we built that in for the 27th is

24   to give us time to circulate it and get input from all the

25   defendants.

*United States District Court*

1          THE COURT:  Go ahead.

2          MR. SPAK:  Your Honor, I'm Jason Spak.

3          THE COURT:  Yes.

4          MR. SPAK:  Case number 4176 representing Innovis.

5          I stood up because a few minutes back there was

6   discussion, what if a defendant is not gung-ho about raising a

7   constitutional challenge.

8          THE COURT:  Right.

9          MR. SPAK:  I'm in that position.  It had never

10  occurred to my client to raise a constitutional challenge

11  before Your Honor mentioned it at the prior status hearing.

12  And we believe that there might be a clear path to either

13  dismissal or some kind of resolution with opposing counsel if

14  we were able to file our own responsive pleading.

15          And so the question that I guess my client has is if

16  we join, don't join, or stand on the sidelines hoping for the

17  benefit of whatever constitutional challenge gets raised, are

18  we stayed from filing a responsive pleading until that's

19  resolved, or are we able to file a responsive pleading --

20          THE COURT:  I would anticipate you'd file a

21  responsive -- if you're not going to join in the motion

22  challenging the statute facially, then you'd file an answer --

23          MR. SPAK:  Uh-huh.

24          THE COURT:  -- with your defenses.

25          MR. SPAK:  And so --

```
 1          THE COURT:  Then everything would be stayed.  I mean,
 2   we're not going to go forward on -- we have two tracks going.
 3   We're not going to have more than two.
 4          So until the facial challenge is decided, then there
 5   wouldn't be anything further to be done with respect to any of
 6   the defendants, except for the remand defendants where we're
 7   going to deal with that.  But we would just sit back and see
 8   what happens.
 9          MR. SPAK:  So if I filed a motion to dismiss on
10   grounds that don't involve the US Constitution --
11          THE COURT:  You wouldn't do that at this point.  You
12   would file an answer with your affirmative defenses.
13          MR. SPAK:  Listing what I propose to raise at a later
14   date.
15          THE COURT:  Yeah, yeah.
16          MR. SPAK:  Okay.
17          THE COURT:  In your answer would be an affirmative
18   defense.  Then we could allow you to -- does that make sense?
19          Or do you want to file a motion?  Because there may
20   be reasons you don't want to file an answer, you would prefer
21   to file whatever motions you want to file, if you have them.
22   If you're not going to file motions, file a responsive brief.
23          But you wouldn't -- we wouldn't go any further than
24   that.
25          MR. SPAK:  Right.  It sounds like regardless of what
```

1 I filed, it would be on ice --

2            THE COURT:  Yes.

3            MR. SPAK:  -- while the constitutional briefing

4 were --

5            THE COURT:  And then the question is whether you

6 should file your motions, if you have other motions, venue,

7 challenge to the constitutionality as applied, the statute

8 doesn't apply to you, whatever.

9            MR. SPAK:  Right.  Yeah.  I mean, honestly, if I

10 filed something like that and it's going to be stayed pending

11 the resolution of the constitutional briefing --

12            THE COURT:  Yes, yes.

13            MR. SPAK:  -- there's no reason -- like there's every

14 reason to join in the constitutional challenge, because you

15 might -- you know, might get the benefit of it and --

16            THE COURT:  It's possible.

17            MR. SPAK:  Yeah.  And then if and only if it doesn't

18 succeed, then you end up doing what you would have done six

19 months prior or however many months it is.

20            THE COURT:  Yeah.  I guess if the defendants win on

21 that, and you haven't challenged it, maybe you're --

22            MR. SPAK:  So sad, exactly.

23            THE COURT:  Who knows what will happen.

24            MR. SPAK:  Wouldn't that be a shame?

25            All right.  Thank you, Your Honor.  Appreciate the

 1   clarity.

 2           THE COURT:  All right.  Anything further?  Yes?

 3           MR. COLLINS:  Your Honor, Robert Collins, Latham &

 4   Watkins.  Our firm has four of the cases that are subject to

 5   motions to remand.

 6           THE COURT:  All right.

 7           MR. COLLINS:  And the prior speaker may have

 8   addressed half of what I wanted to cover --

 9           THE COURT:  Go ahead.

10           MR. COLLINS:  -- so I'll be very brief.

11           But our position, I -- I think at this point I don't

12   have direction from all of our clients as to whether we would

13   join a facial challenge or not.  I'm not saying we won't.

14           THE COURT:  Uh-huh.

15           MR. COLLINS:  But in that circumstance there, we

16   would have defenses at least to personal jurisdiction and

17   otherwise.

18           THE COURT:  Right.

19           MR. COLLINS:  And so our position would be that we

20   don't think it would be proper to have to file an actual

21   answer to the complaint.

22           THE COURT:  I understand.

23           MR. COLLINS:  And instead, either a motion or have it

24   be stayed.

25           THE COURT:  I think that's right.  I think -- unless

 1   someone has no other defenses, they just want to file an

 2   answer.

 3          So we could say either file an answer or other

 4   motions to dismiss.  You know, some people may want to file an

 5   answer, and they should be permitted to do that.

 6          Otherwise, you file your motion I guess with

 7   supporting legal authority, with a supporting brief, not just

 8   a motion.  And then we'll stay everything, because we just

 9   can't go down a thousand tracks at one time.

10          But you should be able to set forth what your

11   arguments are at this point.

12          MR. COLLINS:  Understood, Your Honor.  And of course

13   if my clients do join the facial challenge --

14          THE COURT:  That would be.

15          MR. COLLINS:  -- then that would be mitigated.

16          THE COURT:  For the moment.

17          MR. COLLINS:  Correct.

18          THE COURT:  All right.

19          MR. COLLINS:  Thank you.

20          THE COURT:  Yes, sir.

21          MR. STICHEL:  Good afternoon, Your Honor.  Mark

22   Stichel.  I'm in the case 24-4434, eMerges.

23          THE COURT:  Thank you.

24          MR. STICHEL:  And Ms. Purcaro in her time up here, it

25   discussed getting notification with respect to covered persons

 1   on a forward going basis.

 2           THE COURT:  Right.

 3           MR. STICHEL:  I believe she mentioned that.

 4           And the suggestion was that that be sent to counsel.

 5           I don't want to have my email jammed up with requests

 6   with respect to covered persons.  So I'm wondering if we could

 7   agree on a mechanism where there would be a designated email

 8   address at our respective clients that that could be received.

 9           I think one of the concerns is that requests are

10   going to defunct emails, emails that aren't responsive.  So we

11   could at least agree that we could supply plaintiffs and a

12   designated email being used for that singular purpose --

13           THE COURT:  Sure.

14           MR. STICHEL:  -- so those things wouldn't get lost.

15           THE COURT:  Each defendant can do it differently.  If

16   the lawyer wants to receive it, fine.  If you have a

17   designated individual or entity that is to receive it, that's

18   fine.  But just let the plaintiffs' counsel know.  So that's

19   going to be the obligation of the defendants to do that.

20           And I guess the default position is to send it to the

21   lawyer because that's the only address you have really.

22           Yeah?

23           MR. PARIKH:  Your Honor, Raj Parikh on behalf of the

24   plaintiffs.

25           We're happy to take whatever information any

*United States District Court*

1  defendant wants to give us.

2        THE COURT:  Right.

3        MR. PARIKH:  But, again, a lot of these -- I don't

4  know if defunct or not, but these email addresses are

5  publically available on these data brokers' websites, which is

6  why covered persons choose to send them there.

7        THE COURT:  Right.

8        MR. PARIKH:  So, you know, if they want to update

9  their websites and provide us that information, we're happy to

10  pass it along.  But with respect to these cases, I think

11  what's being raised both by Mr. Stichel as well as Ms. Purcaro

12  is there are covered people who continue to deliver notices

13  to -- takedown requests to some of the defendants here and I'm

14  sure other data brokers as well who are not litigants in this

15  court or in any other court.  Each of these parties have the

16  continuing obligation to remove those additional people's

17  information within ten business days.

18        MR. STICHEL:  Your Honor, if I may address.

19        What happened after all of these emails were -- hit

20  my client's email on December 25th, Christmas day --

21        THE COURT:  Right.

22        MR. STICHEL:  -- they had blocked Atlas's emails.  So

23  right now everything Atlas sent is being blocked somewhere

24  else.

25        So we want to receive them, but we want to receive

1    them in an orderly fashion.

2              And so we'll get an address to give to the

3    plaintiffs.

4              MR. PARIKH:  Happy to take any of it.

5              As Your Honor said last time, it's the defendants'

6    choice.  If they want to take a request and throw it in the

7    garbage, that's up to them.

8              And if you're blocking an email address, if a data

9    broker decided to block a Gmail account or a Yahoo mail

10   account or a PBA account or an Atlas mail account, that's

11   their choice.  But at the end of the day, those message are

12   being delivered on behalf of covered persons.

13             THE COURT:  Try to work it out.  Speak to them, work

14   it out, what's best for your client, in terms of getting the

15   information.

16             MR. STICHEL:  I will do so, Your Honor.

17             THE COURT:  Thank you.

18             MR. MAO:  Your Honor, I'm sorry.  Mark Mao for

19   plaintiffs.

20             THE COURT:  Yeah?

21             MR. MAO:  I just want to clear up for the record,

22   when people are referring to an email being blocked, what

23   they're referring to is the domain blocking.  So it would be

24   Atlasmail.com or gmail.com, hotmail.com, yahoo.com being

25   blocked.

1          So, for the record, when defendants are talking about

2    them blocking emails, they're blocking an entire domain

3    regardless of who's originating that email within the use of

4    that email service.

5          I just want to make it clear that that's on the

6    record.

7          THE COURT:  Thank you.

8          Yes, sir?

9          MR. CHRISTIE:  Thank you, Your Honor.

10         Real briefly, Scott Christie, representing Black

11   Knight Technologies and Black Knight, Inc. 24-4233.

12         I just want to weigh in real quickly on the issue

13   that we were just discussing.

14         We likewise agree that the most effective approach

15   would be for any future suppression requests for plaintiff to

16   notify counsel, not inundate counsel with requests but notify

17   counsel and have counsel provide an email address for the

18   client to which these account -- these new suppression

19   requests would be sent.

20         I will work with plaintiffs' counsel, assuming that

21   Your Honor approves of that.

22         THE COURT:  Sure.

23         MR. CHRISTIE:  But I just wanted to express concern

24   about being inundated, like the prior speaker did, with the

25   suppression requests ourselves.

1                    THE COURT:  All right.

2                    MR. CHRISTIE:  Coupled with that, Judge, unlike some

3    of the other speakers, we did get the list of covered persons

4    last night.  And I have a quick issue or two about that list.

5                    The list includes -- it's a spreadsheet.  It has line

6    items listing a covered person and either a phone number or an

7    address.

8                    It's not clear to us whether each line item in the

9    spreadsheet corresponds to a suppression email request.

10                   And one of my clients is concerned because it appears

11   that the number of line items in this spreadsheet vastly

12   exceeds the number of suppression emails that they received,

13   meaning potentially that through this process, through

14   providing the spreadsheet of covered persons, Atlas may be

15   attempting to seek suppression of or potentially additional

16   violations at this late date, which were not initially sent

17   back in late 2023 and early 2024.

18                   So what I'm asking, Judge, is not only have

19   plaintiffs provide this spreadsheet, which is helpful, but

20   provide copies of the actual suppression emails that were

21   sent.  That way we can know the date and time it was sent and

22   the covered person that allegedly sent it.

23                   Finally, Judge, we ask that to the extent that there

24   are additional suppression requests, that the plaintiffs are

25   obliged to provide the same discovery that they have been

United States District Court

1   ordered to provide with regard to the existing suppression

2   request, meaning any new terms of service, meaning any

3   assignment issues, meaning any, you know, additional lists,

4   quote/unquote, of covered persons.

5           So we just ask that order be continuing and going

6   forward with regard to the Court's prior order on that issue.

7   Thank you.

8           THE COURT:  Mr. Shaw.

9           MR. SHAW:  Adam Shaw.

10          THE COURT:  Yes.

11          MR. SHAW:  Your Honor, we -- and I think like the

12  defendants want to make sure that the safety of these officers

13  is protected.

14          We encourage all of these defendants to tell us which

15  address they want to receive notices from people in the

16  future.

17          THE COURT:  Right.

18          MR. SHAW:  As to the lists, if they have a question

19  about it, feel free to -- we can decipher that for them.

20          THE COURT:  Right.

21          MR. SHAW:  But I think some of these things are

22  getting into merits that have nothing to do with, you know,

23  where we are in this case at the time.  We're happy to make

24  sure that they get the lists, and we can -- we're happy to

25  explain it to them, and we're happy to give -- make sure that

1   they have -- they tell us which addresses should be used for

2   people in the future.

3           THE COURT:  Well, I think what we need to do is have

4   communication between the defendants and the plaintiff.  If

5   there are any issues, try to work it out.  I mean, if one

6   defendant -- call Mr. Shaw, call the other attorneys and see

7   if you can't deal with your individual problems.

8           I mean, I can't sit here and deal with 72 different

9   defendants and what their technological systems are and

10  whether things are getting blocked or not getting blocked.

11          But I think we all understand what the aim is here.

12  And the simple thing is -- to do is to maybe even pick up the

13  telephone.  You know, we still have telephones.  And talk to

14  the other side about what's going on, back and forth, so you

15  don't have emails floating back and forth.  Nothing like a

16  telephone conversation to work out a lot of problems.

17          MR. SHAW:  I think that's an excellent idea, Your

18  Honor.

19          Adam Shaw again.

20          THE COURT:  You all know where you can find the

21  plaintiffs' attorneys and give them a call.  Work it out.

22          MR. SHAW:  We agree, Your Honor.  And we open that

23  invitation to everyone.

24          I want to get back to the schedule.  I was going to

25  get back to the schedule.

 1          THE COURT:  That's right.  We have to set the

 2     schedule here.

 3          Go ahead.

 4          MR. SHAW:  We thought that -- again, we think their

 5     schedule is too long.  We think there should be a time frame

 6     in the next few days basically where they identify the

 7     constitutional issue that's going to be posed.  That way the

 8     Attorney General could be notified, and then they coordinate

 9     their efforts to file their consolidated brief.

10          And I don't believe that there should be extra time

11     for particular defendants to file a supplemental brief.  We

12     think that, you know, they could have any other briefs filed

13     at the same time, and then we move the schedule forward.

14          THE COURT:  Well, all right.

15          MR. SHAW:  Pardon me, Your Honor.

16          This is not related to the schedule, but there was

17     one other thing I want to make sure.

18          You said there are two tracks moving.  And that's

19     difficult enough, but I did want to call out, there are some

20     defendants we're talking to about settlement and wanted to be

21     able to continue to do that as well.  And I know --

22          THE COURT:  I've never heard of a judge that didn't

23     like settlement.  So you don't have to have my permission to

24     talk about settlement.

25          MR. SHAW:  Thank you, Your Honor.

```
 1              THE COURT:  I know we have the LexisNexis case to
 2   talk about, but we need to get the schedule.
 3              MR. LEE:  I'm here for LexisNexis.
 4              THE COURT:  Okay.  That's the next thing.
 5              All right.  Believing in Rule 1 of the Federal Rules
 6   of Civil Procedure, which talks about interpreting the rules
 7   for just, speedy and expeditious, I think it is, resolution of
 8   cases, I'm going to require a brief to be filed June 10th
 9   and -- a consolidated brief.
10              And how many pages do you think you're going to need
11   for that?  40?
12              MR. STIO:  Your Honor, we'd like to have 60 pages.
13              THE COURT:  How many?
14              MR. STIO:  60.
15              THE COURT:  We'll make it 50.
16              MR. STIO:  Thank you.
17              THE COURT:  It's called a brief for a reason.
18              MR. STIO:  Thank you, Your Honor.
19              THE COURT:  50 pages.
20              Any supplemental briefs, June 14th.  June 10th is a
21   Monday, June 14th is a Friday.  That brief will be limited to
22   10 pages.
23              Any opposition brief, 15th of July.
24              Reply brief, July 30th.
25              And it seems to me that the Attorney General of New
```

```
1   Jersey should be notified.  And the defendants are the ones

2   that are challenging the constitutionality, so it will be up

3   to the defendants to formally notify the Attorney General of

4   New Jersey of the issue.  And you can also give them, the

5   Attorney General, the schedule that's been set.

6              And if the Attorney General wants to file an

7   opposition brief, he'll have until July 15th to do so.

8              All right.  I think that takes care of the -- yes?

9              MR. KIMREY:  Your Honor, just a couple points of

10  clarification.  Blaine Kimrey.

11             THE COURT:  Sure.

12             MR. KIMREY:  How long is the opposition or what is

13  the page limit for the opposition that's due on July 15th?

14             THE COURT:  What do you want, Mr. Shaw?

15             MR. SHAW:  50 pages seems equal.

16             THE COURT:  I'll give you 50, and we'll make the

17  reply brief 25.

18             MR. KIMREY:  And then, Your Honor --

19             THE COURT:  And then also -- go ahead.

20             MR. KIMREY:  I'm sorry, I think you were going to

21  address what I was going to ask.

22             THE COURT:  And then also as of June 14th, those who

23  are not joining in the motion will file any other motion to

24  dismiss with supporting brief.

25             So if you're not going to challenge facially and
```

```
 1   you're challenging venue or whatever else, file your motion.

 2   And all your motions will have to be together.  You can't just

 3   file piecemeal.  And with supporting brief.  And see where we

 4   go.

 5            Yeah?

 6            MR. McGEE:  Your Honor, I'm sorry, I'm not trying to

 7   play musical chairs with the lectern.

 8            THE COURT:  Go ahead.

 9            MR. McGEE:  But I know you were giving us 50 -- and

10   this is Ryan McGee.

11            You were giving us 50 pages for the opposition.

12            THE COURT:  Yeah.

13            MR. McGEE:  But now we've got the -- will we have

14   five supplemental briefs, will we have 50 supplemental briefs.

15   And I don't want to overthink that, Your Honor, but --

16            THE COURT:  If you really can't get it done in 50

17   pages, file a motion.  Okay?

18            MR. McGEE:  Understood, Judge.

19            THE COURT:  You're all experienced lawyers.  If you

20   can't tell me in 50 pages your position, I'm just really

21   shocked.

22            MR. McGEE:  I prefer brevity, Your Honor.  I'm just

23   making sure that --

24            THE COURT:  I'm a firm believer in brevity.

25            MR. McGEE:  I'm just --
```

```
 1            THE COURT:  Everybody go home tonight and read Rule 1
 2   of the Federal Rules of Civil Procedure, all right, if you
 3   haven't checked it out recently.
 4            MR. McGEE:  Sure thing.
 5            MR. KIMREY:  A few issues, Your Honor.
 6            With respect to the nonfacial constitutional
 7   challenge joining --
 8            THE COURT:  Right.
 9            MR. KIMREY:  -- movants whose motions, if any, are
10   due on June 14th now, are those be going to be entered and
11   continued pending the Court's --
12            THE COURT:  No.  The motions on June -- yeah.
13            Any motion that doesn't involve -- that isn't
14   involved in the facial challenge, after the motion and the
15   brief is filed, everything else is going to be stayed.
16            MR. KIMREY:  Got it.
17            THE COURT:  Everything will be stayed.
18            MR. KIMREY:  So entered and continued.
19            THE COURT:  I just want that on the record.  You've
20   either got to choose, facial challenge, that's it.
21            If you're not going to -- let's put on -- put your
22   cards on the table about what else.
23            Now, if you file a facial challenge and -- you're not
24   waiving your other challenges, other defenses you may have.
25   And I'll put that in the order.
```

1            So the people who file facial challenges, assuming

2    the statute is held to be constitutional, you'll be able to

3    file your motions at a later time, dealing with as applied,

4    venue, personal jurisdiction, whatever other defense you can

5    think about.

6            MR. KIMREY:  Arbitrability.

7            THE COURT:  Whatever.

8            MR. KIMREY:  Okay.  Got it.

9            THE COURT:  So -- and there's not going to be any

10   waiver.  I just want to try to focus on this one issue.  And

11   we'll have these dates.

12           And I'll put this all in an order in the next couple

13   of days.

14           The remand motion is going to wait a couple days

15   because we're going to try to have plaintiffs' counsel and

16   defense counsel agree on the request for production, and

17   everybody will have a bite at the apple on that.

18           And then I'll probably on Monday or so enter the

19   scheduling order on the remand.

20           On the facial challenge, that I'm going to enter in

21   the next couple of days, to get the ball rolling on that.

22           So we'll have the appropriate stays, everything else.

23           And then once I get the briefs, we'll obviously set a

24   date for oral argument.  I'm not going to do that today.

25           MR. KIMREY:  Another question, Your Honor.

```
 1              THE COURT:  Yeah.

 2              MR. KIMREY:  Thanks for being so patient with me.

 3              THE COURT:  No.  It's complicated, so I want to make

 4    sure we cover all the bases.

 5              MR. KIMREY:  So with respect to the reply deadline on

 6    the facial constitutional challenges, so the defense reply

 7    deadline you said is July 30th.  And you said that would be

 8    limited to 25 pages.

 9              THE COURT:  Right.

10              MR. KIMREY:  What about replies as to those ten-page

11    supplementals that were filed on June 14th?  Will there be no

12    replies on those, or will there be a deadline for --

13              THE COURT:  Yeah.  Everything will be July 30th.

14              MR. KIMREY:  Okay.  So then if it's -- and we'll try

15    our hardest to give a consolidated reply, Your Honor, but --

16              THE COURT:  I would just say all reply briefs,

17    whatever they're going to be, would be on July 30th.

18              MR. KIMREY:  Okay.  And what is the page limit for

19    the nonconsolidated replies?

20              THE COURT:  Why don't we just make it 20.

21              The nonconsolidated -- were you going to -- what do

22    you want?

23              MR. KIMREY:  10?  10?  For symmetry.

24              THE COURT:  All right.  10 pages.

25              All right.  Does that take care of everything on
```

1   the -- and as I said, I'll enter an order and hope there

2   wouldn't be any errors in timing.  But if there are, you know

3   where you can find me.  We'll get it corrected.

4           MR. KIMREY:  So this is probably relevant to all of

5   us.

6           Are we operating under an assumption that the

7   District of New Jersey rules apply, or are we operating under

8   an assumption that the Eastern District of Pennsylvania rules

9   apply?

10          THE COURT:  The New Jersey rules apply as modified by

11  me.

12          MR. KIMREY:  Okay.  So unless expressly modified by

13  you on the record or in an order --

14          THE COURT:  What specific rule are you thinking about

15  that I may not be specifically aware of that you want to take

16  advantage of?

17          MR. KIMREY:  So it's not -- so I think the point size

18  requirements are different.

19          THE COURT:  Look, guys, you know what?  There's such

20  a thing as a rule of reason.

21          If I can't read it with my glasses, I'll send it back

22  and reject it.  All right?

23          MR. KIMREY:  Do you like 14 or 12, Your Honor?

24          THE COURT:  I don't -- look.  We don't have to get

25  into that kind of detail.

*United States District Court*

```
 1            MR. KIMREY:  Okay.

 2            THE COURT:  Use your good judgment.

 3            MR. KIMREY:  Okay.  Thank you, Your Honor.

 4            THE COURT:  And, you know, double spaced, no single

 5    spaced.

 6            MR. KIMREY:  Got it.

 7            THE COURT:  All right.

 8            MR. PARIKH:  Your Honor, Raj Parikh again.

 9            Just one last issue with respect to the schedule.

10            I think Your Honor said that the defendants are going

11    to notify the Attorney General of the issue and provide them

12    with the schedule.

13            I don't know that there was a deadline for that.  And

14    if Your Honor --

15            THE COURT:  Well, I'll put that in my order, I'll

16    just say promptly.

17            MR. PARIKH:  That makes sense.  And --

18            THE COURT:  The defendants will have to notify --

19    formally notify the Attorney General of New Jersey.

20            MR. PARIKH:  And, Your Honor, if they notify the

21    Attorney General by May 15th, then it fits within Your Honor's

22    schedule that the Attorney General's office will have 60 days

23    within which to consider pursuant to the rules whether or not

24    they seek --

25            (Court reporter clarification.)
```

*United States District Court*

```
 1            MR. PARIKH:  The attorney general's office will have
 2    their 60 days to decide whether to intervene.
 3            THE COURT:  What rule is this you're referring to?
 4            MR. PARIKH:  Your Honor, I think it's Rule 5.1, and
 5    then there's a New Jersey state statute with respect to this
 6    as well.
 7            THE COURT:  We'll get it out -- yeah.  We want to
 8    give the Attorney General plenty of time.
 9            MR. PARIKH:  Thank you, Judge.
10            MR. STIO:  Your Honor, maybe this is semantics, but
11    the rule calls for the Court to certify it to the Attorney
12    General.  So maybe we'll --
13            THE COURT:  How do I certify it to the Attorney
14    General?
15            MR. STIO:  What I'm saying is the defendants will
16    give notice to the Attorney General.
17            THE COURT:  Right.
18            MR. STIO:  And say that the Court has certified this.
19    Or direct -- ordered us and certified this to be submitted to
20    you.
21            THE COURT:  Okay.  I'll take a look at it.  Thank
22    you.  We'll try to conform to that so that the Attorney
23    General gets not just noticed by rumor but by formal.  Very
24    good.
25            MR. LEE:  LexisNexis?
```

```
 1              THE COURT:  All right.  That takes care of that
 2   issue.
 3              Now -- oh, also I got a letter from the Delvepoint
 4   attorney.  I assume that what I've said here covers all that.
 5              Maybe we hear from him first.
 6              MR. COSGROVE:  Good afternoon, Judge.
 7              THE COURT:  Good afternoon.
 8              MR. COSGROVE:  Bob Cosgrove for Delvepoint.
 9              THE COURT:  Yes.
10              MR. COSGROVE:  Yes, Judge.  We in response to the
11   complaint when we removed the case to federal court filed the
12   12(b)(6) motion challenging the constitutionality of the
13   statue.
14              THE COURT:  You have.  You were ahead of the --
15              MR. COSGROVE:  We did, Judge, yes.  We complied with
16   the rules, and that was our answer or response to the
17   complaint.
18              I recognize, as I've said to my colleagues, that many
19   people here have many different issues, much greater than my
20   clients, so we'll abide by the briefing schedule set by Your
21   Honor in respect of that.
22              I don't think to the extent the arguments are
23   different in the consolidated brief, we'll just do a "me too"
24   in our extra deadline, say we incorporate by reference our
25   12(b)(6) motion.
```

```
 1              THE COURT:  Okay.  All right.

 2              MR. COSGROVE:  And if not, we'll deal with it

 3   accordingly.

 4              THE COURT:  All right.  Sounds good.  Thank you very

 5   much.

 6              All right, John Doe v. LexisNexis.

 7              MR. LEE:  Good afternoon, Your Honor, James Lee from

 8   Boies Schiller for the plaintiffs.

 9              This is the case I think Your Honor is aware --

10              THE COURT:  Yes.

11              MR. LEE:  -- that's not -- it's the class action.

12              THE COURT:  Right.

13              MR. LEE:  And I think you recall, Judge, the last

14   time I told you, given that these are credit report issues,

15   that time is of the essence.

16              THE COURT:  Well, one of the -- before we get to

17   that --

18              MR. LEE:  Sure.

19              THE COURT:  -- I wanted to ask, there's no motion to

20   remand, because I don't think my order actually covered your

21   case.

22              Now, are you going to, Mr. Shaw, move to remand?

23   Because my understanding is Atlas is a citizen of New Jersey

24   and so is Lexis a citizen of New Jersey.

25              So is that going to be an issue?
```

```
 1              MR. LEE:  It's not going to be an issue, Judge.

 2              THE COURT:  Okay.  You're not going to move to

 3    remand?

 4              MR. LEE:  No.

 5              THE COURT:  Okay, fine.

 6              MR. LEE:  Because it's a class action, the CAFA rules

 7    apply.

 8              THE COURT:  Okay.  All right.  Very good.

 9              MR. LEE:  So as I said, Judge, the time is of the

10    essence right now, and we want to make sure that this case

11    tracks or -- separately from the other group of cases.

12              THE COURT:  I understand.

13              MR. LEE:  So I think really all we need to do for

14    today housekeeping wise is come up with a briefing schedule.

15              And it may be overambitious --

16              THE COURT:  You mean on class certification?

17              MR. LEE:  No.  Just motion to dismiss.  The last time

18    we were here, counsel for LexisNexis said LexisNexis --

19              THE COURT:  Oh, I see.  They were going to move to

20    dismiss.

21              MR. LEE:  -- was prepared to move to dismiss.  That

22    was two weeks ago.

23              THE COURT:  Right.

24              MR. LEE:  We all agreed that we would nail down a

25    briefing schedule at this hearing.
```

```
 1              THE COURT:  Okay.

 2              MR. LEE:  So I think that's all we really need to do.

 3              THE COURT:  Okay.

 4              MR. LEE:  What I recommend, Judge, though, is really

 5    because we're also separate firms and we have to handle a lot

 6    of paper it looks like on pretty short notices, we would

 7    actually ask that because time is of the essence and we know

 8    the constitutional briefing is going to happen, you know,

 9    starting June 10th, that we move on a more accelerated

10    briefing schedule for LexisNexis, starting maybe in late May.

11    That way we can sort of stagger the briefing, and we'll have

12    time --

13              THE COURT:  When was that complaint filed?  Or when

14    was it served, if that's more appropriate?  When was it

15    served?

16              MR. LEE:  It's been a couple of months.  I can say

17    that.

18              THE COURT:  It was served a couple months ago?

19              MR. LEE:  Yes.

20              MR. ROONEY:  It was -- the complaint was filed --

21              THE COURT:  Give us your name again.

22              MR. ROONEY:  I'm sorry.  Gavin Rooney on behalf of

23    LexisNexis.

24              THE COURT:  Thank you.

25              MR. ROONEY:  The complaint was filed on the 4th of
```

1   March, and it was served I think about a week or ten days

2   thereafter.

3           THE COURT:  Mid March, right.  Okay.  All right.

4   Let's see what Mr. Rooney has to say.

5           MR. ROONEY:  Thank you, Your Honor.  Again, Gavin

6   Rooney on behalf of LexisNexis.

7           THE COURT:  Yes.

8           MR. ROONEY:  So let me address the time is of the

9   essence issue and just lay the foundation here.

10          So when 47,000 requests came in by 47,000 separate

11  emails on a single day when my client returned from the New

12  Year's holiday --

13          THE COURT:  Right.

14          MR. ROONEY:  -- they moved expeditiously to remove

15  home address information.

16          One way in which home address information is made

17  available is through a credit report.

18          There is no carveout in Daniel's Law for the matters

19  covered by the federal Fair Credit Reporting Act or FCRA.

20  Many state privacy statutes have that kind of carveout.  This

21  statute does not.

22          So my client implemented a freeze pursuant to the

23  security freeze provisions of FCRA to freeze that credit

24  information in order to keep the home address information from

25  being disseminated.

1          Home address information is an integral part of every

2     credit report in order to authenticate who the person is.

3          Importantly, though, when that happened, every single

4     person received an email response from LexisNexis.  Every

5     single person received information about how to lift the

6     credit freeze if they wanted to lift it.

7          THE COURT:  Right.

8          MR. ROONEY:  And they were given a tracking PIN,

9     personal identification number, to make it easy for them to

10    contact LexisNexis and say, I'd like to have the freeze

11    lifted.

12         Since that time, many, many, many of these

13    individuals have contacted LexisNexis, and LexisNexis has

14    expeditiously removed those credit freezes.

15         THE COURT:  Right.

16         MR. ROONEY:  So the only thing we have left today are

17    the people who reached out and asked not to have their home

18    address information circulated and those who in response to

19    our email did not ask to have the freeze lifted.

20         Since we're speaking about individual choice here,

21    one can only presume those individuals have chosen to leave

22    the freezes in place.

23         In terms of -- so that should address the time of the

24    essence.  Anyone who wants their credit freeze lifted has the

25    ability to do so immediately without having to come to court.

1  We gave them the information to do it, and they have chosen

2  not to do it.

3          Number two, there's no application for emergent

4  relief here.  It's a damages action.  So if there had been

5  some time of the essence issue, presumably that would be the

6  question.

7          THE COURT:  Right.

8          MR. ROONEY:  Now, let me turn to the schedule.

9          We first of all have a problem which Your Honor noted

10  indirectly when you read the name of the case.  We don't know

11  who the plaintiffs are.  We have a due process right to know

12  who is suing us.  There's not even a basis to seal the

13  complaint or to use a John Doe pleading to protect the privacy

14  of these individuals under Third Circuit authority.  So I

15  don't think even the public version of the complaint should be

16  a John Doe complaint.  The public is entitled to know who is

17  using the courts.  That's a First Amendment issue.  And

18  moreover, we certainly have a due process right to know who is

19  suing us.

20          Why is that important?  Well, I want to know, did

21  these individuals actually make a request to have their

22  information removed.

23          Number two, did we send them an email saying, hey,

24  this is how you remove the freeze if you want to do it.

25          Number three, did they make a request to figure

1    out -- to lift their freeze.

2          I need to know the names of these individuals in

3    order to do that sort of investigation.

4          THE COURT:  Right.

5          MR. ROONEY:  And that's a necessary part of preparing

6    a motion to dismiss or an answer to the complaint so we can

7    figure out what happened with respect to these named

8    plaintiffs.

9          THE COURT:  Could you file a motion to dismiss on the

10   ground that there's no plaintiff?

11         MR. ROONEY:  I suppose one could.  But it would be

12   hard for me to address that, because we also have a motion to

13   dismiss for lack of personal jurisdiction, which I think I'd

14   have to file first.

15         For some reason I don't understand, the plaintiffs

16   sued the wrong entity.  They sued an entity that does not

17   provide credit information, when our emails -- which, by the

18   way, are quoted in the complaint -- clearly state a different

19   corporate entity.

20         THE COURT:  Well --

21         MR. ROONEY:  So I'm going to file a motion to dismiss

22   on behalf of the wrong company that was sued.

23         THE COURT:  So that's what you intend to do?

24         MR. ROONEY:  And in addition, we also have a motion

25   to dismiss under 12(b)(6) for several reasons.  One, this area

1    of security freezes is expressly preempted by FCRA.

2             THE COURT:  Okay.

3             MR. ROONEY:  FCRA has a list of subject matter areas

4    that are expressly preempted.  And I read Your Honor's prior

5    opinion on one of those areas in another case.

6             And the business of credit freezes is within the

7    scope of what is expressly preempted, so there's no room for

8    state law.  The complaint proceeds on a state law basis.

9             THE COURT:  Right.

10            MR. ROONEY:  So we have preemption.

11            We also have the fact that there's not even a facial

12   violation of the state statute being asserted.  There is no

13   obligation of law to make credit information available.

14            THE COURT:  What about the -- so you're ready to

15   proceed with an anonymous plaintiff at this point?

16            MR. ROONEY:  No.  I want to know who the plaintiffs

17   are.  That was my first point, Your Honor.

18            THE COURT:  Okay.

19            MR. ROONEY:  I can't really evaluate -- those are

20   grounds I know of right now.

21            THE COURT:  All right.

22            MR. ROONEY:  There may be other grounds I'm entitled

23   to know.

24            THE COURT:  Shouldn't that be included in your

25   motion?  I mean, I understand you want to know.

```
 1              MR. ROONEY:  Yes.

 2              THE COURT:  But the vehicle to get the answer if

 3    they're not amending the complaint is for you to file a motion

 4    of some kind, isn't there?

 5              MR. ROONEY:  I could file the motion, although I

 6    think it's the plaintiffs' obligation to file a motion to seal

 7    the information.

 8              THE COURT:  To seal -- the complaint is -- seal what

 9    information?

10              MR. ROONEY:  No.  But -- the names of the plaintiffs.

11    By filing a copy of the complaint that says John Dole, they

12    are effectively sealing the identity of litigants.

13              THE COURT:  I must confess, I've had many cases where

14    there have been John Doe defendants.

15              MR. ROONEY:  For statute of limitations purposes,

16    because you don't know who they are.

17              THE COURT:  A lot of John Doe defendants in cases.

18              MR. ROONEY:  Right.

19              THE COURT:  I don't know that I've ever had a case

20    where there's just been a John Doe plaintiff.

21              MR. ROONEY:  There -- yes.

22              THE COURT:  Somebody's -- I mean, we could just sit

23    here.  You say they have the obligation, you have the

24    obligation.

25              Somebody's got to file something.  And if they don't
```

 1  do it, you've got to file a motion.  You're the one who wants

 2  to have this case dismissed.

 3          MR. ROONEY:  Okay.

 4          THE COURT:  So, I mean --

 5          MR. ROONEY:  Your Honor, I'll include --

 6          THE COURT:  I can sit here and answer the question as

 7  to who has to go first --

 8          MR. ROONEY:  Well --

 9          THE COURT:  -- about briefing.

10          MR. ROONEY:  I'll be happy to make that part of our

11  motion practice.

12          THE COURT:  Yeah.

13          MR. ROONEY:  If Your Honor wants to proceed on a

14  third track with this case notwithstanding the motion to

15  remand and the First Amendment motion.

16          THE COURT:  Well, I don't know that it's a third

17  track.  It's just one of your -- it seems to me one of your

18  defenses here that you can't go forward without knowing

19  who the plaintiffs are.

20          MR. ROONEY:  Yes.  So I'll address as many grounds as

21  I can in the motion.

22          THE COURT:  So --

23          MR. ROONEY:  But I would request in terms of the

24  briefing schedule to make it the 10th of June, which is when

25  the First Amendment motion is done, because I don't think

1  there's a reason to move more quickly than that.

2          THE COURT:  Well, I don't know that --

3          MR. ROONEY:  Which is about a month.

4          THE COURT:  -- they have anything to do with each

5  other.  Yours is a separate case.

6          MR. ROONEY:  It is a separate case, but I'd like 30

7  days in which to prepare our motions.  Remember, I talked

8  about a personal jurisdiction motion and then there's a

9  12(b)(6) motion, and now while I thought we'd resolve the John

10 Doe issue here today, there will evidently be a third motion

11 on that.

12         THE COURT:  Why don't you file your motion by Monday,

13 June 3rd.

14         MR. ROONEY:  Okay.  Thank you, Your Honor.

15         THE COURT:  Monday, June 3rd.  And then how much time

16 do you need --

17         MR. LEE:  21 days?

18         THE COURT:  21st of June?

19         MR. LEE:  Fine, Judge.

20         THE COURT:  21st of June.  And any reply brief by the

21 28th of June.

22         MR. ROONEY:  Thank you, Your Honor.

23         THE COURT:  All right.  Does that conclude our

24 business for today?

25         MR. LEE:  Judge, I need two minutes, less than two

1   minutes.

2          THE COURT:  That's all right.

3          MR. LEE:  There was a lot said by counsel just now

4   about I guess the order of operations in which this all

5   happened.

6          THE COURT:  Look, you don't have to worry about it.

7   It's not -- just file your response to the motion.  It's just

8   a statement he made.  You're not going to be prejudiced by not

9   having to answer what he said.

10         MR. LEE:  I will keep it in the chamber.

11         THE COURT:  All right.  Thank you.

12         MR. LEE:  Thank you, Judge.

13         THE COURT:  All right.  Is there anything else we

14  need to do for the good of the order this afternoon?

15         (No response.)

16         THE COURT:  Thank you very much.

17         THE DEPUTY CLERK:  All rise.

18         (Proceedings concluded at 3:55 p.m.)

19                         -  -  -

20         I certify that the foregoing is a correct transcript

21  from the record of proceedings in the above-entitled matter.

22

23

24  _/S/ Ann Marie Mitchell_          _9th day of May, 2024_

25  _Court Reporter/Transcriber    Date_

_United States District Court_

**'** [1] - 57:9

**'23** [1] - 21:2

**/**

**/S** [1] - 117:24

**0**

**04389** [1] - 65:21
**05656** [1] - 65:22
**05658** [1] - 65:21
**05775** [1] - 65:21

**1**

**1** [2] - 96:5, 99:1
**10** [7] - 51:16, 67:5, 82:3, 96:22, 101:23, 101:24
**10:00** [1] - 51:3
**10th** [4] - 96:8, 96:20, 108:9, 115:24
**11** [1] - 46:21
**12** [1] - 102:23
**12(b)** [1] - 18:20
**12(b)(6** [5] - 32:14, 105:12, 105:25, 112:25, 116:9
**12th** [7] - 56:21, 56:22, 56:23, 56:24, 67:3, 67:9, 75:4
**14** [1] - 102:23
**14th** [5] - 96:20, 96:21, 97:22, 99:10, 101:11
**15** [4] - 51:10, 51:16, 74:5, 80:12
**15th** [4] - 96:23, 97:7, 97:13, 103:21
**19th** [1] - 57:6
**1:57** [1] - 17:2

**2**

**2** [1] - 28:18
**20** [1] - 101:20
**20,000** [1] - 21:10
**2021** [1] - 77:5
**2023** [2] - 21:3, 92:17
**2024** [9] - 20:24, 21:3, 21:5, 21:6, 22:13, 24:5, 24:23, 92:17, 117:24
**21** [1] - 116:17
**21st** [2] - 116:18, 116:20
**24-4233** [1] - 91:11
**24-4434** [1] - 87:22
**25** [4] - 53:14, 63:5, 97:17, 101:8
**25th** [1] - 89:20

**26th** [1] - 57:9
**27th** [6] - 56:10, 57:4, 66:18, 82:8, 82:17, 82:23
**28** [1] - 58:4
**28th** [1] - 116:21
**29th** [1] - 57:3

**3**

**30** [3] - 51:22, 52:4, 116:6
**30(b)(6** [12] - 31:1, 34:21, 35:17, 36:14, 38:6, 43:5, 43:25, 44:6, 46:14, 47:7, 47:12, 51:10
**30th** [4] - 96:24, 101:7, 101:13, 101:17
**31** [2] - 48:5, 52:16
**32** [3] - 55:5, 57:23, 70:12
**35** [1] - 30:18
**39** [10] - 17:10, 19:13, 46:15, 46:16, 47:6, 47:15, 48:4, 51:23, 52:16, 57:17
**3:00** [2] - 50:6, 50:23
**3:55** [1] - 117:18
**3rd** [2] - 116:13, 116:15

**4**

**4** [4] - 20:24, 22:13, 24:5, 24:23
**40** [3] - 53:10, 63:4, 96:11
**40-page** [1] - 53:9
**4176** [1] - 83:4
**47,000** [2] - 109:10
**4th** [3] - 21:6, 24:25, 108:25

**5**

**5** [1] - 74:5
**5.1** [2] - 55:22, 104:4
**50** [9] - 96:15, 96:19, 97:15, 97:16, 98:9, 98:11, 98:14, 98:16, 98:20
**54** [1] - 18:10
**58** [1] - 29:24

**6**

**6** [2] - 53:20, 54:19
**60** [4] - 96:12, 96:14, 103:22, 104:2
**65** [1] - 30:17

**7**

**7.1** [1] - 45:2
**7.1.1** [1] - 44:19
**71** [2] - 17:5, 57:21
**72** [2] - 75:20, 94:8

**8**

**8** [1] - 67:20

**9**

**9th** [1] - 117:24

**A**

**abeyance** [1] - 32:11
**abide** [1] - 105:20
**ability** [5] - 55:13, 67:23, 81:14, 81:23, 110:25
**able** [11] - 30:20, 38:1, 40:8, 57:20, 61:15, 73:25, 83:14, 83:19, 87:10, 95:21, 100:2
**above-entitled** [1] - 117:21
**absolutely** [5] - 27:17, 47:24, 63:1, 63:9, 66:23
**abundance** [1] - 79:19
**accelerated** [1] - 108:9
**according** [3] - 24:11, 24:13, 30:7
**accordingly** [1] - 106:3
**account** [5] - 90:9, 90:10, 91:18
**ACLU** [3] - 63:22, 64:1, 64:19
**act** [1] - 26:3
**Act** [1] - 109:19
**action** [4] - 32:7, 106:11, 107:6, 111:4
**actors** [1] - 45:7
**actual** [2] - 86:20, 92:20
**Adam** [9] - 17:16, 38:17, 43:8, 47:20, 48:21, 53:24, 65:14, 93:9, 94:19
**add** [2] - 40:13, 67:4
**addition** [2] - 20:19, 112:24
**additional** [8] - 37:9, 46:4, 47:11, 66:2, 89:16, 92:15, 92:24, 93:3
**additionally** [2] - 40:11, 63:22

**address** [27] - 18:2, 54:21, 56:21, 56:23, 56:25, 61:16, 66:4, 68:23, 69:24, 88:8, 88:21, 89:18, 90:2, 90:8, 91:17, 92:7, 93:15, 97:21, 109:8, 109:15, 109:16, 109:24, 110:1, 110:18, 110:23, 112:12, 115:20
**addressed** [1] - 86:8
**addresses** [2] - 89:4, 94:1
**addressing** [1] - 69:6
**admitted** [1] - 78:13
**admonition** [1] - 48:23
**adopted** [1] - 39:17
**advantage** [1] - 102:16
**advise** [3] - 44:14, 55:13, 57:1
**advocate** [1] - 81:14
**affect** [2] - 25:23, 26:4
**affirmatively** [1] - 76:25
**afield** [3] - 34:14, 37:5, 42:9
**afraid** [1] - 80:11
**afternoon** [19] - 17:3, 17:4, 17:14, 17:15, 39:4, 39:5, 44:9, 44:10, 50:23, 65:16, 65:17, 72:3, 72:4, 74:12, 87:21, 105:6, 105:7, 106:7, 117:14
**age** [1] - 78:19
**ago** [3] - 75:7, 107:22, 108:18
**agree** [16] - 24:17, 28:5, 29:15, 36:2, 36:7, 46:24, 66:7, 66:21, 66:24, 70:3, 81:12, 88:7, 88:11, 91:14, 94:22, 100:16
**agreed** [1] - 107:24
**agreement** [4] - 33:8, 51:1, 76:18, 82:20
**ahead** [10] - 51:19, 60:9, 77:11, 77:19, 83:1, 86:9, 95:3, 97:19, 98:8, 105:14
**aim** [1] - 94:11
**allegations** [2] - 31:6, 43:21
**allegedly** [2] - 41:5, 92:22
**allow** [2] - 82:8, 84:18
**allowed** [1] - 67:5
**allowing** [2] - 58:8,

58:9
**allows** [2] - 55:10, 55:12
**almost** [3] - 17:20, 48:13, 53:18
**amended** [1] - 54:24
**amending** [1] - 114:3
**Amendment** [6] - 61:4, 64:23, 65:9, 111:17, 115:15, 115:25
**amicus** [4] - 60:6, 61:8, 64:15, 64:19
**amount** [1] - 82:16
**analyze** [1] - 38:1
**Angelo** [2] - 18:7, 55:8
**Ann** [1] - 117:24
**anonymous** [1] - 113:15
**answer** [18] - 23:4, 70:14, 70:22, 73:1, 73:19, 83:22, 84:12, 84:17, 84:20, 86:21, 87:2, 87:3, 87:5, 105:16, 112:6, 114:2, 115:6, 117:9
**anticipate** [2] - 72:24, 83:20
**apologize** [1] - 27:3
**Appeals** [2] - 64:6, 64:10
**appear** [1] - 63:11
**Appellate** [2] - 58:22, 64:8
**apple** [1] - 100:17
**applicable** [1] - 41:23
**application** [1] - 111:3
**applied** [9] - 63:24, 64:1, 69:7, 70:8, 72:11, 72:21, 73:21, 85:7, 100:3
**apply** [12] - 39:16, 40:1, 40:2, 40:19, 41:3, 42:3, 42:5, 85:8, 102:7, 102:9, 102:10, 107:7
**appreciate** [3] - 61:3, 76:7, 85:25
**approach** [3] - 63:6, 80:24, 91:14
**appropriate** [4] - 72:17, 73:10, 100:22, 108:14
**approves** [1] - 91:21
**April** [2] - 56:21, 56:22
**arbitrability** [1] - 100:6
**arbitration** [2] - 18:20, 32:1
**area** [1] - 112:25
**areas** [2] - 113:3,

113:5
**arguably** [2] - 41:11, 62:3
**argued** [1] - 63:23
**arguing** [2] - 60:15, 74:9
**argument** [3] - 54:10, 61:21, 100:24
**arguments** [7] - 18:19, 21:22, 81:11, 81:12, 87:11, 105:22
**as-applied** [3] - 63:24, 64:1, 69:7
**asserted** [1] - 113:12
**asserting** [1] - 73:20
**assigned** [1] - 69:4
**assignee** [3] - 42:1, 42:17, 43:18
**assignees** [2] - 31:9, 45:10
**assigning** [2] - 41:5
**assignment** [37] - 20:20, 20:22, 20:23, 21:19, 22:17, 22:18, 22:24, 23:10, 23:14, 23:17, 23:19, 23:24, 24:4, 24:5, 25:5, 25:24, 26:4, 26:8, 26:23, 28:12, 30:4, 30:7, 30:21, 33:14, 34:15, 35:11, 35:16, 36:15, 36:16, 36:18, 37:5, 37:6, 37:11, 38:10, 42:21, 78:5, 93:3
**assignments** [13] - 20:5, 21:18, 22:3, 22:6, 22:8, 22:9, 26:10, 27:11, 29:11, 29:17, 31:16, 33:14, 41:11
**assignor** [5] - 33:12, 43:7, 43:15, 43:17, 43:19
**assignors** [13] - 31:10, 31:11, 35:21, 36:6, 40:2, 40:5, 40:19, 41:4, 41:24, 42:17, 43:22, 45:9, 45:11
**assistance** [1] - 77:7
**Association** [2] - 31:14, 31:15
**assume** [4] - 38:15, 52:8, 75:13, 105:4
**assuming** [4] - 57:3, 73:7, 91:20, 100:1
**assumption** [2] - 102:6, 102:8
**Atlas** [24] - 21:14, 21:18, 22:6, 25:14,

29:23, 29:24, 30:8, 30:18, 31:2, 31:18, 33:6, 35:18, 39:25, 40:1, 40:15, 41:5, 43:25, 46:14, 46:16, 60:20, 89:23, 90:10, 92:14, 106:23
**Atlas's** [3] - 26:18, 60:16, 89:22
**Atlasmail.com** [1] - 90:24
**attempting** [1] - 92:15
**attorney** [3] - 77:8, 104:1, 105:4
**Attorney** [29] - 55:12, 55:15, 55:17, 55:22, 56:2, 56:15, 57:1, 57:5, 57:18, 57:19, 58:9, 59:8, 67:11, 74:21, 74:24, 95:8, 96:25, 97:3, 97:5, 97:6, 103:11, 103:19, 103:21, 103:22, 104:8, 104:11, 104:13, 104:16, 104:22
**attorneys** [7] - 68:6, 72:10, 75:20, 81:10, 82:18, 94:6, 94:21
**attorneys'** [1] - 30:17
**August** [4] - 56:23, 56:24, 57:3, 67:9
**authenticate** [1] - 110:2
**authority** [4] - 64:18, 81:6, 87:7, 111:14
**automated** [1] - 30:20
**available** [5] - 25:23, 52:15, 89:5, 109:17, 113:13
**avoid** [5] - 57:21, 62:3, 63:7, 63:8, 69:20
**aware** [2] - 59:2, 102:15, 106:9
**awful** [1] - 57:10

---

**B**

**ball** [1] - 100:21
**BARTLE** [1] - 17:2
**based** [3] - 20:14, 28:17, 63:6
**bases** [2] - 17:19, 101:4
**basis** [5] - 67:21, 72:12, 88:1, 111:12, 113:8
**bear** [2] - 31:22, 54:1
**beaten** [1] - 31:24
**becomes** [1] - 70:13

**began** [1] - 26:19
**behalf** [10] - 29:7, 44:11, 66:10, 69:8, 77:20, 88:23, 90:12, 108:22, 109:6, 112:22
**behind** [1] - 76:11
**belief** [1] - 34:5
**believer** [1] - 98:24
**benefit** [2] - 83:17, 85:15
**best** [2] - 18:13, 90:14
**better** [1] - 48:3
**between** [4] - 29:24, 42:16, 45:9, 94:4
**betweens** [1] - 45:8
**beyond** [1] - 62:23
**big** [1] - 56:8
**bit** [1] - 62:14
**bite** [1] - 100:17
**Black** [2] - 91:10, 91:11
**Blaine** [6] - 39:5, 49:4, 59:25, 71:18, 78:8, 97:10
**block** [1] - 90:9
**blocked** [6] - 89:22, 89:23, 90:22, 90:25, 94:10
**blocking** [4] - 90:8, 90:23, 91:2
**blown** [1] - 37:19
**board** [1] - 73:17
**Bob** [1] - 105:8
**Boies** [3] - 24:2, 74:13, 106:8
**bottom** [1] - 41:14
**brevity** [2] - 98:22, 98:24
**brief** [53] - 20:18, 51:17, 52:24, 53:3, 53:10, 53:11, 55:11, 56:11, 56:12, 56:13, 56:15, 60:24, 61:8, 61:9, 61:11, 62:10, 62:11, 62:23, 63:4, 63:8, 63:9, 63:10, 66:16, 66:22, 71:13, 80:1, 80:2, 80:8, 80:12, 80:19, 82:1, 82:3, 82:9, 82:11, 82:17, 84:22, 86:10, 87:7, 95:9, 95:11, 96:8, 96:9, 96:17, 96:21, 96:23, 96:24, 97:7, 97:17, 97:24, 98:3, 99:15, 105:23, 116:20
**briefing** [26] - 55:6, 55:9, 58:7, 61:16,

61:17, 62:23, 66:2, 66:6, 66:8, 66:12, 66:15, 66:19, 67:4, 67:10, 67:12, 85:3, 85:11, 105:20, 107:14, 107:25, 108:8, 108:10, 108:11, 115:9, 115:24
**briefly** [2] - 67:3, 91:10
**briefs** [19] - 19:19, 51:23, 53:1, 54:1, 57:8, 57:21, 58:11, 59:21, 60:4, 60:6, 80:12, 80:19, 80:22, 95:12, 96:20, 98:14, 100:23, 101:16
**brilliant** [1] - 81:9
**bring** [1] - 44:21
**bringing** [2] - 21:16, 55:18
**broker** [1] - 90:9
**brokers** [1] - 89:14
**brokers'** [1] - 89:5
**buckets** [1] - 20:13
**build** [2] - 52:10, 59:7
**built** [1] - 82:23
**bunch** [1] - 39:24
**burden** [2] - 54:1, 66:2
**business** [5] - 43:6, 61:15, 89:17, 113:6, 116:24

---

**C**

**CAFA** [4] - 20:2, 35:20, 36:3, 107:6
**capacity** [1] - 67:13
**cards** [1] - 99:22
**care** [6] - 53:17, 55:2, 77:3, 97:8, 101:25, 105:1
**carveout** [2] - 109:18, 109:20
**case** [33] - 17:6, 20:18, 32:16, 35:4, 36:17, 44:22, 45:5, 48:1, 55:21, 56:2, 58:17, 62:25, 64:2, 64:5, 64:12, 70:6, 79:13, 81:22, 83:4, 87:22, 93:23, 96:1, 105:11, 106:9, 106:21, 107:10, 111:10, 113:5, 114:19, 115:2, 115:14, 116:5, 116:6
**cases** [24] - 17:5, 17:7, 17:11, 18:16, 19:10, 19:13, 21:1, 23:20,

28:25, 32:6, 55:5, 56:3, 65:21, 66:1, 68:6, 74:10, 81:15, 86:4, 89:10, 96:8, 107:11, 114:13, 114:17
**category** [1] - 80:3
**caution** [1] - 79:19
**cert** [1] - 64:11
**certain** [2] - 49:16, 70:14
**certainly** [3] - 22:8, 30:25, 111:18
**certification** [2] - 21:7, 107:16
**certified** [3] - 55:22, 104:18, 104:19
**certify** [3] - 104:11, 104:13, 117:20
**chairs** [1] - 98:7
**challenge** [35] - 55:5, 55:19, 56:12, 60:5, 60:6, 61:4, 61:18, 61:19, 61:22, 63:23, 63:24, 64:1, 65:9, 65:10, 70:7, 70:17, 71:21, 73:18, 74:19, 75:6, 83:7, 83:10, 83:17, 84:4, 85:7, 85:14, 86:13, 87:13, 97:25, 99:7, 99:14, 99:20, 99:23, 100:20
**challenged** [1] - 85:21
**challenges** [13] - 18:14, 18:15, 56:19, 60:12, 63:7, 67:17, 69:7, 71:3, 71:14, 99:24, 100:1, 101:6
**challenging** [10] - 19:16, 70:4, 70:12, 70:19, 74:4, 74:23, 83:22, 97:2, 98:1, 105:12
**chamber** [1] - 117:10
**chance** [1] - 81:20
**changed** [5] - 23:5, 25:6, 26:23, 27:8, 35:17
**changes** [1] - 27:15
**check** [1] - 29:9
**checked** [2] - 72:20, 99:3
**choice** [3] - 90:6, 90:11, 110:20
**choose** [2] - 89:6, 99:20
**chosen** [2] - 110:21, 111:1
**CHRISTIE** [3] - 91:9, 91:23, 92:2

**Christie** [1] - 91:10
**Christmas** [1] - 89:20
**Circuit** [1] - 111:14
**circulate** [4] - 81:1, 82:9, 82:17, 82:24
**circulated** [1] - 110:18
**circumstance** [1] - 86:15
**cited** [1] - 20:17
**citizen** [2] - 106:23, 106:24
**civil** [1] - 64:23
**Civil** [3] - 55:23, 96:6, 99:2
**claim** [1] - 75:14
**claims** [1] - 41:5
**clarification** [4] - 24:20, 26:1, 97:10, 103:25
**clarify** [1] - 49:11, 67:15, 67:22
**clarity** [1] - 86:1
**class** [3] - 106:11, 107:6, 107:16
**clear** [12] - 26:6, 30:25, 32:20, 41:23, 65:2, 68:18, 75:9, 78:21, 83:12, 90:21, 91:5, 92:8
**clearly** [2] - 31:1, 112:18
**client** [8] - 29:9, 81:16, 83:10, 83:15, 90:14, 91:18, 109:11, 109:22
**client's** [1] - 89:20
**clients** [14] - 46:21, 60:11, 62:4, 62:7, 66:10, 75:25, 81:4, 81:15, 82:18, 86:12, 87:13, 88:8, 92:10, 105:20
**closely** [1] - 58:25
**co** [2] - 31:25, 67:13
**co-defendants** [2] - 31:25, 67:13
**colleague** [1] - 74:14
**colleagues** [3] - 25:21, 74:2, 105:18
**COLLINS** [10] - 86:3, 86:7, 86:10, 86:15, 86:19, 86:23, 87:12, 87:15, 87:17, 87:19
**Collins** [1] - 86:3
**colluded** [1] - 34:5
**collusion** [4] - 19:24, 33:24, 42:15, 45:4
**color** [2] - 41:4, 54:12
**coming** [1] - 77:9
**comments** [1] - 82:19

**committee** [2] - 48:13, 49:6
**common** [3] - 75:15, 75:17
**communicating** [1] - 33:7
**communication** [2] - 33:12, 94:4
**communications** [5] - 31:12, 33:6, 33:8, 33:10, 79:16
**company** [2] - 62:15, 112:22
**compel** [2] - 18:19, 32:1
**complaint** [15] - 86:21, 105:11, 105:17, 108:13, 108:20, 108:25, 111:13, 111:15, 111:16, 112:6, 112:18, 113:8, 114:3, 114:8, 114:11
**complaints** [1] - 45:6
**completely** [1] - 23:14
**compliance** [2] - 69:12, 77:6
**complicated** [2] - 32:17, 101:3
**complied** [1] - 105:15
**comply** [2] - 69:10, 77:12
**compromise** [1] - 81:18
**concern** [4] - 18:21, 19:6, 80:17, 91:23
**concerned** [2] - 21:24, 92:10
**concerns** [1] - 88:9
**concise** [1] - 56:19
**conclude** [1] - 116:23
**concluded** [1] - 117:18
**concur** [1] - 74:14
**conditions** [23] - 39:10, 39:11, 39:13, 39:15, 39:17, 39:19, 39:20, 39:23, 39:24, 39:25, 40:1, 40:2, 40:5, 40:16, 40:18, 40:20, 40:24, 41:3, 41:7, 41:10, 41:12, 41:23
**confer** [1] - 82:18
**conference** [3] - 17:5, 48:4, 59:12
**confess** [1] - 114:13
**confident** [1] - 79:4
**confirmation** [1] - 23:10, 38:10

**confirmations** [1] - 33:15
**conform** [1] - 104:22
**confusion** [2] - 69:20, 79:22
**connection** [2] - 17:5, 18:1
**consent** [2] - 33:6, 34:11
**consequences** [1] - 25:20
**consider** [4] - 36:5, 72:11, 74:24, 103:23
**consideration** [1] - 54:4
**considered** [2] - 35:22, 80:21
**considering** [2] - 56:9, 72:10
**consistent** [1] - 50:3
**consolidated** [27] - 20:14, 41:7, 53:2, 53:11, 55:11, 56:11, 56:13, 60:12, 60:24, 61:11, 61:17, 62:23, 63:3, 63:9, 66:19, 74:22, 79:12, 80:1, 80:8, 80:19, 82:1, 82:9, 95:9, 96:9, 101:15, 105:23
**Constitution** [1] - 84:10
**constitutional** [24] - 18:14, 18:15, 55:5, 56:12, 58:14, 60:5, 60:6, 62:4, 62:24, 63:18, 67:16, 74:19, 75:6, 83:7, 83:10, 83:17, 85:3, 85:11, 85:14, 95:7, 99:6, 100:2, 101:6, 108:8
**constitutional-on-its -face** [1] - 74:19
**constitutionality** [7] - 19:17, 58:23, 70:4, 70:8, 85:7, 97:2, 105:12
**contact** [1] - 110:10
**contacted** [1] - 110:13
**contained** [1] - 22:18
**content** [1] - 82:20
**context** [4] - 34:2, 35:2, 35:6, 37:2
**continue** [4] - 68:11, 73:10, 89:12, 95:21
**continued** [1] - 99:11, 99:18
**continues** [1] - 70:6
**continuing** [2] - 89:16, 93:5

**contract** [1] - 43:17
**contracts** [1] - 39:23
**contractual** [3] - 42:2, 42:4, 42:5
**contrary** [2] - 25:18, 25:19
**control** [1] - 81:23
**controversial** [1] - 46:6
**conversation** [2] - 44:18, 94:16
**coordinate** [6] - 51:22, 57:20, 58:9, 59:20, 79:15, 95:8
**coordination** [1] - 59:14
**copied** [2] - 78:12, 78:17
**copies** [4] - 22:8, 22:11, 41:18, 92:20
**copy** [3] - 75:24, 76:23, 114:11
**corporate** [2] - 45:3, 112:19
**correct** [20] - 19:25, 20:3, 20:6, 21:17, 22:11, 23:21, 27:1, 27:6, 28:13, 31:3, 45:11, 46:20, 46:22, 52:6, 53:12, 54:20, 56:5, 58:3, 87:17, 117:20
**corrected** [1] - 102:3
**correspondence** [1] - 78:17
**corresponds** [1] - 92:9
**COSGROVE** [5] - 105:6, 105:8, 105:10, 105:15, 106:2
**Cosgrove** [1] - 105:8
**counsel** [39] - 23:15, 39:2, 59:4, 59:12, 67:24, 68:11, 69:5, 69:21, 69:22, 71:19, 75:3, 75:10, 75:11, 75:17, 76:15, 77:3, 77:13, 78:13, 78:14, 78:16, 78:17, 78:21, 78:22, 78:25, 79:19, 79:20, 80:9, 83:13, 88:4, 88:18, 91:16, 91:17, 91:20, 100:15, 100:16, 107:18, 117:3
**counsel's** [1] - 21:7
**couple** [2] - 30:3, 35:5, 49:25, 51:12, 66:10, 72:1, 97:9,

100:12, 100:14, 100:21, 108:16, 108:18
**coupled** [1] - 92:2
**course** [5] - 32:2, 73:1, 73:8, 87:12
**court** [16] - 17:1, 24:20, 26:1, 32:16, 34:9, 53:9, 54:7, 55:1, 59:16, 63:21, 79:1, 89:15, 103:25, 105:11, 110:25
**Court** [9] - 63:15, 63:20, 63:25, 64:4, 64:6, 64:9, 64:11, 78:2, 117:25
**Court's** [2] - 93:6, 99:11
**courts** [2] - 36:18, 111:17
**cover** [3] - 17:8, 86:8, 101:4
**covered** [30] - 17:19, 24:22, 29:24, 30:16, 31:5, 31:7, 40:11, 59:18, 68:1, 68:25, 69:18, 75:25, 76:7, 76:12, 76:18, 77:9, 77:10, 78:5, 87:25, 88:6, 89:6, 89:12, 90:12, 92:3, 92:6, 92:14, 92:22, 93:4, 106:20, 109:19
**covers** [1] - 105:4
**create** [1] - 46:4
**credit** [10] - 106:14, 109:17, 109:23, 110:2, 110:6, 110:14, 110:24, 112:17, 113:6, 113:13
**Credit** [1] - 109:19
**cross** [3] - 39:24, 40:21, 40:24
**cross-reference** [1] - 39:24
**cross-referenced** [2] - 40:21, 40:24

**D**

**damages** [1] - 111:4
**Daniel's** [12] - 17:5, 17:7, 19:17, 22:20, 22:23, 58:23, 61:25, 62:6, 63:20, 70:4, 77:5, 109:18
**data** [3] - 89:5, 89:14, 90:8
**date** [15] - 35:10, 39:12, 41:12, 55:14,

57:2, 66:19, 67:8, 80:4, 80:12, 80:13, 82:8, 84:14, 92:16, 92:21, 100:24

**Date** [1] - 117:25

**dated** [3] - 21:4, 24:5, 24:25

**dates** [2] - 27:15, 100:11

**days** [21] - 38:19, 49:25, 51:8, 51:10, 51:16, 51:22, 52:4, 80:1, 82:3, 82:22, 89:17, 95:6, 100:13, 100:14, 100:21, 103:22, 104:2, 109:1, 116:7, 116:17

**deadline** [1] - 55:24, 68:12, 80:9, 101:5, 101:7, 101:12, 103:13, 105:24

**deal** [14] - 17:6, 17:22, 18:16, 19:15, 19:16, 27:22, 32:18, 33:25, 46:17, 52:12, 84:7, 94:7, 94:8, 106:2

**dealing** [4] - 18:21, 44:1, 51:21, 100:3

**deals** [1] - 17:23

**dealt** [2] - 17:13, 20:7

**December** [4] - 21:1, 21:2, 25:1, 89:20

**decide** [5] - 27:12, 64:4, 74:17, 80:3, 104:2

**decided** [2] - 84:4, 90:9

**decipher** [1] - 93:19

**decision** [1] - 36:20

**default** [2] - 49:7, 88:20

**defendant** [10] - 57:8, 67:3, 71:2, 71:14, 72:20, 77:23, 83:6, 88:15, 89:1, 94:6

**defendants** [74] - 18:8, 18:10, 18:18, 29:12, 31:25, 33:3, 33:25, 35:5, 46:13, 46:19, 47:2, 47:8, 47:10, 47:22, 48:5, 51:22, 52:16, 53:21, 54:24, 55:11, 55:18, 56:10, 56:11, 56:20, 57:16, 58:25, 60:7, 61:22, 63:14, 65:5, 65:20, 66:1, 66:7, 66:11, 66:14, 66:18, 66:21, 67:7, 67:13, 68:4, 69:8, 70:11,

71:12, 71:20, 72:23, 72:25, 73:24, 74:5, 74:17, 78:4, 79:11, 81:20, 82:10, 82:25, 84:6, 85:20, 88:19, 89:13, 91:1, 93:12, 93:14, 94:4, 94:9, 95:11, 95:20, 97:1, 97:3, 103:10, 103:18, 104:15, 114:14, 114:17

**defendants'** [3] - 19:20, 75:11, 90:5

**defense** [9] - 48:9, 69:22, 75:18, 78:22, 79:19, 84:18, 100:4, 100:16, 101:6

**defenses** [11] - 70:20, 73:2, 73:8, 73:19, 73:20, 83:24, 84:12, 86:16, 87:1, 99:24, 115:18

**defer** [1] - 67:13

**deficient** [1] - 68:13

**definitely** [2] - 49:12, 63:11

**definition** [1] - 62:14

**defunct** [2] - 69:13, 88:10, 89:4

**Delaware** [1] - 60:16

**delay** [1] - 56:7

**deliberate** [1] - 74:25

**deliver** [1] - 89:12

**delivered** [1] - 90:12

**Delvepoint** [3] - 55:21, 105:3, 105:8

**deponent** [1] - 47:12

**deposing** [1] - 43:6

**deposition** [9] - 31:1, 31:4, 35:17, 38:6, 43:5, 46:14, 47:7, 51:11, 52:4

**depositions** [4] - 46:16, 47:15, 48:13, 58:6

**DEPUTY CLERK** [1] - 117:17

**described** [1] - 49:17

**designated** [3] - 88:7, 88:12, 88:17

**desire** [1] - 71:15

**detail** [1] - 102:25

**determine** [2] - 25:11, 27:23

**different** [18] - 18:25, 19:1, 25:7, 26:11, 26:25, 27:4, 27:11, 27:14, 29:23, 30:9, 61:21, 65:21, 81:15, 94:8, 102:18,

105:19, 105:23, 112:18

**differently** [4] - 62:20, 74:2, 88:15

**difficult** [3] - 29:2, 29:8, 95:19

**direct** [2] - 69:21, 104:19

**direction** [1] - 86:12

**directly** [2] - 45:15, 69:22

**directories** [1] - 62:1

**directory** [2] - 61:25, 62:21

**disaster** [1] - 80:22

**disbelief** [1] - 37:2

**discern** [1] - 36:15

**disclose** [1] - 69:18

**disclosed** [1] - 69:19

**disclosure** [4] - 44:19, 44:25, 45:3, 46:1

**disclosures** [5] - 28:23, 30:8, 31:13, 31:16, 33:8

**discovered** [1] - 40:17

**discovery** [31] - 18:1, 18:22, 19:3, 19:4, 19:20, 19:21, 19:22, 20:8, 20:9, 20:14, 21:23, 25:12, 25:15, 27:10, 27:23, 29:20, 32:9, 33:20, 34:14, 37:20, 44:22, 45:1, 45:2, 46:5, 46:11, 47:5, 51:6, 51:7, 55:7, 62:13, 92:25

**discuss** [3] - 17:10, 43:22, 55:6

**discussed** [2] - 18:12, 87:25

**discussing** [1] - 91:13

**discussion** [1] - 83:6

**discussions** [1] - 75:14

**dismiss** [13] - 63:6, 67:20, 84:9, 87:4, 97:24, 107:17, 107:20, 107:21, 112:6, 112:9, 112:13, 112:21, 112:25

**dismissal** [1] - 83:13

**dismissed** [2] - 32:16, 115:2

**dispositive** [6] - 18:16, 19:9, 36:20, 54:3, 58:16, 62:25

**disprove** [1] - 37:14

**dispute** [1] - 62:17

**disregarded** [1] -

60:16

**disseminated** [1] - 109:25

**District** [5] - 44:15, 45:25, 52:18, 102:7, 102:8

**diversity** [3] - 32:7, 60:15

**Division** [2] - 58:22, 64:8

**divorce** [1] - 34:1

**docket** [7] - 65:21, 73:25, 74:10, 76:3, 78:24, 79:13, 79:21

**dockets** [3] - 75:19, 75:20, 76:4

**document** [19] - 22:20, 23:12, 24:11, 24:16, 24:19, 24:22, 24:24, 25:1, 25:2, 25:4, 25:5, 25:8, 25:16, 25:17, 25:22, 30:16, 37:21, 38:2

**documents** [29] - 20:19, 20:20, 21:8, 21:9, 27:14, 28:6, 28:11, 30:8, 30:24, 35:9, 37:9, 37:16, 37:22, 38:2, 38:3, 38:15, 41:20, 41:21, 42:16, 42:17, 42:18, 44:1, 44:4, 46:12, 49:24, 50:24, 78:6, 79:6

**Doe** [8] - 17:6, 106:6, 111:13, 111:16, 114:14, 114:17, 114:20, 116:10

**Dole** [1] - 114:11

**domain** [2] - 90:23, 91:2

**done** [14] - 27:14, 28:25, 43:2, 47:5, 50:19, 55:21, 58:8, 62:12, 76:20, 77:7, 84:5, 85:18, 98:16, 115:25

**double** [1] - 103:4

**doubt** [1] - 36:6

**down** [8] - 19:9, 19:15, 21:21, 48:14, 58:4, 72:18, 87:9, 107:24

**draft** [6] - 49:21, 49:24, 50:20, 80:8, 82:9, 82:17

**driving** [1] - 68:1

**due** [6] - 65:9, 81:19, 97:13, 99:10, 111:11, 111:18

**during** [6] - 23:20,

35:16, 41:19, 57:1, 60:3, 63:23

## E

**early** [2] - 51:15, 92:17

**easily** [1] - 56:1

**Eastern** [1] - 102:8

**easy** [2] - 36:6, 110:9

**effect** [2] - 41:19, 49:13

**effective** [2] - 36:19, 91:14

**effectively** [1] - 114:12

**efficiency** [2] - 19:18, 61:12

**efficient** [3] - 55:10, 58:12, 76:20

**efficiently** [1] - 81:16

**effort** [2] - 18:14, 19:7

**efforts** [2] - 68:11, 95:9

**either** [12] - 32:16, 35:14, 45:17, 49:20, 55:1, 56:10, 59:9, 83:12, 86:23, 87:3, 92:6, 99:20

**elegance** [2] - 74:3, 74:8

**elicited** [1] - 35:25

**email** [19] - 51:4, 69:23, 77:16, 78:9, 79:17, 88:5, 88:7, 88:12, 89:4, 89:20, 90:8, 90:22, 91:3, 91:4, 91:17, 92:9, 110:4, 110:19, 111:23

**emailed** [1] - 78:1

**emails** [16] - 69:11, 69:13, 69:14, 77:10, 77:24, 79:21, 88:10, 89:19, 89:22, 91:2, 92:12, 92:20, 94:15, 109:11, 112:17

**emergent** [1] - 111:3

**eMerges** [1] - 87:22

**encourage** [1] - 93:14

**end** [4] - 78:6, 79:11, 85:18, 90:11

**Enforcement** [2] - 25:7, 25:8

**enforcement** [4] - 22:5, 26:9, 28:22, 28:23

**ensure** [1] - 78:4

**enter** [5] - 51:6, 51:7, 100:18, 100:20, 102:1

**entered** [2] - 99:10,

99:18
**entire** [4] - 23:15, 28:21, 72:12, 91:2
**entities** [2] - 40:1, 45:25
**entitled** [4] - 33:5, 111:16, 113:22, 117:21
**entity** [4] - 88:17, 112:16, 112:19
**equal** [1] - 97:15
**errors** [1] - 102:2
**especially** [1] - 58:12
**essence** [6] - 106:15, 107:10, 108:7, 109:9, 110:24, 111:5
**essentially** [2] - 29:18, 59:13
**evaluate** [1] - 113:19
**evidence** [2] - 43:18, 44:4
**evidently** [1] - 116:10
**exactly** [1] - 23:24, 74:23, 85:22
**example** [1] - 62:21
**exceeds** [1] - 92:12
**excellent** [1] - 94:17
**except** [1] - 84:6
**exception** [2] - 61:24, 73:13
**exclude** [1] - 62:7
**excuse** [2] - 56:23, 76:3
**Exhibit** [3] - 21:7, 22:20, 41:7
**exist** [1] - 20:21
**existing** [1] - 93:1
**expedited** [4] - 20:8, 47:8, 48:16, 52:7
**expeditious** [2] - 66:3, 96:7
**expeditiously** [2] - 109:14, 110:14
**expenses** [1] - 30:18
**experienced** [1] - 98:19
**explain** [3] - 26:17, 27:2, 93:25
**express** [1] - 91:23
**expressly** [4] - 102:12, 113:1, 113:4, 113:7
**extent** [3] - 35:10, 92:23, 105:22
**extra** [4] - 80:1, 82:3, 95:10, 105:24
**extremely** [1] - 57:13

**F**

**face** [4] - 42:12, 46:21,

70:20, 74:19
**facial** [29] - 18:15, 55:4, 55:18, 60:5, 61:4, 61:18, 61:19, 61:22, 63:6, 65:9, 66:4, 67:21, 70:17, 71:2, 71:21, 72:11, 72:21, 73:18, 84:4, 86:13, 87:13, 99:14, 99:20, 99:23, 100:1, 100:20, 101:6, 113:11
**facially** [6] - 19:16, 67:17, 70:4, 70:11, 83:22, 97:25
**facing** [1] - 47:9
**fact** [3] - 58:17, 75:6, 113:11
**factor** [1] - 21:20
**factors** [4] - 20:17, 20:18, 21:14, 60:18
**facts** [5] - 35:25, 36:15, 37:5, 38:13, 62:16
**fails** [1] - 64:1
**Fair** [1] - 109:19
**fair** [4] - 34:14, 52:1, 55:10, 58:12
**faith** [2] - 25:15, 81:25
**fantastically** [1] - 81:9
**far** [3] - 37:4, 42:8, 56:24
**fashion** [3] - 49:13, 59:21, 90:1
**faster** [1] - 59:23
**FCRA** [4] - 109:19, 109:23, 113:1, 113:3
**February** [7] - 20:24, 21:4, 21:6, 22:13, 24:5, 24:23, 24:25
**Federal** [3] - 55:23, 96:5, 99:2
**federal** [4] - 49:7, 54:7, 105:11, 109:19
**fees** [1] - 30:17
**few** [8] - 38:19, 48:1, 80:1, 82:2, 82:22, 83:5, 95:6, 99:5
**fifth** [1] - 46:23
**fight** [1] - 54:7
**fights** [1] - 19:4
**figure** [3] - 36:21, 111:25, 112:7
**file** [61] - 51:23, 52:24, 53:1, 53:5, 56:10, 56:11, 59:21, 62:9, 63:4, 70:3, 70:11, 70:14, 70:16, 70:19, 70:22, 73:1, 73:18, 73:19, 80:2, 80:6,

80:10, 81:21, 82:3, 83:14, 83:19, 83:20, 83:22, 84:12, 84:19, 84:20, 84:21, 84:22, 85:6, 86:20, 87:1, 87:3, 87:4, 87:6, 95:9, 95:11, 97:6, 97:23, 98:1, 98:3, 98:17, 99:23, 100:1, 100:3, 112:9, 112:14, 112:21, 114:3, 114:5, 114:6, 114:25, 115:1, 116:12, 117:7
**filed** [20] - 17:18, 38:13, 45:7, 46:15, 51:14, 54:24, 56:4, 67:25, 81:24, 84:9, 85:1, 85:10, 95:12, 96:8, 99:15, 101:11, 105:11, 108:13, 108:20, 108:25
**files** [1] - 53:14
**filing** [10] - 29:25, 63:7, 63:8, 64:24, 70:6, 80:4, 80:21, 83:18, 114:11
**final** [1] - 68:19
**finally** [1] - 92:23
**financial** [1] - 46:1
**fine** [11] - 41:15, 48:11, 48:15, 48:22, 50:14, 53:13, 54:15, 88:16, 88:18, 107:5, 116:19
**finely** [1] - 42:24
**firm** [4] - 81:4, 82:13, 86:4, 98:24
**firms** [1] - 108:5
**First** [6] - 61:4, 64:22, 65:9, 111:17, 115:15, 115:25
**first** [10] - 17:23, 61:10, 66:22, 66:25, 80:12, 105:5, 111:9, 112:14, 113:17, 115:7
**fit** [3] - 61:17, 62:10, 62:13
**fits** [1] - 103:21
**five** [6] - 27:14, 28:1, 42:18, 51:8, 79:14, 98:14
**Flexner** [2] - 24:2, 74:13
**floating** [1] - 94:15
**focus** [4] - 18:14, 19:7, 21:25, 100:10
**folks** [1] - 78:23
**following** [1] - 58:25

**Footnote** [2] - 53:20, 54:19
**foreclosing** [1] - 65:3
**foregoing** [1] - 117:20
**forever** [1] - 43:1
**forgot** [2] - 53:19, 75:23
**form** [8] - 21:4, 23:2, 23:6, 23:7, 23:18, 23:19, 25:5, 82:9
**formal** [1] - 104:23
**formally** [3] - 55:15, 97:3, 103:19
**formation** [1] - 45:8
**formed** [1] - 45:6
**forth** [5] - 55:9, 66:17, 87:10, 94:14, 94:15
**forward** [10] - 27:12, 27:24, 32:13, 46:9, 58:17, 84:2, 88:1, 93:6, 95:13, 115:18
**foundation** [1] - 109:9
**four** [10] - 20:13, 53:21, 58:1, 65:20, 68:6, 68:7, 73:8, 76:4, 81:15, 86:4
**frame** [1] - 95:5
**framed** [1] - 80:18
**free** [1] - 93:19
**freeze** [9] - 109:22, 109:23, 110:6, 110:10, 110:19, 110:24, 111:24, 112:1
**freezes** [4] - 110:14, 110:22, 113:1, 113:6
**Friday** [1] - 96:21
**full** [1] - 37:19
**full-blown** [1] - 37:19
**funding** [2] - 44:20, 45:1
**future** [3] - 91:15, 93:16, 94:2

**G**

**garbage** [1] - 90:7
**gather** [1] - 48:4
**Gavin** [2] - 108:22, 109:5
**General** [28] - 55:12, 55:15, 55:17, 55:23, 56:2, 56:15, 57:1, 57:5, 57:18, 57:19, 58:9, 59:8, 67:11, 74:21, 74:24, 95:8, 96:25, 97:3, 97:5, 97:6, 103:11, 103:19, 103:21, 104:8, 104:12,

104:14, 104:16, 104:23
**general** [1] - 72:21
**General's** [1] - 103:22
**general's** [1] - 104:1
**generally** [3] - 66:6, 67:16, 73:17
**given** [6] - 30:15, 37:21, 55:21, 58:15, 106:14, 110:8
**glad** [1] - 52:22
**glasses** [1] - 102:21
**glean** [2] - 36:14, 38:13
**gleaned** [1] - 35:8
**glitches** [1] - 78:2
**Gmail** [1] - 90:9
**gmail.com** [1] - 90:24
**go-betweens** [1] - 45:8
**greater** [1] - 105:19
**ground** [1] - 112:10
**grounds** [4] - 84:10, 113:20, 113:22, 115:20
**group** [7] - 34:24, 46:23, 48:9, 57:8, 71:3, 72:15, 107:11
**guess** [5] - 83:15, 85:20, 87:6, 88:20, 117:4
**gung** [1] - 83:6
**gung-ho** [1] - 83:6
**guys** [1] - 102:19

**H**

**hac** [1] - 78:13
**half** [1] - 86:8
**hand** [2] - 47:3, 71:25
**handle** [1] - 108:5
**happy** [10] - 54:7, 77:16, 79:14, 88:25, 89:9, 90:4, 93:23, 93:24, 93:25, 115:10
**hard** [1] - 112:12
**hardest** [1] - 101:15
**HARVEY** [1] - 17:2
**head** [1] - 31:24
**heads** [2] - 64:14, 65:1
**hear** [7] - 33:17, 39:2, 42:22, 43:24, 44:9, 77:19, 105:5
**heard** [7] - 61:4, 63:17, 71:1, 71:4, 71:14, 77:2, 95:22
**hearing** [9] - 23:23, 60:3, 63:23, 72:6, 73:15, 77:14, 77:21, 83:11, 107:25

**held** [3] - 17:1, 32:10, 100:2
**helpful** [2] - 59:21, 92:19
**hi** [2] - 39:7, 65:17
**highlighted** [1] - 39:11
**hit** [1] - 89:19
**Hiya** [4] - 39:6, 60:11, 61:25, 78:14
**ho** [1] - 83:6
**holiday** [2] - 51:21, 109:12
**home** [6] - 99:1, 109:15, 109:16, 109:24, 110:1, 110:17
**honestly** [1] - 85:9
**Honor** [151] - 17:14, 18:3, 18:5, 20:12, 21:21, 22:11, 23:6, 23:11, 23:22, 24:4, 25:10, 25:25, 26:13, 26:22, 27:3, 27:7, 27:17, 28:3, 28:15, 29:4, 29:6, 29:9, 29:15, 31:3, 31:11, 31:23, 32:25, 33:22, 36:2, 36:9, 36:17, 36:21, 37:16, 37:18, 37:19, 38:18, 38:21, 39:5, 41:6, 41:16, 41:22, 42:7, 42:20, 43:8, 43:14, 43:24, 44:7, 44:10, 45:18, 46:22, 47:17, 47:20, 48:8, 48:22, 49:4, 49:19, 50:9, 50:12, 51:20, 52:6, 52:9, 52:17, 52:19, 53:8, 53:25, 54:4, 54:20, 54:23, 55:8, 56:9, 57:21, 58:6, 58:20, 59:16, 60:1, 61:20, 62:19, 64:7, 65:3, 65:15, 65:17, 65:24, 67:15, 69:25, 72:4, 72:16, 73:16, 73:23, 74:9, 74:12, 74:14, 74:16, 76:6, 76:17, 76:25, 77:5, 77:13, 77:18, 78:8, 78:20, 79:11, 79:24, 80:14, 82:5, 82:7, 83:2, 83:11, 85:25, 86:3, 87:12, 87:21, 88:23, 89:18, 90:5, 90:16, 90:18, 91:9, 91:21, 93:11, 94:18, 94:22, 95:15, 95:25, 96:12, 96:18, 97:9, 97:18,

98:6, 98:15, 98:22, 99:5, 100:25, 101:15, 102:23, 103:3, 103:8, 103:10, 103:14, 103:20, 104:4, 104:10, 105:21, 106:7, 106:9, 109:5, 111:9, 113:17, 115:5, 115:13, 116:14, 116:22
**Honor's** [3] - 68:13, 103:21, 113:4
**Honorable** [1] - 17:1
**hope** [4] - 53:2, 56:13, 76:6, 102:1
**hopefully** [1] - 48:22
**hoping** [2] - 52:24, 54:12, 83:16
**horse** [1] - 66:5
**hotmail.com** [1] - 90:24
**hours** [1] - 49:7
**housekeeping** [1] - 107:14
**humming** [1] - 75:5
**hundred** [4] - 35:21, 36:4, 36:5, 36:8

**I**

**ice** [1] - 85:1
**idea** [4] - 21:11, 73:23, 74:3, 94:17
**identification** [1] - 110:9
**identified** [1] - 71:22
**identify** [1] - 95:6
**identity** [1] - 114:12
**III** [1] - 17:2
**imagine** [1] - 32:22
**immaterial** [1] - 63:24
**immediately** [3] - 59:19, 59:20, 110:25
**impact** [3] - 30:4, 44:17, 58:16
**implemented** [1] - 109:22
**importance** [1] - 58:15
**important** [7] - 19:14, 57:13, 58:20, 59:13, 62:24, 76:16, 111:20
**importantly** [2] - 55:12, 110:3
**Inc** [1] - 91:11
**include** [2] - 37:16, 115:5
**included** [2] - 23:17, 113:24
**includes** [2] - 25:4,

92:5
**including** [3] - 37:24, 41:19, 77:25
**inconsistent** [1] - 54:10
**incorporate** [1] - 105:24
**incorporated** [2] - 38:2, 38:4
**incorporates** [1] - 37:22
**indemnification** [1] - 37:25
**independent** [1] - 21:19
**indicated** [5] - 19:8, 71:20, 76:14, 76:15, 77:14
**indirectly** [2] - 45:15, 111:10
**individual** [7] - 30:6, 35:4, 69:7, 88:17, 94:7, 110:20
**individuals** [9] - 31:17, 33:7, 35:21, 45:19, 110:13, 110:21, 111:14, 111:21, 112:2
**Infomatics** [1] - 44:12
**Inform** [1] - 44:11
**information** [23] - 21:11, 21:13, 21:15, 69:17, 69:19, 76:8, 88:25, 89:9, 89:17, 90:15, 109:15, 109:16, 109:24, 110:1, 110:5, 110:18, 111:1, 111:22, 112:17, 113:13, 114:7, 114:9
**informative** [1] - 36:20
**initial** [2] - 66:12, 66:19
**Innovis** [1] - 83:4
**input** [4] - 50:12, 55:11, 82:10, 82:24
**inside** [1] - 25:14
**instance** [2] - 61:10, 62:9
**instant** [1] - 81:13
**instead** [1] - 86:23
**insurance** [1] - 37:25
**integral** [1] - 110:1
**intend** [2] - 67:16, 112:23
**interest** [8] - 21:19, 30:15, 30:17, 31:19, 46:2, 60:20, 75:15
**interested** [3] - 26:21, 44:16, 77:15

**interim** [1] - 58:21, 76:19
**interpreted** [1] - 62:6
**interpreting** [1] - 96:6
**interrupt** [1] - 67:6
**intertwined** [1] - 94:23
**intervene** [4] - 55:13, 57:2, 57:7, 104:2
**inundate** [1] - 91:16
**inundated** [1] - 91:24
**invalid** [1] - 41:11
**investigation** [1] - 112:3
**invitation** [1] - 94:23
**involve** [2] - 84:10, 99:13
**involved** [7] - 19:4, 23:20, 36:4, 45:7, 57:16, 79:13, 99:14
**issue** [49] - 17:23, 18:16, 19:9, 19:14, 19:24, 20:5, 29:11, 29:12, 33:15, 35:20, 36:11, 36:25, 37:1, 43:7, 45:4, 47:2, 48:16, 48:24, 51:17, 53:6, 53:18, 54:8, 54:21, 55:4, 57:12, 57:13, 58:16, 59:3, 62:4, 62:21, 62:25, 70:10, 79:17, 82:21, 91:12, 92:4, 93:6, 95:7, 97:4, 100:10, 103:9, 103:11, 105:2, 106:25, 107:1, 109:9, 111:5, 111:17, 116:10
**issued** [1] - 58:22
**issues** [17] - 18:25, 21:23, 32:14, 54:2, 57:15, 61:14, 62:24, 63:18, 66:4, 67:14, 69:6, 69:22, 93:3, 94:5, 99:5, 105:19, 106:14
**item** [1] - 92:8
**items** [2] - 92:6, 92:11
**iterations** [1] - 22:13
**itself** [1] - 54:4

**J**

**James** [1] - 106:7
**jammed** [1] - 88:5
**January** [2] - 21:1, 21:3
**Jason** [1] - 83:2
**Jersey** [21] - 31:13, 31:14, 44:15, 45:25, 52:19, 53:9, 58:22,

63:25, 64:4, 64:6, 64:9, 64:11, 79:1, 97:1, 97:4, 102:7, 102:10, 103:19, 104:5, 106:23, 106:24
**John** [12] - 17:6, 20:17, 21:13, 21:20, 106:6, 111:13, 111:16, 114:11, 114:14, 114:17, 114:20, 116:9
**join** [17] - 61:11, 67:16, 71:2, 71:12, 71:15, 71:20, 74:18, 81:7, 81:13, 81:21, 82:11, 83:16, 83:21, 85:14, 86:13, 87:13
**joining** [3] - 71:13, 97:23, 99:7
**joint** [2] - 52:24, 66:16
**judge** [2] - 55:22, 95:22
**Judge** [17] - 73:6, 79:23, 92:2, 92:18, 92:23, 98:18, 104:9, 105:6, 105:10, 105:15, 106:13, 107:1, 107:9, 108:4, 116:19, 116:25, 117:12
**judgment** [1] - 103:2
**judicially** [1] - 62:16
**July** [9] - 67:2, 75:4, 96:23, 96:24, 97:7, 97:13, 101:7, 101:13, 101:17
**June** [20] - 56:10, 57:3, 66:18, 82:8, 82:16, 96:8, 96:20, 96:21, 97:22, 99:10, 99:12, 101:11, 108:9, 115:24, 116:13, 116:15, 116:18, 116:20, 116:21
**jurisdiction** [32] - 17:24, 18:19, 18:25, 19:1, 19:13, 21:22, 22:1, 24:12, 29:12, 30:12, 31:20, 31:21, 32:1, 32:7, 32:10, 32:12, 32:14, 32:15, 32:19, 33:14, 34:6, 34:11, 48:24, 49:1, 58:14, 61:3, 70:7, 74:5, 86:16, 100:4, 112:13, 116:8
**jurisdictional** [4] - 54:3, 54:6, 60:12,

73:21

# K

**keep** [2] - 109:24, 117:10
**Kelly** [2] - 65:17, 80:14
**KIMREY** [75] - 39:5, 39:8, 39:15, 39:22, 40:4, 40:8, 40:11, 40:15, 40:23, 41:10, 41:16, 41:22, 42:1, 49:4, 49:7, 49:11, 50:11, 50:14, 50:16, 59:25, 60:3, 60:10, 60:15, 60:18, 60:22, 61:1, 61:6, 61:10, 61:14, 61:19, 61:24, 62:3, 62:6, 62:16, 62:19, 63:2, 63:14, 63:17, 64:6, 64:9, 64:14, 64:17, 64:22, 65:1, 65:5, 65:8, 71:16, 71:18, 78:8, 78:16, 79:24, 97:9, 97:12, 97:18, 97:20, 99:5, 99:9, 99:16, 99:18, 100:6, 100:8, 100:25, 101:2, 101:5, 101:10, 101:14, 101:18, 101:23, 102:4, 102:12, 102:17, 102:23, 103:1, 103:3, 103:6
**Kimrey** [7] - 39:6, 49:4, 59:25, 71:18, 78:8, 79:4, 97:10
**kind** [5] - 82:4, 83:13, 102:25, 109:20, 114:4
**Knight** [2] - 91:11
**knowing** [2] - 62:14, 115:18
**knows** [1] - 85:23

# L

**lack** [1] - 112:13
**lady's** [1] - 75:23
**last** [18] - 23:23, 58:21, 58:24, 59:11, 60:3, 63:23, 72:6, 73:15, 75:9, 75:23, 77:14, 78:9, 78:21, 90:5, 92:4, 103:9, 106:13, 107:17
**late** [3] - 92:16, 92:17, 108:10
**Latham** [1] - 86:3
**law** [11] - 22:5, 26:9,

28:22, 28:23, 36:1, 36:18, 36:19, 45:20, 113:8, 113:13
**Law** [15] - 17:5, 17:7, 19:17, 22:20, 22:23, 25:7, 25:8, 29:6, 58:23, 61:25, 62:6, 63:20, 70:5, 77:5, 109:18
**lawsuit** [1] - 21:16
**lawsuits** [1] - 26:19
**lawyer** [2] - 88:16, 88:21
**lawyers** [8] - 19:5, 48:5, 50:11, 78:12, 78:25, 79:12, 79:20, 98:19
**lay** [2] - 22:4, 109:9
**lead** [2] - 46:25, 78:13
**leads** [1] - 70:10
**learn** [2] - 25:18, 25:19
**least** [5] - 19:8, 39:18, 75:7, 86:16, 88:11
**leave** [3] - 55:1, 64:24, 110:21
**lectern** [1] - 98:7
**led** [1] - 31:15
**Lee** [1] - 106:7
**LEE** [24] - 96:3, 104:25, 106:7, 106:11, 106:13, 106:18, 107:1, 107:4, 107:6, 107:9, 107:13, 107:17, 107:21, 107:24, 108:2, 108:4, 108:16, 108:19, 116:17, 116:19, 116:25, 117:3, 117:10, 117:12
**left** [1] - 110:16
**legal** [1] - 87:7
**length** [1] - 52:18
**less** [2] - 30:17, 116:25
**letter** [9] - 18:5, 18:11, 67:25, 71:10, 71:19, 72:12, 81:13, 81:21, 105:3
**levels** [2] - 29:23, 30:5
**Lexis** [1] - 106:24
**LexisNexis** [4] - 17:6, 96:1, 96:3, 104:25, 106:6, 107:18, 108:10, 108:23, 109:6, 110:4, 110:10, 110:13
**lift** [3] - 110:5, 110:6, 112:1

**lifted** [3] - 110:11, 110:19, 110:24
**likely** [1] - 27:24
**likewise** [1] - 91:14
**limit** [4] - 49:7, 53:9, 97:13, 101:18
**limitations** [1] - 114:15
**limited** [9] - 48:23, 49:1, 49:9, 49:17, 63:5, 67:4, 82:3, 96:21, 101:8
**line** [3] - 92:5, 92:8, 92:11
**link** [1] - 77:25
**linked** [1] - 28:8
**list** [15] - 59:18, 69:9, 72:19, 75:10, 75:16, 77:17, 78:5, 78:22, 79:12, 79:15, 79:20, 92:3, 92:4, 92:5, 113:3
**listen** [1] - 26:3
**listened** [1] - 47:23
**listing** [2] - 84:13, 92:6
**lists** [7] - 68:1, 68:5, 68:7, 68:25, 93:3, 93:18, 93:24
**litigants** [2] - 89:14, 114:12
**litigation** [3] - 44:20, 45:1, 46:2
**local** [4] - 45:25, 78:25
**Local** [1] - 44:19
**lodestar** [2] - 39:10, 64:2
**log** [1] - 28:22
**look** [14] - 20:22, 27:20, 37:1, 43:24, 49:21, 50:1, 50:25, 74:15, 75:2, 80:9, 102:19, 102:24, 104:21, 117:6
**looking** [2] - 46:18, 74:4
**looks** [1] - 108:6
**lose** [2] - 34:6, 81:14
**lost** [1] - 88:14

# M

**mail** [2] - 90:9, 90:10
**main** [3] - 62:10, 74:15, 74:18
**majority** [2] - 81:15, 81:20
**manage** [2] - 73:25, 74:10
**MAO** [14] - 23:11,

23:13, 23:22, 24:2, 26:13, 26:16, 26:22, 27:2, 74:12, 75:22, 76:6, 76:10, 90:18, 90:21
**Mao** [5] - 23:13, 24:2, 74:12, 90:18
**March** [2] - 109:1, 109:3
**Marie** [1] - 117:24
**Mark** [4] - 24:2, 74:12, 87:21, 90:18
**massive** [1] - 34:23
**matter** [27] - 17:23, 18:24, 19:1, 19:13, 19:14, 21:25, 24:11, 29:12, 30:12, 31:20, 31:21, 32:6, 32:10, 32:11, 32:15, 32:19, 33:13, 36:1, 48:24, 49:1, 55:16, 58:14, 61:2, 63:18, 68:23, 113:3, 117:21
**matters** [2] - 17:8, 109:18
**McGee** [17] - 72:4, 72:8, 72:14, 73:6, 73:12, 73:15, 73:23, 74:14, 98:6, 98:9, 98:10, 98:13, 98:18, 98:22, 98:25, 99:4
**MDL** [2] - 59:13, 59:14
**mean** [23] - 24:25, 31:7, 31:8, 31:10, 32:5, 34:8, 34:15, 35:24, 36:5, 54:1, 57:12, 63:21, 76:6, 76:24, 80:11, 84:1, 85:9, 94:5, 94:8, 107:16, 113:25, 114:22, 115:4
**meaning** [4] - 92:13, 93:2, 93:3
**meaningless** [1] - 36:19
**means** [1] - 67:19
**mechanism** [1] - 88:7
**members** [1] - 45:13
**Memorial** [1] - 51:21
**mention** [2] - 38:22, 67:24
**mentioned** [4] - 37:12, 75:24, 83:11, 88:3
**mentioning** [1] - 74:7
**merits** [1] - 93:22
**message** [1] - 90:11
**Metropolitan** [1] - 31:14
**mid** [1] - 109:3
**might** [5] - 61:21,

78:3, 83:12, 85:15
**mind** [2] - 34:8, 50:16
**minimum** [1] - 71:2
**minute** [1] - 26:2
**minutes** [3] - 83:5, 116:25, 117:1
**miss** [1] - 48:17
**misspeak** [1] - 64:7
**Mitchell** [1] - 117:24
**mitigated** [1] - 87:15
**model** [1] - 21:4
**modified** [2] - 102:10, 102:12
**moment** [4] - 22:1, 68:23, 69:24, 87:16
**Monday** [8] - 51:1, 51:4, 51:6, 51:7, 96:21, 100:18, 116:12, 116:15
**month** [2] - 67:9, 116:3
**months** [8] - 68:7, 74:17, 75:4, 75:7, 85:19, 108:16, 108:18
**moreover** [1] - 111:18
**morning** [4] - 51:1, 51:4, 51:6, 78:1
**most** [2] - 80:25, 91:14
**motion** [63] - 19:16, 20:16, 27:11, 27:24, 31:6, 32:1, 33:23, 41:8, 46:21, 51:13, 51:14, 53:21, 54:17, 56:3, 58:6, 58:14, 60:12, 63:3, 63:6, 70:4, 70:11, 70:19, 73:3, 73:5, 73:14, 83:21, 84:9, 84:19, 86:23, 87:6, 87:8, 97:23, 98:1, 98:17, 99:13, 99:14, 100:14, 105:12, 105:25, 106:19, 107:17, 112:6, 112:9, 112:12, 112:21, 112:24, 113:25, 114:3, 114:5, 114:6, 115:1, 115:11, 115:14, 115:15, 115:21, 115:25, 116:8, 116:9, 116:10, 116:12, 117:7
**motions** [34] - 17:9, 18:12, 18:19, 18:20, 32:14, 46:15, 46:19, 47:9, 54:25, 58:18, 59:19, 60:10, 61:1,

63:14, 64:15, 64:24, 65:5, 66:6, 67:20, 70:2, 70:6, 70:17, 70:22, 84:21, 84:22, 85:6, 86:5, 87:4, 98:2, 99:9, 99:12, 100:3, 116:7
**motive** [5] - 21:14, 21:16, 34:21, 34:23, 36:14
**mounting** [1] - 75:18
**movants** [1] - 99:9
**move** [12] - 38:8, 47:11, 50:17, 51:5, 64:19, 95:13, 106:22, 107:2, 107:19, 107:21, 108:9, 116:1
**moved** [1] - 109:14
**moving** [2] - 58:17, 95:18
**MR** [393] - 17:14, 17:16, 17:18, 17:20, 18:3, 18:5, 18:10, 19:1, 19:3, 19:18, 19:25, 20:3, 20:6, 20:10, 20:12, 20:16, 21:3, 21:6, 21:17, 22:2, 22:11, 22:18, 22:23, 23:1, 23:6, 23:9, 23:11, 23:13, 23:22, 24:2, 24:4, 24:7, 24:9, 24:13, 24:15, 24:18, 24:21, 25:10, 25:13, 25:21, 25:25, 26:4, 26:13, 26:16, 26:22, 27:2, 27:7, 27:17, 27:21, 28:3, 28:6, 28:13, 28:15, 29:4, 29:6, 29:15, 29:22, 30:3, 30:14, 30:23, 31:3, 31:9, 31:11, 32:4, 32:20, 32:23, 32:25, 33:3, 33:10, 33:13, 33:19, 33:22, 34:1, 34:4, 34:8, 34:11, 34:13, 34:18, 34:21, 35:1, 35:4, 35:8, 35:23, 36:2, 36:9, 36:10, 36:13, 36:24, 37:1, 37:10, 37:16, 37:18, 37:24, 38:9, 38:17, 38:20, 38:21, 39:3, 39:5, 39:8, 39:15, 39:22, 40:4, 40:8, 40:11, 40:15, 40:23, 41:10, 41:16, 41:22, 42:1, 42:7, 42:11, 42:14, 42:20,

42:25, 43:3, 43:8, 43:11, 43:14, 43:21, 44:3, 44:6, 44:10, 44:14, 44:17, 44:25, 45:11, 45:13, 45:17, 45:22, 46:4, 46:22, 47:17, 47:20, 47:25, 48:8, 48:12, 48:16, 48:21, 49:2, 49:4, 49:7, 49:11, 49:19, 50:9, 50:11, 50:14, 50:16, 50:19, 51:18, 51:20, 52:3, 52:6, 52:9, 52:17, 53:2, 53:5, 53:8, 53:12, 53:16, 53:24, 54:9, 54:12, 54:15, 54:17, 54:20, 54:23, 55:8, 55:17, 56:5, 56:9, 56:17, 56:23, 57:11, 57:15, 57:24, 58:3, 58:5, 58:20, 59:11, 59:25, 60:3, 60:10, 60:15, 60:18, 60:22, 61:1, 61:6, 61:10, 61:14, 61:19, 61:24, 62:3, 62:6, 62:16, 62:19, 63:2, 63:14, 63:17, 64:6, 64:9, 64:14, 64:17, 64:22, 65:1, 65:5, 65:8, 65:14, 71:16, 71:18, 72:4, 72:8, 72:14, 73:6, 73:12, 73:15, 73:23, 74:12, 75:22, 76:6, 76:10, 77:18, 77:20, 77:23, 78:8, 78:16, 78:20, 79:3, 79:10, 79:23, 79:24, 82:7, 82:15, 83:2, 83:4, 83:9, 83:23, 83:25, 84:9, 84:13, 84:16, 84:25, 85:3, 85:9, 85:13, 85:17, 85:22, 85:24, 86:3, 86:7, 86:10, 86:15, 86:19, 86:23, 87:12, 87:15, 87:17, 87:19, 87:21, 87:24, 88:3, 88:14, 88:23, 89:3, 89:8, 89:18, 89:22, 90:4, 90:16, 90:18, 90:21, 91:9, 91:23, 92:2, 93:9, 93:11, 93:18, 93:21, 94:17, 94:22, 95:4, 95:15, 95:25, 96:3, 96:12, 96:14, 96:16, 96:18, 97:9, 97:12, 97:15, 97:18, 97:20, 98:6, 98:9, 98:13, 98:18,

98:22, 98:25, 99:4, 99:5, 99:9, 99:16, 99:18, 100:6, 100:8, 100:25, 101:2, 101:5, 101:10, 101:14, 101:18, 101:23, 102:4, 102:12, 102:17, 102:23, 103:1, 103:3, 103:6, 103:8, 103:17, 103:20, 104:1, 104:4, 104:9, 104:10, 104:15, 104:18, 104:25, 105:6, 105:8, 105:10, 105:15, 106:2, 106:7, 106:11, 106:13, 106:18, 107:1, 107:4, 107:6, 107:9, 107:13, 107:17, 107:21, 107:24, 108:2, 108:4, 108:16, 108:19, 108:20, 108:22, 108:25, 109:5, 109:8, 109:14, 110:8, 110:16, 111:8, 112:5, 112:11, 112:21, 112:24, 113:3, 113:10, 113:16, 113:19, 113:22, 114:1, 114:5, 114:10, 114:15, 114:18, 114:21, 115:3, 115:5, 115:8, 115:10, 115:13, 115:20, 115:23, 116:3, 116:6, 116:14, 116:17, 116:19, 116:22, 116:25, 117:3, 117:10, 117:12
**MS** [24] - 65:17, 65:20, 65:24, 66:21, 66:24, 67:19, 68:4, 68:10, 68:15, 68:18, 68:22, 69:3, 70:15, 70:25, 71:7, 71:11, 76:4, 80:14, 80:17, 81:3, 81:6, 81:9, 81:18, 82:5
**multiple** [2] - 39:22, 77:24
**musical** [1] - 98:7
**must** [1] - 114:13
**muzzled** [1] - 63:12

**N**

**nail** [1] - 107:24
**name** [8] - 18:7, 24:1, 29:5, 44:10, 71:17, 75:23, 108:21, 111:10
**named** [3] - 30:12, 30:19, 112:7
**names** [3] - 78:24, 112:2, 114:10
**narrow** [2] - 57:13, 57:15
**nature** [1] - 61:15
**necessarily** [3] - 40:25, 77:8, 80:5
**necessary** [5] - 22:7, 39:1, 66:14, 80:25, 112:5
**need** [37] - 17:8, 19:21, 20:9, 20:20, 21:11, 21:13, 21:15, 22:8, 22:11, 22:13, 28:4, 28:19, 30:25, 31:1, 35:19, 36:13, 37:4, 38:9, 46:4, 49:14, 50:17, 56:11, 59:7, 66:22, 66:25, 71:7, 81:7, 94:3, 96:2, 96:10, 107:13, 108:2, 112:2, 116:16, 116:25, 117:14
**needed** [5] - 27:10, 27:23, 29:21, 33:20, 82:15
**never** [4] - 26:23, 50:16, 83:9, 95:22
**new** [2] - 91:18, 93:2
**New** [22] - 31:13, 44:15, 45:25, 52:18, 53:9, 58:22, 63:25, 64:4, 64:6, 64:9, 64:11, 79:1, 96:25, 97:4, 102:7, 102:10, 103:19, 104:5, 106:23, 106:24, 109:11
**news** [1] - 71:16
**next** [7] - 51:15, 67:8, 72:17, 95:6, 96:4, 100:12, 100:21
**night** [2] - 78:9, 92:4
**nobody** [2] - 47:3, 54:21
**non** [2] - 46:6, 60:4
**non-controversial** [1] - 46:6
**non-remand** [1] - 60:4
**nonconsolidated** [2] -

101:19, 101:21
**nonfacial** [1] - 99:6
**note** [5] - 18:23, 54:24, 60:20, 63:22, 68:19
**noted** [1] - 111:9
**nothing** [4] - 30:11, 32:17, 93:22, 94:15
**notice** [9] - 40:5, 46:18, 55:13, 55:20, 56:15, 56:17, 57:3, 76:13, 104:16
**noticed** [2] - 62:17, 104:23
**notices** [5] - 20:25, 33:8, 89:12, 93:15, 108:6
**notification** [1] - 87:25
**notified** [6] - 55:16, 55:17, 56:2, 59:8, 95:8, 97:1
**notify** [7] - 91:16, 97:3, 103:11, 103:18, 103:19, 103:20
**notion** [2] - 60:4, 62:22
**notwithstanding** [1] - 115:14
**nuance** [2] - 44:15, 44:16
**nuances** [1] - 45:20
**number** [18] - 17:8, 18:18, 20:1, 20:18, 23:8, 34:24, 35:1, 51:21, 57:16, 58:24, 83:4, 92:6, 92:11, 92:12, 110:9, 111:3, 111:23, 111:25
**numbers** [2] - 65:21, 74:6
**numerous** [1] - 72:9

**O**

**object** [1] - 47:18
**objection** [5] - 51:3, 54:16, 65:11, 65:12, 65:15
**objections** [1] - 50:2
**obligation** [6] - 88:19, 89:16, 113:13, 114:6, 114:23, 114:24
**oblige** [1] - 77:16
**obliged** [1] - 92:25
**obtain** [1] - 47:7
**obviously** [9] - 24:10, 46:16, 52:15, 55:7, 57:12, 62:22, 70:23,

79:16, 100:23
**occurred** [1] - 83:10
**October** [1] - 57:8
**office** [5] - 25:15, 56:8, 79:14, 103:22, 104:1
**Officer** [2] - 25:7, 25:8
**officers** [6] - 25:3, 26:9, 34:5, 59:17, 77:15, 93:12
**official** [2] - 28:22, 28:23
**officials** [1] - 22:5
**old** [1] - 69:11
**omnibus** [1] - 74:18
**once** [3] - 26:14, 26:16, 100:23
**one** [57] - 17:7, 20:17, 22:8, 23:2, 23:6, 23:7, 23:12, 25:4, 25:5, 25:22, 26:8, 30:4, 30:5, 31:5, 32:25, 34:15, 34:24, 38:11, 39:18, 40:13, 42:18, 43:2, 44:15, 46:23, 53:18, 57:13, 58:20, 62:21, 62:23, 66:18, 68:6, 68:8, 71:12, 73:9, 73:13, 75:22, 78:11, 79:25, 80:12, 80:19, 87:9, 88:9, 92:10, 94:5, 95:17, 100:10, 103:9, 106:16, 109:16, 110:21, 112:11, 112:25, 113:5, 115:1, 115:17
**one-fifth** [1] - 46:23
**ones** [1] - 97:1
**ongoing** [1] - 68:23
**open** [2] - 17:1, 94:22
**operating** [2] - 102:6, 102:7
**operations** [1] - 117:4
**operative** [1] - 38:1
**opinion** [3] - 58:22, 80:20, 113:5
**opportunity** [4] - 46:13, 47:13, 61:3, 66:15
**opposing** [5] - 71:19, 76:14, 77:2, 77:13, 83:13
**opposition** [9] - 51:20, 56:24, 56:25, 62:20, 96:23, 97:7, 97:12, 97:13, 98:11
**opt** [3] - 60:23, 63:9, 77:4
**opt-out** [1] - 77:4

**oral** [1] - 100:24
**order** [24] - 23:22, 46:11, 49:13, 49:21, 51:2, 51:7, 51:15, 52:7, 68:13, 80:18, 93:5, 93:6, 99:25, 100:12, 100:19, 102:1, 102:13, 103:15, 106:20, 109:24, 110:2, 112:3, 117:4, 117:14
**ordered** [2] - 23:23, 26:24, 76:25, 93:1, 104:19
**orderly** [1] - 90:1
**organizations** [1] - 64:23
**organized** [1] - 76:20
**originating** [1] - 91:3
**otherwise** [2] - 86:17, 87:6
**ought** [1] - 42:16
**ourselves** [1] - 91:25
**outcome** [1] - 46:2
**outliers** [3] - 52:25, 53:5, 82:2
**outlined** [1] - 28:18
**outside** [1] - 44:4
**overambitious** [1] - 107:15
**overthink** [1] - 98:15
**own** [6] - 53:1, 56:12, 66:15, 75:13, 77:10, 83:14

# P

**P-U-R-C-A-R-O** [1] - 65:18
**p.m** [2] - 17:2, 117:18
**packet** [2] - 76:23, 76:24
**page** [6] - 29:24, 52:18, 81:19, 97:13, 101:10, 101:18
**pages** [15] - 53:10, 53:15, 63:4, 67:5, 82:4, 96:10, 96:12, 96:19, 96:22, 97:15, 98:11, 98:17, 98:20, 101:8, 101:24
**paper** [1] - 108:6
**papers** [2] - 31:12, 43:21
**parallel** [1] - 58:13
**pardon** [1] - 95:15
**PARIKH** [20] - 29:4, 29:6, 29:15, 77:18, 77:20, 77:23, 78:20, 79:3, 79:10, 79:23,

88:23, 89:3, 89:8, 90:4, 103:8, 103:17, 103:20, 104:1, 104:4, 104:9
**Parikh** [4] - 29:6, 77:20, 88:23, 103:8
**parol** [1] - 43:18
**parse** [1] - 42:24
**part** [8] - 26:5, 49:5, 54:17, 61:8, 76:22, 110:1, 112:5, 115:10
**participate** [3] - 61:4, 66:3, 74:25
**participating** [2] - 65:8, 75:11
**participation** [3] - 64:15, 64:20, 65:13
**particular** [1] - 95:11
**particularly** [1] - 19:12
**parties** [9] - 18:14, 18:18, 21:23, 30:15, 45:5, 45:24, 46:1, 63:15, 89:15
**party** [4] - 31:19, 44:19, 44:25, 60:20
**pass** [2] - 48:5, 89:10
**passed** [1] - 77:5
**password** [1] - 76:10
**path** [2] - 21:21, 83:12
**patient** [1] - 101:2
**PBA** [2] - 31:13, 90:10
**PEM** [1] - 29:6
**pending** [2] - 85:10, 99:11
**Pennsylvania** [1] - 102:8
**people** [22] - 21:10, 24:22, 25:15, 29:24, 30:16, 31:9, 34:6, 34:24, 36:4, 48:10, 51:24, 69:4, 72:1, 76:22, 87:4, 89:12, 90:22, 93:15, 94:2, 100:1, 105:19, 110:17
**People** [1] - 44:11
**people's** [1] - 89:16
**percent** [2] - 30:17, 30:18
**perfect** [2] - 28:12, 48:19
**perhaps** [3] - 47:23, 61:16, 75:22
**period** [12] - 23:3, 23:5, 23:15, 23:20, 35:16, 41:3, 41:19, 47:10, 49:16, 59:8, 66:13, 70:14
**permission** [2] - 49:10, 95:23

**permitted** [1] - 87:5
**person** [8] - 68:25, 69:18, 80:21, 92:6, 92:22, 110:2, 110:4, 110:5
**personal** [13] - 18:19, 21:22, 31:25, 32:14, 52:19, 70:7, 74:4, 76:8, 86:16, 100:4, 110:9, 112:13, 116:8
**persons** [18] - 31:5, 31:7, 59:18, 68:2, 75:25, 76:7, 76:12, 76:19, 77:9, 77:10, 78:5, 87:25, 88:6, 89:6, 90:12, 92:3, 92:14, 93:4
**petition** [4] - 47:10, 48:17, 51:25, 64:11
**petitions** [1] - 52:11
**phone** [1] - 92:6
**pick** [1] - 94:12
**piecemeal** [2] - 73:11, 73:13, 98:3
**PIN** [1] - 110:8
**pipeline** [2] - 70:18, 73:24
**place** [5] - 35:12, 67:20, 75:4, 77:6, 110:22
**plaintiff** [6] - 65:14, 91:15, 94:4, 112:10, 113:15, 114:20
**plaintiffs** [36] - 17:16, 20:2, 22:4, 23:13, 24:3, 29:7, 30:6, 30:12, 30:13, 30:19, 38:17, 43:8, 48:21, 53:20, 53:24, 67:9, 72:5, 72:7, 72:8, 74:13, 77:20, 88:11, 88:24, 90:3, 90:19, 92:19, 92:24, 106:8, 111:11, 112:8, 112:15, 113:16, 114:10, 115:19
**plaintiffs'** [9] - 21:7, 58:10, 78:17, 79:20, 88:18, 91:20, 94:21, 100:15, 114:6
**play** [1] - 98:7
**pleading** [4] - 83:14, 83:18, 83:19, 111:13
**pleadings** [2] - 67:21, 67:22
**plenty** [1] - 104:8
**point** [18] - 35:19, 38:5, 39:1, 42:23, 45:23, 45:24, 51:7, 58:10, 62:8, 70:21,

70:25, 74:15, 84:11, 86:11, 87:11, 102:17, 113:15, 113:17
**points** [1] - 97:9
**policies** [3] - 28:8, 41:20, 42:2
**policy** [2] - 37:24, 40:24
**posed** [1] - 95:7
**position** [7] - 57:5, 67:11, 83:9, 86:11, 86:19, 88:20, 98:20
**positions** [1] - 75:8
**possibility** [1] - 33:24
**possible** [4] - 60:24, 64:18, 64:19, 85:16
**possibly** [5] - 52:23, 73:21, 75:1
**post** [2] - 39:12, 41:12
**post-date** [2] - 39:12, 41:12
**potential** [1] - 62:22
**potentially** [7] - 18:16, 32:7, 62:10, 62:25, 77:4, 92:13, 92:15
**practical** [3] - 60:9, 68:23, 70:25
**practice** [2] - 44:15, 115:11
**practices** [1] - 52:20
**predated** [1] - 21:19
**preempted** [3] - 113:1, 113:4, 113:7
**preemption** [1] - 113:10
**prefer** [2] - 84:20, 98:22
**prejudice** [1] - 70:6
**prejudiced** [1] - 117:8
**preluding** [1] - 75:5
**prepare** [1] - 116:7
**prepared** [2] - 75:8, 107:21
**preparing** [1] - 112:5
**presentation** [1] - 54:13
**preserve** [1] - 73:20
**press** [1] - 64:22
**presumably** [1] - 111:5
**presume** [4] - 67:12, 67:19, 75:16, 110:21
**pretty** [5] - 19:14, 30:25, 42:12, 56:24, 108:6
**privacy** [28] - 28:8, 29:11, 37:11, 37:24, 40:23, 42:2, 69:11, 109:20, 111:13

**privilege** [2] - 75:15, 75:16
**pro** [1] - 78:13
**problem** [5] - 35:13, 74:1, 78:18, 80:2, 111:9
**problems** [2] - 94:7, 94:16
**procedural** [1] - 46:5
**Procedure** [3] - 55:23, 96:6, 99:2
**procedure** [2] - 47:5, 48:3
**proceed** [4] - 18:13, 19:12, 113:15, 115:13
**Proceedings** [1] - 117:18
**proceedings** [2] - 75:12, 117:21
**PROCEEDINGS** [1] - 17:1
**proceeds** [1] - 113:8
**process** [16] - 28:17, 28:21, 28:24, 29:1, 29:16, 30:9, 30:20, 31:15, 38:24, 65:9, 65:10, 66:3, 92:13, 111:11, 111:18
**produce** [7] - 23:23, 27:13, 29:2, 29:8, 35:15, 38:23, 41:18
**produced** [13] - 20:23, 22:19, 26:24, 27:15, 35:14, 35:15, 38:11, 38:16, 41:7, 47:6, 68:1
**production** [5] - 46:12, 49:15, 49:24, 50:24, 100:16
**productions** [1] - 59:18
**promptly** [2] - 38:16, 103:16
**proof** [1] - 54:1
**proper** [2] - 54:25, 86:20
**propose** [2] - 67:2, 84:13
**proposed** [6] - 59:23, 66:7, 66:18, 67:6, 75:3, 80:18
**proposing** [1] - 82:21
**protect** [5] - 59:17, 75:25, 76:15, 76:18, 111:13
**protected** [5] - 69:16, 76:11, 76:14, 93:13
**protecting** [1] - 77:15
**prove** [1] - 37:13

**provide** [11] - 37:25, 47:8, 75:10, 89:9, 91:17, 92:19, 92:20, 92:25, 93:1, 103:11, 112:17
**providing** [4] - 50:12, 76:7, 76:10, 92:14
**provision** [5] - 22:24, 26:23, 33:5, 70:5, 70:18
**provisions** [6] - 23:14, 23:24, 42:2, 42:4, 42:6, 109:23
**public** [2] - 111:15, 111:16
**publically** [1] - 89:5
**pull** [2] - 72:6, 72:9
**pulled** [1] - 78:24
**PURCARO** [24] - 65:17, 65:20, 65:24, 66:21, 66:24, 67:19, 68:4, 68:10, 68:15, 68:18, 68:22, 69:3, 70:15, 70:25, 71:7, 71:11, 76:4, 80:14, 80:17, 81:3, 81:6, 81:9, 81:18, 82:5
**Purcaro** [7] - 65:18, 77:21, 80:14, 82:12, 82:21, 87:24, 89:11
**purport** [1] - 40:19
**purports** [1] - 22:24
**purpose** [1] - 88:12
**purposes** [3] - 61:12, 69:15, 114:15
**pursuant** [5] - 23:22, 55:22, 79:1, 103:23, 109:22
**purview** [1] - 62:7
**pushing** [1] - 80:11
**put** [10] - 44:4, 51:1, 51:15, 53:25, 56:18, 99:21, 99:25, 100:12, 103:15

---

## Q

**questions** [8] - 47:11, 47:25, 48:2, 48:6, 48:10, 48:14, 48:23, 52:12
**quick** [1] - 92:4
**quickly** [3] - 82:7, 91:12, 116:1
**quote/unquote** [1] - 93:4
**quoted** [1] - 112:18

---

## R

**race** [1] - 66:5

**raise** [6] - 55:1, 70:9, 73:4, 73:9, 83:10, 84:13
**raised** [9] - 17:25, 19:24, 29:13, 32:8, 52:22, 60:8, 71:25, 83:17, 89:11
**raising** [2] - 47:3, 83:6
**Raj** [4] - 29:6, 77:20, 88:23, 103:8
**random** [1] - 34:6
**rather** [1] - 48:1
**reach** [1] - 82:19
**reached** [1] - 110:17
**read** [6] - 18:9, 28:17, 99:1, 102:21, 111:10, 113:4
**reading** [1] - 80:23
**ready** [1] - 113:14
**real** [7] - 19:6, 30:15, 31:19, 36:18, 60:20, 91:10, 91:12
**realize** [1] - 62:19
**really** [15] - 34:14, 35:25, 36:11, 36:20, 45:2, 45:23, 62:18, 65:2, 88:21, 98:16, 98:20, 107:13, 108:2, 108:4, 113:19
**reargue** [1] - 50:4
**reason** [13] - 19:11, 43:14, 44:21, 56:6, 76:16, 82:7, 82:23, 85:13, 85:14, 96:17, 102:20, 112:15, 116:1
**reasonable** [3] - 42:13, 62:17, 82:16
**reasons** [3] - 30:3, 84:20, 112:25
**receipt** [1] - 69:20
**receive** [11] - 33:6, 68:5, 68:8, 68:16, 75:24, 78:9, 88:16, 88:17, 89:25, 93:15
**received** [9] - 24:25, 69:8, 69:9, 72:22, 79:5, 88:8, 92:12, 110:4, 110:5
**receiving** [1] - 76:23
**recently** [1] - 99:3
**recognize** [1] - 54:2, 105:18
**recollection** [1] - 22:17
**recommend** [2] - 66:10, 108:4
**recommended** [1] - 73:16
**record** [13] - 49:8,

65:2, 67:25, 68:10, 78:13, 78:16, 80:15, 90:21, 91:1, 91:6, 99:19, 102:13, 117:21
**recovery** [2] - 30:17, 33:15
**redacted** [1] - 69:17
**reference** [9] - 28:6, 29:22, 37:9, 37:22, 38:4, 39:24, 53:20, 71:9, 105:24
**referenced** [8] - 28:8, 28:11, 33:11, 40:21, 40:24, 41:20, 67:24
**referred** [1] - 41:1
**referring** [3] - 90:22, 90:23, 104:3
**refresh** [1] - 22:17
**regard** [3] - 20:25, 93:1, 93:6
**regardless** [2] - 84:25, 91:3
**registering** [1] - 29:10
**registration** [4] - 28:17, 29:1, 29:16, 60:16
**reject** [1] - 102:22
**relate** [3] - 28:7, 37:11, 42:21
**related** [6] - 20:19, 33:7, 33:13, 61:22, 64:23, 95:16
**relationship** [7] - 28:7, 29:23, 42:1, 45:6, 45:8, 45:9, 45:14
**relatively** [2] - 46:5, 59:3
**relevant** [14] - 22:10, 23:5, 23:20, 23:23, 24:10, 30:3, 35:16, 38:5, 41:3, 41:19, 42:19, 43:7, 60:18, 102:4
**relief** [1] - 111:4
**rely** [1] - 79:21
**remaining** [1] - 55:5
**remand** [43] - 17:9, 18:12, 19:15, 19:23, 20:9, 20:16, 27:10, 27:22, 27:24, 31:6, 33:23, 41:8, 46:8, 46:10, 46:21, 47:2, 47:9, 51:14, 51:17, 53:18, 53:22, 54:18, 58:6, 58:18, 59:19, 60:4, 60:10, 60:13, 61:2, 63:3, 63:15, 65:6, 65:8, 66:1, 66:6, 84:6, 86:5,

100:14, 100:19, 106:20, 106:22, 107:3, 115:15
**remanded** [2] - 32:16, 63:19
**remedied** [1] - 56:1
**remember** [1] - 116:7
**removal** [2] - 26:20, 54:22
**remove** [4] - 54:25, 89:16, 109:14, 111:24
**removed** [5] - 17:12, 60:15, 105:11, 110:14, 111:22
**replies** [3] - 101:10, 101:12, 101:19
**reply** [9] - 51:17, 57:8, 96:24, 97:17, 101:5, 101:6, 101:15, 101:16, 116:20
**report** [3] - 106:14, 109:17, 110:2
**reporter** [2] - 24:20, 26:1, 103:25
**Reporter/**
**Transcriber** [1] - 117:25
**Reporting** [1] - 109:19
**represent** [6] - 18:7, 58:1, 65:20, 65:25, 77:8, 81:16
**representation** [1] - 28:20
**representative** [1] - 46:17
**represented** [4] - 43:22, 46:20, 69:4, 72:16
**representing** [5] - 25:3, 48:10, 82:2, 83:4, 91:10
**request** [12] - 49:14, 49:22, 49:24, 50:23, 77:12, 90:6, 92:9, 93:2, 100:16, 111:21, 111:25, 115:23
**requesting** [1] - 68:7
**requests** [18] - 39:12, 41:12, 68:24, 69:1, 69:4, 69:10, 69:21, 77:9, 88:5, 88:9, 89:13, 91:15, 91:16, 91:19, 91:25, 92:24, 109:10
**require** [4] - 46:1, 55:7, 76:22, 96:8
**required** [3] - 55:13, 55:23, 73:1

requirements [2] - 45:3, 102:18
requires [3] - 44:19, 44:24, 44:25
requiring [1] - 46:11
resolution [3] - 83:13, 85:11, 96:7
resolve [1] - 116:9
resolved [1] - 83:19
resources [1] - 19:7
respect [12] - 62:4, 63:22, 84:5, 87:25, 88:6, 89:10, 99:6, 101:5, 103:9, 104:5, 105:21, 112:7
respective [1] - 88:8
respond [3] - 51:8, 58:11, 75:1
responded [1] - 59:19
response [8] - 51:14, 67:8, 105:10, 105:16, 110:4, 110:18, 117:7, 117:15
responses [2] - 38:13, 72:22
responsive [7] - 67:21, 83:14, 83:18, 83:19, 83:21, 84:22, 88:10
rest [1] - 54:12
result [5] - 19:9, 19:19, 19:20, 37:6, 70:24
retain [1] - 30:16
returned [1] - 109:11
reverse [1] - 59:14
review [1] - 81:20
reviewing [1] - 66:16
revise [1] - 52:13
rights [6] - 30:19, 31:17, 31:18, 33:15, 41:4, 64:23
rise [2] - 37:17, 117:17
risk [1] - 80:20
Rob [1] - 44:11
Robert [1] - 86:3
rolling [1] - 100:21
room [2] - 48:4, 113:7
ROONEY [35] - 108:20, 108:22, 108:25, 109:5, 109:8, 109:14, 110:8, 110:16, 111:8, 112:5, 112:11, 112:21, 112:24, 113:3, 113:10, 113:16, 113:19, 113:22, 114:1, 114:5,

114:10, 114:15, 114:18, 114:21, 115:3, 115:5, 115:8, 115:10, 115:13, 115:20, 115:23, 116:3, 116:6, 116:14, 116:22
Rooney [3] - 108:22, 109:4, 109:6
roughly [1] - 46:23
route [1] - 19:9
Rule [6] - 44:19, 45:2, 67:20, 96:5, 99:1, 104:4
rule [7] - 45:2, 46:6, 81:15, 102:14, 102:20, 104:3, 104:11
rules [12] - 32:11, 45:25, 52:19, 53:9, 79:1, 96:6, 102:7, 102:8, 102:10, 103:23, 105:16, 107:6
Rules [1] - 55:23, 96:5, 99:2
rumor [1] - 104:23
run [3] - 55:25, 68:12, 80:20
running [2] - 56:18, 80:7
Ryan [2] - 72:4, 98:10

**S**

sad [1] - 85:22
safety [3] - 59:17, 77:15, 93:12
schedule [26] - 52:14, 55:9, 59:22, 66:8, 66:17, 67:12, 74:16, 75:2, 94:24, 94:25, 95:2, 95:5, 95:13, 95:16, 96:2, 97:5, 103:9, 103:12, 103:22, 105:20, 107:14, 107:25, 108:10, 111:8, 115:24
scheduling [2] - 67:6, 100:19
Schiller [3] - 24:2, 74:13, 106:8
scope [1] - 113:7
Scott [1] - 91:10
screenshots [4] - 28:21, 28:25, 29:10, 38:23
seal [4] - 111:12, 114:6, 114:8
sealing [1] - 114:12

Searchers [1] - 44:11
seated [1] - 17:3
second [2] - 80:3, 80:4
secrets [2] - 40:6
Section [1] - 28:18
security [2] - 109:23, 113:1
see [21] - 28:19, 28:22, 30:22, 36:16, 36:17, 39:8, 50:1, 50:13, 50:25, 58:9, 66:22, 67:1, 72:13, 75:20, 84:7, 94:6, 98:3, 107:19, 109:4
seek [2] - 92:15, 103:24
seem [2] - 34:22
semantics [1] - 104:10
send [9] - 50:24, 56:17, 77:10, 79:16, 79:19, 88:20, 89:6, 102:21, 111:23
sense [15] - 28:12, 34:22, 35:1, 35:5, 42:6, 42:8, 43:2, 47:16, 48:19, 53:4, 64:15, 79:18, 80:25, 84:18, 103:17
sensitive [1] - 76:8
sent [11] - 20:25, 69:13, 71:19, 77:23, 88:4, 89:23, 91:19, 92:16, 92:21, 92:22
separate [13] - 41:23, 48:13, 51:23, 59:7, 62:10, 63:8, 73:3, 81:4, 108:5, 109:10, 116:5, 116:6
separately [2] - 53:14, 107:11
September [1] - 57:6
sequencing [1] - 19:8
serious [1] - 55:20
serve [3] - 49:15, 49:20, 56:14
served [4] - 108:14, 108:15, 108:18, 109:1
service [8] - 23:9, 26:5, 26:18, 26:19, 27:7, 29:17, 91:4, 93:2
services [1] - 30:4
set [14] - 34:6, 42:18, 55:9, 60:4, 60:6, 66:17, 69:12, 87:10, 95:1, 97:5, 100:23, 105:20
sets [1] - 42:18

settlement [3] - 95:20, 95:23, 95:24
seven [7] - 46:19, 46:20, 46:25, 47:1, 49:7, 79:12, 81:19
seven-page [1] - 81:19
several [2] - 17:11, 112:25
sham [3] - 36:22, 37:3, 37:14
shame [1] - 85:24
ShareFile [1] - 77:25
SHAW [63] - 17:14, 17:16, 17:18, 17:20, 23:6, 23:9, 25:21, 26:4, 27:7, 27:17, 33:22, 34:1, 34:4, 34:8, 34:11, 34:13, 34:18, 34:21, 35:1, 35:4, 35:8, 35:23, 36:2, 36:10, 36:13, 36:24, 37:1, 37:10, 38:17, 38:20, 42:7, 42:11, 42:14, 42:20, 42:25, 43:3, 43:8, 43:11, 47:17, 47:20, 47:25, 48:21, 49:2, 53:24, 54:9, 54:12, 54:15, 54:17, 54:20, 54:23, 58:20, 59:11, 65:14, 93:9, 93:11, 93:18, 93:21, 94:17, 94:22, 95:4, 95:15, 95:25, 97:15
Shaw [26] - 17:16, 23:4, 23:18, 26:7, 27:1, 27:4, 29:3, 33:17, 33:18, 38:17, 43:8, 47:20, 48:19, 48:21, 50:1, 50:22, 53:24, 58:19, 65:14, 71:10, 93:8, 93:9, 94:6, 94:19, 97:14, 106:22
shocked [1] - 98:21
short [2] - 67:4, 108:6
shorter [1] - 59:6
show [3] - 31:22, 60:19
side [3] - 19:20, 59:15, 94:14
sidelines [1] - 83:16
sides [1] - 81:10
sidestepped [1] - 69:13
sign [2] - 25:7, 29:17
signatory [1] - 66:7
signed [5] - 18:10, 21:10, 24:22, 43:17,

43:23
significant [1] - 19:6
signing [1] - 21:11
Silver [3] - 20:17, 21:13, 21:20
similar [3] - 63:5, 65:25, 71:15
similarly [1] - 66:11
simple [1] - 94:12
simply [2] - 24:24, 26:22
single [5] - 72:19, 103:4, 109:11, 110:3, 110:5
singular [1] - 88:12
sit [4] - 84:7, 94:8, 114:22, 115:6
situated [1] - 66:11
situation [3] - 32:6, 34:2, 82:12
six [1] - 85:18
size [1] - 102:17
slew [1] - 18:20
slight [1] - 25:22
slightly [2] - 26:11, 27:8
someone [10] - 29:10, 29:16, 31:5, 35:18, 46:14, 52:11, 52:14, 70:3, 79:5, 87:1
sometimes [1] - 19:5
somewhat [3] - 26:25, 57:13, 57:15
somewhere [2] - 48:5, 89:23
soon [1] - 50:10
sorry [7] - 31:11, 37:18, 75:23, 90:18, 97:20, 98:6, 108:22
sort [3] - 78:3, 108:11, 112:3
sorts [1] - 62:1
sounds [6] - 42:12, 52:1, 57:10, 76:17, 84:25, 106:4
spaced [2] - 103:4, 103:5
SPAK [15] - 83:2, 83:4, 83:9, 83:23, 83:25, 84:9, 84:13, 84:16, 84:25, 85:3, 85:9, 85:13, 85:17, 85:22, 85:24
Spak [1] - 83:2
speaker [3] - 75:23, 86:7, 91:24
speakers [1] - 92:3
speaking [3] - 68:25, 69:8, 110:20
specific [2] - 53:6,

102:14
**specifically** [1] -
102:15
**speedy** [1] - 96:7
**spending** [1] - 19:6
**spreadsheet** [5] -
92:5, 92:9, 92:11,
92:14, 92:19
**stagger** [1] - 108:11
**stand** [2] - 79:4, 83:16
**standing** [1] - 72:1
**standpoint** [1] - 19:19
**start** [5] - 17:9, 20:13,
47:4, 51:9, 56:18
**started** [2] - 26:19,
26:20
**starting** [2] - 108:9,
108:10
**state** [10] - 32:16,
36:19, 40:6, 63:21,
104:5, 109:20,
112:18, 113:8,
113:12
**State** [1] - 31:14
**statement** [4] - 56:19,
57:6, 74:23, 117:8
**statements** [1] - 74:20
**statue** [1] - 105:13
**status** [2] - 17:5,
83:11
**statute** [9] - 70:12,
70:19, 83:22, 85:7,
100:2, 104:5,
109:21, 113:12,
114:15
**statutes** [1] - 109:20
**stay** [3] - 18:13, 67:20,
87:8
**stayed** [7] - 67:23,
83:18, 84:1, 85:10,
86:24, 99:15, 99:17
**stays** [1] - 100:22
**step** [2] - 28:25, 79:22
**STICHEL** [7] - 87:21,
87:24, 88:3, 88:14,
89:18, 89:22, 90:16
**Stichel** [2] - 87:22,
89:11
**still** [4] - 48:12, 67:8,
68:15, 94:13
**Stio** [13] - 18:7, 27:19,
29:19, 37:15, 39:11,
43:13, 46:20, 47:25,
49:18, 50:21, 55:8,
60:22, 82:6
**STIO** [99] - 18:3, 18:5,
18:10, 19:1, 19:3,
19:18, 19:25, 20:3,
20:6, 20:10, 20:12,
20:16, 21:3, 21:6,

21:17, 22:2, 22:11,
22:18, 22:23, 23:1,
24:4, 24:7, 24:9,
24:13, 24:15, 24:18,
24:21, 25:10, 25:13,
25:25, 27:21, 28:3,
28:6, 28:13, 28:15,
29:22, 30:3, 30:14,
30:23, 31:3, 31:9,
31:11, 32:4, 32:20,
32:23, 32:25, 33:3,
33:10, 33:13, 33:19,
36:9, 37:16, 37:18,
37:24, 38:9, 38:21,
39:3, 43:14, 43:21,
44:3, 44:6, 46:22,
48:8, 48:12, 48:16,
49:19, 50:9, 50:19,
51:18, 51:20, 52:3,
52:6, 52:9, 52:17,
53:2, 53:5, 53:8,
53:12, 53:16, 55:8,
55:17, 56:5, 56:9,
56:17, 56:23, 57:11,
57:15, 57:24, 58:3,
58:5, 82:7, 82:15,
96:12, 96:14, 96:16,
96:18, 104:10,
104:15, 104:18
**stipulate** [2] - 35:12,
36:3
**stood** [1] - 83:5
**stop** [1] - 77:11
**straightforward** [1] -
59:4
**stress** [1] - 31:23
**strongly** [1] - 43:13
**studied** [1] - 25:2
**subject** [33] - 17:10,
17:23, 18:2, 18:24,
19:1, 19:13, 21:25,
24:11, 29:12, 30:11,
31:20, 31:21, 32:6,
32:10, 32:11, 32:15,
32:19, 33:11, 33:13,
48:24, 49:1, 58:13,
60:10, 60:11, 61:1,
61:2, 62:17, 63:14,
65:5, 66:1, 70:3,
86:4, 113:3
**submission** [1] - 82:8
**submit** [6] - 49:21,
49:24, 50:5, 50:22,
57:5, 66:14
**submitted** [4] - 18:5,
58:12, 66:7, 104:19
**submitting** [1] - 57:21
**subpart** [1] - 45:2
**subscription** [2] -
29:22, 29:25

**subsequent** [2] - 70:6,
80:13
**succeed** [1] - 85:18
**sued** [3] - 112:16,
112:22
**suggest** [2] - 37:3,
48:8
**suggested** [3] - 47:23,
59:5
**suggesting** [1] - 52:23
**suggestion** [2] -
79:25, 88:4
**suing** [2] - 111:12,
111:19
**summary** [1] - 58:13
**supplement** [4] -
66:25, 81:19, 81:22,
82:22
**supplemental** [11] -
61:16, 66:14, 67:4,
75:3, 80:2, 80:24,
82:3, 95:11, 96:20,
98:14
**supplementals** [1] -
101:11
**supplementing** [1] -
71:13
**supply** [1] - 88:11
**supporting** [4] - 87:7,
97:24, 98:3
**suppose** [1] - 112:11
**supposed** [1] - 40:5
**suppression** [11] -
39:12, 41:12, 91:15,
91:18, 91:25, 92:9,
92:12, 92:15, 92:20,
92:24, 93:1
**Supreme** [3] - 63:25,
64:4, 64:11
**surprise** [2] - 45:16,
45:17
**suspend** [2] - 34:5,
37:2
**symmetry** [1] - 101:23
**systems** [1] - 94:9
**SZYBA** [9] - 44:10,
44:14, 44:17, 44:25,
45:11, 45:13, 45:17,
45:22, 46:4
**Szyba** [1] - 44:11

## T

**table** [1] - 99:22
**takedown** [1] - 89:13
**talks** [2] - 33:6, 96:6
**team** [1] - 79:5
**technological** [2] -
78:19, 94:9
**Technologies** [1] -

91:11
**telephone** [2] - 94:13,
94:16
**telephones** [1] - 94:13
**ten** [3] - 89:17, 101:10,
109:1
**ten-page** [1] - 101:10
**tend** [1] - 37:13
**term** [5] - 22:4, 22:15,
23:19, 25:4, 26:8
**termed** [1] - 60:5
**termination** [1] -
36:17
**terms** [72] - 20:2, 20:8,
20:9, 22:12, 22:19,
22:20, 22:23, 23:9,
23:18, 23:24, 26:5,
26:13, 26:16, 27:7,
27:12, 27:23, 28:4,
28:6, 28:7, 28:8,
28:11, 28:18, 29:15,
29:16, 29:22, 30:24,
33:5, 33:7, 34:19,
35:15, 37:6, 37:8,
37:11, 37:21, 37:24,
39:10, 39:11, 39:13,
39:15, 39:16, 39:19,
39:20, 39:23, 39:24,
39:25, 40:1, 40:2,
40:4, 40:15, 40:17,
40:18, 40:20, 40:24,
41:2, 41:6, 41:10,
41:12, 41:18, 41:23,
42:5, 42:16, 44:1,
52:18, 66:6, 70:2,
75:17, 90:14, 93:2,
110:23, 115:23
**The court** [429] - 17:3,
17:15, 17:17, 17:19,
17:21, 18:4, 18:5,
18:9, 18:24, 19:2,
19:8, 19:11, 19:22,
20:1, 20:4, 20:7,
20:11, 20:15, 21:2,
21:4, 21:16, 21:25,
22:3, 22:15, 22:22,
22:25, 23:2, 23:7,
23:12, 23:16, 24:1,
24:6, 24:8, 24:10,
24:14, 24:17, 24:24,
25:3, 25:11, 25:14,
26:2, 26:7, 26:15,
26:21, 26:25, 27:4,
27:9, 27:18, 27:22,
28:5, 28:10, 28:14,
29:2, 29:5, 29:14,
29:19, 30:2, 30:11,
30:22, 30:24, 31:7,
31:10, 32:2, 32:5,
32:11, 32:22, 32:24,

33:2, 33:9, 33:12,
33:17, 33:20, 33:23,
34:3, 34:7, 34:10,
34:12, 34:17, 34:20,
34:25, 35:3, 35:7,
35:14, 35:24, 36:4,
36:7, 36:11, 36:23,
36:25, 37:8, 37:15,
37:17, 37:23, 38:3,
38:12, 38:19, 38:25,
39:4, 39:7, 39:8,
39:14, 39:21, 40:3,
40:7, 40:10, 40:14,
40:22, 41:9, 41:15,
41:17, 41:25, 42:4,
42:10, 42:12, 42:15,
42:23, 43:1, 43:4,
43:10, 43:12, 43:17,
44:2, 44:5, 44:8,
44:13, 44:14, 44:16,
44:24, 45:9, 45:12,
45:16, 45:19, 46:3,
46:7, 46:23, 47:18,
47:24, 48:1, 48:3,
48:11, 48:15, 48:17,
48:19, 48:25, 49:3,
49:5, 49:9, 49:10,
49:12, 49:20, 49:23,
50:10, 50:13, 50:15,
50:17, 50:20, 51:19,
51:25, 52:1, 52:4,
52:7, 52:11, 52:13,
52:21, 53:4, 53:7,
53:10, 53:13, 53:17,
54:6, 54:10, 54:14,
54:16, 54:19, 54:21,
55:2, 55:14, 55:15,
56:1, 56:6, 56:16,
56:17, 56:22, 57:10,
57:12, 57:23, 58:1,
58:4, 58:19, 59:1,
59:10, 59:21, 59:24,
60:2, 60:8, 60:14,
60:17, 60:21, 60:25,
61:2, 61:5, 61:7,
61:13, 61:18, 61:21,
62:2, 62:3, 62:5,
62:6, 62:12, 62:18,
63:1, 63:13, 63:16,
64:4, 64:8, 64:13,
64:16, 64:21, 64:25,
65:4, 65:7, 65:11,
65:16, 65:19, 65:23,
66:2, 66:20, 66:23,
67:18, 68:3, 68:9,
68:14, 68:17, 68:21,
69:2, 70:1, 70:16,
71:5, 71:9, 71:17,
72:1, 72:7, 72:13,
72:24, 73:7, 73:13,
73:22, 74:11, 75:19,

76:3, 76:5, 76:9,
77:19, 77:22, 78:7,
78:15, 78:18, 79:2,
79:5, 79:8, 79:18,
79:25, 80:16, 80:23,
81:2, 81:5, 81:8,
81:17, 81:25, 82:6,
82:14, 83:1, 83:3,
83:8, 83:20, 83:24,
84:1, 84:11, 84:15,
84:17, 85:2, 85:5,
85:12, 85:16, 85:20,
85:23, 86:2, 86:6,
86:9, 86:14, 86:18,
86:22, 86:25, 87:14,
87:16, 87:18, 87:20,
87:23, 88:2, 88:13,
88:15, 89:2, 89:7,
89:21, 90:13, 90:17,
90:20, 91:7, 91:22,
92:1, 93:8, 93:10,
93:17, 93:20, 94:3,
94:20, 95:1, 95:14,
95:22, 96:1, 96:4,
96:13, 96:15, 96:17,
96:19, 97:11, 97:14,
97:16, 97:19, 97:22,
98:8, 98:12, 98:16,
98:19, 98:24, 99:1,
99:8, 99:12, 99:17,
99:19, 100:7, 100:9,
101:1, 101:3, 101:9,
101:13, 101:16,
101:20, 101:24,
102:10, 102:14,
102:19, 102:24,
103:2, 103:4, 103:7,
103:15, 103:18,
104:3, 104:7,
104:11, 104:13,
104:17, 104:18,
104:21, 105:1,
105:7, 105:9,
105:14, 106:1,
106:4, 106:10,
106:12, 106:16,
106:19, 107:2,
107:5, 107:8,
107:12, 107:16,
107:19, 107:23,
108:1, 108:3,
108:13, 108:18,
108:21, 108:24,
109:3, 109:7,
109:13, 110:7,
110:15, 111:7,
112:4, 112:9,
112:20, 112:23,
113:2, 113:9,
113:14, 113:18,
113:21, 113:24,

114:2, 114:8,
114:13, 114:17,
114:19, 114:22,
115:4, 115:6, 115:9,
115:12, 115:16,
115:22, 116:2,
116:4, 116:12,
116:15, 116:18,
116:20, 116:23,
117:2, 117:6,
117:11, 117:13,
117:16
**themselves** [1] - 71:23
**thereafter** [4] - 51:10,
51:16, 51:17, 109:2
**they've** [4] - 37:21,
56:8, 59:23, 75:5
**thinking** [1] - 102:14
**Third** [1] - 111:14
**third** [5] - 44:19,
44:25, 115:14,
115:16, 116:10
**third-party** [2] - 44:19,
44:25
**thoughtful** [1] - 76:21
**thousand** [2] - 23:8,
87:9
**thousands** [2] - 26:9,
27:11
**three** [7] - 48:9, 48:12,
51:13, 57:6, 57:20,
73:8, 111:25
**throw** [1] - 90:6
**Thursday** [3] - 50:7,
50:19, 50:23
**tiers** [2] - 29:23, 30:1
**timeline** [1] - 59:4
**timeliness** [2] - 54:2,
54:22
**timing** [1] - 102:2
**today** [11] - 17:8, 50:5,
71:19, 75:4, 77:21,
100:24, 107:14,
110:16, 116:10,
116:24
**together** [6] - 26:3,
48:9, 50:22, 60:23,
79:9, 98:2
**tonight** [1] - 99:1
**tool** [1] - 29:11
**tools** [1] - 77:6
**top** [1] - 57:24
**topic** [1] - 76:8
**touched** [1] - 45:4
**track** [3] - 72:17,
115:14, 115:17
**tracking** [1] - 110:8
**tracks** [7] - 19:12,
19:15, 58:13, 84:2,
87:9, 95:18, 107:11

**trade** [1] - 40:6
**traditional** [1] - 64:15
**transcript** [8] - 47:8,
48:16, 52:8, 52:11,
52:15, 63:12, 72:9,
117:20
**Transit** [1] - 31:15
**transmission** [1] -
78:12
**Trenton** [1] - 56:8
**trial** [1] - 73:4
**tried** [1] - 72:21
**Troopers** [1] - 31:14
**trouble** [1] - 43:12
**true** [2] - 45:22, 71:11
**try** [13] - 42:23, 48:14,
57:20, 61:11, 79:8,
80:8, 82:19, 90:13,
94:5, 100:10,
100:15, 101:14,
104:22
**trying** [13] - 25:11,
27:2, 27:9, 27:20,
36:21, 37:12, 37:19,
41:14, 72:14, 74:10,
76:12, 76:19, 98:6
**Tuesday** [1] - 50:6
**turn** [2] - 55:4, 111:8
**tweak** [2] - 25:22, 66:9
**twice** [1] - 26:17
**two** [24] - 18:18,
19:12, 19:15, 27:8,
27:14, 30:5, 31:5,
35:1, 57:18, 67:2,
74:17, 75:4, 75:7,
79:13, 81:19, 84:2,
84:3, 92:4, 95:18,
107:22, 111:3,
111:23, 116:25
**type** [5] - 18:21, 27:10,
27:23, 30:8, 74:22
**types** [1] - 22:9
**typically** [1] - 19:5
**typo** [1] - 78:3

**U**

**ultimately** [3] - 27:12,
52:25, 63:20
**unchanged** [1] - 23:14
**unclear** [1] - 45:15
**unconstitutional** [1] -
63:20
**under** [10] - 21:13,
36:19, 53:9, 60:18,
61:24, 73:10, 102:6,
102:7, 111:14,
112:25
**understood** [3] -
43:19, 87:12, 98:18

**unhappy** [1] - 80:7
**union** [3] - 45:13,
45:14, 45:20
**unique** [1] - 61:14
**unless** [5] - 25:17,
49:9, 56:17, 86:25,
102:12
**unlike** [1] - 92:2
**unreasonable** [1] -
58:15
**unrelated** [2] - 29:11,
29:17
**untimely** [1] - 53:21
**unusual** [1] - 32:5
**up** [25] - 21:10, 21:11,
29:17, 43:23, 44:21,
46:11, 51:1, 58:7,
64:14, 65:1, 69:12,
72:2, 72:9, 72:10,
77:3, 79:4, 83:5,
85:18, 87:24, 88:5,
90:7, 90:21, 94:12,
97:2, 107:14
**update** [2] - 59:1, 89:8
**updated** [2] - 26:14,
26:16
**US** [1] - 84:10
**useful** [1] - 74:22

**V**

**various** [2] - 69:13,
73:1
**vastly** [1] - 92:11
**vehicle** [3] - 44:22,
45:1, 114:2
**venue** [5] - 32:14,
70:7, 85:6, 98:1,
100:4
**verify** [1] - 31:5
**version** [3] - 34:16,
39:19, 111:15
**versions** [6] - 27:8,
28:4, 35:15, 39:20,
39:22, 40:23
**versus** [1] - 74:19
**vice** [1] - 78:13
**view** [5] - 24:11,
24:13, 58:11, 62:19,
62:20
**violation** [1] - 113:12
**violations** [2] - 92:16
**visibility** [1] - 81:24

**W**

**wait** [3] - 26:2, 73:4,
100:14
**waive** [1] - 81:23
**waiver** [7] - 18:21,
31:25, 32:3, 32:18,

70:24, 74:9, 100:10
**waiving** [3] - 67:22,
70:20, 99:24
**wall** [1] - 76:11
**wants** [9] - 56:17,
63:4, 69:16, 88:16,
89:1, 97:6, 110:24,
115:1, 115:13
**Watkins** [1] - 86:4
**weak** [1] - 78:6
**website** [3] - 40:16,
40:19, 40:21
**websites** [3] - 69:12,
89:5, 89:9
**week** [6] - 51:15, 75:9,
75:10, 78:21, 81:19,
109:1
**weeks** [5] - 51:13,
57:6, 67:2, 107:22
**weigh** [1] - 91:12
**whatnot** [1] - 76:1
**Whitepages** [4] - 39:6,
60:11, 61:25, 78:14
**whole** [2] - 23:3, 50:4
**win** [1] - 85:20
**wise** [1] - 107:14
**wishes** [1] - 18:2
**withdraw** [1] - 54:17
**withdrawing** [1] -
54:16
**wonderful** [3] - 81:10,
81:11, 81:12
**wondering** [3] - 35:18,
63:2, 88:6
**words** [3] - 20:8,
28:10, 54:3
**works** [2] - 28:16
**worry** [2] - 71:7, 117:6
**write** [1] - 46:11
**written** [1] - 42:17

**Y**

**Yahoo** [1] - 90:9
**yahoo.com** [1] - 90:24
**year** [1] - 26:18
**Year's** [1] - 109:12
**years** [1] - 28:1
**yesterday** [2] - 77:24,
79:6