**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**BLACKBAUD, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-03993-HB**

**STATUS CONFERENCE**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**WHITEPAGES, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-03998-HB**

---

Mitchell H. Cohen Building & U.S. Courthouse
4th and Cooper Streets
Camden, New Jersey 08101
Monday, June 3, 2024
Commencing at 9:57 a.m.

**B E F O R E:** **THE HONORABLE HARVEY BARTLE, III, UNITED STATES DISTRICT JUDGE (EDPA)**

(CAPTION CONTINUED ONTO NEXT PAGES)

John J. Kurz, Federal Official Court Reporter
John_Kurz@njd.uscourts.gov
(856)576-7094

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**HIYA, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04000-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**WE INFORM, LLC,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04037-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**INFOMATICS, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04041-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**THE PEOPLE SEARCHERS, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04045-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**COMMERCIAL REAL ESTATE EXCHANGE, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04073-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**DM GROUP, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04075-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**CARCO GROUP INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04077-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**DELUXE CORPORATION, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04080-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**TWILIO INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04095-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**DELVEPOINT, LLC, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04096-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**QUANTARIUM ALLIANCE, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04098-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**YARDI SYSTEMS, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04103-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**6SENSE INSIGHTS, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04104-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**LIGHTBOX PARENT, L.P., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04105-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**SEARCH QUARRY, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04106-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**ACXIOM, LLC, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04107-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**ENFORMION, LLC, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04110-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**COSTAR GROUP, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04111-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**ORACLE INTERNATIONAL CORPORATION, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04112-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**RED VIOLET, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04113-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** **CIVIL ACTION NUMBER:**
***Plaintiffs,*** **1:24-cv-04114-HB**
**vs.**

**RE/MAX, LLC, et al.,**
***Defendants.***

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** **CIVIL ACTION NUMBER:**
***Plaintiffs,*** **1:24-cv-04141-HB**
**vs.**

**DIGITAL SAFETY PRODUCTS, LLC, et al.,**
***Defendants.***

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** **CIVIL ACTION NUMBER:**
***Plaintiffs,*** **1:24-cv-04143-HB**
**vs.**

**CIVIL DATA RESEARCH,**
***Defendants.***

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** **CIVIL ACTION NUMBER:**
***Plaintiffs,*** **1:24-cv-04160-HB**
**vs.**

**SCALABLE COMMERCE, LLC, et al.,**
***Defendants.***

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** **CIVIL ACTION NUMBER:**
***Plaintiffs,*** **1:24-cv-04168-HB**
**vs.**

**EPSILON DATA MANAGEMENT, LLC, et al.,**
***Defendants.***

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**PEOPLE DATA LABS, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04171-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**LABELS & LISTS, INC.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04174-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**CLARITAS, LLC, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04175-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**INNOVIS DATA SOLUTIONS INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04176-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**
**ACCURATE APPEND, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04178-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**DATA AXLE, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04181-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**REMINE INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04182-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**LUSHA SYSTEMS, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04184-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**TELTECH SYSTEMS, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04217-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**PEOPLECONNECT, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04227-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*, vs.**
**CORELOGIC, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04230-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*, vs.**
**BLACK KNIGHT TECHNOLOGIES, LLC, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04233-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*, vs.**
**ZILLOW, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04256-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*, vs.**
**EQUIMINE, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04261-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*, vs.**
**THOMSON REUTERS CORPORATION, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04269-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**CHOREOGRAPH LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04271-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**TRANSUNION, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04288-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**MELISSA DATA CORP., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04292-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**EQUIFAX INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04298-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**
**SPOKEO, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04299-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,***
**vs.**
**RESTORATION OF AMERICA, et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04324-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,***
**vs.**
**i360, LLC, et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04345-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,***
**vs.**
**TELNYX LLC, et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04354-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,***
**vs.**
**GOHUNT, LLC, et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04380-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,***
**vs.**
**ACCUZIP, INC., et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04383-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**

**SYNAPTIX TECHNOLOGY, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04385-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**

**JOY ROCKWELL ENTERPRISES, INC., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04389-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**

**FORTNOFF FINANCIAL, LLC, et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04390-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**

**MYHERITAGE, LTD., et al.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04392-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs,***
**vs.**

**E-MERGES.COM, INC.,**
***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04434-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs*,** **vs.** **WILAND, INC., et al.,** ***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04442-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs*,** **vs.** **ATDATA, LLC, et al.,** ***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04447-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs*,** **vs.** **LEXISNEXIS RISK DATA MANAGEMENT, LLC, et al.,** ***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04566-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs*,** **vs.** **PRECISELY HOLDINGS, LLC, et al.,** ***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04571-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs*,** **vs.** **NUWBER, INC., et al.,** ***Defendants*.**

**CIVIL ACTION NUMBER: 1:24-cv-04609-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,*** **vs.** **ROCKETREACH LLC, et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04664-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,*** **vs.** **OUTSIDE INTERACTIVE, INC.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04696-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,*** **vs.** **VALASSIS DIGITAL CORP., et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04770-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,*** **vs.** **THE LIFETIME VALUE CO. LLC, et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04850-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,** ***Plaintiffs,*** **vs.** **BELLES CAMP COMMUNICATIONS, INC., et al.,** ***Defendants.***

**CIVIL ACTION NUMBER: 1:24-cv-04949-HB**

---

(CAPTION CONTINUED ONTO NEXT PAGES)

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**FIRST AMERICAN FINANCIAL CORPORATION, et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER:**
**1:24-cv-05334-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**PROPERTYRADAR, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER:**
**1:24-cv-05600-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**THE ALESCO GROUP, L.L.C.,**
***Defendants*.**

**CIVIL ACTION NUMBER:**
**1:24-cv-05656-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**SEARCHBUG, INC.,**
***Defendants*.**

**CIVIL ACTION NUMBER:**
**1:24-cv-05658-HB**

---

**ATLAS DATA PRIVACY CORPORATION, et al.,**
***Plaintiffs*,**
**vs.**

**AMERILIST, INC., et al.,**
***Defendants*.**

**CIVIL ACTION NUMBER:**
**1:24-cv-05775-HB**

---

**A P P E A R A N C E S:**

BOIES SCHILLER FLEXNER LLP
BY: ADAM R. SHAW, ESQUIRE
30 South Pearl Street, 12th Floor
Albany, New York 12207
For the Plaintiffs

BOIES SCHILLER FLEXNER LLP
BY: HSIAO (MARK) C. MAO, ESQUIRE
44 Montgomery Street, 41st Floor
San Francisco, California 94104
For the Plaintiffs

MORGAN & MORGAN
BY: RYAN JOSEPH McGEE, ESQUIRE
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
For the Plaintiffs

PEM LAW LLP
BY: RAJIV D. PARIKH, ESQUIRE
1 Boland Drive, Suite 101
West Orange, New Jersey 07052
For the Plaintiffs

TROUTMAN PEPPER HAMILTON SANDERS LLP
BY: ANGELO A. STIO III, ESQUIRE
MELISSA CHUDEREWICZ, ESQUIRE
301 Carnegie Center, Suite 400
Princeton, New Jersey 08543
For the Defendants CARCO Group Inc.; Acxiom, LLC; AtData, LLC; Deluxe Corporation; DM Group, Inc.; Enformion, LLC; Red Violet, Inc.; Remine Inc.; RocketReach LLC; CoreLogic, Inc.

VEDDER PRICE, P.C.
BY: BLAINE C. KIMREY, ESQUIRE
222 North LaSalle Street
Chicago, Illinois 60601
For the Defendants Whitepages, Inc., and Hiya, Inc., et al.

(Appearances continued onto next page.)

**A P P E A R A N C E S: (Continued)**

SEYFARTH SHAW LLP
By: ROBERT T. SZYBA, Esquire
620 Eighth Avenue, 32nd Floor
New York, New York 10018
For the Defendants Infomatics, LLC; The People Searchers, LLC; and We Inform, LLC, et al.

McCARTER & ENGLISH, LLP
BY: SCOTT S. CHRISTIE, ESQUIRE
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
For the Defendants Black Knight Technologies, LLC and Black Knight, Inc.

HOGAN LOVELLS US LLP
BY: DAVID M. CHEIFETZ, ESQUIRE
390 Madison Avenue
New York, New York 10017
For the Defendant The Lifetime Value Co.

LATHAM & WATKINS, LLP
BY: ROBERT C. COLLINS, III, ESQUIRE
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
For the Defendants CoStar Group, Inc.; CoStar Realty Information, Inc.; Lightbox Parent, L.P.; Lightbox Holdings, L.P.; Oracle International Corporation; Oracle America, Inc.; Oracle Corp.; PeopleConnect Holdings, Inc.; Intelius, LLC; and PeopleConnect Intermediate, LLC

FAEGRE DRINKER BIDDLE & REATH LLP
BY: ROSS LEWIN, ESQUIRE
105 College Road East, Suite 300
Princeton, New Jersey 08542
For the Defendants Epsilon Data Management, LLC; Conversant LLC; and Citrus Ad International, Inc.

SAUL EWING LLP
BY: WILLIAM C. BATON, ESQUIRE
1 Riverfront Plaza, 1037 Raymond Boulevard
Apartment 1520
Newark, New Jersey 07102
For the Defendants Precisely and Valassis

(Appearances continued onto next page.)

**A P P E A R A N C E S: (Continued)**

PARKER POE ADAMS & BERNSTEIN, LLP
BY: SARAH FULTON HUTCHINS, ESQUIRE
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
For the Defendant BlackBaud, Inc.

**Also Present:**

Larry MacStravic, The Courtroom Deputy

Maria Cosma, Judicial Law Clerk

(Further appearances of counsel are listed on sign-in sheet, Attachment 1, to the docket minute entry.)

(PROCEEDINGS held in open court before The Honorable Harvey Bartle, III, United States District Judge, at 9:57 a.m. as follows:)

THE COURTROOM DEPUTY: All rise.

THE COURT: Good morning. You may be seated.

MR. SHAW: Good morning, Your Honor.

MR. PARIKH: Good morning.

MR. STIO: Good morning, Your Honor.

MS. CHUDEREWICZ: Good morning.

THE COURT: Thank you for coming. The topic of this morning's conference centers on the scope of discovery with respect to the remand motions and also a briefing schedule. But before we get to that, there's some issue that's been raised about the form of discovery.

Mr. Stio has disputed that. And I guess the question is whether we should try to go through the various requests, get it decided here today, and put it in an order, rather than wait for Rule 34 motions to be filed and then objections and all the rest of it. Because I think the issues are pretty well teed up here at this point.

Mr. Stio, I'll hear from you on that.

MR. STIO: Good morning, Your Honor.

THE COURT: Good morning.

MR. STIO: My view on that is that there's a process under the federal rules so that we can have certainty as to

what documents are being requested, whether there are documents that are being withheld, whether there are documents that they don't have, and if they're claiming privilege over documents, we would like to see what they're claiming privilege over.

I think with the order, it provides a vagueness where a party could take advantage of that. And my preference would be to follow the federal rules. There's a process in place. I know that other courts have employed that even with subject matter jurisdiction, and I would respectfully request that we use that here, Your Honor.

THE COURT: Mr. Shaw.

MR. SHAW: Good morning, Your Honor. Adam Shaw for the plaintiffs.

THE COURT: Good morning. Yeah.

MR. SHAW: We think that that's just an overburden in this situation here. We tried to follow Your Honor's direction at the last conference that we not slice this too thin. We are trying to give them everything about the assignment that they could gain the information that they need for this jurisdiction.

I think it's important to remember the context. The context is they have the burden of proving that we colluded for the purpose of somehow getting these, you know, subset of undefined group of the remand defendants into state court, even though there's double that amount that are in federal court.

I mean, the initial assumption is a fiction. We asked them, what is it that you want? What's the basis of it? And they said, we don't have a factual basis for determining collusion. We have speculation. And so we're trying to put a reasonable, efficient way of getting them the information that they need.

They want information about the assignments, here's our list, we're giving you the assignments, we're giving you -- you could determine the amount of the assignment, the timing of the assignment, the relationship between the parties in the assignment. We're giving them that. They raised an issue about the PBA. We're going to give them the PBA documents. Most importantly, we're going to give them a 30(b)(6) witness. Half of these questions that they have about motive, they could just get it from the 30(b)(6) witness. Instead they want us to engage in this wholesome process that we think goes too far, because then we're going to start arguing about, you know, what are the sources, what are the search terms, what are all of the things that are just unnecessary here, especially when you have a 30(b)(6) witness.

THE COURT: Mr. Stio.

MR. STIO: I think we got a little bit off of the subject of what is the form, but, Your Honor, I want to try to prevent gamesmanship here. I want to serve document requests. I want to serve a Rule 30(b)(6) notice. They are not

burdensome. They are very narrow. They focus on the *Grassi* factors that the plaintiffs admit are relevant. And one of the things that they fail to recognize to Your Honor but they have in their document, the letter that they submitted, is all the cases that we have put in our letter talk about the totality of the circumstances. And the scope is not narrow collusion. The scope is, who is the real party in interest?

And our document requests, our topics are targeted to that. And they're targeted to issues of what communications occurred here. And we're not looking for broad ESI. But we have put before Your Honor a factual basis for why we think that there is collusion and why Atlas isn't a real party in interest.

In April of 2023, Atlas started soliciting all of these police officers. They have come to this Court on two prior occasions saying, we have to get these nondisclosure requests in place, we need people to start taking things down. They held on to these documents since April of 2023, these assignments, some of them.

We need to know what representations, what communications were occurring with the PBA.

Now, they said, well, we're going to give the PBA documents. No. If you look at what they proposed, they're going to give us a contract. They're not going to give us any communications with Pat Colligan of why he's writing a letter

on April 5th saying, "Atlas Privacy, the time is now, sign up."

They jerry-rigged this to create a lawsuit --

THE COURT: I think we're getting off the subject. I really want to talk about the format.

MR. STIO: Okay.

THE COURT: And there are two ways to go here. One is the more traditional way, you file your motion or your request for production and so forth, and then the plaintiff objects if it believes that you're asking for things that you're not entitled to. And that's going to delay it.

Now, in this case, unlike many cases, you've already set forth what you want in your letter to me and to counsel, and they have set forth what they're prepared to give. So it seems to me it would expedite the matter if the Court entered an order, after discussion here today, what the plaintiff will be required to produce.

Your record is protected because this hearing is on the record, and like any other hearing, you have made a record as to what you wanted and what the Court may not permit you to have and any other discovery dispute. So it seems to me we're in a position to go through the list today. We know what the plaintiff is willing to produce, and then you can make your pitch about what should be added and then I enter an order, require the plaintiffs to produce the documents within a certain period of time, and we'll deal with that subject with

respect to the Rule 30(b)(6) depositions, what the topics are, and we'll get that straightened out, and then you'll have your 30(b)(6) deposition after you receive the documents, and then we'll have briefing. I mean, it seems to me pretty straightforward, particularly the way it's been set up so far with your disclosing exactly what you want.

So in effect, you have prepared your Rule 34 request.

MR. STIO: I understand that, Your Honor.

Can I ask a question?

THE COURT: Sure.

MR. STIO: Would any order include the obligation to identify what documents are being withheld, what documents don't exist, and a privilege log if they're withholding documents on privilege?

THE COURT: Well, according to their letter, there are certain things that they said they would be willing to produce, but they say they have no documents. That's true in any discovery. You file your request under Rule 34, and the other side responds, "we don't have any documents," correct? So if I order them to produce documents and then they say they don't have the documents, unless you find out later they do, that's the end of the story, isn't it?

MR. STIO: I --

THE COURT: I mean, discovery depends on the good faith of the parties.

MR. STIO: Correct, Your Honor. But what I would like --

THE COURT: I'm not about to go make an inspection of all of their records, nor is anyone else.

MR. STIO: No; I hear Your Honor. But what I'm asking for is, when they produce documents, if they are not going to produce a category, I would like to have it in writing. Or if they are withholding documents on the basis of privilege, before I go down a path of having to take a deposition, I just want to know, if documents exist, if they are claiming that they're going to withhold anything on privilege.

THE COURT: Well, they're always entitled to withhold privileged documents, but you just want the identification of any relevant document that you think -- that they think is privileged; is that right?

MR. STIO: And I'm fine with them exercising their right for privilege, but I think I should be able to see a privilege log of what they're claiming privilege over.

THE COURT: Well, let me ask Mr. Shaw. I guess -- go ahead.

MR. SHAW: You know, he said he didn't want to get involved in gamesmanship and Your Honor said, you know, there's got to be good faith. We're coming to this in good faith. If he asks a question at the 30(b)(6) deposition and it gets into

a time period when Atlas was talking to attorneys, then a privilege assertion will be made.

THE COURT: Absolutely.

MR. SHAW: I don't -- from our list, because our list is set up so that it's not excluding privileged documents necessarily, so --

THE COURT: It is excluding or is not?

MR. SHAW: I mean, I guess -- I don't think -- we didn't set it up that way. We set it up with the documents we're willing to give them. We're not aware of any documents -- I mean, obviously after litigation started and we got into these kinds of things there's now privileged documents. But at the time of these assignments, I don't think there was.

THE COURT: Right.

MR. SHAW: So I think he should just ask the 30(b)(6) witness; and if he says there's privileged stuff, then we can raise it at that point and then give them an identification of those.

THE COURT: Is there anyone else who wants to say anything on this issue? Let me hear from anybody else on the form of discovery, whether the Court ought to enter an order requiring plaintiff to produce certain documents, or should we go the route of waiting until the defendants serve the Rule 34 request?

Anybody have anything to add on that subject?

All right. Yes, sir.

MR. KIMREY: Your Honor, Blaine Kimrey for Whitepages and Hiya.

THE COURT: Go ahead.

MR. KIMREY: We're actually fine with formal requests or an order by the Court because the effect will be the same. And you're right, Your Honor. We think that maybe an order would be more efficient.

THE COURT: Right.

MR. KIMREY: But we agree with Mr. Stio that the rule should be followed with respect to what's being produced, what's being held back, what doesn't exist and that a privilege log be provided. Because I am concerned that plaintiffs' counsel, in drafting their list, has drafted it in a way to circumvent privileged documents and we need to know if there are documents withheld based on privilege.

THE COURT: Right.

MR. KIMREY: So that's our position, Your Honor.

THE COURT: All right. Thank you.

MR. KIMREY: And also to clarify something in the letter that they sent last night, they suggested that the defendants that didn't opt into the Troutman letter didn't agree with it.

That's not the case. My understanding -- we

supported the Troutman letter.

THE COURT: Right.

MR. KIMREY: And actually participated in one of the meet-and-confers, which is noted in the footnote in the letter of the opposition.

THE COURT: Right.

MR. KIMREY: I hesitate to do this again because it kind of came back to haunt me when I did it last time, but I don't think any one of the defense lawyers here opposes the positions fundamentally that Mr. Stio is taking.

THE COURT: All right.

MR. KIMREY: I think that we support him.

THE COURT: All right. Well, that deals with the scope of discovery.

All right. I think what I'm going to do is I'm going to ultimately enter an order which will identify the documents to be produced by the plaintiff, and we'll set a deadline and then time for the Rule 30(b)(6) deposition and then the briefing schedule.

But I think what we need to do now is take Mr. Parikh's letter and, Mr. Stio, you can start with that, and you can make your argument as to what additional materials are to be produced, all right, so I can then have a --

MR. PARIKH: Your Honor.

THE COURT: Yeah.

MR. PARIKH: Your Honor, Raj Parikh on behalf of the plaintiffs. Just one thing on the privilege log before we start going through the categories.

THE COURT: Yeah.

MR. PARIKH: So I think we're fine with advising them, you know, if there's a category of documents, we've talked about what it is. So if we say, for example, the service terms, and we're talking about providing multiple iterations of the service terms --

THE COURT: Right.

MR. PARIKH: -- we have no issue saying to them we've withheld documents on the basis of privilege. I think with some of their categories, if there is a desire from the defense that we produce a full-blown privilege log, then we're talking about a significant amount of information, perhaps. I'm not sure, but, you know, if we start getting into emails and things like that.

And just by way of simple example, Your Honor, you know, most of these cases were filed starting in early February. So from some point in late January or mid-January through early February, there's obviously a lot of activity to get, you know, 140-plus cases ready for filing.

THE COURT: Right.

MR. PARIKH: To have to create a privilege log within that time period would be significant in terms of the

proportionality analysis and for plaintiffs to have to go through that, so if we put some time parameters on it. If they're interested in, you know, prior to the notices being served, for example, in December and putting that on as a privilege log, I think we can work through those issues. But I just want to frame that as, you know, one particular issue in terms of proportionality.

THE COURT: Well, what would be done in the normal Rule 34 request for production?

MR. PARIKH: So it would be that there would be a full-blown privilege log, Your Honor. But it would -- if we're limiting it just to subject matter jurisdiction, then we would be talking about search terms, you know, which custodians, documents would have to be searched for, et cetera, and that will add significant time, I think, to this process.

And so I think what we've proposed, because we've gone through a good faith analysis with our client, we don't believe that the communications that Mr. Stio is talking about exist, but we don't want to end up in a gotcha game where, you know, there might be one errant email or something along those lines seven months down the road that somebody construes to be related to this issue when it really is not.

THE COURT: Okay. Well, we'll get to that.

MR. PARIKH: Okay. Thank you, Your Honor.

THE COURT: Why don't we -- I assume, Mr. Stio, you

have no objection to the production of the documents identified in Mr. Parikh's June 2nd letter. Start with that. There are items 1 through 7.

MR. STIO: I do have an objection.

THE COURT: All right. Now, let's talk about what you want in addition to that.

MR. STIO: Well, no, I have an objection as to those items. And the objection is, Your Honor --

THE COURT: You object to the production?

MR. STIO: On what they have in their letter, yeah.

If Your Honor would go to page 2 of their letter --

THE COURT: Yeah.

MR. STIO: -- they have used a defined term as "relevant time period," or "relevant period."

During the last --

THE COURT: Well, what --

MR. STIO: On Item No. 1, it's at -- three-quarters down there.

THE COURT: Oh, I see. You're right.

MR. STIO: Yeah.

So during the last conference, Your Honor, they represented that they were going to produce at least three versions of the service terms. And the versions date back to January of 2023.

THE COURT: Right.

MR. STIO: This definition, which carries over not only in number 1, but also in number 3 --

THE COURT: Right.

MR. STIO: -- seems to narrow that to the time that they sent out their first nondisclosure request on Christmas Eve or New Year's Eve, not dating back to January 2023, not at the time of April 5, 2023 when they were out at conventions for the PBA soliciting members to sign up. And I think that they've really constrained it and they've walked back from what they represented to this Court.

THE COURT: So what would you suggest is the time period?

MR. STIO: I think the relevant time period is January 1, 2023 to the present.

THE COURT: All right. Let's just deal with that.

Mr. Shaw, what about that?

MR. PARIKH: Your Honor, I can handle that.

THE COURT: Mr. Parikh, go ahead.

MR. PARIKH: Yes.

So we have no problem with January 1, 2023, Judge. That's fine. We've said that. We said we would provide the service terms. I think coming up to the present date is a little bit of an issue for the reasons that I said, to the extent that they want privilege logs. If it's just about the service terms, that's fine, we can give them the service terms

in place for this --

THE COURT: Yeah. What would be the relevance of any service terms that have been developed since the last case was filed?

When was the last case filed?

MR. PARIKH: Late February, Your Honor.

THE COURT: Okay. So if they recently developed a service term in May, what relevance is that to our cases here?

MR. STIO: My belief, Your Honor, I don't have the document in front of me, when I looked at it, service terms have a provision that say they can be amended by Atlas at any time, similar to what their terms of use in their privacy policies say.

So if there is a superseding document where someone has a membership and has a service and the service term is amended by something that occurs after February 4, 2024, which is the latest one that was on their website, we would want to look at that.

THE COURT: Right.

MR. PARIKH: So two points, Judge. One, I'm not sure what that has to do with subject matter jurisdiction, right? They've -- the cases before that --

THE COURT: Right. Because the case was filed -- it's what happened as of the time the complaint was filed. And so what happened afterwards has nothing to do with collusion,

does it?

MR. STIO: Your Honor, if they filed the case and the percentage of sharing of the recovery has changed, I think it goes back to whether or not this was a legitimate assignment.

THE COURT: I see.

MR. PARIKH: And to short-circuit, Your Honor, I don't believe the service terms have been amended since before the first case was filed.

THE COURT: Well, then, why are we -- let's not fuss about it. It's a moot point. We'll just say January 1, 2023 up to the present.

MR. PARIKH: And what we said, Your Honor, because we don't want to use that time period for every category, we said until the last case was filed, because that would be relevant to a subject matter-jurisdiction analysis. And that's what we put in our definition -- "to the date of the last filed complaint."

THE COURT: What about that, Mr. Stio?

MR. STIO: Your Honor, I'm fine with "the last filed complaint."

THE COURT: All right. "Last filed complaint." All right.

January 1, 2023, last filed complaint, as to number 1. All right.

How about number 2?

MR. STIO: So, if we're dealing with relevant period and that's the same for number 2a --

THE COURT: Make it the same relevant period, January 1, 2023 through February 4, 2024.

MR. STIO: That's fine.

THE COURT: All right. Number 3. Again, amending the relevant time period.

MR. STIO: As long as we get all versions with the amended time period, that's fine.

THE COURT: Okay.

MR. PARIKH: Judge, on this one, I believe that some of the defendants -- and I'm happy to continue forward if you'd like to, but I know that some defendants -- and I believe Mr. Christie is standing there to raise this very issue, I presume -- but have requested copies of every single assignment confirmation.

What we have proposed is to provide templates and then a chart, essentially, that lists out what those issues are. So I wanted to raise that if this is the appropriate moment to do so.

THE COURT: Mr. Stio, and then we'll hear from Mr. Christie.

MR. STIO: One of the issues that we have, Your Honor, on that is they have produced the spreadsheets that Your Honor ordered them to produce of the assignors.

THE COURT: Right.

MR. STIO: And the spreadsheets have far, far more names identified than what we believe were sent out. They have far, far more names identified than actually what is alleged in each of the complaints. And in my client's instances, we've received spreadsheets of, you know, 35,000 names, 40,000 names. And you look at the complaint, and the number of covered persons or assignors are 19,000.

THE COURT: Right.

MR. STIO: And we just want to know, well, what's going on and who are the assignors? I think we're entitled to know the identity.

THE COURT: Mr. Parikh.

MR. PARIKH: So, with all due respect to Mr. Stio, that's factually inaccurate. The lists may have 40,000 entries, but it still is the 16-, 17-, 18,000, 19,000 names for each particular defendant. And the reason why the list is set up that way is because you have an individual, a police officer, that may have made a request to Mr. Stio's client to remove their home address and a phone number and a second phone number, which would be three requests for that one person.

THE COURT: I see.

MR. PARIKH: So when you talk about 35- to 40,000, that's the reason.

The other thing, Your Honor, is the list is unique

for each and every single defendant entity. And so as I mentioned during our prior conferences, different people on board at a different time since the Atlas system and they sent to a different entity.

THE COURT: Okay.

MR. PARIKH: So the list we provided in order to have these defendants comply with Daniel's Law, which some of them still haven't done that as we stand here today, was as a courtesy so that they could do that.

We have represented to them these are the individuals that have transmitted requests to your entity.

Some of the defendants, Judge, and obviously with even just the 30-plus defendants here that are remand defendants, some of them put blocks in place. So they stopped receiving emails because they didn't want them. Others it went to spam. So there's all kinds of little issues. None of that has to do with subject matter jurisdiction, which is what we're here for.

So we got a request that they want the dates of the assignments. We said, we don't really think it's necessary for subject matter jurisdiction, but fine, we'll give it to you, we'll put it in a chart. You'll have the name of the person. You'll have the date of their assignment, the information that they requested to be redacted, and then we also went the extra step to say that we'll also provide to you a categorization of

who that person is, whether they're law enforcement, a prosecutor, a judicial officer, or a family member.

THE COURT: All right.

MR. STIO: Do you want to hear from Mr. Christie?

THE COURT: All right. Yes.

MR. CHRISTIE: Thank you.

THE COURT: You're welcome.

State your name for the record, please.

MR. CHRISTIE: Yes, Your Honor. Scott Christie on behalf of Black Knight Technologies.

THE COURT: Yes.

MR. CHRISTIE: A couple quick things, Judge.

We have received, as Mr. Stio mentioned, the covered persons list. We have crunched them based on what we can do by virtue of comparison to the emails that we received, and there are thousands, Judge, thousands of names that we do not recognize from the emails.

I've conversed with Mr. Parikh about this. And, based on their concern that we actually reduce and redact the data of the covered persons that made the requests, have asked for the emails. He tells me he will not produce them because he thinks it is, by virtue of the request, goes to merits discovery and that it's not appropriate for us to get that information now.

His position is that based on the covered persons

list, if you don't take down all the data for those people, you do so at your peril. In essence, what they are doing, Judge, is trying to add additional take-down requests by virtue of these covered persons lists based upon emails that haven't been sent by the covered persons, which is required.

THE COURT: But what does this have to do with subject matter jurisdiction?

MR. CHRISTIE: It does not have to do with subject matter --

THE COURT: Well, let's deal with subject matter jurisdiction. And if there are any other issues, we'll deal with them later this morning if they're pressing, all right?

MR. CHRISTIE: All right. May I just quickly address the scope of the discovery?

Our position, Judge, is that Your Honor mentioned that the scope should be limited to the date of the last filed complaint.

Our perception is that Atlas, you know, should not have a hard-and-fast end period of that point for two reasons.

Number one, to the extent that they are planning, as we have heard, to make, you know, additional bombardment with additional email requests.

And number two, to the extent that any of the complaints are amended in any way.

So our perception --

THE COURT: Well, if they amend them, then we'll deal with that at that point. But we have to just deal with the facts as they exist today, so.

All right. Thank you.

MR. CHRISTIE: I understand, Judge.

MR. PARIKH: Your Honor, just one point with respect to what counsel just raised. And I know we're not going to get into details. But in one of our letters, you'll notice that we talked about we would argue waiver of personal jurisdiction. We are unequivocally clear as to what Your Honor's directive was, but it's these types of requests from the defendants where we said if the defendants are going to go beyond the, kind of, narrow corridor that Your Honor set up for subject matter jurisdiction, then it would be a waiver of personal jurisdiction arguments, and we would maintain that to the extent it goes beyond that corridor.

THE COURT: I think I made it pretty clear that we're not -- there's no waiver of anything else here.

MR. PARIKH: I understand.

THE COURT: Let's just focus on the facial challenge and also on the remand.

MR. PARIKH: Correct, Judge. Thank you.

THE COURT: All right.

Let's move on now to number 4.

MR. STIO: Yes.

Your Honor, we would need that to be expanded to include communications. And the communications relate back to this April 5, 2023 letter, what they were communicating to the PBA about the litigations, about the relationship, about the real party in interest.

THE COURT: It says, "Contracts between Atlas and law enforcement unions based in New Jersey." Okay.

MR. STIO: Correct.

THE COURT: And that would be the same period, right? January 1, 2023 through February 4, 2024?

MR. STIO: Well, they have it unlimited, Your Honor. I don't know when they went into a contract with --

THE COURT: Well, what time period -- this is unlimited, number 4?

MR. PARIKH: Yeah. I think we would -- I think it's -- I think we're fine doing it up until today, Your Honor.

THE COURT: All right.

MR. PARIKH: You know, at the end of the day, I think the distinction Mr. Stio is trying to draw is communications versus contracts. You know, again, I think I would go back to when we get into communications, the most efficient pathway here is for them to ask the 30(b)(6) witness questions.

If the 30(b)(6) witness says oh, yeah, you know what, I had, you know, all of these email exchanges, which I don't think he'll testify and say that because I don't think they

exist, but if he testifies to that, then we can revisit that issue if we need to.

THE COURT: Well, I don't know. It seems to me now the contracts are one thing, but it would be communications I assume between -- you just don't -- there are obviously communications that accompany contracts.

MR. PARIKH: Yeah. And I think the question, Judge, is communications related to subject matter jurisdiction, right? Again, that's the framework we're talking about here.

THE COURT: Right.

MR. PARIKH: So if the communications are, well, hey, you know, this is our platform and we have the ability to help police officers, you know, effectuate their rights under Daniel's Law or under some other privacy law, those communications aren't relevant or even discoverable as it relates to subject matter jurisdiction. And that's part of the issue here, is that we've gotten requests from the defendants that are saying all documents, all communications, without narrowing them as to within the framework of subject matter jurisdiction.

THE COURT: All right.

MR. STIO: Your Honor, that's inaccurate.

Your Honor, the issue here is who are the real parties in interest. Even in Mr. Parikh's example there --

THE COURT: Right.

MR. STIO: -- that would be relevant.

Let me tell you how I can allow you to enforce your rights. The assignors is a real party in interest.

THE COURT: Right.

MR. STIO: We should be entitled to communications with the PBA. We have one document that shows as far back as April of 2023, Atlas was getting assignments and signing up people.

Now, if I were a police officer and I was concerned that I need my stuff taken down, I would say when are you going to send the take-down notices? What's the delay? What's going on?

THE COURT: But what does that have to do with subject matter jurisdiction?

MR. STIO: It has --

THE COURT: It may be -- and there may be some impropriety, but that has nothing to do with subject matter jurisdiction, does it?

MR. STIO: No, it does.

THE COURT: Why?

MR. STIO: Because if the person is saying these are my rights, these are my interests --

THE COURT: Yeah.

MR. STIO: -- they're the real party in interest. That goes to the totality of circumstances.

What's being lost here is what *Long John Silver's* and *Grassi* and their progeny say. They say you look at the totality of circumstances related to the assignment.

All the plaintiffs want to do is give assignment documents and policies that their counsel drafted. And we are entitled to know the circumstances to determine not just if it's a sham, who is the real party in interest, because that is what all the case law says you look at.

THE COURT: Can't you tell that by the contract?

MR. STIO: You can get some of it from the contract, Your Honor, but not all of it.

THE COURT: Well, the contract sets the rights of the parties, doesn't it, of the assignor and assignee?

MR. STIO: It does set rights of parties, but it's, again --

THE COURT: And don't we have a parol evidence rule?

MR. STIO: Your Honor, *Grassi*, *Long John Silver*'s allowed -- those are two. There were others cited in my letter -- allowed discovery beyond the assignment itself. And they did that because they want to determine is there an assignment that's entered into that is used for the sole purpose of defeating court jurisdiction, who's the real party in interest.

And this type of information about communications with the PBA is not going to be difficult for them to obtain.

It goes to the surrounding circumstances and who is the real party in interest.

In all the other cases, *Grassi*, *Long John Silver's*, there's an assignment and the Court still said you're entitled to information about who the real party in interest is. All we're trying to do is get to that.

THE COURT: Of course, isn't behind all this a New Jersey statute which permits assignments?

Now, I know the fact that an assignment may be legal under state law doesn't answer the question. You have to go beyond that. But in none of those other cases do we have a statute which determined it was good public policy in New Jersey to permit these assignments to a company like Atlas to facilitate possible recovery by the individual law enforcement officer.

In other words, for an individual law enforcement officer to sue 50 or 100 databases, that's a pretty burdensome thing for an individual to do, to protect his rights to privacy.

So the Legislature determined that there would be a procedure where these could be assigned. And I assume -- obviously I haven't looked at the documents -- that the law enforcement officer, if Atlas prevails, will get part of the recovery and Atlas will get part of the recovery. I mean, isn't that the statutory scheme we're talking about here?

MR. STIO: So --

THE COURT: What's so unusual about that?

MR. STIO: Two points, Your Honor.

One, there is a statute in place, Daniel's Law.

THE COURT: I understand.

MR. STIO: Two, there's a federal statute, CAFA, that allows that individual assignor to represent the entire class. If there are communications with the PBA that say we want you to assign the case to us so that we can pursue it, we have a Delaware corporation and we can avoid CAFA jurisdiction, I think that's relevant to a motion -- in opposition to a motion for remand, because it does show activity related to trying to defeat the jurisdiction of the federal court.

THE COURT: Well, then, what if there was any subject -- any document that discussed CAFA, you want it limited to that?

I mean, I'm -- look, we don't want the tail wagging the dog here. Discovery has to be proportional, you know.

MR. STIO: Your Honor, they're suing us for $19 million.

THE COURT: I understand they're suing you. But we're talking about subject matter jurisdiction here. We're not deciding the case on the merits.

MR. STIO: Right. But the case law says we're entitled to the totality of circumstances, and the plaintiffs

are getting up saying let me tell you what those circumstances are.

THE COURT: I understand. But I'm trying to -- the discovery has to be relevant. It has to be proportional. The discovery rules are quite clear on that now. So we have to -- there have to be some bounds to discovery.

MR. STIO: Right.

THE COURT: And so what I'm trying to do is to see what -- to probe this issue, determine what really is necessary to determine this issue.

I understand totality of the circumstances, but that doesn't mean you have carte blanche to discovery.

MR. STIO: And we're not asking for that, Your Honor. We're asking for discovery related to communications with the PBA and the police unions to sign these up. We're not asking for every single person.

THE COURT: You're saying any communications?

MR. STIO: Related to Atlas' services.

THE COURT: Well, that's everything.

MR. STIO: How is it? No. They came up with, well, what if, you know, we had a contract for someone with PBA who's going to, you know, do the maintenance. We don't want that. But to limit it to CAFA itself, I mean, I think it has to be a little bit broader than that.

How about related to the assignment, any discussion

of the assignment? That's the issue here.

THE COURT: Well, I mean, that's the whole purpose. I'm just trying to understand the statutory scheme. The Legislature determined that the individual police officer or law enforcement officer or prosecutor or judge could assign his or her claim to Atlas, correct?

MR. STIO: Correct, Your Honor.

THE COURT: And that Atlas could bring the action on behalf of the individual and that Atlas would get part of any recovery, and the law enforcement officer would get a portion of the recovery.

Isn't that the basic scheme?

MR. STIO: The basic scheme, except for I don't think the statute talks about any type of recovery or splitting --

THE COURT: No. But, I mean, that has got to be -- the Legislature didn't contemplate you'd assign your claim for free to Atlas and let Atlas recover and the law enforcement officer get nothing. I mean, let's make -- let's use our common sense here.

What would be the purpose of doing it if the law enforcement officer wasn't to get some recovery?

MR. STIO: Your Honor, if the case is about --

THE COURT: No. Look --

MR. STIO: You said what is the purpose. I'm going to answer.

THE COURT: What was the -- listen, let's be -- what was the purpose of the statute, as you understand it, of the assignment?

MR. STIO: The purpose of the statute?

THE COURT: Of the assignment.

MR. STIO: Of the assignment?

THE COURT: Yeah.

MR. STIO: To allow the plaintiffs to enforce the rights belonging to the --

THE COURT: And why? Why would the Legislature do that? Let's be -- let's use our common sense.

MR. STIO: Right. Yeah.

THE COURT: Why would they do that?

MR. STIO: For privacy reasons, Your Honor.

THE COURT: For what?

MR. STIO: For privacy reasons, not to allow a private entity to monetize privacy rights.

Your Honor, this whole scheme here wasn't to take the names down, to redact information. If it was, they would have sent out nondisclosure requests in April of 2023.

THE COURT: Okay. All right.

MR. STIO: It was about creating a situation of noncompliance. And we want to know the totality of the circumstances.

And I don't want to go broad, Your Honor. I'm trying

to keep it narrow. But we have a document, and they keep saying, well, just ask our 30(b)(6) witness. I would like to see the documents so that I can have questions.

THE COURT: Right. I understand. I understand your point.

MR. STIO: Okay. Thank you.

THE COURT: What about that, Mr. Parikh?

MR. PARIKH: Your Honor, I mean, all of these requests are based on a fiction. We can't forget the fact that --

THE COURT: No. Wait a minute. You have -- you're putting the cart before the horse. You say it's fiction.

MR. PARIKH: Your Honor, we can't forget the fact that we're here because these defendants, the only way that they were able to remove these cases from state court was to come up with this concept of collusive joinder, the fact that somehow Atlas colluded with the police officers, 19,000 of them, and specifically selected Delaware as a corporate residency just to avoid these specific defendants being in federal court.

And remember, there are the other half of the defendants that we've not sought to remand because they're properly before the Court.

And so I say that, Your Honor, because when we talk about communications with the PBA and kind of go to that

breadth, we have to remember a few different things.

The officers here are the ones that transmitted these requests to the defendants. That happened starting in December of 2023. And it was only after these defendants, as opposed to other companies that complied, these defendants made a choice not to comply with Daniel's Law by removing that information within ten business days. They then had additional time. They had all through January for most of them where they didn't remove that information. And when that occurred finally in February, there were assignments that were issued or assignments that were given to Atlas from these individuals and therefore then lawsuits were filed.

And so when we talk about communications going back to 2023, again, I'm not sure how that gets into relevance related to who the real party in interest is, which is the term they keep using, or how it relates to collusiveness in a manner that is proportional to simply just asking questions of the 30(b)(6) witness. They can ask these questions and say what were your -- they're going to ask it anyway, right -- what were your discussions with the PBA about subject matter jurisdiction? What were your conversations with the PBA about CAFA? Ask the 30(b)(6) witness those questions. And if through that process at the deposition they discover that there may be other communications and documents, et cetera, then we have that discussion if we reach that point in time.

THE COURT: Well, I'm just wondering -- go ahead.

MR. KIMREY: Your Honor, Blaine Kimrey for Whitepages and Hiya again.

THE COURT: Yes.

MR. KIMREY: So the opposition is characterizing this as just a query into collusiveness and a sham and dastardly motives, but that's only one factor in the *Grassi*, *the Long John Silver's*, and the *Attorneys Trust* cases.

The issues that should be subject to discovery are as follows, and I'm just going to list them out from *Long John Silver's,* from *Grassi*, and from *Attorneys Trust*.

In *Long John Silver's*, number one, whether the assignors may share in the recovery, if any. So that's number one.

THE COURT: And that we're going to be able to find out from the contracts, correct? And the assignments are going to say that officer X gets a certain percentage of any recovery.

MR. KIMREY: Sure.

THE COURT: Then we would know that.

MR. KIMREY: The contracts themselves should provide for the contingent fee arrangements, yes, Your Honor.

THE COURT: Yes, right.

MR. KIMREY: Who is funding the litigation, number two, under *Long John Silver's*.

Number three, motive.

Now, motive is not dispositive.

THE COURT: Right.

MR. KIMREY: It's not essential. It's just one of the factors that may be considered.

THE COURT: Right.

MR. KIMREY: But it's not a prerequisite to finding that you should disregard Atlas' Delaware registration for purposes of diversity. The opposition is trying to cast this very narrowly as a collusive joinder situation under 1359, 28 U.S.C., 1359.

THE COURT: Right.

MR. KIMREY: But that's not what's at issue here. 28 U.S.C., 1359 is not what's at issue. By analogy it is, but we're not invoking 1359.

THE COURT: Right.

MR. KIMREY: Because we're not arguing collusive joinder. We're arguing that Atlas should not be considered a real party in interest for purposes of diversity jurisdiction.

THE COURT: Right.

MR. KIMREY: The next item or factor, fourth factor under *Long John Silver's*, is whether there is the presence or absence of some independent, preexisting, legitimate interest in the assignee. That factor, Your Honor, is a bridge to *Grassi*, because *Grassi* also has that factor within it.

And *Grassi* also adds: The size of the interest assigned; whether the assignor and assignee had separate counsel; whether the assignee's attorney is controlling the litigation; the timing of the assignment; whether the assignment could be considered a sort of contingent fee arrangement; and whether there was a strong likelihood of prejudice against the defendant if citizenship of the assignee was considered for purposes of diversity jurisdiction.

*Attorneys Trust* then adds two additional factors on top of that. They kind of overlap a little bit, but they do sound phrased a bit differently, whether there were good business reasons for the assignment, and whether any consideration was given to the assignee.

So we've gone through all of the requests for production that Troutman proposed to the opposition.

THE COURT: Right.

MR. KIMREY: And we've drawn a line from each one of those to each one of those factors. So they all are relevant to those factors, Your Honor. I understand your proportionality point. I understand you're saying that this is just subject matter jurisdiction discovery and it's not full-blown merits discovery, which totally agree. But all of those requests go to those issues.

And I just, every time I hear the opposition say, oh, how could there be a sham between all these police officers and

Atlas, it's a red flag to me because we're not saying that it's necessarily a sham. It may be. But we don't have to show that it's a sham. We just have to satisfy and address these factors to Your Honor, which are illustrative. Even these are just illustrative, they're not exhaustive.

THE COURT: Well, let me ask this: In number 4, if we talked about communications which relate to subject matter jurisdiction; in other words, not every communication between Atlas and the PBA, but only the Delaware subject matter jurisdiction.

MR. PARIKH: I think -- I mean, Your Honor, in theory that's good. But, for example, if there's communications between Atlas and in this case the PBA saying, you know, so-and-so data broker is located in New Jersey, right? And it has nothing to do with subject matter jurisdiction, but remember part of this was also how to, you know, where do notices get delivered, how do they get delivered. It's a whole product. So if it's that type of contact information, then there may be communications. I'm not sure.

But, again, to me, Your Honor, from a proportional perspective, and I know Mr. Shaw has something to say with respect to what counsel just mentioned so I'll let him go as well, but the most efficient way is for them to just ask the 30(b)(6) witness these questions.

THE COURT: Yeah. But it's always helpful to have

documents on which you can base your question.

MR. PARIKH: I understand. And we're not saying "no" to the documents, Your Honor. I think, you know, for example, they raised this issue of contracts with the unions. It wasn't in our first proposed list of things to provide, and we said, okay, you know what, fine, we'll give those to you, that makes sense.

I think Mr. Shaw had something he wanted to mention as well, Your Honor.

THE COURT: All right. I think I hear --

MR. SHAW: If I may, Your Honor, excuse me. I do think the communications relating to assignments goes too far. And I think my colleague just said what do you do with a communication that has an address in it? Would that be within the terms? And that's why we're trying to get some parameters on the terms.

I think Your Honor might have recognized that something that says an address, you know, probably is not responsive, but we don't want to be --

THE COURT: No, it wouldn't be.

MR. SHAW: Right. We don't want to be in that position to have to make those calls necessarily.

But the other thing that I heard from counsel, which I find very surprising, is that his requests relating to subject matter jurisdiction are untethered from the statute,

that somehow they don't have to show collusion. That's the basis of their motion. 28 U.S.C., 1359, that's their motion. If he's saying they're not using that anymore, then we should ask them to stop their motion. I don't know what their motion is about.

If it's about CAFA, there are no cases that show that you get discovery as to the real party in interest under CAFA. There's none.

THE COURT: Right.

MR. SHAW: The *Grassi*, the other one, that's not part of it.

All of these -- all of these factors, so to speak, are in service of 1359, definition of collusion. That's what this -- that's what the subject matter -- that's what their basis of the remand -- of the removal is.

THE COURT: Yeah. Well, if the communications were limited -- I'm just throwing it out here -- to any specific reference to subject matter jurisdiction or CAFA, in other words, those words would have to be used. I mean, you have to have some limit. And so that's what we'll do on that.

Let's move on to number 5.

MR. STIO: Your Honor, can I just ask one question?

THE COURT: No. Not -- go ahead, on number 4.

So it would be contracts or any communications specifically mentioning subject matter jurisdiction or CAFA.

All right.

MR. PARIKH: That's fine, Your Honor.

THE COURT: Number 5.

MR. STIO: Your Honor, we're fine with these.

THE COURT: Number 5.

MR. STIO: Subject to what Mr. Christie said, if he wants to speak later about that, but that's fine.

THE COURT: All right.

How about number 6?

It may be a moot point, according to what the plaintiffs say, but we --

MR. STIO: Yeah. As long as they confirm it in writing and our response.

THE COURT: All right. Six.

All right. Now, with respect to requests, you had certainly a broader listing. Is there anything else you want to reference in your list dealing with -- I mean, for example, you talked about --

MR. STIO: Your Honor, I can go through those if you want me to. I have a list I can walk through.

THE COURT: Yeah, your list. Yeah.

MR. STIO: Yeah. If you go to my list.

THE COURT: That would be in addition to the seven items here that we talked about?

MR. STIO: Yes.

THE COURT: All right. I've got that here in front of me. And best to discuss the ones that would be in addition to.

I know one of the items is you want all documents related to communications between Atlas and I guess the Legislature of New Jersey.

MR. STIO: Concerning just the provision on the assignment of claims. If they are going to rely upon it, the Court has referenced it, we would like to know what they are saying with regard to the assignment of claims provision.

THE COURT: You mean whatever they said to a legislator about that provision in the law, is that what you're saying?

MR. STIO: Correct, Your Honor.

THE COURT: All right. Mr. Parikh.

MR. PARIKH: I don't know what that has to do with subject matter jurisdiction, Your Honor. At the end of the day, you know, there are other defendants in this room whose law firms and whose clients have lobbied the Legislature for all kinds of things, including on Daniel's Law and other privacy-related legislation.

The Legislature decides what it wants to do. In this case they passed a bill, an amendment. This was, I think, the third or fourth amendment to Daniel's Law, and then eventually the Governor's Office reviewed it and signed it.

You know, the idea that there was some type of -- that that process now relates to, you know, whether it's the real parties in interest, collusive joinder, whatever it may be, the law is what the law is. And this is where we disagreed with counsel and we don't have anything to produce because it doesn't seem relevant to anything related to subject matter jurisdiction from our perspective.

MR. STIO: Your Honor, it goes to motive. It goes to the CAFA issues. It goes to subject matter jurisdiction.

THE COURT: Well, I don't see the relevance, and I don't see how it's proportional, and I will not require the plaintiffs to produce any documentation related to discussions with the Legislature of New Jersey or the legislators of New Jersey concerning the provisions of Daniel's Law.

MR. STIO: Understood, Your Honor.

Your Honor, number 8, documents about control over the claims, that comes directly from the case law where it says control is a factor under both *Grassi* and *Long John Silver's*. We think that they should --

THE COURT: Yeah. Wouldn't that be included in the contracts and the assignments, who has control of what? It seems to me that would state all that information.

MR. STIO: Again, Your Honor, it's what circumstances were related to getting these people to assign their claims and who is the real party in interest. And I understand there's a

contract, but the case law says it's beyond the contract.

They've acknowledged in their letter that the *Long John Silver's* factors are relevant. But they say we're not going to give you any documents on it, just ask our 30(b)(6) witness.

And part of discovery, Your Honor, is for us to be able to not only ask the question but to test the veracity of the answer. And what we're being put in a situation by plaintiffs is trust us. And, Your Honor, with all due respect, they started getting these assignments in April of 2023, and they weren't sent until the holidays of Christmas. And they weren't sent because they wanted to create a situation of noncompliance, not compliance. And if there are communications that talk about who controls the interest, what are their rights and there's an explanation of it, we should be entitled to it.

I think it could be narrow, which is control, state court, federal court. I don't think that that's going to come up with an unusual number of hits. And if it does, Your Honor, they can come to us and we'll try to narrow it or we could come back to you. But I do not think that producing that information that is directly related to a factor in *Long John Silver's* is burdensome, disproportional, and it is highly relevant.

MR. SHAW: Judge, I think this gets to the parol

evidence rule you're talking about. The contract says what the relationship is of the parties, number one.

Number two, he keeps referring to these cases allow you to go outside of it. That's not in this context where the assignments are allowed. That's in the context where a guardian gets rights to pursue a case where it might not have the details of the monetary exchange in the case.

This case, the actual assignments themselves say the relationship of the party, who controls what, and the amount of compensation. It's in the contract itself. We shouldn't have to go and look through, you know, all of the parol evidence essentially, number one.

Number two, he's also suggesting that these assignments took place in mid-2023. That's not correct. They took place after the time period of noncompliance. That's when they took place. That's when the assignment confirmations took place.

THE COURT: All right.

MR. SHAW: But in any event, it's just too far into the details.

THE COURT: I'll sustain the objection on 8.

What else do you want, Mr. Stio?

MR. STIO: Again, this goes to the *Long John Silver's* factor, documents related to --

THE COURT: Which number? Which number?

MR. STIO: Oh, on mine, it's number 9, Your Honor.

THE COURT: Number 9.

MR. STIO: Documents related to separate counsel and common counsel. That would be, Your Honor, I believe, at a minimum, the engagement letters.

MR. PARIKH: Your Honor, again, this is a question they could ask the 30(b)(6) witness.

From our understanding, with the exception of the individual plaintiffs who vary in the cases, so there are, you know, a group of eight people or so who are individual plaintiffs that may be assignors in one case and maybe individual plaintiffs in another where our three law firms represent those folks, you know, in their capacity as individual plaintiffs, and in other cases we're representing Atlas as the assignee of those assignments. But that has a carve-out. I don't believe there's any common counsel at all.

THE COURT: Well, that should make it easy. So --

MR. PARIKH: Correct. And so I think --

THE COURT: Why don't we include that. So if that's an issue, that's not going to require a lot of time and effort, is it?

MR. PARIKH: Right. And so, Your Honor, we suggested to counsel they ask this question of the 30(b)(6) witness. Now, they've gone an extra step and asked for engagement agreements. I don't think that that's relevant to subject

matter jurisdiction. Again, if the inquiry relates to whether there are common counsel or not and the answer is from the 30(b)(6) witness no, there's not --

THE COURT: Well, we have a certain number of individual plaintiffs.

MR. PARIKH: We do.

THE COURT: And they're being represented by your firm; is that correct?

MR. PARIKH: Correct. Our collective firms, Your Honor.

THE COURT: Now, and there are only a handful of those. I can't remember the exact number.

MR. PARIKH: Uh-huh.

THE COURT: Is that a problem? Is there any issue with producing the engagement letters?

MR. PARIKH: I do think so, Your Honor. Well, so there is an engagement letter -- engagement letters with respect to Atlas and then with respect to individual plaintiffs.

THE COURT: Right.

MR. PARIKH: You know, again, I don't -- you know, I don't -- if the question under the case law relates to whether there's common counsel or separate counsel and it relates to issues of control, what the terms of the engagement are are really irrelevant as to how it relates to terms of control and,

again, could be accomplished by simply asking questions of a 30(b)(6) witness.

THE COURT: Well, I know. Let's talk about the --

MR. SHAW: If I could just --

THE COURT: Wait a minute. The contracts that exist between the individual plaintiffs, what is the arrangement? You have the individual plaintiffs, and they are being represented by your firm, correct?

MR. PARIKH: Correct, Your Honor. Correct. They're represented -- so depending on the case, not all three firms are in every single case. So my firm and Mr. McGee's firm are in all of the cases.

THE COURT: Right.

MR. PARIKH: And so the individual plaintiff will have an engagement I think -- I believe it's with Mr. McGee's law firm to represent them as it relates to Case No. 1.

Now, if that individual is not a plaintiff in Case No. 2 and they're an assignor, then there's no engagement agreement as it relates to that.

THE COURT: All right. Now, how --

MR. SHAW: Your Honor, if I may, that's one problem, as an individual plaintiff, they're not an assignor. So the inquiry here is whether the assignments are collusive, so that's why we're --

THE COURT: Okay. I understand. Right.

MR. STIO: Your Honor, could I --

THE COURT: Yeah. Go ahead.

MR. STIO: It's really difficult for them to argue the document I requested is not relevant but you could ask the question of a 30(b)(6) witness. It's relevant for both.

THE COURT: Right. I got it.

MR. STIO: And we need it to test the veracity of what that witness says.

THE COURT: Yes. Just give me some specific examples of 9, Mr. Stio, "documents reflecting whether Atlas and the purported assignors at issue have separate and/or common counsel."

Now, isn't the issue whether they do have separate counsel, not all the documentation related to that?

MR. STIO: I'm just asking for the engagement letters, Your Honor.

THE COURT: Between --

MR. STIO: Who the attorneys are for --

THE COURT: For the 19,000 assignors, right?

MR. STIO: If they have any, if they have counsel. They may not. But if Atlas has sent out an engagement letter to 19,000 people for their -- or excuse me.

THE COURT: Well, I don't know whether Atlas would necessarily know whether they have separate counsel, maybe you would, all these 19,000.

MR. PARIKH: I don't -- we don't know, Your Honor. I mean, I'm sure in other contexts. But as it relates to this assignment, I don't believe they do.

And to answer Mr. Stio's question directly, our three law firms have not sent out engagement letters to 19,000 law enforcement officers as assignors related to these litigations.

THE COURT: Okay.

MR. STIO: Your Honor, what I want to see is, they have three law firms. They obviously had to send engagement letters to Atlas. I suspect they sent engagement letters or communications to the PBA and the other police associations. It's not a burden. They said we could ask it, it's relevant on a 30(b)(6). We should be able to get those documents. It's limited.

THE COURT: Well, you certainly know law firms have entered their appearances in these cases, correct?

MR. STIO: They have, Your Honor.

THE COURT: And you know who they're representing by the fact that they entered their appearance.

MR. STIO: In these -- in --

THE COURT: In these cases.

MR. STIO: In the case.

THE COURT: Right.

MR. STIO: Yeah.

THE COURT: Now, they are representing Atlas and

they're representing all the individual plaintiffs, correct? Is that true? All your firms or are there some different here?

MR. PARIKH: The Boies Schiller firm, Your Honor, is not in every single case. But other than that, yes, our three law firms represent Atlas and we represent the individual plaintiffs.

THE COURT: Okay. So now you're asking about the assignors, is that right, who represents them?

MR. STIO: I'm asking about Atlas and the assignors, yes, Your Honor.

THE COURT: Well, what do you want to -- tell me specifically what you're -- give me an example.

MR. STIO: So there's an RPC provision in New Jersey that says if you have a joint representation of two clients, you have to disclose that and get consent.

So to the extent that Atlas' counsel is representing any of the assignors as well, that would be in the engagement letter for a joint representation.

I would like to know, because the PBA isn't in this case, but the PBA's fingerprints are all over this case, is there an engagement letter between Atlas' counsel and the PBA? And it goes directly back to this April 5, 2023 solicitation of these people.

THE COURT: Well, the PBA is separate from the assignors, right? What are they, all members, is that it?

It's like a police union. Is that what you're talking about?

MR. STIO: Correct. It's the union, Your Honor.

MR. PARIKH: The PBA is one of the police unions, Your Honor, correct.

THE COURT: Yeah.

MR. PARIKH: And it is not an assignor. It's just the union.

THE COURT: It's not a party --

MR. PARIKH: Correct.

THE COURT: -- or assignor, assignee or anything else?

MR. PARIKH: That's right, Judge.

THE COURT: So the question is what agreement that Atlas has with the assignors. And obviously that is evidenced by the assignments, correct?

MR. STIO: It's also evidenced by its counsel, who is counsel. It's evidenced by an engagement letter.

These law firms can look, they have a system, type in the names, and they can get it up. And I'm sure that when they type in the names or they just do "Daniel's Law" or "Atlas" they're going to have other names in that conflict check. It's a click of a few buttons. It's not difficult.

THE COURT: Well, the law firms representing Atlas, are you also representing the assignors?

MR. SHAW: No.

MR. PARIKH: No, we're not, Your Honor. Other than those individual plaintiffs, no.

THE COURT: Okay.

MR. STIO: So that's an easy production for them. It's a total of nine letters.

THE COURT: Well, they made a representation here in this courtroom before the Court that they are not representing the assignors, haven't they?

MR. STIO: Your Honor --

THE COURT: So they're officers of the court.

MR. STIO: They made a representation last case management conference that there was only one assignment and it's up to three now.

THE COURT: Well --

MR. STIO: They have represented to this Court that it is so important that we need to immediately honor these nondisclosure requests, and they were holding on to them since April of 2023. I think I'm entitled to test the veracity of statements.

MR. PARIKH: It's -- first of all, I take strong offense to that. Mr. Stio and I practiced in this courthouse and this courtroom many, many times. And the idea that he would inflect or claim that any of the lawyers on this side of the table are acting anything but as like highest quality officers of the court is beyond reproach, Your Honor.

Okay. What happened last time with respect to the service terms was we were talking about assignments versus overall service terms. We acknowledged that there were multiple versions. We've offered to produce them. Nobody's hiding the ball here.

In terms of our representation of who we represent and who we don't, if they want, have them just ask an interrogatory, Judge, and we'll have Atlas sign an interrogatory that says these are who the lawyers are. Again, this is a fishing expedition that's -- and it's based upon the fact that these defendants realized they didn't have an actual basis under Rule 11 to remove these cases from state court, and now they're grasping at straws to be able to try to find information about --

THE COURT: Well, look, we're not going to get into that type of issue here.

Mr. Parikh has stated that his firm is not representing any of the assignors; is that correct?

Are there any other firms here representing Atlas here?

MR. McGEE: Your Honor, Ryan McGee of Morgan & Morgan. Same answer as Mr. Parikh provided.

THE COURT: Which is what?

MR. McGEE: We're not representing any of the assignors.

THE COURT: All right.

MR. MAO: Go ahead, Adam.

MR. SHAW: Boies Schiller, same answer, Your Honor. We do not represent any of the assignors.

MR. MAO: That's correct, Your Honor.

THE COURT: All right. That solves that.

MR. STIO: Can I make one statement, Your Honor?

THE COURT: Yes.

MR. STIO: They are representing at least the Named Plaintiffs. They said it.

THE COURT: Well, they're not assignors.

MR. MAO: They're not assignors.

MR. STIO: Yes, they are, Your Honor. They may not be assignors in one case, but they are assignors in the other 70 cases.

THE COURT: What they have said is they are -- they are representing the Named Plaintiffs in all the cases that are before us. Is that correct?

MR. PARIKH: Correct, Your Honor.

What Mr. Stio is trying to draw a distinction on is that, you know, Mr. Maldonado may be an individual plaintiff in 30 cases and he's not an individual plaintiff in the other hundred cases. And so he has assigned, to the extent he had a claim in those hundred cases, he would have assigned them to Atlas.

THE COURT: Right.

MR. PARIKH: I acknowledge, yes, we are representing Atlas in that circumstance, but we are representing Mr. Maldonado as an individual plaintiff in the other cases. Again --

THE COURT: But not in every case where he may be an assignor.

MR. PARIKH: That is correct.

THE COURT: If he's just an assignor, you're not representing him?

MR. PARIKH: Correct.

THE COURT: If he's a Named Plaintiff in the case, you are representing him?

MR. PARIKH: That is correct, Your Honor.

THE COURT: And that's the distinction that is being made.

MR. PARIKH: That is correct.

THE COURT: All right. That's clear on the record.

All right. The next item, Mr. Stio.

MR. STIO: Your Honor, I think I got through all of the document requests.

THE COURT: All right. Now let's turn to the 30(b)(6) topics.

Before we get to that, maybe we'll just take a short break. Okay.

MR. SHAW: Thank you, Judge.

MR. STIO: Thank you, Your Honor.

THE COURTROOM DEPUTY: All rise.

(Recess was taken at 11:05 a.m. until 11:13 a.m.)

THE COURTROOM DEPUTY: All rise.

THE COURT: You may be seated.

We will now turn to the topics for the 30(b)(6) depositions. And, Mr. Stio, we'll start with the plaintiffs' letter which has seven topics. And maybe that's where we ought to begin.

MR. STIO: Thank you, Your Honor.

THE COURT: Yeah.

MR. STIO: So the first topic in plaintiffs' letter is documents produced in response to the categories listed above insofar as the questions are relevant to subject matter jurisdiction.

We have no problem as long as that's changed to "documents that are produced in response to the Court's order."

THE COURT: Yeah. The Court order, okay. Right. We'll do that. I mean, that makes sense.

MR. STIO: For B, on their letter, Your Honor, we would propose that it be changed to Atlas' interests in Daniel's Law rights being asserted in actions prior to obtaining the assignments.

THE COURT: What does that mean?

MR. STIO: Because it's close to what our request is, Your Honor. So their request in B is similar to what we have in our topic 4. And we would propose we just use our topic 4, which is a little bit broader.

THE COURT: Wait a minute. Topic 4 of your request.

MR. STIO: Yes, Your Honor.

THE COURT: Your topics, let me just get that so I have it in front of me.

Mr. Shaw, what about that?

MR. SHAW: I thought that was narrower, so I'm fine with that. I mean, I thought that request got to whether Atlas had some underlying interests.

THE COURT: All right. Well, we'll eliminate B and we'll insert number 4 for the defendants. All right.

How about C?

MR. STIO: C is no modification necessary, Your Honor.

THE COURT: Okay. D.

MR. STIO: Your Honor, I don't have a modification for D.

THE COURT: Okay. E.

MR. STIO: Your Honor, E is similar to our topic 1. We would request that it be our topic 1.

THE COURT: Mr. Shaw.

MR. SHAW: Can you read your topic 1? For some

reason, we're --

MR. PARIKH: I don't -- does your letter have a topic 1, Mr. Stio, or is it numbered as 2?

THE COURT: It's number 1. Assignments...

MR. STIO: I'll pull it up.

Yeah. Our topic 1, I thought, was not in dispute.

So I'll read it out, though. It is the assignments Atlas purportedly obtained from the assignors including, but not limited to, when the assignments were obtained, how the assignments were obtained, the number of assignments obtained, and the communications about the assignments.

These were all topics they said we could ask the 30(b)(6) witness.

MR. PARIKH: I don't have an issue with that one instead of --

THE COURT: All right. What we'll do is we'll substitute their Topic No. 1 for your E.

MR. PARIKH: Thank you, Judge.

THE COURT: All right. How about F?

MR. STIO: Your Honor, we're fine with -- well, I don't like the word "explanation," right? I would like to have the person who is going to be the corporate designee to testify about the Daniel's Law services that Atlas purports to provide to the assignors.

THE COURT: Well, then we'll leave out "explanation

of" and just say "the services."

MR. STIO: That's fine.

THE COURT: All right. How about G?

MR. PARIKH: Your Honor, just moving back one really quickly with respect to what was E on our list and replacement number 1.

THE COURT: Right.

MR. PARIKH: In their number 1 they talk about communications about the assignments. We have no problem with them asking questions about whether communications exist or not, but we don't want that to then open the door to document requests that Your Honor has already ruled about.

THE COURT: Whatever I've ruled on the document requests is what I've ruled on.

MR. PARIKH: Understood. Thank you, Judge.

THE COURT: Okay.

MR. STIO: Your Honor, I think we're fine with G.

THE COURT: G is fine. Okay.

All right. That covers the 30(b)(6) topics. Do you have any additional ones?

MR. STIO: We had additional ones, Your Honor.

THE COURT: All right. Go ahead.

MR. STIO: And we had additional ones because during the document production, one of their defenses was, well, you could just ask questions about that, you don't need documents

on it. I'd like to be able to ask questions on certain things.

So the first one would be any participation or interest in the litigations by the assignors.

THE COURT: Where is that? What number is that?

MR. STIO: It's number 6 on mine, Your Honor.

THE COURT: Okay. Any objection to that?

MR. SHAW: It seems like it's subsumed in the --

THE COURT: Well, we'll add it on number 6, would be H.

All right. Anything else?

MR. STIO: I have number 7, Your Honor, Atlas' ability to identify or communicate with any assignor, including during the litigation, of the litigations.

MR. PARIKH: Your Honor, I don't understand how that relates to subject matter jurisdiction.

THE COURT: Yeah. I don't --

MR. PARIKH: I mean, at the end of the day, all of these law enforcement officers are customers. They use the Atlas platform. All the defendants know that. It's in the complaint. So their ability to identify or communicate with them, I'm not really sure what that relates to in terms of --

THE COURT: I don't either. I'm not going to permit that.

Go ahead. Next one.

MR. STIO: Communications about involvement in --

THE COURT: Which number is this now?

MR. STIO: Oh, I'm sorry, Your Honor. Number 9 on mine.

THE COURT: Right.

MR. STIO: About the potential or actual lawsuits being brought by Atlas.

And if I can take a step back, Your Honor.

THE COURT: Yeah. Go ahead.

MR. STIO: The reason we have that in there is, again, it goes to the totality of the circumstances, but these service terms are not a document that Atlas has and they go to Angelo Stio and they say, here, Angelo, read it, sign it, assign your claims.

The way this works is, this is terms of service that's on a website. It's a contract by your question. They have the PBA driving their members to go to this website and click on and accept terms of service, and then they have a unilateral assignment confirmation that's sent out to the individuals that the individual had no control over one way or another, just sent out. I would like to explore how this process works and what discussion is related to the lawsuits with the 30(b)(6) witness.

MR. PARIKH: The whole point of the assignment is in the statute, Judge. We've talked about that. Your Honor has kind of gone through that with Mr. Stio. I'm still not

understanding, you know, we're talking -- to have a witness be prepared about communications with 20,000 individual people is pretty, pretty extraordinary.

THE COURT: Yeah.

MR. PARIKH: You know, I don't -- we're not going to object if they have general questions related to, you know, these topics and the documents that we've already produced. But the idea of communications with any assignor about potential actual lawsuits brought by Atlas, I mean, we already dealt with this on the document side of it, it just seems extraordinary.

THE COURT: All right. I'll sustain --

MR. STIO: Your Honor, can I say one thing?

THE COURT: Go ahead.

MR. STIO: They say there are no communications. Why are they objecting to this if I explore it with their witness?

THE COURT: I'm not going to permit that.

Go ahead. Next.

MR. STIO: The responsibility for payment of legal fees and expenses associated with the litigation, I think that's subsumed by the service terms. I don't think that should be objectionable.

MR. PARIKH: I -- if it relates to the service terms and what's in the service terms about, you know, the allocation of any award and things like that, there's no issue with that

one, Your Honor, if it's about the responsibility of the assignors versus Atlas with respect to legal fees. If it delves into other questions related to what a fee structure might be or how those things are being designed within Atlas, then I think that that goes outside of the subject matter jurisdiction component in the way that this topic is drafted.

So if it's limited to subject matter jurisdiction and, you know, the notion of responsibility of legal fees from Atlas as an assignee versus any legal obligations of the assignors --

THE COURT: Yeah. I think that's what you're talking about, aren't you?

MR. STIO: But, Your Honor, that topic goes directly to control and payment of legal fees under the *Long John Silver's* factors.

THE COURT: Well, wouldn't the -- wouldn't the assignment deal with that?

MR. PARIKH: It does, Your Honor, correct.

THE COURT: I mean, it would say, you know, the police officer is assigning his rights to Atlas. It's certainly going to say something about what the assignor's legal responsibilities are, to pay fees or counsel fees or costs or anything else, isn't it?

MR. PARIKH: Correct, Judge.

THE COURT: Well, then you can ask about whatever

is -- yeah.

MR. PARIKH: Absolutely. As it relates to the service terms, absolutely.

THE COURT: Or we do have that -- that's one of the topics of discussion, isn't it, service terms?

MR. PARIKH: It is, Your Honor. That would be under topic A, because it's related to the documents being produced.

THE COURT: Yeah. Wouldn't that take care of it, number 1?

MR. STIO: As long as I'm allowed to go down that path, Your Honor, it's on the record. That's fine.

THE COURT: Well, I assume it's -- you think it's included in number 1?

MR. PARIKH: It's included in number 1 within the confines of subject matter jurisdiction, Your Honor. And, again, this is that gray area.

We didn't agree to this particular topic that was raised by the defendants because we think the way that they've crafted this, it goes beyond and that they're seeking to go beyond what would be permissible in subject matter jurisdiction discovery. So if it's limited to subject matter jurisdiction discovery as it relates to legal fees that are --

THE COURT: Well, obviously the whole thing is related to subject matter jurisdiction.

MR. PARIKH: Of course. Of course.

THE COURT: That's the whole point.

MR. PARIKH: Of course.

And I think, Your Honor, so the service terms will lay out -- it has to do with the contrast in terms of the, as they talked about, the real party in interest, so the obligations and responsibilities of the assignees versus the obligations and responsibilities of the assignors.

And so if those are the questions as it relates to legal fees and obligations, then we have no problem in our 30(b)(6) witness --

THE COURT: Yeah. I think you have it in number A, "Documents produced in response to the Court's order, insofar as the questions are relevant to subject matter jurisdiction."

So that would include your right to examine about the assignments and the nature of it and who has what responsibilities. All right. I don't think we need to add that.

Next one.

MR. STIO: And that's it, Your Honor.

THE COURT: All right. The Court will then enter an order consistent with what's been decided here today.

Go ahead.

MR. STIO: Your Honor, I thought, was going to revisit the issue of a privilege log and identification of what is being withheld. I don't think Your Honor previously ruled

on that.

THE COURT: No, we haven't resolved that.

MR. PARIKH: I -- we're happy to identify if they are responsive documents that are being withheld under a privilege designation, we're happy to identify that.

I think what my concern was, Your Honor, is when we talk about when there were requests made regarding kind of broad communications, which I don't think Your Honor has allowed, so I think it should be okay for us to provide a privilege log, it's getting into, you know, a specific, you know, couple hundred-page log of emails with lawyers and things like that. So my concern ultimately, Your Honor, really kind of focuses in on the time period again for this.

THE COURT: Right.

MR. PARIKH: So if it's that they'd like a privilege log that predates, you know, let's say December 1, 2023, then, you know, we have no issue. We can provide a privilege log as it relates to the document requests.

I think once we get into the time frame that's closer to the litigation, it becomes a lot harder because lawyers were starting to do work as it relates to noncompliance by defendants and a requirement that, you know, that there's unfortunately going to need to be litigation to enforce all of these individuals' rights.

THE COURT: Yes, sir.

MR. McGEE: And, Judge, Ryan McGee with Morgan & Morgan for the plaintiffs. If it's okay to address you from here, Judge.

THE COURT: Yeah. All right.

MR. McGEE: I think the other issue is, in any litigation that I've been in for the past six and a half years on the plaintiffs' side, I've never had a defendant produce a privilege log with expediency. That's kind of one of the issues that we're facing here, too, we want to get over. We want to get through with this. We know some of the cases are staying with you, some of them are not. So that was one of the issues that we had with wholesale producing a privilege log.

But I think if we're in this more limited universe, like Mr. Parikh has represented, we can figure something out. But that was, to start the hearing, what our biggest issue was.

MR. STIO: Your Honor, I don't know what that means. There's a rule in place, Federal Rules of Civil Procedure Rule 34. We're asking for a privilege log if they're withholding documents that the Court ordered them to produce on the basis of privilege.

THE COURT: Well, of course, the Court never orders them to produce privileged documents. I mean, the discovery rule talks about relevant documents which aren't privileged should be produced. Am I right?

MR. STIO: And it says that you have to have a

privilege log, though.

THE COURT: Okay.

MR. STIO: And all I'm asking for is let's follow the rules.

THE COURT: Okay.

MR. STIO: And I understand the order, and we're agreeable to it. But I would like to know if anything is being withheld from this narrow list that we've identified today. It's not a huge list. I don't think it's going to be that difficult.

THE COURT: All right.

MR. KIMREY: Your Honor, Blaine Kimrey again. I was just going to say, in light of the fact that plaintiffs' counsel has represented that they don't represent the assignors, the privilege log should not be that burdensome given how narrow application of privilege would be.

Also, if we can move off the privilege log issue, Your Honor, I've got a couple other just housekeeping measures.

THE COURT: Sure. Go ahead.

MR. KIMREY: One is, there are third-party entities that have expressed an interest in filing amicus briefs related to the consolidated motion to dismiss based on the facial constitutional challenge.

THE COURT: Right.

MR. KIMREY: That's due on June -- the main brief is

due on June 10th.

THE COURT: 10th. Yes.

MR. KIMREY: Then there is a schedule thereafter.

THE COURT: Right.

MR. KIMREY: I assume, Your Honor, you'd like to see from those who would like to file -- and I don't have anyone secured yet. There are several people in the hopper or several entities. You'd like to see a motion for leave with the actual amicus brief attached. When would you like to set a deadline for motions for leave to file amicus briefs in light of the schedule for briefing by the parties on these issues?

THE COURT: Better do it soon. They're due the 10th of June. So if they're going to file them, we'd have to have it by the 10th of June, correct?

MR. KIMREY: Well, they won't have seen the brief yet by the 10th of June.

THE COURT: I know. So -- oh, they want to -- they want to do it after?

MR. KIMREY: After it, yes.

In federal -- in appellate court, Your Honor, as you know, it's a seven-day rule. I was hoping that maybe we could have a little bit more than that for potential motions for amicus relief, something to follow the overall schedule. So I don't know, what is the last deadline in the briefing schedule?

THE COURT: I have it here.

MR. KIMREY: I'm sorry, Your Honor. I should have that in front of me.

THE COURT: I think the 10th of June, and then there's a -- I think the 14th of June, isn't there, for individual briefing?

MR. KIMREY: There is supplemental briefs and --

MR. STIO: The 14th, and 30 days, I believe, after for the opposition.

THE COURT: Yeah. Sometime in July the opposition brief is due.

MR. PARIKH: Yeah. I think it's July 15th, Your Honor.

THE COURT: July 15th, yeah.

So what are you proposing, I enter an order?

MR. KIMREY: July 31st.

THE COURT: For what? You mean --

MR. KIMREY: For motions for leave to file amicus.

THE COURT: July 31st?

MR. SHAW: How are we going to -- first of all, I don't know whether the Court even wants amicus for these issues, number one.

But number two, how would we address that if it's 20 days after our brief is due?

MR. KIMREY: How about 21 --

THE COURT: Well, how many amicus briefs are in the

window?

MR. KIMREY: There might be zero, Your Honor.

THE COURT: How many?

MR. KIMREY: But it could be three to four possibly.

THE COURT: And what groups are these that are interested in filing amicus briefs?

MR. KIMREY: What are the groups?

THE COURT: Yeah.

MR. KIMREY: The ACLU New Jersey, which is litigating *Kratovil*, has filed a petition for cert to the New Jersey Supreme Court, although that's an as-applied challenge. Possibly the Electronic Frontier Foundation. Possibly the Reporters Committee for Freedom of the Press. Possibly -- what else is in there? Entities along those lines. Largely, First Amendment, Sunshine-related entities.

THE COURT: So, I mean, why shouldn't we deal with it, have it in the next couple of weeks, any motions?

MR. KIMREY: Couple weeks after June 10th?

THE COURT: Well, no. I'm just thinking from now. I mean, they obviously know what the issues are all about. It's no surprise.

MR. KIMREY: They're all nonprofits with very short staffs, so.

THE COURT: They must have known about this before now.

MR. KIMREY: If ultimately you say June 10th, Your Honor, we'll live with that. We'd at least like another seven days beyond that to match --

THE COURT: In other words, to file a brief or to --

MR. KIMREY: To file a motion for leave to file the amicus. Because you may ultimately look at the amicus brief and say you don't want to grant leave. I mean, hopefully you would grant leave.

MR. PARIKH: Your Honor, I would suggest that perhaps you just set June 14th as the date. They'll then have days to view the merits brief.

THE COURT: To file their petition.

MR. PARIKH: To file their -- I believe their motion for leave to appear as amicus has to attach their proposed amicus brief as part of it.

THE COURT: Right. Right.

MR. PARIKH: But that gives them -- we all know what the issues are already as we sit here today, so they can prepare them. They can see whatever main briefs --

THE COURT: All right. I'll consider that and enter an order of some sort.

MR. KIMREY: Okay.

THE COURT: I'll either do it today or tomorrow.

MR. KIMREY: All right. Thank you, Your Honor.

Another point. It's been suggested that the interest

underlying Daniel's Law is privacy. The Legislature's articulated interest is actually safety. So I just wanted to make that clear on the record.

THE COURT: Right.

MR. KIMREY: It's judicial, in other covered persons, safety. It's not actually -- the Legislature, as far as I'm aware, has never articulated the privacy interest. It's the safety interest, Your Honor.

THE COURT: All right. Thank you.

Yes, sir.

MR. SHAW: Your Honor, briefly, I think as counsel has admitted, privacy is one of the central issues. Defense counsel has admitted that.

Getting back to the privilege log. One of the issues we have, Your Honor, is, you know, the statute says that Daniel's Law cases can and may be filed in New Jersey. So at some point in time, Atlas is discussing with its lawyers about filing in New Jersey, I mean, even going through the process of where is the particular court that we're going to file and those kinds of things. That's going to -- if we have to somehow amass that information and put it into a privilege log, I don't know whether he --

THE COURT: Well, it seems obvious that you would be filing a case in the state of New Jersey involving a New Jersey statute, involving New Jersey law enforcement personnel. Where

else would you file it?

MR. SHAW: Well, exactly.

THE COURT: You wouldn't file it in California.

MR. SHAW: But they want a privilege log with all that information on it. That's what the point is.

THE COURT: Mr. Stio?

Obviously they're going to file the case in New Jersey, isn't it? Where else would you file it?

MR. STIO: Your Honor, my request was a privilege log, Your Honor. I don't know when -- I don't have the engagement letter. I don't know when the engagement started. So all I want is a privilege log if they are withholding a document from the list that Your Honor ordered them to produce.

We have gone from formal requests and we were going to put it in an order, and we're fine with that, but the reason I wanted the formal request, because formal requests provide for -- I get to know what is being produced, I get to know what is being withheld, and I should know what the basis for withholding is.

I don't think that this is a huge burden, specifically as to subject matter jurisdiction, because our requests have been narrowed significantly.

THE COURT: Well, of course, they -- isn't the opposing party always entitled to a privilege log?

MR. PARIKH: They are, Your Honor. But because of

the breadth of what we're talking about and the time frame, the time frame again I think is the issue, right? Because we're talking about 140 cases, right?

THE COURT: Right.

MR. PARIKH: And parsing out, you know, we can't parse out communications related to these specific remand defendants as opposed to kind of a broader group with respect to some of these topics.

I would propose, Your Honor, that kind of a middle-of-the-road approach would be that if we withhold records in response to these categories that are within Your Honor's order on the basis of privilege, that we say to them we've withheld the records on the basis of privilege and then we meet and confer and figure out whether a privilege log for that category is feasible or not feasible based upon the volume.

So if it's a request, a document request that may relate to communications and it would require us to spend one month putting together a privilege log of tens of thousands of emails amongst counsel and their clients, then we can have that conversation and say we just think this is not proportional here, we've withheld documents between counsel and Atlas, you know, in this relevant time period from production versus if it's something, as Mr. Stio has talked about, that goes back to service terms from January of 2023, and there is three emails

that we're withholding on privilege, then of course we can provide a privilege log with respect to that.

THE COURT: What I'll do is with respect to that is require counsel to meet and confer and then get back to me, say, within a week. And then we'll see where we are on that. And then depending on what you say, we may have to have another conference to deal with that subject, but we won't let things otherwise be delayed.

All right. Now, let's talk about scheduling of all this. You know the categories of documents to be produced. What do you propose is the timetable for producing all this, Mr. Parikh?

MR. PARIKH: So I think, Your Honor, we can get all these documents over to the defendants within three weeks with the new categories. We might be able to do it within two, but I think three weeks, absolutely, we can get it done. And obviously, if we can get it done sooner, then that's great.

THE COURT: So you're saying the 24th of June?

MR. PARIKH: Correct.

THE COURT: How about the 30(b)(6)? I mean, obviously, the defendants -- well, oh, I should have asked all those sitting here in the courtroom, with respect to the topics for production, anybody else want to say anything? Mr. Stio has been carrying the laboring oar on that. Anybody have any further comments on that, or on the Rule 30(b)(6) topics?

(No response.)

THE COURT: All right. Documents to be produced by the 24th of June. And then you need some time, Mr. Stio, and your colleagues to review the documents. What would you propose as a timetable for a 30(b)(6) deposition?

MR. STIO: Your Honor, I propose three weeks just because I would like to share them with the joint defense group.

THE COURT: Okay. That's the 24th of June, that would be 15th of July.

MR. STIO: Yes, Your Honor.

THE COURT: So we'll say the deposition, the 30(b)(6) deposition would be after the 15th of July. Does that make sense?

MR. PARIKH: Yeah. I would say if it's after the 15th of July, that's fine with us, Judge.

THE COURT: Yeah, after. After July.

Well, maybe we should say on or before the 31st of July.

MR. PARIKH: That's fine, Your Honor.

THE COURT: That will give you -- yes, sir.

MR. McGEE: I think that's fine, Judge. I just know that myself and Mr. Lee will be -- he's not here right now. We have multiple hearings in other cases toward the end of July, but we'll work with defense counsel and figure something out.

MR. STIO: Your Honor, I am fine if they want to do August 7th, if that will work.

MR. McGEE: It actually gets into other hearings that we have on August 7th. So I would prefer July, just as long as we've got some leeway in scheduling, Judge.

THE COURT: I would say on or before July 31st. Okay. And then let's talk about the briefing. We have July 31st for the final deadline. And let's just see here, the 31st, how about the 21st of August? Is that too much time for the opposition brief?

MR. PARIKH: I think the oppositions will be the defense, Your Honor.

THE COURT: Yeah, I know.

MR. STIO: Your Honor, the issue with that is vacations and 34 parties to coordinate with. I'd like to have 30 days.

THE COURT: Okay. That would be -- make it August 30th.

MR. STIO: Thank you, Your Honor.

THE COURT: Now, as we did before, with respect to the facial challenge, we'll say a consolidated brief would be due the 30th of August with a -- like a seven-day window for individual briefs, which shouldn't duplicate the other briefs. And we'll work out the specific dates in an order.

But we'll follow the same format as we did earlier.

MR. STIO: Thank you, Your Honor.

THE COURT: And then in terms of your reply brief?

MR. PARIKH: I would think 30 days should be sufficient, Judge.

THE COURT: You need 30 days, all right. That would be -- we'll say September 30th.

MR. PARIKH: Thank you, Judge.

THE COURT: And then we'll also enter the order on the amicus. That will be a separate order relating to that.

MR. KIMREY: Thank you, Your Honor.

THE COURT: Is there anything else we need to do today?

Yes, sir.

MR. CHRISTIE: Your Honor, thank you.

Your Honor, mindful of your discussion earlier today to parse out subject matter jurisdiction from other issues, I'd just like to revisit with the Court the issue of plaintiffs' unwillingness to provide the actual redaction emails.

We have a covered persons list that they've provided. We've reviewed it carefully. It contains thousands of names that we do not believe -- from people who we do not believe sent these suppression emails. We want to make sure that we cover --

THE COURT: Now, my understanding is Atlas sends information to you to be redacted; is that correct? I mean,

that's --

MR. CHRISTIE: Well, actually, no. The covered persons themselves --

THE COURT: They send --

MR. CHRISTIE: -- through the Atlas --

THE COURT: Network.

MR. CHRISTIE: Platform, yes.

THE COURT: And so?

MR. CHRISTIE: So the problem is, Judge, they've provided these covered persons lists.

THE COURT: Who is it?

MR. CHRISTIE: Atlas did, pursuant to Your Honor's prior order.

THE COURT: Yeah, right.

And these are people that Atlas says you have in your system and that you're disclosing information about the individuals; is that correct?

MR. CHRISTIE: Atlas' view is that these covered persons list include all of the individuals who sent the data suppression requests months ago.

THE COURT: Okay. Right.

MR. CHRISTIE: We've carefully reviewed those lists and compared it to the emails that we received. And it is not a situation that plaintiff is mentioning where they have been caught in spam and we don't know what they are with regard to

the names. So we've gotten rid of the spam issue.

Based upon the totality of the analysis, our perception is that there are thousands of names that are included on these lists of individuals who did not send the suppression emails several months ago.

THE COURT: Okay.

MR. CHRISTIE: We have come to the conclusion that Atlas is now trying to expand the list of the so-called suppression requests by virtue of these covered persons lists --

THE COURT: Right.

MR. CHRISTIE: -- to include individuals who did not send the emails several months ago which gave rise --

THE COURT: To you?

MR. CHRISTIE: To my clients, yes.

THE COURT: Well --

MR. PARIKH: And I've said this to counsel, Your Honor, I've offered to meet and confer on this issue with him. This goes to merits discovery. The covered persons list that we provided to Black Knight and to every other defendant is the list that Atlas says. Atlas says this is a list of individual covered persons who transmitted a request to your client. We've identified in the complaint an email address or email addresses that those requests were sent to.

If they don't have those emails on their systems,

that's a -- that's an issue on their system. So if they want to engage in merits discovery, have us start doing forensic examinations of their systems, have depositions of whether their person checked the spam filter regularly or not, we're happy to engage in that. That would be a waiver of personal jurisdiction argument, of course. And that is what I've said to counsel. I've said, look, you -- as Your Honor had said, they can choose to take this list and use it as a compliance tool or not. That's up to each one of these defendants whether they want to comply.

THE COURT: Right.

MR. PARIKH: And that's the stage of the case that we're in.

And so Black Knight has a list, it has the names of all the individuals, it has the information that they've requested to be redacted. Now, with Your Honor's order, because they're a remand defendant, they're also going to get the date of the assignments and they're going to get a categorization of whether that person is a judge, a judicial officer or law enforcement officer, a prosecutor, or a family member, and they can choose whether or not to take that information and redact it or not.

And if eventually months from now in merits discovery they have evidence that these requests were never transmitted, then they're going to move to dismiss that assignment or that

particular claim with respect to their case or we'll stipulate to it.

But from my perspective, Judge, the issue of whether or not they received something, it's not a function of what was done through the Atlas system. It's a function of what they did in their computer systems or what they did not do to comply with the law.

THE COURT: I think it's best to try to meet and confer with them and deal with that issue. I can't deal with that today, all right?

MR. PARIKH: All right.

THE COURT: Thank you.

MR. CHRISTIE: Okay. The only thing, Judge, we're asking for the emails themselves. It shouldn't be unduly burdensome. And unfortunately --

THE COURT: Because we may be getting into the merits, and that's the other issue here that we're dealing with. And I think we have enough on our plate with the constitutional challenge and the remand at this point. Everything else, as you know, is stayed.

MR. CHRISTIE: Understood, Judge.

THE COURT: All right. Thank you.

MR. CHRISTIE: All right. Thank you.

THE COURT: Anything else?

Yes, ma'am.

MS. HUTCHINS: Good morning, Your Honor.

THE COURT: Good morning.

MS. HUTCHINS: My name is Sarah Hutchins. S-A-R-A-H, Hutchins, H-U-T-C-H-I-N-S.

THE COURT: Yes.

MS. HUTCHINS: And I represent BlackBaud, Incorporated. And I just wanted to raise for Your Honor, based on what I heard you say a moment ago, that you're going to consider the parties' briefing limits with respect to remand. And just ahead of that decision, I wanted to raise what I understood from the last hearing, which was I guess more opportunity for the defendants to have unique briefing because the remand issues are a bit unique. For example, my client has only moved on CAFA, has not moved on collusive issues.

And so what I understood last time was that the Court was considering 25 pages for any defendant that wished to submit their own brief. And I just remind Your Honor of that potential discussion.

THE COURT: Yeah. I didn't discuss the page limit, but I assume we'd follow the same format. Do you have any objection to that?

MS. HUTCHINS: No, Your Honor. Just more opportunity then with respect to the constitutional briefing --

THE COURT: Okay.

MS. HUTCHINS: -- to have increased page limits for

     those that are going outside of the consolidated briefing.

THE COURT: Because of unique circumstances?

MS. HUTCHINS: Because of unique circumstances.

MR. SHAW: I'm not aware -- everyone moved on the basis of CAFA. So that's not a unique circumstance. That's actually the circumstance.

MS. HUTCHINS: I don't think that's correct. I don't think every defendant has moved on the basis of CAFA.

MR. SHAW: Well, the consolidated briefing is going to be on collusion.

THE COURT: Right.

MR. SHAW: And CAFA.

THE COURT: Right.

MR. SHAW: So to me, the central briefing is collusion and CAFA. So I'm not sure what the supplement is separate from CAFA, if CAFA is part of the main.

THE COURT: In other words --

MS. HUTCHINS: Your Honor, my client did not move on collusive, so using up our page limits for that --

THE COURT: Well, I understand. But the point is, if the consolidated brief deals with two issues and you have only one issue, then there wouldn't be any need to file a supplemental brief unless that one issue that you're interested in is not adequately dealt with.

MS. HUTCHINS: Correct, Your Honor. And I would also

put forth that my CAFA arguments are unique than some of the other defendants with respect to the Rule 20 analog.

THE COURT: Okay.

MS. HUTCHINS: And I've recently amended my removal to raise issues as to the assignment date.

So, again, and I'm just one defendant. I'm sure other defendants feel that their arguments are unique as well. So when Your Honor was considering this issue before, I interpreted the discussion to acknowledge that the issues could be more unique with respect to remand than with respect to the constitutional briefing.

THE COURT: All right. Well, we'll extend the page limit somewhat then on that.

MS. HUTCHINS: Thank you, Your Honor.

THE COURT: All right. Yes, sir.

MR. CHEIFETZ: Good morning, Your Honor.

THE COURT: Good morning.

MR. CHEIFETZ: David Cheifetz from Hogan Lovells on behalf of The Lifetime Value Companies.

THE COURT: Yes.

MR. CHEIFETZ: Given the hour, I'll try to be brief. Just two points, please, Your Honor. One is substantive, one is more in the nature of housekeeping.

We've heard some representations today, Your Honor, that the requests here for take-down notices were sent by the

 covered persons. And it's my client's position, and I think the position of many other defendants, that, in fact, the requests here were actually sent by Atlas. And that's going to become an important point later on. I just wanted to be clear for the record that my client's position is that, in fact, requests here were improperly sent by Atlas and not the covered persons themselves.

And two, with respect to the 30(b)(6) deposition, I just want to clarify, will all defendants who wish to participate be given the opportunity to participate in that deposition, or will we have to work out some sort of procedure where those that wish to participate ask for permission to do so?

THE COURT: Well, I would hope that -- we can't have, you know, 40 lawyers. That would be quite a nightmare. I'm just --

MR. CHEIFETZ: Nobody wants that.

THE COURT: I think -- I would hope we can work out some system where maybe we have a couple of attorneys who could work together to do the questioning. The deposition, I think, should be limited to eight hours.

Is there any reason not to do that? 30(b)(6) at this point.

MR. PARIKH: Seven hours under the rules, Your Honor.

THE COURT: Or seven hours.

MR. PARIKH: Yes. What we --

THE COURT: I meant seven hours.

Well, what do you propose?

MR. CHEIFETZ: I just wanted to be clear for the record that any defendant who wishes to participate can, I suppose, meet and confer among ourselves, but there's really no limitation placed by the Court on the number of attorneys --

THE COURT: I would hope that you would be able to work out something so that we don't have 40 lawyers examining the 30(b)(6) witness.

MR. SHAW: Yeah. And I think we talked about last time setting up a place, whether we could accommodate a number of attorneys, and then also have some kind of Zoom or virtual.

THE COURT: Yeah.

MR. SHAW: One thing I just want to make clear is, this is not every defendant, it's just the remand defendants. I'm not sure if you're --

MR. CHEIFETZ: Correct. I represent defendants subject to the potential remand.

THE COURT: Yeah. It's obviously remand. Well, that's why I say 40 as opposed to 70-something.

MR. SHAW: Yeah. Right.

THE COURT: So, Mr. Stio, maybe since you have so many of these defendants, we'd have to work out, and with plaintiffs' counsel, work out a location for the deposition

maybe by Zoom. And other defense counsel could at least --

MR. STIO: We'll do that, Your Honor.

THE COURT: -- participate remotely. And work with some of the defendants as to who's going to take the deposition and maybe the small group or whatever.

MR. STIO: Yeah. We talked about that last time. We'll try to get a small like committee to do it.

THE COURT: Yeah.

MR. CHEIFETZ: Okay. Thank you very much.

THE COURT: Let's see if you can do that. If there's a problem, obviously let me know.

MR. CHEIFETZ: I don't anticipate there will be a problem. I've been working closely with Mr. Stio.

THE COURT: No. Obviously, I don't want to exclude anybody from participation.

MR. CHEIFETZ: Right. I just wanted to make sure that the Court was amenable to others participating.

THE COURT: Yes.

MR. CHEIFETZ: Thank you, Your Honor.

THE COURT: Thank you.

Is there anything else we need to do for the good of the order today?

MR. STIO: Nothing from the defense.

THE COURT: I will get the order entered in the next, if not today, tomorrow. So we'll full steam ahead. Thank you

very much.

MR. SHAW: Thank you, Your Honor.

MR. STIO: Thank you, Your Honor.

MR. McGEE: Thank you, Your Honor.

THE COURTROOM DEPUTY: All rise.

(Proceedings concluded at 11:54 a.m.)

- - - - - - - - - - - - - - - - - - - - -

**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

- - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/S/John J. Kurz, RDR-RMR-CRR-CRC June 6, 2024

Court Reporter/Transcriber

**MR. CHEIFETZ: [10]** 104/16 104/18 104/21 105/17 106/4 106/18 107/9 107/12 107/16 107/19
**MR. CHRISTIE: [20]** 38/6 38/9 38/12 39/8 39/13 40/5 97/14 98/2 98/5 98/7 98/9 98/12 98/18 98/22 99/7 99/12 99/15 101/13 101/21 101/23
**MR. KIMREY: [43]** 27/3 27/6 27/11 27/19 27/21 28/3 28/7 28/12 52/2 52/5 52/19 52/21 52/24 53/4 53/7 53/13 53/17 53/21 54/17 86/12 86/20 86/25 87/3 87/5 87/15 87/19 88/1 88/6 88/15 88/17 88/24 89/2 89/4 89/7 89/9 89/18 89/22 90/1 90/5 90/22 90/24 91/5 97/10
**MR. MAO: [3]** 72/2 72/5 72/12
**MR. McGEE: [7]** 71/21 71/24 85/1 85/5 95/22 96/3 108/4
**MR. PARIKH: [93]** 19/7 28/24 29/1 29/5 29/11 29/24 30/10 30/24 32/17 32/19 33/6 33/20 34/6 34/12 35/11 36/14 36/23 37/6 40/6 40/19 40/22 41/15 41/18 42/7 42/11 50/8 50/13 55/11 56/2 58/2 59/16 63/6 63/18 63/22 64/6 64/9 64/13 64/16 64/21 65/9 65/14 67/1 68/3 69/3 69/6 69/9 69/12 70/1 70/20 72/19 73/2 73/8 73/11 73/14 73/17 76/2 76/14 76/18 77/4 77/8 77/15 78/14 78/17 79/23 80/5 80/23 81/18 81/24 82/2 82/6 82/14 82/25 83/2 84/3 84/15 88/11 90/9 90/13 90/17 92/25 93/5 94/13 94/19 95/15 95/20 96/11 97/3 97/7 99/17 100/12 101/11 105/24 106/1
**MR. SHAW: [32]** 19/6 20/12 20/15 25/22 26/4 26/8 26/16 56/11 56/21 57/10 61/25 62/19 65/4 65/21 69/25 72/3 74/1 75/10 75/25 78/7 88/19 91/11 92/2 92/4 103/4 103/9 103/12 103/14 106/11 106/15 106/22 108/2
**MR. STIO: [146]**
**MS. CHUDEREWICZ: [1]** 19/9
**MS. HUTCHINS: [11]** 102/1 102/3 102/6 102/22 102/25 103/3 103/7 103/18 103/25 104/4 104/14
**THE COURT: [336]**
**THE COURTROOM DEPUTY: [4]** 19/4 74/3 74/5 108/5

**$**

**$19 [1]** 46/20
**$19 million [1]** 46/20

**/**

**/S/John [1]** 108/13

**0**

**07052 [1]** 16/12
**07102 [2]** 17/7 17/24
**08101 [1]** 1/13
**08542 [1]** 17/19
**08543 [1]** 16/16

**1**

**100 [2]** 17/7 45/17
**10017 [1]** 17/11
**10018 [1]** 17/3
**101 [1]** 16/12
**1037 [1]** 17/23
**105 [1]** 17/19
**10th [4]** 87/1 87/2 89/18 90/1
**10th of [4]** 87/13 87/14 87/16 88/3
**11 [1]** 71/12
**11:05 [1]** 74/4
**11:13 [1]** 74/4
**11:54 a.m [1]** 108/6
**12207 [1]** 16/3
**12th [1]** 16/3
**1359 [6]** 53/10 53/11 53/14 53/15 57/2 57/13
**140 [1]** 93/3
**140-plus [1]** 29/22
**14th [1]** 88/7
**14th of [1]** 88/4
**1520 [1]** 17/23
**15th [2]** 88/11 88/13
**15th of [3]** 95/10 95/13 95/16
**16 [1]** 36/16
**17 [1]** 36/16
**18,000 [1]** 36/16
**19,000 [7]** 36/8 36/16 50/17 66/19 66/22 66/25 67/5
**1:24-cv-03993-HB [1]** 1/4
**1:24-cv-03998-HB [1]** 1/8
**1:24-cv-04000-HB [1]** 2/3
**1:24-cv-04037-HB [1]** 2/7
**1:24-cv-04041-HB [1]** 2/12
**1:24-cv-04045-HB [1]** 2/16
**1:24-cv-04073-HB [1]** 2/21
**1:24-cv-04075-HB [1]** 3/3
**1:24-cv-04077-HB [1]** 3/8
**1:24-cv-04080-HB [1]** 3/12
**1:24-cv-04095-HB [1]** 3/17
**1:24-cv-04096-HB [1]** 3/22
**1:24-cv-04098-HB [1]** 4/3
**1:24-cv-04103-HB [1]** 4/8
**1:24-cv-04104-HB [1]** 4/12
**1:24-cv-04105-HB [1]** 4/17
**1:24-cv-04106-HB [1]** 4/21
**1:24-cv-04107-HB [1]** 5/3
**1:24-cv-04110-HB [1]** 5/8
**1:24-cv-04111-HB [1]** 5/12
**1:24-cv-04112-HB [1]** 5/17
**1:24-cv-04113-HB [1]** 5/22
**1:24-cv-04114-HB [1]** 6/3
**1:24-cv-04141-HB [1]** 6/7
**1:24-cv-04143-HB [1]** 6/12
**1:24-cv-04160-HB [1]** 6/16
**1:24-cv-04168-HB [1]** 6/21
**1:24-cv-04171-HB [1]** 7/3
**1:24-cv-04174-HB [1]** 7/8
**1:24-cv-04175-HB [1]** 7/12
**1:24-cv-04176-HB [1]** 7/17
**1:24-cv-04178-HB [1]** 7/21
**1:24-cv-04181-HB [1]** 8/3
**1:24-cv-04182-HB [1]** 8/7
**1:24-cv-04184-HB [1]** 8/12
**1:24-cv-04217-HB [1]** 8/16
**1:24-cv-04227-HB [1]** 8/21
**1:24-cv-04230-HB [1]** 9/3
**1:24-cv-04233-HB [1]** 9/7
**1:24-cv-04256-HB [1]** 9/12
**1:24-cv-04261-HB [1]** 9/17
**1:24-cv-04269-HB [1]** 9/21
**1:24-cv-04271-HB [1]** 10/3
**1:24-cv-04288-HB [1]** 10/7
**1:24-cv-04292-HB [1]** 10/12
**1:24-cv-04298-HB [1]** 10/16
**1:24-cv-04299-HB [1]** 10/21
**1:24-cv-04324-HB [1]** 11/3
**1:24-cv-04345-HB [1]** 11/7
**1:24-cv-04354-HB [1]** 11/12
**1:24-cv-04380-HB [1]** 11/16
**1:24-cv-04383-HB [1]** 11/21
**1:24-cv-04385-HB [1]** 12/3
**1:24-cv-04389-HB [1]** 12/7
**1:24-cv-04390-HB [1]** 12/12
**1:24-cv-04392-HB [1]** 12/17
**1:24-cv-04434-HB [1]** 12/21
**1:24-cv-04442-HB [1]** 13/3
**1:24-cv-04447-HB [1]** 13/7
**1:24-cv-04566-HB [1]** 13/12
**1:24-cv-04571-HB [1]** 13/17
**1:24-cv-04609-HB [1]** 13/21
**1:24-cv-04664-HB [1]** 14/3
**1:24-cv-04696-HB [1]** 14/7
**1:24-cv-04770-HB [1]** 14/12
**1:24-cv-04850-HB [1]** 14/16
**1:24-cv-04949-HB [1]** 14/21
**1:24-cv-05334-HB [1]** 15/3
**1:24-cv-05600-HB [1]** 15/8
**1:24-cv-05656-HB [1]** 15/12
**1:24-cv-05658-HB [1]** 15/17
**1:24-cv-05775-HB [1]** 15/21

**2**

**20 [1]** 104/2
**20 days [1]** 88/23
**20,000 [1]** 80/2
**201 [1]** 16/9
**2023 [22]** 22/14 22/18 31/24 32/6 32/7 32/14 32/20 34/10 34/23 35/4 41/3 41/10 43/7 49/20 51/4 51/14 61/10 62/14 68/22 70/18 84/16 93/25
**2024 [5]** 1/14 33/16 35/4 41/10 108/13
**21 [1]** 88/24
**21st [1]** 96/9
**222 [1]** 16/21
**24th of [3]** 94/18 95/3 95/9
**25 [1]** 102/16
**28 [1]** 57/2
**28 U.S.C [2]** 53/11 53/14
**2800 [1]** 17/13
**28202 [1]** 18/3
**2a [1]** 35/2
**2nd [1]** 31/2

**3**

**30 [41]** 16/3 21/13 21/15 21/20 21/25 24/1 24/3 25/25 26/16 28/18 41/22 41/23 50/2 51/18 51/22 55/24 61/4 63/7 63/23 64/3 65/2 66/5 67/13 72/22 73/23 74/7 76/13 77/19 79/22 83/10 88/7 94/20 94/25 95/5 95/12 96/16 97/3 97/5 105/8 105/22 106/10
**30-plus [1]** 37/13
**300 [1]** 17/19
**301 [1]** 16/16
**30th [2]** 96/18 97/6
**30th of [1]** 96/22
**31st [6]** 88/15 88/18 95/18 96/6 96/8 96/9
**32nd [1]** 17/3
**330 [1]** 17/13
**33602 [1]** 16/9
**34 [7]** 19/18 24/7 24/18 26/24 30/9 85/18 96/15
**35 [1]** 36/23
**35,000 [1]** 36/6
**390 [1]** 17/10

**4**

**40 [3]** 105/15 106/9 106/21
**40,000 [3]** 36/6 36/15 36/23
**400 [1]** 16/16
**41st [1]** 16/6
**44 [1]** 16/6
**4th [1]** 1/13

**5**

**50 [1]** 45/17
**576-7094 [1]** 1/22

**6**

**60601 [1]** 16/21
**60611 [1]** 17/14
**620 [2]** 17/3 18/3
**6SENSE [1]** 4/14

**7**

**70 [1]** 72/15
**70-something [1]** 106/21
**7094 [1]** 1/22
**7th [3]** 16/9 96/2 96/4

**8**

**800 [1]** 18/3
**856 [1]** 1/22

**9**

**94104 [1]** 16/6
**9:57 [1]** 1/14
**9:57 a.m. as [1]** 19/3

**A**

**a.m [4]** 1/14 74/4 74/4 108/6
**a.m. [1]** 19/3
**ability [3]** 42/12 78/12 78/20
**able [9]** 25/18 50/15 52/15 61/7 67/13 71/13 78/1 94/15 106/8
**above [2]** 74/15 108/10
**above-entitled [1]** 108/10
**absence [1]** 53/23
**absolutely [4]** 26/3 82/2 82/3 94/16
**accept [1]** 79/17
**accommodate [1]** 106/12
**accompany [1]** 42/6
**accomplished [1]** 65/1
**according [2]** 24/15 58/10
**ACCURATE [1]** 7/23
**ACCUZIP [1]** 11/22
**acknowledge [2]** 73/2 104/9
**acknowledged [2]** 61/2 71/3
**ACLU [1]** 89/9
**acting [1]** 70/24
**action [73]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 48/8
**actions [1]** 74/23
**activity [2]** 29/21 46/12
**actual [6]** 62/8 71/11 79/5 80/9 87/8 97/18
**actually [10]** 27/6 28/3 36/4 38/19 91/2 91/6 96/3 98/2 103/6 105/3
**ACXIOM [2]** 5/4 16/17
**Ad [1]** 17/20
**ADAM [3]** 16/2 20/12 72/2
**ADAMS [1]** 18/2
**add [5]** 27/1 30/15 39/3 78/8 83/16
**added [1]** 23/23
**addition [3]** 31/6 58/23 59/2
**additional [9]** 28/22 39/3 39/21 39/22 51/7 54/9 77/20 77/21 77/23
**address [8]** 36/20 39/13 55/3 56/14 56/18 85/2 88/22 99/23
**addresses [1]** 99/24
**adds [2]** 54/1 54/9
**adequately [1]** 103/24
**admit [1]** 22/2
**admitted [2]** 91/12 91/13
**advantage [1]** 20/6
**advising [1]** 29/5
**after [15]** 23/15 24/3 26/11 33/16 51/4 62/15 87/18 87/19 88/7 88/23 89/18 95/13 95/15 95/17 95/17
**afterwards [1]** 33/25
**again [22]** 28/7 35/6 41/20 42/9 44/15 51/14 52/3 55/20 60/23 62/23 63/6 64/1 64/21 65/1 71/9 73/5 79/10 82/16 84/13 86/12 93/2 104/6
**against [1]** 54/7
**ago [4]** 98/20 99/5 99/13 102/8
**agree [4]** 27/11 27/24 54/22 82/17
**agreeable [1]** 86/7
**agreement [2]** 65/19 69/13
**agreements [1]** 63/25
**ahead [16]** 25/21 27/5 32/18 52/1 57/23 66/2 72/2 77/22 78/24 79/8 80/14 80/18 83/22 86/19 102/10 107/25
**aided [1]** 1/23
**al [139]**
**Albany [1]** 16/3
**ALESCO [1]** 15/14
**all [125]**
**alleged [1]** 36/4
**ALLIANCE [1]** 4/4
**allocation [1]** 80/24
**allow [4]** 43/2 49/8 49/16 62/3
**allowed [5]** 44/18 44/19 62/5 82/10 84/9
**allows [1]** 46/7
**along [2]** 30/20 89/14
**already [5]** 23/11 77/12 80/7 80/9 90/18
**also [18]** 18/5 19/12 27/21 32/2 37/24 37/25 40/21 53/25 54/1 55/16 62/13 69/16 69/24 86/17 97/8 100/17 103/25 106/13
**although [1]** 89/11
**always [3]** 25/13 55/25 92/24
**am [3]** 27/14 85/24 96/1
**amass [1]** 91/21
**amenable [1]** 107/17
**amend [1]** 40/1
**amended [6]** 33/11 33/16 34/7 35/9 39/24 104/4
**amending [1]** 35/6
**amendment [3]** 59/23 59/24 89/15
**AMERICA [2]** 11/4 17/16
**AMERICAN [1]** 15/4
**AMERILIST [1]** 15/23
**amicus [13]** 86/21 87/9 87/10 87/23 88/17 88/20 88/25 89/6 90/6 90/6 90/14 90/15 97/9
**among [1]** 106/6
**amongst [1]** 93/20
**amount [4]** 20/25 21/9 29/15 62/9
**analog [1]** 104/2
**analogy [1]** 53/14
**analysis [4]** 30/1 30/17 34/15 99/2
**ANGELO [3]** 16/15 79/12 79/12
**another [5]** 63/12 79/20 90/2 90/25 94/6
**answer [7]** 45/10 48/25 61/8 64/2 67/4 71/22 72/3
**anticipate [1]** 107/12
**any [52]** 22/24 23/18 23/20 24/11 24/18 24/19 25/15 26/10 28/9 33/2 33/11 39/11 39/23 39/24 46/14 46/15 47/17 47/25 48/9 48/14 52/13 52/17 54/12 57/17 57/24 60/12 61/4 62/19 63/16 64/14 66/20 68/17 70/23 71/18 71/19 71/24 72/4 77/20 78/2 78/6 78/12 80/8 80/25 81/9 85/5 89/17 94/24 102/16 102/20 103/22 105/22 106/5
**anybody [5]** 26/21 27/1 94/23 94/24 107/15
**anymore [1]** 57/3
**anyone [3]** 25/4 26/20 87/6
**anything [16]** 25/11 26/21 27/1 40/18 58/16 60/5 60/6 69/10 70/24 78/10 81/23 86/7 94/23 97/11 101/24 107/21
**anyway [1]** 51/19
**Apartment [1]** 17/23
**appear [1]** 90/14
**appearance [1]** 67/19
**appearances [4]** 16/24 17/25 18/8 67/16
**appellate [1]** 87/20
**APPEND [1]** 7/23
**application [1]** 86/16
**applied [1]** 89/11
**approach [1]** 93/10
**appropriate [2]** 35/19 38/23
**April [10]** 22/14 22/18 23/1 32/7 41/3 43/7 49/20 61/10 68/22 70/18
**April 5 [3]** 32/7 41/3 68/22
**April 5th saying [1]** 23/1
**are [138]**
**area [1]** 82/16
**aren't [3]** 42/15 81/12 85/23
**argue [2]** 40/9 66/3
**arguing [3]** 21/17 53/17 53/18
**argument [2]** 28/22 100/6
**arguments [3]** 40/15 104/1 104/7
**arrangement [2]** 54/6 65/6
**arrangements [1]** 52/22
**articulated [2]** 91/2 91/7
**as-applied [1]** 89/11
**ask [24]** 24/9 25/20 26/16 41/22 50/2 51/18 51/19 51/22 55/6 55/23 57/4 57/22 61/4 61/7 63/7 63/23 66/4 67/12 71/7 76/12 77/25 78/1 81/25 105/12
**asked [4]** 21/2 38/20 63/24 94/21
**asking [14]** 23/9 25/6 47/13 47/14 47/15 51/17 65/1 66/15 68/7 68/9 77/10 85/18 86/3 101/14
**asks [1]** 25/25
**asserted [1]** 74/23
**assertion [1]** 26/2
**assign [5]** 46/9 48/5 48/16 60/24 79/13
**assigned [4]** 45/21 54/2 72/23 72/24
**assignee [8]** 44/13 53/24 54/2 54/7 54/13 63/15 69/10 81/9
**assignee's [1]** 54/3
**assignees [1]** 83/6
**assigning [1]** 81/20
**assignment [31]** 20/18 21/9 21/10 21/11 34/4 35/15 37/23 44/3 44/4 44/19 44/21 45/4 45/9 47/25 48/1 49/3 49/5 49/6 54/4 54/5 54/12 59/8 59/10 62/16 67/3 70/12 79/18 79/23 81/17 100/25 104/5
**assignments [31]** 21/7 21/8 22/19 26/13 37/20 43/7 45/8 45/13 51/10 51/11 52/16 56/12 60/21 61/10 62/5 62/8 62/14 63/15 65/23 69/15 71/2 74/24 76/4 76/7 76/9 76/10 76/10 76/11 77/9 83/15 100/18
**assignor [11]** 44/13 46/7 54/2 65/18 65/22 69/6 69/10 73/7 73/9 78/12 80/8
**assignor's [1]** 81/21
**assignors [30]** 35/25 36/8 36/11 43/3 52/13 63/11 66/11 66/19 67/6 68/8 68/9 68/17 68/25 69/14 69/24 70/8 71/18 71/25 72/4 72/11 72/12 72/14 72/14 76/8 76/24 78/3 81/2 81/10 83/7 86/15
**associated [1]** 80/20
**associations [1]** 67/11
**assume [6]** 30/25 42/5 45/21 82/12 87/5 102/20
**assumption [1]** 21/1
**ATDATA [2]** 13/9 16/17
**ATLAS [135]**
**Atlas' [7]** 47/18 53/8 68/16 68/21 74/22 78/11 98/18
**attach [1]** 90/14
**attached [1]** 87/9
**Attachment [1]** 18/8
**attorney [1]** 54/3
**attorneys [8]** 26/1 52/8 52/11 54/9 66/18 105/19 106/7 106/13
**August [5]** 96/2 96/4 96/9 96/18 96/22
**August 30th [1]** 96/18
**August 7th [2]** 96/2 96/4
**Avenue [3]** 17/3 17/10 17/13
**avoid [2]** 46/10 50/19
**award [1]** 80/25
**aware [3]** 26/10 91/7 103/4
**AXLE [1]** 8/4

**B**

**back [17]** 27/13 28/8 31/23 32/6 32/9 34/4 41/2 41/20 43/6 51/13 61/21 68/22 77/4 79/7 91/14 93/24 94/4
**ball [1]** 71/5
**BARTLE [2]** 1/16 19/2
**base [1]** 56/1
**based [12]** 27/17 38/14 38/19 38/25 39/4 41/7

**B**

**based... [6]** 50/9 71/10 86/22 93/15 99/2 102/7
**basic [2]** 48/12 48/13
**basis [14]** 21/2 21/3 22/11 25/8 29/12 57/2 57/15 71/12 85/20 92/18 93/12 93/13 103/5 103/8
**BATON [1]** 17/22
**because [44]** 19/19 21/17 23/17 26/4 27/7 27/14 28/7 30/16 33/23 34/12 34/14 36/18 37/15 38/21 41/25 43/21 44/7 44/20 46/12 50/14 50/22 50/24 53/17 53/25 55/1 60/5 61/12 68/19 75/1 77/23 82/7 82/18 84/20 90/6 92/16 92/21 92/25 93/2 95/7 100/17 101/16 102/12 103/2 103/3
**become [1]** 105/4
**becomes [1]** 84/20
**been [12]** 19/13 24/5 33/3 34/7 39/4 83/21 85/6 90/25 92/22 94/24 98/24 107/13
**before [17]** 19/1 19/13 22/11 25/9 29/2 33/22 34/7 50/12 50/23 70/7 72/18 73/24 89/24 95/18 96/6 96/20 104/8
**begin [1]** 74/10
**behalf [4]** 29/1 38/10 48/9 104/19
**behind [1]** 45/7
**being [21]** 20/1 20/2 24/12 27/12 27/13 30/3 44/1 50/19 61/8 64/7 65/7 73/15 74/23 79/6 81/4 82/7 83/25 84/4 86/7 92/17 92/18
**belief [1]** 33/9
**believe [13]** 30/18 34/7 35/11 35/13 36/3 63/4 63/16 65/15 67/3 88/7 90/13 97/21 97/21
**believes [1]** 23/9
**BELLES [1]** 14/22
**belonging [1]** 49/9
**BERNSTEIN [1]** 18/2
**best [2]** 59/2 101/8
**Better [1]** 87/12
**between [11]** 21/10 41/6 42/5 54/25 55/8 55/13 59/5 65/6 66/17 68/21 93/22
**beyond [9]** 40/12 40/16 44/19 45/11 61/1 70/25 82/19 82/20 90/3
**BIDDLE [1]** 17/18
**biggest [1]** 85/15
**bill [1]** 59/23
**bit [8]** 21/22 32/23 47/24 54/10 54/11 75/4 87/22 102/13
**BLACK [6]** 9/9 17/8 17/8 38/10 99/20 100/14
**Black Knight [1]** 100/14
**BLACKBAUD [3]** 1/5 18/4 102/6
**BLAINE [4]** 16/20 27/3 52/2 86/12
**blanche [1]** 47/12
**blocks [1]** 37/14
**blown [3]** 29/14 30/11 54/22
**board [1]** 37/3
**BOIES [4]** 16/2 16/5 68/3 72/3
**Boland [1]** 16/12
**bombardment [1]** 39/21
**both [2]** 60/18 66/5
**Boulevard [1]** 17/23
**bounds [1]** 47/6
**breadth [2]** 51/1 93/1
**break [1]** 73/25
**bridge [1]** 53/24
**brief [16]** 86/25 87/9 87/15 88/10 88/23 90/4 90/6 90/11 90/15 96/10 96/21 97/2 102/17 103/21 103/23 104/21
**briefing [14]** 19/12 24/4 28/19 87/11 87/24 88/5 96/7 102/9 102/12 102/23 103/1 103/9 103/14 104/11
**briefly [1]** 91/11
**briefs [8]** 86/21 87/10 88/6 88/25 89/6 90/19 96/23 96/23
**bring [1]** 48/8
**broad [3]** 22/10 49/25 84/8
**broader [4]** 47/24 58/16 75/4 93/7
**broker [1]** 55/14
**brought [2]** 79/6 80/9
**Building [1]** 1/12
**burden [3]** 20/22 67/12 92/20
**burdensome [5]** 22/1 45/17 61/23 86/15 101/15
**business [2]** 51/7 54/12
**buttons [1]** 69/22

**C**

**CAFA [18]** 46/6 46/10 46/15 47/23 51/22 57/6 57/7 57/18 57/25 60/9 102/14 103/5 103/8 103/12 103/15 103/16 103/16 104/1
**California [2]** 16/6 92/3
**called [1]** 99/8
**calls [1]** 56/22
**Camden [1]** 1/13
**came [2]** 28/8 47/20
**CAMP [1]** 14/22
**can [47]** 19/25 23/22 24/9 26/17 28/21 28/22 28/23 30/5 32/17 32/25 33/11 38/14 42/1 43/2 44/10 46/9 46/10 50/3 51/18 56/1 57/22 58/19 58/20 61/20 69/18 69/19 72/7 75/25 79/7 80/13 81/25 84/17 85/14 86/17 90/18 90/19 91/16 93/20 94/1 94/13 94/16 94/17 100/8 100/21 105/18 106/5 107/10
**can't [7]** 44/9 50/9 50/13 64/12 93/5 101/9 105/14
**capacity [1]** 63/13
**CAPTION [14]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25
**CARCO [2]** 3/9 16/17
**care [1]** 82/8
**carefully [2]** 97/20 98/22
**Carnegie [1]** 16/16
**Carolina [1]** 18/3
**carries [1]** 32/1
**carrying [1]** 94/24
**cart [1]** 50/12
**carte [1]** 47/12
**carve [1]** 63/16
**carve-out [1]** 63/16
**case [38]** 23/11 27/25 33/3 33/5 33/23 34/2 34/8 34/14 44/8 46/9 46/23 46/24 48/22 55/13 59/23 60/17 61/1 62/6 62/7 62/8 63/11 64/22 65/10 65/11 65/16 65/18 67/22 68/4 68/20 68/20 70/11 72/14 73/6 73/12 91/24 92/7 100/12 101/1
**Case No [1]** 65/18
**cases [28]** 22/5 23/11 29/19 29/22 33/8 33/22 45/3 45/11 50/15 52/8 57/6 62/3 63/9 63/14 65/12 67/16 67/21 71/12 72/15 72/17 72/22 72/23 72/24 73/4 85/10 91/16 93/3 95/24
**cast [1]** 53/9
**categories [6]** 29/3 29/13 74/14 93/11 94/10 94/15
**categorization [2]** 37/25 100/19
**category [4]** 25/7 29/6 34/13 93/15
**caught [1]** 98/25
**Center [2]** 16/16 17/6
**centers [1]** 19/11
**central [2]** 91/12 103/14
**cert [1]** 89/10
**certain [6]** 23/25 24/16 26/23 52/17 64/4 78/1
**certainly [3]** 58/16 67/15 81/21
**certainty [1]** 19/25
**CERTIFICATE [1]** 108/7
**certify [1]** 108/9
**cetera [2]** 30/14 51/24
**challenge [5]** 40/20 86/23 89/11 96/21 101/19
**changed [3]** 34/3 74/17 74/22
**characterizing [1]** 52/5
**Charlotte [1]** 18/3
**chart [2]** 35/18 37/22
**check [1]** 69/21
**checked [1]** 100/4
**CHEIFETZ [2]** 17/10 104/18
**Chicago [2]** 16/21 17/14
**choice [1]** 51/5
**choose [2]** 100/8 100/21
**CHOREOGRAPH [1]** 10/4
**CHRISTIE [6]** 17/6 35/14 35/22 38/4 38/9 58/6
**Christmas [2]** 32/5 61/11
**CHUDEREWICZ [1]** 16/15
**circuit [1]** 34/6
**circumstance [3]** 73/3 103/5 103/6
**circumstances [13]** 22/6 43/25 44/3 44/6 45/1 46/25 47/1 47/11 49/24 60/23 79/10 103/2 103/3
**circumvent [1]** 27/16
**cited [1]** 44/18
**citizenship [1]** 54/7
**Citrus [1]** 17/20
**CIVIL [74]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/13 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 85/17
**claim [5]** 48/6 48/16 70/23 72/24 101/1
**claiming [4]** 20/3 20/4 25/11 25/19
**claims [5]** 59/8 59/10 60/17 60/24 79/13
**clarify [2]** 27/21 105/9
**CLARITAS [1]** 7/14
**class [1]** 46/7
**clear [8]** 40/10 40/17 47/5 73/18 91/3 105/4 106/4 106/15
**Clerk [1]** 18/7
**click [2]** 69/22 79/17
**client [5]** 30/17 36/19 99/22 102/13 103/18
**client's [3]** 36/5 105/1 105/5
**clients [4]** 59/19 68/14 93/20 99/15
**close [1]** 75/1
**closely [1]** 107/13
**closer [1]** 84/19
**CO [2]** 14/18 17/11
**Cohen [1]** 1/12
**colleague [1]** 56/13
**colleagues [1]** 95/4
**collective [1]** 64/9
**College [1]** 17/19
**Colligan [1]** 22/25
**COLLINS [1]** 17/13
**colluded [2]** 20/22 50/17
**collusion [8]** 21/4 22/6 22/12 33/25 57/1 57/13 103/10 103/15
**collusive [7]** 50/16 53/10 53/17 60/3 65/23 102/14 103/19
**collusiveness [2]** 51/16 52/6
**come [6]** 22/15 50/16 61/18 61/20 61/20 99/7
**comes [1]** 60/17
**coming [3]** 19/10 25/24 32/22
**Commencing [1]** 1/14
**comments [1]** 94/25
**COMMERCE [1]** 6/18
**COMMERCIAL [1]** 2/22
**committee [2]** 89/13 107/7
**common [7]** 48/19 49/11 63/4 63/16 64/2 64/23 66/11
**communicate [2]** 78/12 78/20
**communicating [1]** 41/3
**communication [2]** 55/8 56/14
**communications [42]** 14/22 22/9 22/21 22/25 30/18 41/2 41/2 41/19 41/21 42/4 42/6 42/8 42/11 42/15 42/18 43/5 44/24 46/8 47/14 47/17 50/25 51/13 51/24 55/7 55/12 55/19 56/12 57/16 57/24 59/5 61/13 67/11 76/11 77/9 77/10 78/25 80/2 80/8 80/15 84/8 93/6 93/18
**companies [2]** 51/5 104/19
**company [1]** 45/13
**compared [1]** 98/23
**comparison [1]** 38/15
**compensation [1]** 62/10
**complaint [9]** 33/24 34/17 34/20 34/21 34/23 36/7 39/17 78/20 99/23
**complaints [2]** 36/5 39/24
**compliance [2]** 61/13

## C

**compliance... [1]** 100/8
**complied [1]** 51/5
**comply [4]** 37/7 51/6 100/10 101/6
**component [1]** 81/6
**computer [2]** 1/23 101/6
**computer-aided [1]** 1/23
**concept [1]** 50/16
**concern [3]** 38/19 84/6 84/12
**concerned [2]** 27/14 43/9
**concerning [2]** 59/7 60/14
**concluded [1]** 108/6
**conclusion [1]** 99/7
**confer [5]** 93/14 94/4 99/18 101/9 106/6
**conference [6]** 1/5 19/11 20/17 31/21 70/12 94/7
**conferences [1]** 37/2
**confers [1]** 28/4
**confines [1]** 82/15
**confirm [1]** 58/12
**confirmation [2]** 35/16 79/18
**confirmations [1]** 62/16
**conflict [1]** 69/21
**consent [1]** 68/15
**consider [2]** 90/20 102/9
**consideration [1]** 54/13
**considered [4]** 53/5 53/18 54/5 54/8
**considering [2]** 102/16 104/8
**consistent [1]** 83/21
**consolidated [5]** 86/22 96/21 103/1 103/9 103/21
**constitutional [4]** 86/23 101/19 102/23 104/11
**constrained [1]** 32/9
**construes [1]** 30/21
**contact [1]** 55/18
**contains [1]** 97/20
**contemplate [1]** 48/16
**context [4]** 20/21 20/22 62/4 62/5
**contexts [1]** 67/2
**contingent [2]** 52/22 54/5
**continue [1]** 35/12
**continued [18]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 16/24 17/1 17/25 18/1
**contract [11]** 22/24 41/12 44/9 44/10 44/12 47/21 61/1 61/1 62/1 62/10 79/15
**contracts [10]** 41/6 41/20 42/4 42/6 52/16 52/21 56/4 57/24 60/21 65/5
**contrast [1]** 83/4
**control [8]** 60/16 60/18 60/21 61/17 64/24 64/25 79/19 81/14
**controlling [1]** 54/3
**controls [2]** 61/14 62/9
**conventions [1]** 32/7
**Conversant [1]** 17/20
**conversation [1]** 93/21
**conversations [1]** 51/21
**conversed [1]** 38/18
**Cooper [1]** 1/13
**coordinate [1]** 96/15
**copies [1]** 35/15
**CORELOGIC [2]** 9/4 16/18
**CORP [3]** 10/13 14/13 17/16
**corporate [2]** 50/18 76/22
**corporation [79]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/14 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/18 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 9/23 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/5 15/7 15/11 15/16 15/20 16/17 17/15 46/10
**correct [39]** 24/19 25/1 40/22 41/8 48/6 48/7 52/16 59/14 62/14 63/18 64/8 64/9 65/8 65/9 65/9 67/16 68/1 69/2 69/4 69/9 69/15 71/18 72/5 72/18 72/19 73/8 73/11 73/14 73/17 81/18 81/24 87/14 94/19 97/25 98/17 103/7 103/25 106/18 108/9
**corridor [2]** 40/13 40/16
**Cosma [1]** 18/7
**COSTAR [3]** 5/14 17/14 17/14
**costs [1]** 81/23
**could [26]** 20/6 20/19 21/9 21/14 37/9 45/21 48/5 48/8 54/5 54/25 61/17 61/20 63/7 65/1 65/4 66/1 66/4 67/12 76/12 77/25 87/21 89/4 104/9 105/19 106/12 107/1
**counsel [36]** 18/8 23/12 27/15 40/7 44/5 54/3 55/22 56/23 60/5 63/3 63/4 63/16 63/23 64/2 64/23 64/23 66/12 66/14 66/20 66/24 68/16 68/21 69/16 69/17 81/22 86/14 91/11 91/13 93/20 93/22 94/4 95/25 99/17 100/7 106/25 107/1
**couple [6]** 38/12 84/11 86/18 89/17 89/18 105/19
**course [8]** 45/7 82/25 82/25 83/2 85/21 92/23 94/1 100/6
**court [39]** 1/1 1/21 19/1 20/24 20/25 22/15 23/14 23/19 26/22 27/7 32/10 44/22 45/4 46/13 50/15 50/20 50/23 59/9 61/18 61/18 70/7 70/10 70/15 70/25 71/12 74/19 83/20 85/19 85/21 87/20 88/20 89/11 91/19 97/17 102/15 106/7 107/17 108/7 108/14
**Court's [2]** 74/18 83/12
**courtesy [1]** 37/9
**courthouse [2]** 1/12 70/21
**courtroom [4]** 18/6 70/7 70/22 94/22
**courts [1]** 20/8
**cover [1]** 97/23
**covered [16]** 36/7 38/13 38/20 38/25 39/4 39/5 91/5 97/19 98/2 98/10 98/18 99/9 99/19 99/22 105/1 105/6
**covers [1]** 77/19
**crafted [1]** 82/19
**CRC [1]** 108/13
**create [3]** 23/2 29/24 61/12
**creating [1]** 49/22
**CRR [1]** 108/13
**crunched [1]** 38/14
**custodians [1]** 30/13
**customers [1]** 78/18
**cv [72]** 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21

## D

**Daniel's [12]** 37/7 42/14 46/4 51/6 59/20 59/24 60/14 69/20 74/23 76/23 91/1 91/16
**dastardly [1]** 52/6
**data [84]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/13 6/15 6/20 6/22 7/2 7/4 7/7 7/11 7/16 7/18 7/20 8/2 8/4 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/13 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/13 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 17/20 38/20 39/1 55/14 98/19
**databases [1]** 45/17
**date [8]** 31/23 32/22 34/16 37/23 39/16 90/10 100/18 104/5
**dates [2]** 37/19 96/24
**dating [1]** 32/6
**DAVID [2]** 17/10 104/18
**day [5]** 41/18 59/18 78/17 87/21 96/22
**days [8]** 51/7 88/7 88/23 90/3 90/10 96/16 97/3 97/5
**deadline [4]** 28/17 87/9 87/24 96/8
**deal [11]** 23/25 32/15 39/10 39/11 40/1 40/2 81/17 89/16 94/7 101/9 101/9
**dealing [3]** 35/1 58/17 101/17
**deals [2]** 28/13 103/21
**dealt [2]** 80/10 103/24
**December [3]** 30/4 51/3 84/16
**December 1 [1]** 84/16
**decided [2]** 19/17 83/21
**decides [1]** 59/22
**deciding [1]** 46/23
**decision [1]** 102/10
**defeat [1]** 46/13
**defeating [1]** 44/22
**defendant [13]** 17/11 18/4 36/17 37/1 54/7 85/7 99/20 100/17 102/16 103/8 104/6 106/5 106/16
**defendants [116]**
**defense [8]** 28/9 29/13 91/12 95/7 95/25 96/12 107/1 107/23
**defenses [1]** 77/24
**defined [1]** 31/13
**definition [3]** 32/1 34/16 57/13
**Delaware [4]** 46/10 50/18 53/8 55/9
**delay [2]** 23/10 43/11
**delayed [1]** 94/8
**delivered [2]** 55/17 55/17
**DELUXE [2]** 3/14 16/17
**DELVEPOINT [1]** 3/23
**delves [1]** 81/3
**depending [2]** 65/10 94/6
**depends [1]** 24/24
**deposition [13]** 24/3 25/10 25/25 28/18 51/23 95/5 95/12 95/13 105/8 105/11 105/20 106/25 107/4
**depositions [3]** 24/1 74/8 100/3
**Deputy [1]** 18/6
**designation [1]** 84/5
**designed [1]** 81/4
**designee [1]** 76/22
**desire [1]** 29/13
**details [3]** 40/8 62/7 62/20
**determine [5]** 21/9 44/6 44/20 47/9 47/10
**determined [3]** 45/12 45/20 48/4
**determining [1]** 21/3
**developed [2]** 33/3 33/7
**did [10]** 28/8 44/20 96/20 96/25 98/12 99/4 99/12 101/6 101/6 103/18
**didn't [10]** 25/22 26/9 27/23 27/23 37/15 48/16 51/8 71/11 82/17 102/19
**different [5]** 37/2 37/3 37/4 51/1 68/2
**different entity [1]** 37/4
**differently [1]** 54/11
**difficult [4]** 44/25 66/3 69/22 86/10
**DIGITAL [2]** 6/9 14/13
**direction [1]** 20/16
**directive [1]** 40/10
**directly [5]** 60/17 61/22 67/4 68/22 81/13
**disagreed [1]** 60/4
**disclose [1]** 68/15
**disclosing [2]** 24/6 98/16
**discover [1]** 51/23
**discoverable [1]** 42/15
**discovery [27]** 19/11 19/14 23/20 24/18 24/24 26/22 28/14 38/23 39/14 44/19 46/18 47/4 47/5 47/6 47/12 47/14 52/9 54/21 54/22 57/7 61/6 82/21 82/22 85/22 99/19 100/2 100/23
**discuss [2]** 59/2 102/19
**discussed [1]** 46/15
**discussing [1]** 91/17
**discussion [8]** 23/15 47/25 51/25 79/21 82/5 97/15 102/18 104/9
**discussions [2]** 51/20 60/12
**dismiss [2]** 86/22 100/25
**dispositive [1]** 53/2
**disproportional [1]** 61/23
**dispute [2]** 23/20 76/6
**disputed [1]** 19/15
**disregard [1]** 53/8
**distinction [3]** 41/19 72/20 73/15
**DISTRICT [4]** 1/1 1/1

**D**

**DISTRICT... [2]** 1/16 19/2
**diversity [3]** 53/9 53/19 54/8
**DM [2]** 3/4 16/17
**docket [1]** 18/8
**document [19]** 21/24 22/4 22/8 25/15 33/10 33/14 43/6 46/15 50/1 66/4 73/21 77/11 77/13 77/24 79/11 80/10 84/18 92/13 93/17
**documentation [2]** 60/12 66/14
**documents [61]** 20/1 20/1 20/2 20/3 21/12 22/18 22/23 23/24 24/3 24/12 24/12 24/14 24/17 24/19 24/20 24/21 25/6 25/8 25/10 25/14 26/5 26/9 26/11 26/13 26/23 27/16 27/17 28/16 29/6 29/12 30/14 31/1 42/18 44/5 45/22 50/3 51/24 56/1 56/3 59/4 60/16 61/4 62/24 63/3 66/10 67/13 74/14 74/18 77/25 80/7 82/7 83/12 84/4 85/19 85/22 85/23 93/22 94/10 94/14 95/2 95/4
**does [13]** 34/1 39/6 39/8 43/13 43/18 43/19 44/14 46/12 61/19 74/25 76/2 81/18 95/13
**doesn't [5]** 27/13 44/13 45/10 47/12 60/6
**dog [1]** 46/18
**doing [4]** 39/2 41/16 48/20 100/2
**done [5]** 30/8 37/8 94/16 94/17 101/5
**door [1]** 77/11
**double [1]** 20/25
**down [11]** 22/17 25/9 30/21 31/18 39/1 39/3 43/10 43/11 49/19 82/10 104/25
**drafted [3]** 27/15 44/5 81/6
**drafting [1]** 27/15
**draw [2]** 41/19 72/20
**drawn [1]** 54/17
**DRINKER [1]** 17/18
**Drive [1]** 16/12
**driving [1]** 79/16
**due [8]** 36/14 61/9 86/25 87/1 87/12 88/10 88/23 96/22
**duplicate [1]** 96/23
**during [5]** 31/15 31/21 37/2 77/23 78/13

**E**

**E-MERGES.COM [1]** 12/23
**each [6]** 36/5 36/17 37/1 54/17 54/18 100/9
**earlier [2]** 96/25 97/15
**early [2]** 29/19 29/21
**East [1]** 17/19
**easy [2]** 63/17 70/4
**EDPA [1]** 1/16
**effect [2]** 24/7 27/7
**effectuate [1]** 42/13
**efficient [4]** 21/5 27/9 41/21 55/23
**effort [1]** 63/20
**eight [2]** 63/10 105/21
**Eighth [1]** 17/3
**either [2]** 78/22 90/23
**Electronic [1]** 89/12
**eliminate [1]** 75/13
**else [17]** 25/4 26/20 26/21 40/18 58/16 62/22 69/11 78/10 81/23 89/14 92/1 92/8 94/23 97/11 101/20 101/24 107/21
**email [5]** 30/20 39/22 41/24 99/23 99/23
**emails [16]** 29/16 37/15 38/15 38/17 38/21 39/4 84/11 93/20 93/25 97/18 97/22 98/23 99/5 99/13 99/25 101/14
**employed [1]** 20/8
**end [7]** 24/22 30/19 39/19 41/18 59/17 78/17 95/24
**enforce [3]** 43/2 49/8 84/23
**enforcement [13]** 38/1 41/7 45/14 45/16 45/23 48/5 48/10 48/17 48/21 67/6 78/18 91/25 100/20
**ENFORMION [2]** 5/9 16/18
**engage [3]** 21/16 100/2 100/5
**engagement [18]** 63/5 63/24 64/15 64/17 64/17 64/24 65/15 65/18 66/15 66/21 67/5 67/9 67/10 68/17 68/21 69/17 92/11 92/11
**ENGLISH [1]** 17/5
**enough [1]** 101/18
**enter [7]** 23/23 26/22 28/16 83/20 88/14 90/20 97/8
**entered [5]** 23/14 44/21 67/16 67/19 107/24
**ENTERPRISES [1]** 12/9
**entire [1]** 46/7
**entities [4]** 86/20 87/8 89/14 89/15
**entitled [11]** 23/10 25/13 36/11 43/5 44/6 45/4 46/25 61/15 70/18 92/24 108/10
**entity [4]** 37/1 37/4 37/11 49/17
**entries [1]** 36/16
**entry [1]** 18/8
**EPSILON [2]** 6/22 17/20
**EQUIFAX [1]** 10/18
**EQUIMINE [1]** 9/18
**errant [1]** 30/20
**ESI [1]** 22/10
**especially [1]** 21/19
**ESQUIRE [14]** 16/2 16/5 16/8 16/11 16/15 16/15 16/20 17/2 17/6 17/10 17/13 17/18 17/22 18/2
**essence [1]** 39/2
**essential [1]** 53/4
**essentially [2]** 35/18 62/12
**ESTATE [1]** 2/22
**et [141]**
**Eve [2]** 32/6 32/6
**even [8]** 20/8 20/24 37/13 42/15 42/24 55/4 88/20 91/18
**event [1]** 62/19
**eventually [2]** 59/24 100/23
**every [12]** 34/13 35/15 37/1 47/16 54/24 55/8 65/11 68/4 73/6 99/20 103/8 106/16
**everyone [1]** 103/4
**everything [3]** 20/18 47/19 101/20
**evidence [4]** 44/16 62/1 62/11 100/24
**evidenced [3]** 69/14 69/16 69/17
**EWING [1]** 17/22
**exact [1]** 64/12
**exactly [2]** 24/6 92/2
**examinations [1]** 100/3
**examine [1]** 83/14
**examining [1]** 106/9
**example [9]** 29/7 29/18 30/4 42/24 55/12 56/3 58/17 68/12 102/13
**examples [1]** 66/9
**except [1]** 48/13
**exception [1]** 63/8
**exchange [2]** 2/22 62/7
**exchanges [1]** 41/24
**exclude [1]** 107/14
**excluding [2]** 26/5 26/7
**excuse [2]** 56/11 66/22
**exercising [1]** 25/17
**exhaustive [1]** 55/5
**exist [8]** 24/13 25/10 27/13 30/19 40/3 42/1 65/5 77/10
**expand [1]** 99/8
**expanded [1]** 41/1
**expediency [1]** 85/8
**expedite [1]** 23/14
**expedition [1]** 71/10
**expenses [1]** 80/20
**explanation [3]** 61/15 76/21 76/25
**explore [2]** 79/20 80/16
**expressed [1]** 86/21
**extend [1]** 104/12
**extent [6]** 32/24 39/20 39/23 40/16 68/16 72/23
**extra [2]** 37/24 63/24
**extraordinary [2]** 80/3 80/11

**F**

**facial [3]** 40/20 86/22 96/21
**facilitate [1]** 45/14
**facing [1]** 85/9
**fact [9]** 45/9 50/9 50/13 50/16 67/19 71/11 86/13 105/2 105/5
**factor [8]** 52/7 53/21 53/21 53/24 53/25 60/18 61/22 62/24
**factors [9]** 22/2 53/5 54/9 54/18 54/19 55/3 57/12 61/3 81/15
**facts [1]** 40/3
**factual [2]** 21/3 22/11
**factually [1]** 36/15
**FAEGRE [1]** 17/18
**fail [1]** 22/3
**faith [4]** 24/25 25/24 25/24 30/17
**family [2]** 38/2 100/20
**far [10]** 21/16 24/5 36/2 36/2 36/4 36/4 43/6 56/12 62/19 91/6
**fast [1]** 39/19
**feasible [2]** 93/15 93/15
**February [7]** 29/20 29/21 33/6 33/16 35/4 41/10 51/10
**February 4 [3]** 33/16 35/4 41/10
**federal [11]** 1/21 19/25 20/7 20/25 46/6 46/13 50/20 61/18 85/17 87/20 108/7
**fee [3]** 52/22 54/5 81/3
**feel [1]** 104/7
**fees [8]** 80/20 81/2 81/8 81/14 81/22 81/22 82/22 83/9
**few [2]** 51/1 69/22
**fiction [3]** 21/1 50/9 50/12
**figure [3]** 85/14 93/14 95/25
**file [17]** 23/7 24/18 87/6 87/10 87/13 88/17 90/4 90/5 90/5 90/12 90/13 91/19 92/1 92/3 92/7 92/8 103/22
**filed [17]** 19/18 29/19 33/4 33/5 33/23 33/24 34/2 34/8 34/14 34/16 34/19 34/21 34/23 39/16 51/12 89/10 91/16
**filing [5]** 29/22 86/21 89/6 91/18 91/24
**filter [1]** 100/4
**final [1]** 96/8
**finally [1]** 51/9
**FINANCIAL [2]** 12/14 15/4
**find [4]** 24/21 52/15 56/24 71/13
**finding [1]** 53/7
**fine [25]** 25/17 27/6 29/5 32/21 32/25 34/19 35/5 35/9 37/21 41/16 56/6 58/2 58/4 58/7 75/10 76/20 77/2 77/17 77/18 82/11 92/15 95/16 95/20 95/22 96/1
**fingerprints [1]** 68/20
**firm [7]** 64/8 65/8 65/11 65/11 65/16 68/3 71/17
**firms [12]** 59/19 63/12 64/9 65/10 67/5 67/9 67/15 68/2 68/5 69/18 69/23 71/19
**first [9]** 15/4 32/5 34/8 56/5 70/20 74/13 78/2 88/19 89/14
**fishing [1]** 71/10
**flag [1]** 55/1
**FLEXNER [2]** 16/2 16/5
**Floor [4]** 16/3 16/6 16/9 17/3
**Florida [1]** 16/9
**focus [2]** 22/1 40/20
**focuses [1]** 84/13
**folks [1]** 63/13
**follow [6]** 20/7 20/16 86/3 87/23 96/25 102/20
**followed [1]** 27/12
**follows [2]** 19/3 52/10
**footnote [1]** 28/4
**foregoing [1]** 108/9
**forensic [1]** 100/2
**forget [2]** 50/9 50/13
**form [3]** 19/14 21/23 26/22
**formal [4]** 27/6 92/14 92/16 92/16
**format [3]** 23/4 96/25 102/20
**forth [4]** 23/8 23/12 23/13 104/1
**FORTNOFF [1]** 12/14
**forward [1]** 35/12
**Foundation [1]** 89/12
**four [2]** 17/6 89/4
**fourth [2]** 53/21 59/24
**frame [4]** 30/6 84/19 93/1 93/2
**framework [2]** 42/9 42/19
**Francisco [1]** 16/6
**Franklin [1]** 16/9
**free [1]** 48/17
**Freedom [1]** 89/13
**front [4]** 33/10 59/1 75/8 88/2
**Frontier [1]** 89/12
**full [4]** 29/14 30/11 54/22 107/25
**full-blown [3]** 29/14 30/11 54/22
**FULTON [1]** 18/2

**F**

**function [2]** 101/4 101/5
**fundamentally [1]** 28/10
**funding [1]** 52/24
**further [2]** 18/8 94/25
**fuss [1]** 34/9

**G**

**gain [1]** 20/19
**game [1]** 30/19
**gamesmanship [2]** 21/24 25/23
**Gateway [1]** 17/6
**gave [1]** 99/13
**general [1]** 80/6
**gets [6]** 25/25 51/14 52/17 61/25 62/6 96/3
**getting [11]** 20/23 21/5 23/3 29/16 43/7 47/1 60/24 61/10 84/10 91/14 101/16
**give [17]** 20/18 21/12 21/13 22/22 22/24 22/24 23/13 26/10 26/18 32/25 37/21 44/4 56/6 61/4 66/9 68/12 95/21
**given [5]** 51/11 54/13 86/16 104/21 105/10
**gives [1]** 90/17
**giving [3]** 21/8 21/8 21/11
**goes [18]** 21/16 34/4 38/22 40/16 43/25 45/1 56/12 60/8 60/8 60/9 62/23 68/22 79/10 81/5 81/13 82/19 93/24 99/19
**GOHUNT [1]** 11/18
**gone [5]** 30/17 54/14 63/24 79/25 92/14
**good [21]** 19/5 19/6 19/7 19/8 19/9 19/22 19/23 20/12 20/14 24/24 25/24 25/24 30/17 45/12 54/11 55/12 102/1 102/2 104/16 104/17 107/21
**got [11]** 21/22 25/24 26/12 37/19 48/15 59/1 66/6 73/20 75/11 86/18 96/5
**gotcha [1]** 30/19
**gotten [2]** 42/17 99/1
**Governor's [1]** 59/25
**grant [2]** 90/7 90/8
**grasping [1]** 71/13
**Grassi [11]** 22/1 44/2 44/17 45/3 52/7 52/11 53/25 53/25 54/1 57/10 60/18
**gray [1]** 82/16
**great [1]** 94/17
**group [12]** 3/4 3/9 5/14 15/14 16/17 16/17 17/14 20/24 63/10 93/7 95/8 107/5
**groups [2]** 89/5 89/7
**guardian [1]** 62/6
**guess [5]** 19/15 25/20 26/8 59/5 102/11

**H**

**H-U-T-C-H-I-N-S [1]** 102/4
**half [3]** 21/14 50/21 85/6
**HAMILTON [1]** 16/14
**handful [1]** 64/11
**handle [1]** 32/17
**happened [4]** 33/24 33/25 51/3 71/1
**happy [4]** 35/12 84/3 84/5 100/5
**hard [1]** 39/19
**harder [1]** 84/20
**HARVEY [2]** 1/16 19/2
**has [49]** 19/15 27/15 33/15 33/15 33/21 33/25 34/3 37/17 43/15 43/17 46/18 47/4 47/4 47/23 48/15 53/25 55/15 55/21 56/14 59/9 59/16 60/21 63/15 66/21 69/14 71/17 72/23 74/9 77/12 79/11 79/24 83/4 83/15 84/8 85/14 86/14 89/10 90/14 91/7 91/12 91/13 93/24 94/24 100/14 100/14 100/15 102/13 102/14 103/8
**haunt [1]** 28/8
**have [180]**
**have any [1]** 66/20
**haven't [5]** 37/8 39/4 45/22 70/8 84/2
**having [1]** 25/9
**HB [72]** 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21
**he [18]** 25/22 25/22 25/25 26/16 26/17 38/21 38/21 38/22 42/1 56/8 58/6 62/3 70/22 72/23 72/23 72/24 73/6 91/22
**he'll [1]** 41/25
**he's [7]** 22/25 57/3 62/13 72/22 73/9 73/12 95/23
**hear [7]** 19/21 25/5 26/21 35/21 38/4 54/24 56/10
**heard [4]** 39/21 56/23 102/8 104/24
**hearing [4]** 23/17 23/18 85/15 102/11
**hearings [2]** 95/24 96/3
**held [3]** 19/1 22/18 27/13
**help [1]** 42/12
**helpful [1]** 55/25
**her [1]** 48/6
**here [53]** 19/17 19/20 20/10 20/16 21/19 21/24 22/10 23/6 23/15 28/9 33/8 37/8 37/13 37/18 40/18 41/22 42/9 42/17 42/23 44/1 45/25 46/18 46/22 48/1 48/19 49/18 50/14 51/2 53/13 57/17 58/24 59/1 65/23 68/2 70/6 71/5 71/16 71/19 71/20 79/12 83/21 85/3 85/9 87/25 90/18 93/22 94/22 95/23 96/8 101/17 104/25 105/3 105/6
**here's [1]** 21/7
**hesitate [1]** 28/7
**hey [1]** 42/11
**hiding [1]** 71/5
**highest [1]** 70/24
**highly [1]** 61/23
**him [5]** 28/12 55/22 73/10 73/13 99/18
**his [6]** 38/25 45/18 48/5 56/24 71/17 81/20
**hits [1]** 61/19
**HIYA [4]** 2/4 16/22 27/4 52/3
**HOGAN [2]** 17/9 104/18
**holding [1]** 70/17
**HOLDINGS [3]** 13/18 17/15 17/16
**holidays [1]** 61/11
**home [1]** 36/20
**honor [191]**
**Honor's [5]** 20/16 40/10 93/12 98/12 100/16
**HONORABLE [2]** 1/16 19/1
**hope [3]** 105/14 105/18 106/8
**hopefully [1]** 90/7
**hoping [1]** 87/21
**hopper [1]** 87/7
**horse [1]** 50/12
**hour [1]** 104/21
**hours [4]** 105/21 105/24 105/25 106/2
**housekeeping [2]** 86/18 104/23
**HSIAO [1]** 16/5
**huge [2]** 86/9 92/20
**huh [1]** 64/13
**hundred [3]** 72/23 72/24 84/11
**hundred-page [1]** 84/11
**HUTCHINS [3]** 18/2 102/3 102/4

**I**

**I'd [3]** 78/1 96/15 97/16
**I'll [10]** 19/21 55/22 62/21 76/5 76/7 80/12 90/20 90/23 94/3 104/21
**I'm [42]** 25/3 25/5 25/17 28/15 28/15 29/15 33/20 34/19 35/12 46/17 47/3 47/8 48/3 48/24 49/25 51/14 52/1 52/10 55/19 57/17 66/15 67/2 68/9 69/19 70/18 75/10 78/21 78/22 79/2 79/25 80/17 82/10 86/3 88/1 89/19 91/6 103/4 103/15 104/6 104/6 105/15 106/17
**I've [13]** 38/18 59/1 77/13 77/14 85/6 85/7 86/18 99/17 99/18 100/6 100/7 104/4 107/13
**i360 [1]** 11/9
**idea [3]** 60/1 70/22 80/8
**identification [3]** 25/14 26/18 83/24
**identified [5]** 31/1 36/3 36/4 86/8 99/23
**identify [6]** 24/12 28/16 78/12 78/20 84/3 84/5
**identity [1]** 36/12
**III [4]** 1/16 16/15 17/13 19/2
**Illinois [2]** 16/21 17/14
**illustrative [2]** 55/4 55/5
**immediately [1]** 70/16
**important [3]** 20/21 70/16 105/4
**importantly [1]** 21/13
**improperly [1]** 105/6
**impropriety [1]** 43/17
**inaccurate [2]** 36/15 42/22
**INC [49]** 1/5 1/10 2/4 2/23 3/4 3/9 3/18 4/9 4/14 5/14 5/23 7/4 7/9 7/18 7/23 8/4 8/9 8/13 8/18 8/22 9/4 9/14 9/18 10/18 10/22 11/22 12/9 12/23 13/4 13/23 14/9 14/22 15/9 15/18 15/23 16/17 16/17 16/18 16/18 16/18 16/22 16/22 17/8 17/14 17/15 17/16 17/16 17/20 18/4
**include [6]** 24/11 41/2 63/19 83/14 98/19 99/12
**included [4]** 60/20 82/13 82/14 99/4
**including [3]** 59/20 76/8 78/12
**Incorporated [1]** 102/7
**increased [1]** 102/25
**independent [1]** 53/23
**individual [29]** 36/18 45/14 45/16 45/18 46/7 48/4 48/9 63/9 63/10 63/12 63/14 64/5 64/18 65/6 65/7 65/14 65/17 65/22 68/1 68/5 70/2 72/21 72/22 73/4 79/19 80/2 88/5 96/23 99/21
**individuals [8]** 37/10 51/11 79/19 98/17 98/19 99/4 99/12 100/15
**individuals' [1]** 84/24
**inflect [1]** 70/23
**INFOMATICS [2]** 2/13 17/4
**INFORM [2]** 2/9 17/4
**information [22]** 17/15 20/19 21/5 21/7 29/15 37/23 38/24 44/24 45/5 49/19 51/6 51/9 55/18 60/22 61/22 71/14 91/21 92/5 97/25 98/16 100/15 100/22
**initial [1]** 21/1
**INNOVIS [1]** 7/18
**inquiry [2]** 64/1 65/23
**insert [1]** 75/14
**INSIGHTS [1]** 4/14
**insofar [2]** 74/15 83/12
**inspection [1]** 25/3
**instances [1]** 36/5
**instead [2]** 21/15 76/15
**Intelius [1]** 17/16
**INTERACTIVE [1]** 14/9
**interest [25]** 22/7 22/13 41/5 42/24 43/3 43/24 44/7 44/23 45/2 45/5 51/15 53/19 53/23 54/1 57/7 60/3 60/25 61/14 78/3 83/5 86/21 90/25 91/2 91/7 91/8
**interested [3]** 30/3 89/6 103/23
**interests [3]** 43/22 74/22 75/12
**Intermediate [1]** 17/16
**INTERNATIONAL [3]** 5/18 17/15 17/20
**interpreted [1]** 104/9
**interrogatory [2]** 71/8 71/9
**invoking [1]** 53/15
**involved [1]** 25/23
**involvement [1]** 78/25
**involving [2]** 91/24 91/25
**irrelevant [1]** 64/25
**isn't [12]** 22/12 24/22 45/7 45/25 48/12 66/13 68/19 81/23 82/5 88/4 92/8 92/23
**issue [41]** 19/13 21/11 26/21 29/11 30/6 30/22 32/23 35/14 42/2 42/17 42/23 47/9 47/10 48/1 53/13 53/14 56/4 63/20 64/14 66/11 66/13 71/16 76/14 80/25 83/24 84/17 85/5 85/15 86/17 93/2 96/14 97/17 99/1 99/18 100/1 101/3 101/9 101/17 103/22 103/23 104/8
**issued [1]** 51/10
**issues [25]** 19/19 22/9 30/5 35/18 35/23 37/16 39/11 52/9 54/23 60/9 64/24 85/9 85/12 87/11 88/21 89/20 90/18 91/12

**I**

**issues... [7]** 91/14 97/16 102/13 102/14 103/21 104/5 104/9
**it's July 15th [1]** 88/11
**item [3]** 31/17 53/21 73/19
**items [4]** 31/3 31/8 58/24 59/4
**iterations [1]** 29/9
**its [2]** 69/16 91/17
**itself [3]** 44/19 47/23 62/10

**J**

**January [12]** 29/20 29/20 31/24 32/6 32/14 32/20 34/10 34/23 35/4 41/10 51/8 93/25
**January 1 [6]** 32/14 32/20 34/10 34/23 35/4 41/10
**January 2023 [1]** 32/6
**jerry [1]** 23/2
**jerry-rigged [1]** 23/2
**JERSEY [23]** 1/1 1/13 16/12 16/16 17/7 17/19 17/24 41/7 45/8 45/13 55/14 59/6 60/13 60/14 68/13 89/9 89/10 91/16 91/18 91/24 91/24 91/25 92/8
**John [16]** 1/21 1/21 44/1 44/17 45/3 52/8 52/10 52/12 52/25 53/22 60/18 61/3 61/22 62/23 81/14 108/13
**joinder [4]** 50/16 53/10 53/18 60/3
**joint [3]** 68/14 68/18 95/7
**JOSEPH [1]** 16/8
**JOY [1]** 12/9
**judge [34]** 1/16 19/2 32/20 33/20 35/11 37/12 38/12 38/16 39/2 39/15 40/5 40/22 42/7 48/5 61/25 69/12 71/8 74/1 76/18 77/15 79/24 81/24 85/1 85/3 95/16 95/22 96/5 97/4 97/7 98/9 100/19 101/3 101/13 101/21
**judicial [4]** 18/7 38/2 91/5 100/19
**July [14]** 88/9 88/11 88/13 88/15 88/18 95/10 95/13 95/16 95/17 95/19 95/24 96/4 96/6 96/8
**July 15th [1]** 88/13
**July 31st [4]** 88/15 88/18 96/6 96/8
**June [16]** 1/14 31/2 86/25 87/1 87/13 87/14 87/16 88/3 88/4 89/18 90/1 90/10 94/18 95/3 95/9 108/13
**June 10th [3]** 87/1 89/18 90/1
**June 14th as [1]** 90/10
**June 2nd [1]** 31/2
**jurisdiction [47]** 20/9 20/20 30/12 33/21 34/15 37/17 37/21 39/7 39/11 40/9 40/14 40/15 42/8 42/16 42/20 43/14 43/18 44/22 46/10 46/13 46/22 51/21 53/19 54/8 54/21 55/8 55/10 55/15 56/25 57/18 57/25 59/17 60/7 60/9 64/1 74/16 78/15 81/6 81/7 82/15 82/20 82/21 82/24 83/13 92/21 97/16 100/6
**just [81]** 20/15 21/15 21/19 25/10 25/14 26/16 29/2 29/18 30/6 30/12 32/15 32/24 34/10 36/10 37/13 39/13 40/2 40/6 40/7 40/20 42/5 44/6 48/3 50/2 50/19 51/17 52/1 52/6 52/10 53/4 54/21 54/24 55/3 55/4 55/22 55/23 56/13 57/17 57/22 59/7 61/4 62/19 65/4 66/9 66/15 69/6 69/20 71/7 73/9 73/24 75/3 75/7 77/1 77/4 77/25 79/20 80/10 86/13 86/18 89/19 90/10 91/2 93/21 95/6 95/22 96/4 96/8 97/17 102/7 102/10 102/17 102/22 104/6 104/22 105/4 105/9 105/16 106/4 106/15 106/16 107/16

**K**

**keep [3]** 50/1 50/1 51/16
**keeps [1]** 62/3
**KIMREY [4]** 16/20 27/3 52/2 86/12
**kind [11]** 28/8 40/12 50/25 54/10 79/25 84/7 84/12 85/8 93/7 93/9 106/13
**kinds [4]** 26/12 37/16 59/20 91/20
**KNIGHT [6]** 9/9 17/8 17/8 38/10 99/20 100/14
**know [102]** 20/8 20/23 21/17 22/20 23/21 25/10 25/22 25/23 27/16 29/6 29/16 29/19 29/22 30/3 30/6 30/13 30/20 35/13 36/6 36/10 36/12 39/18 39/21 40/7 41/12 41/18 41/20 41/23 41/24 42/3 42/12 42/13 44/6 45/9 46/18 47/21 47/22 49/23 52/20 55/13 55/16 55/21 56/3 56/6 56/18 57/4 59/4 59/9 59/16 59/18 60/1 60/2 62/11 63/10 63/13 64/21 64/21 65/3 66/23 66/24 67/1 67/15 67/18 68/19 72/21 78/19 80/1 80/5 80/6 80/24 81/8 81/19 84/10 84/11 84/16 84/17 84/22 85/10 85/16 86/7 87/17 87/21 87/24 88/20 89/20 90/17 91/15 91/22 92/10 92/11 92/17 92/17 92/18 93/5 93/23 94/10 95/22 96/13 98/25 101/20 105/15 107/11
**known [1]** 89/24
**Kratovil [1]** 89/10
**Kurz [3]** 1/21 1/21 108/13

**L**

**L.L.C [1]** 15/14
**L.P [3]** 4/18 17/15 17/15
**LABELS [1]** 7/9
**laboring [1]** 94/24
**LABS [1]** 7/4
**Largely [1]** 89/14
**Larry [1]** 18/6
**LaSalle [1]** 16/21
**last [20]** 20/17 27/22 28/8 31/15 31/21 33/3 33/5 34/14 34/16 34/19 34/21 34/23 39/16 70/11 71/1 87/24 102/11 102/15 106/11 107/6
**late [2]** 29/20 33/6
**later [4]** 24/21 39/12 58/7 105/4
**latest [1]** 33/17
**LATHAM [1]** 17/12
**law [47]** 16/11 18/7 37/7 38/1 41/6 42/14 42/14 44/8 45/10 45/14 45/16 45/22 46/4 46/24 48/5 48/10 48/17 48/20 51/6 59/12 59/19 59/20 59/24 60/4 60/4 60/14 60/17 61/1 63/12 64/22 65/16 67/5 67/5 67/9 67/15 68/5 69/18 69/20 69/23 74/23 76/23 78/18 91/1 91/16 91/25 100/20 101/7
**lawsuit [1]** 23/2
**lawsuits [4]** 51/12 79/5 79/21 80/9
**lawyers [8]** 28/9 70/23 71/9 84/11 84/20 91/17 105/15 106/9
**lay [1]** 83/4
**least [4]** 31/22 72/9 90/2 107/1
**leave [8]** 76/25 87/8 87/10 88/17 90/5 90/7 90/8 90/14
**Lee [1]** 95/23
**leeway [1]** 96/5
**legal [9]** 45/9 80/19 81/2 81/8 81/9 81/14 81/22 82/22 83/9
**legislation [1]** 59/21
**legislator [1]** 59/12
**legislators [1]** 60/13
**Legislature [9]** 45/20 48/4 48/16 49/10 59/6 59/19 59/22 60/13 91/6
**Legislature's [1]** 91/1
**legitimate [2]** 34/4 53/23
**let [10]** 25/20 26/21 43/2 47/1 48/17 55/6 55/22 75/7 94/7 107/11
**let's [20]** 31/5 32/15 34/9 39/10 40/20 40/24 48/18 48/18 49/1 49/11 49/11 57/21 65/3 73/22 84/16 86/3 94/9 96/7 96/8 107/10
**letter [26]** 22/4 22/5 22/25 23/12 24/15 27/22 27/23 28/1 28/4 28/21 31/2 31/10 31/11 41/3 44/19 61/2 64/17 66/21 68/18 68/21 69/17 74/9 74/13 74/21 76/2 92/11
**letters [9]** 40/8 63/5 64/15 64/17 66/16 67/5 67/10 67/10 70/5
**LEWIN [1]** 17/18
**LEXISNEXIS [1]** 13/13
**LIFETIME [3]** 14/18 17/11 104/19
**light [2]** 86/13 87/10
**LIGHTBOX [3]** 4/18 17/15 17/15
**like [32]** 20/4 23/18 25/2 25/7 29/17 35/13 45/13 50/2 59/9 68/19 69/1 70/24 76/21 76/21 78/1 78/7 79/20 80/25 84/12 84/15 85/14 86/7 87/5 87/6 87/8 87/9 90/2 95/7 96/15 96/22 97/17 107/7
**likelihood [1]** 54/6
**limit [4]** 47/23 57/20 102/19 104/13
**limitation [1]** 106/7
**limited [9]** 39/16 46/16 57/17 67/14 76/9 81/7 82/21 85/13 105/21
**limiting [1]** 30/12
**limits [3]** 102/9 102/25 103/19
**line [1]** 54/17
**lines [2]** 30/21 89/14
**list [28]** 21/8 23/21 26/4 26/4 27/15 36/17 36/25 37/6 38/14 39/1 52/10 56/5 58/17 58/20 58/21 58/22 77/5 86/8 86/9 92/13 97/19 98/19 99/8 99/19 99/21 99/21 100/8 100/14
**listed [2]** 18/8 74/14
**listen [1]** 49/1
**listing [1]** 58/16
**lists [8]** 7/9 35/18 36/15 39/4 98/10 98/22 99/4 99/10
**litigating [1]** 89/9
**litigation [8]** 26/11 52/24 54/4 78/13 80/20 84/20 84/23 85/6
**litigations [4]** 41/4 67/6 78/3 78/13
**little [7]** 21/22 32/23 37/16 47/24 54/10 75/4 87/22
**live [1]** 90/2
**LLC [38]** 2/9 2/13 2/18 3/23 4/4 4/23 5/4 5/9 6/4 6/9 6/18 6/22 7/14 9/9 10/4 10/9 11/9 11/13 11/18 12/4 12/14 13/9 13/14 13/18 14/4 14/18 16/17 16/17 16/18 16/18 17/4 17/4 17/4 17/8 17/16 17/16 17/20 17/20
**LLP [11]** 16/2 16/5 16/11 16/14 17/2 17/5 17/9 17/12 17/18 17/22 18/2
**lobbied [1]** 59/19
**located [1]** 55/14
**location [1]** 106/25
**log [28]** 24/13 25/19 27/14 29/2 29/14 29/24 30/5 30/11 83/24 84/10 84/11 84/16 84/17 85/8 85/12 85/18 86/1 86/15 86/17 91/14 91/21 92/4 92/10 92/12 92/24 93/14 93/19 94/2
**logs [1]** 32/24
**long [18]** 35/8 44/1 44/17 45/3 52/7 52/10 52/12 52/25 53/22 58/12 60/18 61/2 61/22 62/23 74/17 81/14 82/10 96/4
**look [12]** 22/23 33/18 36/7 44/2 44/8 46/17 48/23 62/11 69/18 71/15 90/6 100/7
**looked [2]** 33/10 45/22
**looking [1]** 22/10
**lost [1]** 44/1
**lot [3]** 29/21 63/20 84/20
**LOVELLS [2]** 17/9 104/18
**LTD [1]** 12/18
**LUSHA [1]** 8/13

**M**

**ma'am [1]** 101/25
**MacStravic [1]** 18/6
**made [10]** 23/18 26/2 36/19 38/20 40/17 51/5 70/6 70/11 73/16 84/7
**Madison [1]** 17/10
**main [3]** 86/25 90/19 103/16
**maintain [1]** 40/15
**maintenance [1]** 47/22
**make [15]** 23/22 25/3 28/22 35/3 39/21 48/18 56/22 63/17 72/7 91/3 95/13 96/17 97/22 106/15 107/16
**makes [2]** 56/6 74/20

**M**
**Maldonado [2]** 72/21 73/4
**management [4]** 6/22 13/13 17/20 70/12
**manner [1]** 51/16
**many [7]** 23/11 70/22 70/22 88/25 89/3 105/2 106/24
**MAO [1]** 16/5
**Maria [1]** 18/7
**MARK [1]** 16/5
**match [1]** 90/3
**materials [1]** 28/22
**matter [42]** 20/9 23/14 30/12 33/21 34/15 37/17 37/21 39/7 39/9 39/10 40/13 42/8 42/16 42/19 43/14 43/17 46/22 51/20 54/21 55/7 55/9 55/15 56/25 57/14 57/18 57/25 59/17 60/6 60/9 64/1 74/15 78/15 81/5 81/7 82/15 82/20 82/21 82/24 83/13 92/21 97/16 108/10
**matter-jurisdiction [1]** 34/15
**MAX [1]** 6/4
**may [29]** 19/5 23/19 33/8 36/15 36/19 39/13 43/16 43/16 45/9 51/24 52/13 53/5 55/2 55/19 56/11 58/10 60/3 63/11 65/21 66/21 72/13 72/21 73/6 74/6 90/6 91/16 93/17 94/6 101/16
**maybe [11]** 27/8 63/11 66/24 73/24 74/9 87/21 95/18 105/19 106/23 107/1 107/5
**McCARTER [1]** 17/5
**McGEE [3]** 16/8 71/21 85/1
**McGee's [2]** 65/11 65/15
**me [29]** 23/12 23/14 23/20 24/4 25/20 26/21 28/8 33/10 38/21 42/3 43/2 47/1 55/1 55/6 55/20 56/11 58/20 59/2 60/22 66/9 66/22 68/11 68/12 75/7 75/8 88/2 94/4 103/14 107/11
**mean [32]** 21/1 24/4 24/24 26/8 26/11 45/24 46/17 47/12 47/23 48/2 48/15 48/18 50/8 55/11 57/19 58/17 59/11 67/2 74/20 74/25 75/11 78/17 80/9 81/19 85/22 88/16 89/16 89/20 90/7 91/18 94/20 97/25
**means [1]** 85/16
**meant [1]** 106/2
**measures [1]** 86/18
**mechanical [1]** 1/23
**meet [6]** 28/4 93/14 94/4 99/18 101/8 106/6
**MELISSA [2]** 10/13 16/15
**member [2]** 38/2 100/21
**members [3]** 32/8 68/25 79/16
**membership [1]** 33/15
**mention [1]** 56/8
**mentioned [4]** 37/2 38/13 39/15 55/22
**mentioning [2]** 57/25 98/24
**MERGES.COM [1]** 12/23
**merits [8]** 38/22 46/23 54/22 90/11 99/19 100/2 100/23 101/17
**mid [2]** 29/20 62/14
**mid-2023 [1]** 62/14
**mid-January [1]** 29/20
**middle [1]** 93/10
**might [6]** 30/20 56/17 62/6 81/4 89/2 94/15
**million [1]** 46/20
**mindful [1]** 97/15
**mine [3]** 63/1 78/5 79/3
**minimum [1]** 63/5
**minute [4]** 18/8 50/11 65/5 75/5
**Mitchell [1]** 1/12
**modification [2]** 75/16 75/19
**moment [2]** 35/20 102/8
**Monday [1]** 1/14
**monetary [1]** 62/7
**monetize [1]** 49/17
**Montgomery [1]** 16/6
**month [1]** 93/19
**months [5]** 30/21 98/20 99/5 99/13 100/23
**moot [2]** 34/10 58/10
**more [10]** 23/7 27/9 36/2 36/4 85/13 87/22 102/11 102/22 104/10 104/23
**MORGAN [6]** 16/8 16/8 71/21 71/22 85/1 85/2
**morning [14]** 19/5 19/6 19/7 19/8 19/9 19/22 19/23 20/12 20/14 39/12 102/1 102/2 104/16 104/17
**morning's [1]** 19/11
**most [5]** 21/13 29/19 41/21 51/8 55/23
**motion [11]** 23/7 46/11 46/11 57/2 57/2 57/4 57/4 86/22 87/8 90/5 90/13
**motions [6]** 19/12 19/18 87/10 87/22 88/17 89/17
**motive [4]** 21/14 53/1 53/2 60/8
**motives [1]** 52/7
**move [5]** 40/24 57/21 86/17 100/25 103/18
**moved [4]** 102/14 102/14 103/4 103/8
**moving [1]** 77/4
**Mr [6]** 36/13 38/4 50/7 59/15 85/14 107/13
**Mr. [51]** 19/15 19/21 20/11 21/21 25/20 27/11 28/10 28/21 28/21 30/18 30/25 31/2 32/16 32/18 34/18 35/14 35/21 35/22 36/14 36/19 38/13 38/18 41/19 42/24 55/21 56/8 58/6 62/22 65/11 65/15 66/10 67/4 70/21 71/17 71/22 72/20 72/21 73/4 73/19 74/8 75/9 75/24 76/3 79/25 92/6 93/24 94/12 94/23 95/3 95/23 106/23
**Mr. Christie [3]** 35/14 35/22 58/6
**Mr. Lee [1]** 95/23
**Mr. Maldonado [2]** 72/21 73/4
**Mr. McGee's [2]** 65/11 65/15
**Mr. Parikh [5]** 32/18 38/18 71/17 71/22 94/12
**Mr. Parikh's [3]** 28/21 31/2 42/24
**Mr. Shaw [7]** 20/11 25/20 32/16 55/21 56/8 75/9 75/24
**Mr. Stio [26]** 19/15 19/21 21/21 27/11 28/10 28/21 30/18 30/25 34/18 35/21 36/14 38/13 41/19 62/22 66/10 70/21 72/20 73/19 74/8 76/3 79/25 92/6 93/24 94/23 95/3 106/23
**Mr. Stio's [2]** 36/19 67/4
**much [3]** 96/9 107/9 108/1
**Mulberry [1]** 17/7
**multiple [3]** 29/8 71/4 95/24
**must [1]** 89/24
**my [25]** 19/24 20/6 27/25 33/9 36/5 43/10 43/22 43/22 44/18 56/13 58/22 65/11 84/6 84/12 92/9 97/24 99/15 101/3 102/3 102/13 103/18 104/1 104/4 105/1 105/5
**MYHERITAGE [1]** 12/18
**myself [1]** 95/23
**N**
**name [3]** 37/22 38/8 102/3
**Named [3]** 72/9 72/17 73/12
**names [14]** 36/3 36/4 36/6 36/6 36/16 38/16 49/19 69/19 69/20 69/21 97/20 99/1 99/3 100/14
**narrow [9]** 22/1 22/6 32/4 40/13 50/1 61/17 61/20 86/8 86/16
**narrowed [1]** 92/22
**narrower [1]** 75/10
**narrowing [1]** 42/19
**narrowly [1]** 53/10
**nature [2]** 83/15 104/23
**necessarily [4]** 26/6 55/2 56/22 66/24
**necessary [3]** 37/20 47/9 75/16
**need [19]** 20/19 21/6 22/17 22/20 27/16 28/20 41/1 42/2 43/10 66/7 70/16 77/25 83/16 84/23 95/3 97/5 97/11 103/22 107/21
**Network [1]** 98/6
**never [4]** 85/7 85/21 91/7 100/24
**new [30]** 1/1 1/13 16/3 16/12 16/16 17/3 17/3 17/7 17/11 17/11 17/19 17/24 32/6 41/7 45/7 45/12 55/14 59/6 60/13 60/13 68/13 89/9 89/10 91/16 91/18 91/24 91/24 91/25 92/7 94/15
**Newark [2]** 17/7 17/24
**next [23]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 16/24 17/25 53/21 73/19 78/24 80/18 83/18 89/17 107/24
**night [1]** 27/22
**nightmare [1]** 105/15
**nine [1]** 70/5
**njd.uscourts.gov [1]** 1/21
**no [42]** 22/23 24/17 25/5 29/11 31/1 31/7 31/17 32/20 40/18 43/19 47/20 48/15 48/23 50/11 56/2 56/20 57/6 57/23 64/3 65/16 65/18 65/18 69/25 70/1 70/2 74/17 75/16 76/17 77/9 79/19 80/15 80/25 83/9 84/2 84/17 89/19 89/21 95/1 98/2 102/22 106/6 107/14
**Nobody [1]** 105/17
**Nobody's [1]** 71/4
**noncompliance [4]** 49/23 61/13 62/15 84/21
**nondisclosure [4]** 22/16 32/5 49/20 70/17
**none [3]** 37/16 45/11 57/8
**nonprofits [1]** 89/22
**normal [1]** 30/8
**North [3]** 16/21 17/13 18/3
**not [130]**
**noted [1]** 28/4
**nothing [5]** 33/25 43/17 48/18 55/15 107/23
**notice [2]** 21/25 40/8
**notices [4]** 30/3 43/11 55/17 104/25
**notion [1]** 81/8
**now [36]** 22/22 23/1 23/11 26/12 28/20 31/5 38/24 40/24 42/3 43/9 45/9 47/5 53/2 58/15 60/2 63/24 64/11 65/17 65/20 66/13 67/25 68/7 70/13 71/13 73/22 74/7 79/1 89/19 89/25 94/9 95/23 96/20 97/24 99/8 100/16 100/23
**number [126]**
**number 1 [1]** 34/24
**numbered [1]** 76/3
**NUWBER [1]** 13/23
**O**
**oar [1]** 94/24
**object [2]** 31/9 80/6
**objecting [1]** 80/16
**objection [7]** 31/1 31/4 31/7 31/8 62/21 78/6 102/21
**objectionable [1]** 80/22
**objections [1]** 19/18
**objects [1]** 23/9
**obligation [1]** 24/11
**obligations [4]** 81/9 83/6 83/7 83/9
**obtain [1]** 44/25
**obtained [4]** 76/8 76/9 76/10 76/10
**obtaining [1]** 74/24
**obvious [1]** 91/23
**obviously [15]** 26/11 29/21 37/12 42/5 45/22 67/9 69/14 82/23 89/20 92/7 94/17 94/21 106/20 107/11 107/14
**occasions [1]** 22/16
**occurred [2]** 22/10 51/9
**occurring [1]** 22/21
**occurs [1]** 33/16
**off [3]** 21/22 23/3 86/17
**offense [1]** 70/21
**offered [2]** 71/4 99/18
**Office [1]** 59/25
**officer [15]** 36/19 38/2 43/9 45/15 45/17 45/23 48/4 48/5 48/10 48/18 48/21 52/17 81/20 100/20 100/20
**officers [9]** 22/15 42/13 50/17 51/2 54/25 67/6 70/10 70/25 78/18
**Official [2]** 1/21 108/7
**oh [7]** 31/19 41/23 54/24 63/1 79/2 87/17 94/21
**okay [36]** 23/5 30/23 30/24 33/7 35/10 37/5 41/7 49/21 50/6 56/6 65/25 67/7 68/7 70/3 71/1 73/25 74/19 75/18 75/21 77/16 77/18 78/6 84/9 85/2 86/2 86/5 90/22 95/9 96/7 96/17 98/21 99/6 101/13 102/24 104/3 107/9
**once [1]** 84/19

**O**

**one [59]** 22/2 23/6 28/3 28/9 29/2 30/6 30/20 33/17 33/20 35/11 35/23 36/21 39/20 40/6 40/8 42/4 43/6 46/4 52/7 52/12 52/14 53/4 54/17 54/18 57/10 57/22 59/4 62/2 62/12 63/11 65/21 69/3 70/12 72/7 72/14 76/14 77/4 77/24 78/2 78/24 79/19 80/13 81/1 82/4 83/18 85/8 85/11 86/20 88/21 91/12 91/14 93/18 100/9 103/22 103/23 104/6 104/22 104/22 106/15
**ones [5]** 51/2 59/2 77/20 77/21 77/23
**only [11]** 32/2 50/14 51/4 52/7 55/9 61/7 64/11 70/12 101/13 102/14 103/21
**open [2]** 19/1 77/11
**opportunity [3]** 102/12 102/22 105/10
**opposed [3]** 51/4 93/7 106/21
**opposes [1]** 28/9
**opposing [1]** 92/24
**opposition [9]** 28/5 46/11 52/5 53/9 54/15 54/24 88/8 88/9 96/10
**oppositions [1]** 96/11
**opt [1]** 27/23
**ORACLE [4]** 5/18 17/15 17/15 17/16
**Orange [1]** 16/12
**order [27]** 19/17 20/5 23/15 23/23 24/11 24/20 26/22 27/7 27/8 28/16 37/6 74/18 74/19 83/12 83/21 86/6 88/14 90/21 92/15 93/12 96/24 97/8 97/9 98/13 100/16 107/22 107/24
**ordered [3]** 35/25 85/19 92/13
**orders [1]** 85/21
**other [45]** 20/8 23/18 23/20 24/19 36/25 39/11 42/14 45/3 45/11 45/16 50/21 51/5 51/24 55/8 56/23 57/10 57/18 59/18 59/20 63/14 67/2 67/11 68/4 69/21 70/1 71/19 72/14 72/22 73/4 81/3 85/5 86/18 90/4 91/5 95/24 96/3 96/23 97/16 99/20 101/17 103/17 104/2 104/7 105/2 107/1
**others [3]** 37/15 44/18 107/17
**otherwise [1]** 94/8
**ought [2]** 26/22 74/9
**our [43]** 21/8 22/5 22/8 22/8 26/4 26/4 27/19 30/17 33/8 34/16 37/2 39/15 39/18 39/25 40/8 42/12 48/18 49/11 50/2 56/5 58/13 60/7 61/4 63/8 63/12 64/9 67/4 68/4 71/6 75/1 75/3 75/3 75/22 75/23 76/6 77/5 83/9 85/15 88/23 92/21 99/2 101/18 103/19
**our perception [1]** 39/25
**ourselves [1]** 106/6
**out [30]** 24/2 24/21 32/5 32/7 35/18 36/3 49/20 52/10 52/16 57/17 63/16 66/21 67/5 76/7 76/25 79/18 79/20 83/4 85/14 93/5 93/6 93/14 95/25 96/24 97/16 105/11 105/18 106/9 106/24 106/25
**outside [4]** 14/9 62/4 81/5 103/1
**over [9]** 20/3 20/4 25/19 32/1 60/16 68/20 79/19 85/9 94/14
**overall [2]** 71/3 87/23
**overburden [1]** 20/15
**overlap [1]** 54/10
**own [1]** 102/17

**P**

**P.C [1]** 16/20
**page [8]** 16/24 17/25 31/11 84/11 102/19 102/25 103/19 104/12
**pages [15]** 1/19 2/25 3/25 4/25 5/25 6/25 7/25 8/25 9/25 10/25 11/25 12/25 13/25 14/25 102/16
**parameters [2]** 30/2 56/15
**PARENT [2]** 4/18 17/15
**PARIKH [11]** 16/11 29/1 32/18 36/13 38/18 50/7 59/15 71/17 71/22 85/14 94/12
**Parikh's [3]** 28/21 31/2 42/24
**PARKER [1]** 18/2
**parol [3]** 44/16 61/25 62/11
**parse [2]** 93/6 97/16
**parsing [1]** 93/5
**part [9]** 42/16 45/23 45/24 48/9 55/16 57/10 61/6 90/15 103/16
**participate [5]** 105/10 105/10 105/12 106/5 107/3
**participated [1]** 28/3
**participating [1]** 107/17
**participation [2]** 78/2 107/15
**particular [5]** 30/6 36/17 82/17 91/19 101/1
**particularly [1]** 24/5
**parties [9]** 21/10 24/25 42/24 44/13 44/14 60/3 62/2 87/11 96/15
**parties' [1]** 102/9
**party [19]** 20/6 22/7 22/12 41/5 43/3 43/24 44/7 44/22 45/2 45/5 51/15 53/19 57/7 60/25 62/9 69/8 83/5 86/20 92/24
**passed [1]** 59/23
**past [1]** 85/6
**Pat [1]** 22/25
**path [2]** 25/9 82/11
**pathway [1]** 41/21
**pay [1]** 81/22
**payment [2]** 80/19 81/14
**PBA [22]** 21/12 21/12 22/21 22/22 32/8 41/4 43/6 44/25 46/8 47/15 47/21 50/25 51/20 51/21 55/9 55/13 67/11 68/19 68/21 68/24 69/3 79/16
**PBA's [1]** 68/20
**Pearl [1]** 16/3
**PEM [1]** 16/11
**people [15]** 2/18 7/4 17/4 22/17 37/2 39/1 43/8 60/24 63/10 66/22 68/23 80/2 87/7 97/21 98/15
**PEOPLECONNECT [3]** 8/22 17/16 17/16
**PEPPER [1]** 16/14
**percentage [2]** 34/3 52/17
**perception [3]** 39/18 39/25 99/3
**perhaps [2]** 29/15 90/9
**peril [1]** 39/2
**period [18]** 23/25 26/1 29/25 31/14 31/14 32/12 32/13 34/13 35/1 35/3 35/7 35/9 39/19 41/9 41/13 62/15 84/13 93/23
**permissible [1]** 82/20
**permission [1]** 105/12
**permit [4]** 23/19 45/13 78/22 80/17
**permits [1]** 45/8
**person [8]** 36/21 37/22 38/1 43/21 47/16 76/22 100/4 100/19
**personal [3]** 40/9 40/14 100/5
**personnel [1]** 91/25
**persons [16]** 36/8 38/14 38/20 38/25 39/4 39/5 91/5 97/19 98/3 98/10 98/19 99/9 99/19 99/22 105/1 105/7
**perspective [3]** 55/21 60/7 101/3
**petition [2]** 89/10 90/12
**phone [2]** 36/20 36/20
**phrased [1]** 54/11
**pitch [1]** 23/23
**place [11]** 20/7 22/17 33/1 37/14 46/4 62/14 62/15 62/16 62/17 85/17 106/12
**placed [1]** 106/7
**plaintiff [13]** 23/8 23/15 23/22 26/23 28/17 65/14 65/17 65/22 72/21 72/22 73/4 73/12 98/24
**plaintiffs [101]** 1/4 1/8 2/3 2/7 2/12 2/16 2/21 3/3 3/8 3/12 3/17 3/22 4/3 4/8 4/12 4/17 4/21 5/3 5/8 5/12 5/17 5/22 6/3 6/7 6/12 6/16 6/21 7/3 7/8 7/12 7/17 7/21 8/3 8/7 8/12 8/16 8/21 9/3 9/7 9/12 9/17 9/21 10/3 10/7 10/12 10/16 10/21 11/3 11/7 11/12 11/16 11/21 12/3 12/7 12/12 12/17 12/21 13/3 13/7 13/12 13/17 13/21 14/3 14/7 14/12 14/16 14/21 15/3 15/8 15/12 15/17 15/21 16/4 16/7 16/10 16/13 20/13 22/2 23/24 29/2 30/1 44/4 46/25 49/8 58/11 60/12 61/9 63/9 63/11 63/12 63/14 64/5 64/19 65/6 65/7 68/1 68/6 70/2 72/10 72/17 85/2
**plaintiffs' [7]** 27/14 74/8 74/13 85/7 86/13 97/17 106/25
**planning [1]** 39/20
**plate [1]** 101/18
**platform [3]** 42/12 78/19 98/7
**Plaza [1]** 17/23
**please [2]** 38/8 104/22
**plus [2]** 29/22 37/13
**POE [1]** 18/2
**point [20]** 19/20 26/18 29/20 34/10 39/19 40/2 40/6 50/5 51/25 54/20 58/10 79/23 83/1 90/25 91/17 92/5 101/19 103/20 105/4 105/23
**points [3]** 33/20 46/3 104/22
**police [12]** 22/15 36/18 42/13 43/9 47/15 48/4 50/17 54/25 67/11 69/1 69/3 81/20
**policies [2]** 33/13 44/5
**policy [1]** 45/12
**portion [1]** 48/10
**position [8]** 23/21 27/19 38/25 39/15 56/22 105/1 105/2 105/5
**positions [1]** 28/10
**possible [1]** 45/14
**possibly [4]** 89/4 89/12 89/12 89/13
**potential [5]** 79/5 80/9 87/22 102/18 106/19
**practiced [1]** 70/21
**PRECISELY [2]** 13/18 17/24
**predates [1]** 84/16
**preexisting [1]** 53/23
**prefer [1]** 96/4
**preference [1]** 20/6
**prejudice [1]** 54/7
**prepare [1]** 90/19
**prepared [3]** 23/13 24/7 80/2
**prerequisite [1]** 53/7
**presence [1]** 53/22
**present [4]** 18/5 32/14 32/22 34/11
**Press [1]** 89/13
**pressing [1]** 39/12
**presume [1]** 35/15
**pretty [6]** 19/19 24/4 40/17 45/17 80/3 80/3
**prevails [1]** 45/23
**prevent [1]** 21/24
**previously [1]** 83/25
**PRICE [1]** 16/20
**Princeton [2]** 16/16 17/19
**prior [5]** 22/16 30/3 37/2 74/23 98/13
**privacy [83]** 1/3 1/7 2/2 2/6 2/11 2/15 2/20 3/2 3/7 3/11 3/16 3/21 4/2 4/7 4/11 4/16 4/20 5/2 5/7 5/11 5/16 5/21 6/2 6/6 6/11 6/15 6/20 7/2 7/7 7/11 7/16 7/20 8/2 8/6 8/11 8/15 8/20 9/2 9/6 9/11 9/16 9/20 10/2 10/6 10/11 10/15 10/20 11/2 11/6 11/11 11/15 11/20 12/2 12/6 12/11 12/16 12/20 13/2 13/6 13/11 13/16 13/20 14/2 14/6 14/11 14/15 14/20 15/2 15/7 15/11 15/16 15/20 23/1 33/12 42/14 45/19 49/14 49/16 49/17 59/21 91/1 91/7 91/12
**privacy-related [1]** 59/21
**private [1]** 49/17
**privilege [44]** 20/3 20/4 24/13 24/14 25/9 25/12 25/18 25/19 25/19 26/2 27/13 27/17 29/2 29/12 29/14 29/24 30/5 30/11 32/24 83/24 84/4 84/10 84/15 84/17 85/8 85/12 85/18 85/20 86/1 86/15 86/16 86/17 91/14 91/21 92/4 92/9 92/12 92/24 93/12 93/13 93/14 93/19 94/1 94/2
**privileged [8]** 25/14 25/16 26/5 26/12 26/17 27/16 85/22 85/23
**probably [1]** 56/18
**probe [1]** 47/9
**problem [9]** 32/20 64/14 65/21 74/17 77/9 83/9 98/9 107/11 107/13

**P**

**procedure [3]** 45/21 85/17 105/11
**proceedings [4]** 1/23 19/1 108/6 108/10
**process [8]** 19/24 20/7 21/16 30/15 51/23 60/2 79/21 91/18
**produce [19]** 23/16 23/22 23/24 24/17 24/20 25/6 25/7 26/23 29/14 31/22 35/25 38/21 60/5 60/12 71/4 85/7 85/19 85/22 92/13
**produced [14]** 1/23 27/12 28/17 28/23 35/24 74/14 74/18 80/7 82/7 83/12 85/24 92/17 94/10 95/2
**producing [4]** 61/21 64/15 85/12 94/11
**product [1]** 55/18
**production [9]** 23/8 30/9 31/1 31/9 54/15 70/4 77/24 93/23 94/23
**PRODUCTS [1]** 6/9
**progeny [1]** 44/2
**properly [1]** 50/23
**PROPERTYRADAR [1]** 15/9
**proportional [6]** 46/18 47/4 51/17 55/20 60/11 93/21
**proportionality [3]** 30/1 30/7 54/20
**propose [7]** 74/22 75/3 93/9 94/11 95/5 95/6 106/3
**proposed [6]** 22/23 30/16 35/17 54/15 56/5 90/14
**proposing [1]** 88/14
**prosecutor [3]** 38/2 48/5 100/20
**protect [1]** 45/18
**protected [1]** 23/17
**provide [11]** 32/21 35/17 37/25 52/21 56/5 76/23 84/9 84/17 92/16 94/2 97/18
**provided [6]** 27/14 37/6 71/22 97/19 98/10 99/20
**provides [1]** 20/5
**providing [1]** 29/8
**proving [1]** 20/22
**provision [5]** 33/11 59/7 59/10 59/12 68/13
**provisions [1]** 60/14
**public [1]** 45/12
**pull [1]** 76/5
**purported [1]** 66/11
**purportedly [1]** 76/8
**purports [1]** 76/23
**purpose [7]** 20/23 44/22 48/2 48/20 48/24 49/2 49/4
**purposes [3]** 53/9 53/19 54/8
**pursuant [1]** 98/12
**pursue [2]** 46/9 62/6
**put [12]** 19/17 21/4 22/5 22/11 30/2 34/16 37/14 37/22 61/8 91/21 92/15 104/1
**putting [3]** 30/4 50/12 93/19

**Q**

**quality [1]** 70/24
**QUANTARIUM [1]** 4/4
**QUARRY [1]** 4/23
**quarters [1]** 31/17
**query [1]** 52/6
**question [15]** 19/15 24/9 25/25 42/7 45/10 56/1 57/22 61/7 63/6 63/23 64/22 66/5 67/4 69/13 79/15
**questioning [1]** 105/20
**questions [16]** 21/14 41/22 50/3 51/17 51/18 51/22 55/24 65/1 74/15 77/10 77/25 78/1 80/6 81/3 83/8 83/13
**quick [1]** 38/12
**quickly [2]** 39/13 77/5
**quite [2]** 47/5 105/15

**R**

**raise [6]** 26/18 35/14 35/19 102/7 102/10 104/5
**raised [5]** 19/14 21/11 40/7 56/4 82/18
**Raj [1]** 29/1
**RAJIV [1]** 16/11
**rather [1]** 19/17
**Raymond [1]** 17/23
**RDR [1]** 108/13
**RDR-RMR-CRR-CRC [1]** 108/13
**RE [1]** 6/4
**RE/MAX [1]** 6/4
**reach [1]** 51/25
**read [3]** 75/25 76/7 79/12
**ready [1]** 29/22
**real [17]** 2/22 22/7 22/12 41/5 42/23 43/3 43/24 44/7 44/22 45/1 45/5 51/15 53/19 57/7 60/3 60/25 83/5
**realized [1]** 71/11
**really [11]** 23/4 30/22 32/9 37/20 47/9 64/25 66/3 77/4 78/21 84/12 106/6
**Realty [1]** 17/14
**reason [6]** 36/17 36/24 76/1 79/9 92/15 105/22
**reasonable [1]** 21/5
**reasons [5]** 32/23 39/19 49/14 49/16 54/12
**REATH [1]** 17/18
**receive [1]** 24/3
**received [5]** 36/6 38/13 38/15 98/23 101/4
**receiving [1]** 37/15
**recently [2]** 33/7 104/4
**Recess [1]** 74/4
**recognize [2]** 22/3 38/17
**recognized [1]** 56/17
**record [10]** 23/17 23/18 23/18 38/8 73/18 82/11 91/3 105/5 106/5 108/10
**recorded [1]** 1/23
**records [3]** 25/4 93/11 93/13
**recover [1]** 48/17
**recovery [10]** 34/3 45/14 45/24 45/24 48/10 48/11 48/14 48/21 52/13 52/18
**red [3]** 5/23 16/18 55/1
**redact [3]** 38/19 49/19 100/22
**redacted [3]** 37/24 97/25 100/16
**redaction [1]** 97/18
**reduce [1]** 38/19
**reference [2]** 57/18 58/17
**referenced [1]** 59/9
**referring [1]** 62/3
**reflecting [1]** 66/10
**regard [2]** 59/10 98/25
**regarding [1]** 84/7
**registration [1]** 53/8
**regularly [1]** 100/4
**relate [3]** 41/2 55/7 93/18
**related [26]** 30/22 42/8 44/3 46/12 47/14 47/18 47/25 51/15 59/5 59/21 60/6 60/12 60/24 61/22 62/24 63/3 66/14 67/6 79/21 80/6 81/3 82/7 82/24 86/21 89/15 93/6
**relates [18]** 42/16 51/16 60/2 64/1 64/22 64/23 64/25 65/16 65/19 67/2 78/15 78/21 80/23 82/2 82/22 83/8 84/18 84/21
**relating [3]** 56/12 56/24 97/9
**relationship [4]** 21/10 41/4 62/2 62/9
**relevance [4]** 33/2 33/8 51/14 60/10
**relevant [25]** 22/2 25/15 31/14 31/14 32/13 34/14 35/1 35/3 35/7 42/15 43/1 46/11 47/4 54/18 60/6 61/3 61/24 63/25 66/4 66/5 67/12 74/15 83/13 85/23 93/23
**relief [1]** 87/23
**rely [1]** 59/8
**remand [16]** 19/12 20/24 37/13 40/21 46/12 50/22 57/15 93/6 100/17 101/19 102/9 102/13 104/10 106/16 106/19 106/20
**remember [5]** 20/21 50/21 51/1 55/16 64/12
**remind [1]** 102/17
**REMINE [2]** 8/9 16/18
**remotely [1]** 107/3
**removal [2]** 57/15 104/4
**remove [4]** 36/20 50/15 51/9 71/12
**removing [1]** 51/6
**replacement [1]** 77/5
**reply [1]** 97/2
**Reporter [2]** 1/21 108/14
**REPORTER'S [1]** 108/7
**Reporter/Transcriber [1]** 108/14
**Reporters [1]** 89/13
**represent [10]** 46/7 63/13 65/16 68/5 68/5 71/6 72/4 86/14 102/6 106/18
**representation [5]** 68/14 68/18 70/6 70/11 71/6
**representations [2]** 22/20 104/24
**represented [9]** 31/22 32/10 37/10 64/7 65/8 65/10 70/15 85/14 86/14
**representing [17]** 63/14 67/18 67/25 68/1 68/16 69/23 69/24 70/7 71/18 71/19 71/24 72/9 72/17 73/2 73/3 73/10 73/13
**represents [1]** 68/8
**reproach [1]** 70/25
**request [20]** 20/9 23/8 24/7 24/18 26/25 30/9 32/5 36/19 37/19 38/22 75/1 75/2 75/5 75/11 75/23 92/9 92/16 93/17 93/17 99/22
**requested [5]** 20/1 35/15 37/24 66/4 100/16
**requests [35]** 19/16 21/24 22/8 22/17 27/6 36/21 37/11 38/20 39/3 39/22 40/11 42/17 49/20 50/9 51/3 54/14 54/23 56/24 58/15 70/17 73/21 77/12 77/14 84/7 84/18 92/14 92/16 92/22 98/20 99/9 99/24 100/24 104/25 105/3 105/6
**require [5]** 23/24 60/11 63/20 93/18 94/4
**required [2]** 23/16 39/5
**requirement [1]** 84/22
**requiring [1]** 26/23
**RESEARCH [1]** 6/13
**residency [1]** 50/19
**resolved [1]** 84/2
**respect [25]** 19/12 24/1 27/12 36/14 40/6 55/22 58/15 61/9 64/18 64/18 71/1 77/5 81/2 93/7 94/2 94/3 94/22 96/20 101/1 102/9 102/23 104/2 104/10 104/10 105/8
**respectfully [1]** 20/9
**responds [1]** 24/19
**response [6]** 58/13 74/14 74/18 83/12 93/11 95/1
**responsibilities [4]** 81/22 83/6 83/7 83/16
**responsibility [3]** 80/19 81/1 81/8
**responsive [2]** 56/19 84/4
**rest [1]** 19/19
**RESTORATION [1]** 11/4
**REUTERS [1]** 9/23
**review [1]** 95/4
**reviewed [3]** 59/25 97/20 98/22
**revisit [3]** 42/1 83/24 97/17
**rid [1]** 99/1
**rigged [1]** 23/2
**right [133]**
**rights [13]** 42/13 43/3 43/22 44/12 44/14 45/18 49/9 49/17 61/15 62/6 74/23 81/20 84/24
**rise [5]** 19/4 74/3 74/5 99/13 108/5
**RISK [1]** 13/13
**Riverfront [1]** 17/23
**RMR [1]** 108/13
**road [3]** 17/19 30/21 93/10
**ROBERT [2]** 17/2 17/13
**ROCKETREACH [2]** 14/4 16/18
**ROCKWELL [1]** 12/9
**room [1]** 59/18
**ROSS [1]** 17/18
**route [1]** 26/24
**RPC [1]** 68/13
**rule [18]** 19/18 21/25 24/1 24/7 24/18 26/24 27/11 28/18 30/9 44/16 62/1 71/12 85/17 85/18 85/23 87/21 94/25 104/2
**Rule 34 [1]** 85/18
**ruled [4]** 77/12 77/13 77/14 83/25
**rules [6]** 19/25 20/7 47/5 85/17 86/4 105/24
**RYAN [3]** 16/8 71/21 85/1

**S**

**safety [4]** 6/9 91/2 91/6 91/8
**said [26]** 21/3 22/22 24/16 25/22 25/23 32/21 32/21 32/23 34/12 34/13 37/20 40/12 45/4 48/24 56/5 56/13 58/6 59/11 67/12 72/10 72/16 76/12 99/17 100/6 100/7 100/7
**same [8]** 27/7 35/2 35/3 41/9 71/22 72/3 96/25 102/20
**San [1]** 16/6
**SANDERS [1]** 16/14
**SARAH [2]** 18/2 102/3
**satisfy [1]** 55/3
**SAUL [1]** 17/22
**say [45]** 24/17 24/20 26/20 29/7 33/11 33/13

## S

**say... [39]** 34/10 37/25 41/25 43/10 44/2 44/2 46/8 50/12 50/24 51/18 52/17 54/24 55/21 58/11 61/3 62/8 77/1 79/12 80/13 80/15 81/19 81/21 84/16 86/13 90/1 90/7 93/12 93/21 94/5 94/6 94/23 95/12 95/15 95/18 96/6 96/21 97/6 102/8 106/21
**saying [16]** 22/16 23/1 29/11 42/18 43/21 47/1 47/17 50/2 54/20 55/1 55/13 56/2 57/3 59/10 59/13 94/18
**says [17]** 26/17 41/6 41/23 44/8 46/24 56/18 60/17 61/1 62/1 66/8 68/14 71/9 85/25 91/15 98/15 99/21 99/21
**SCALABLE [1]** 6/18
**schedule [6]** 19/12 28/19 87/3 87/11 87/23 87/24
**scheduling [2]** 94/9 96/5
**scheme [5]** 45/25 48/3 48/12 48/13 49/18
**SCHILLER [4]** 16/2 16/5 68/3 72/3
**scope [6]** 19/11 22/6 22/7 28/14 39/14 39/16
**SCOTT [2]** 17/6 38/9
**search [3]** 4/23 21/18 30/13
**SEARCHBUG [1]** 15/18
**searched [1]** 30/14
**SEARCHERS [2]** 2/18 17/4
**seated [2]** 19/5 74/6
**second [1]** 36/20
**secured [1]** 87/7
**see [16]** 20/4 25/18 31/19 34/5 36/22 47/8 50/3 60/10 60/11 67/8 87/5 87/8 90/19 94/5 96/8 107/10
**seeking [1]** 82/19
**seem [1]** 60/6
**seems [9]** 23/14 23/20 24/4 32/4 42/3 60/22 78/7 80/10 91/23
**seen [1]** 87/15
**selected [1]** 50/18
**send [5]** 43/11 67/9 98/4 99/4 99/13
**sends [1]** 97/24
**sense [5]** 48/19 49/11 56/7 74/20 95/14
**sent [19]** 27/22 32/5 36/3 37/3 39/5 49/20 61/11 61/12 66/21 67/5 67/10 79/18 79/20 97/22 98/19 99/24 104/25 105/3 105/6
**separate [9]** 54/2 63/3 64/23 66/11 66/13 66/24 68/24 97/9 103/16
**September [1]** 97/6
**September 30th [1]** 97/6
**serve [3]** 21/24 21/25 26/24
**served [1]** 30/4
**service [25]** 29/8 29/9 31/23 32/22 32/25 32/25 33/3 33/8 33/10 33/15 33/15 34/7 57/13 71/2 71/3 79/11 79/14 79/17 80/21 80/23 80/24 82/3 82/5 83/3 93/25
**services [3]** 47/18 76/23 77/1
**set [12]** 23/12 23/13 24/5 26/5 26/9 26/9 28/17 36/17 40/13 44/14 87/9 90/10
**sets [1]** 44/12
**setting [1]** 106/12
**seven [9]** 30/21 58/23 74/9 87/21 90/2 96/22 105/24 105/25 106/2
**seven-day [2]** 87/21 96/22
**several [4]** 87/7 87/7 99/5 99/13
**SEYFARTH [1]** 17/2
**sham [5]** 44/7 52/6 54/25 55/2 55/3
**share [2]** 52/13 95/7
**sharing [1]** 34/3
**SHAW [10]** 16/2 17/2 20/11 20/12 25/20 32/16 55/21 56/8 75/9 75/24
**sheet [1]** 18/8
**short [3]** 34/6 73/24 89/22
**short-circuit [1]** 34/6
**should [28]** 19/16 23/23 25/18 26/16 26/23 27/12 39/16 39/18 43/5 52/9 52/21 53/8 53/18 57/3 60/19 61/15 63/17 67/13 80/22 84/9 85/24 86/15 88/1 92/18 94/21 95/18 97/3 105/21
**shouldn't [4]** 62/10 89/16 96/23 101/14
**show [4]** 46/12 55/2 57/1 57/6
**shows [1]** 43/6
**side [4]** 24/19 70/23 80/10 85/7
**sign [6]** 18/8 23/1 32/8 47/15 71/8 79/12
**sign-in [1]** 18/8
**signed [1]** 59/25
**significant [3]** 29/15 29/25 30/15
**significantly [1]** 92/22
**signing [1]** 43/7
**Silver's [13]** 44/1 44/17 45/3 52/8 52/11 52/12 52/25 53/22 60/18 61/3 61/23 62/23 81/15
**similar [3]** 33/12 75/2 75/22
**simple [1]** 29/18
**simply [2]** 51/17 65/1
**since [6]** 22/18 33/3 34/7 37/3 70/17 106/23
**single [5]** 35/15 37/1 47/16 65/11 68/4
**sir [6]** 27/2 84/25 91/10 95/21 97/13 104/15
**sit [1]** 90/18
**sitting [1]** 94/22
**situation [6]** 20/16 49/22 53/10 61/8 61/12 98/24
**six [2]** 58/14 85/6
**size [1]** 54/1
**slice [1]** 20/17
**small [2]** 107/5 107/7
**so [132]**
**so-called [1]** 99/8
**sole [1]** 44/21
**solicitation [1]** 68/22
**soliciting [2]** 22/14 32/8
**SOLUTIONS [1]** 7/18
**solves [1]** 72/6
**some [36]** 19/13 22/19 29/13 29/20 30/2 35/11 35/13 37/7 37/12 37/14 42/14 43/16 44/10 47/6 48/21 53/23 56/15 57/20 60/1 66/9 68/2 75/12 75/25 85/10 85/11 90/21 91/17 93/8 95/3 96/5 104/1 104/24 105/11 105/19 106/13 107/4
**somebody [1]** 30/21
**somehow [4]** 20/23 50/17 57/1 91/21
**someone [2]** 33/14 47/21
**something [14]** 27/21 30/20 33/16 55/21 56/8 56/18 81/21 85/14 87/23 93/24 95/25 101/4 106/9 106/21
**Sometime [1]** 88/9
**somewhat [1]** 104/13
**soon [1]** 87/12
**sooner [1]** 94/17
**sorry [2]** 79/2 88/1
**sort [3]** 54/5 90/21 105/11
**sought [1]** 50/22
**sound [1]** 54/11
**sources [1]** 21/18
**South [2]** 16/3 18/3
**spam [4]** 37/16 98/25 99/1 100/4
**speak [2]** 57/12 58/7
**specific [6]** 50/19 57/17 66/9 84/10 93/6 96/24
**specifically [4]** 50/18 57/25 68/12 92/21
**speculation [1]** 21/4
**spend [1]** 93/18
**splitting [1]** 48/14
**SPOKEO [1]** 10/22
**spreadsheets [3]** 35/24 36/2 36/6
**staffs [1]** 89/23
**stage [1]** 100/12
**stand [1]** 37/8
**standing [1]** 35/14
**start [9]** 21/17 22/17 28/21 29/3 29/16 31/2 74/8 85/15 100/2
**started [4]** 22/14 26/11 61/10 92/11
**starting [3]** 29/19 51/3 84/21
**state [8]** 20/24 38/8 45/10 50/15 60/22 61/17 71/12 91/24
**stated [1]** 71/17
**statement [1]** 72/7
**statements [1]** 70/19
**STATES [3]** 1/1 1/16 19/2
**STATUS [1]** 1/5
**statute [11]** 45/8 45/12 46/4 46/6 48/14 49/2 49/4 56/25 79/24 91/15 91/25
**statutory [2]** 45/25 48/3
**stayed [1]** 101/20
**staying [1]** 85/11
**steam [1]** 107/25
**stenography [1]** 1/23
**step [3]** 37/25 63/24 79/7
**still [4]** 36/16 37/8 45/4 79/25
**STIO [29]** 16/15 19/15 19/21 21/21 27/11 28/10 28/21 30/18 30/25 34/18 35/21 36/14 38/13 41/19 62/22 66/10 70/21 72/20 73/19 74/8 76/3 79/12 79/25 92/6 93/24 94/23 95/3 106/23 107/13
**Stio's [2]** 36/19 67/4
**stipulate [1]** 101/1
**stop [1]** 57/4
**stopped [1]** 37/14
**story [1]** 24/22
**straightened [1]** 24/2
**straightforward [1]** 24/5
**straws [1]** 71/13
**Street [6]** 16/3 16/6 16/9 16/21 17/7 18/3
**Streets [1]** 1/13
**strong [2]** 54/6 70/20
**structure [1]** 81/3
**stuff [2]** 26/17 43/10
**subject [49]** 20/8 21/23 23/3 23/25 27/1 30/12 33/21 34/15 37/17 37/21 39/7 39/8 39/10 40/13 42/8 42/16 42/19 43/14 43/17 46/15 46/22 51/20 52/9 54/21 55/7 55/9 55/15 56/25 57/14 57/18 57/25 58/6 59/17 60/6 60/9 63/25 74/15 78/15 81/5 81/7 82/15 82/20 82/21 82/24 83/13 92/21 94/7 97/16 106/19
**submit [1]** 102/17
**submitted [1]** 22/4
**subset [1]** 20/23
**substantive [1]** 104/22
**substitute [1]** 76/17
**subsumed [2]** 78/7 80/21
**sue [1]** 45/17
**sufficient [1]** 97/4
**suggest [2]** 32/11 90/9
**suggested [3]** 27/22 63/22 90/25
**suggesting [1]** 62/13
**suing [2]** 46/19 46/21
**Suite [5]** 16/12 16/16 17/13 17/19 18/3
**Sunshine [1]** 89/15
**Sunshine-related [1]** 89/15
**superseding [1]** 33/14
**supplement [1]** 103/15
**supplemental [2]** 88/6 103/23
**support [1]** 28/12
**supported [1]** 28/1
**suppose [1]** 106/6
**suppression [4]** 97/22 98/20 99/5 99/9
**Supreme [1]** 89/11
**sure [15]** 24/10 29/16 33/20 51/14 52/19 55/19 67/2 69/19 78/21 86/19 97/22 103/15 104/6 106/17 107/16
**surprise [1]** 89/21
**surprising [1]** 56/24
**surrounding [1]** 45/1
**suspect [1]** 67/10
**sustain [2]** 62/21 80/12
**SYNAPTIX [1]** 12/4
**system [6]** 37/3 69/18 98/16 100/1 101/5 105/19
**systems [6]** 4/9 8/13 8/18 99/25 100/3 101/6
**SZYBA [1]** 17/2

## T

**table [1]** 70/24
**tail [1]** 46/17
**take [15]** 20/6 25/9 28/20 39/1 39/3 43/11 49/18 70/20 73/24 79/7 82/8 100/8 100/21 104/25 107/4
**take-down [3]** 39/3 43/11 104/25
**taken [2]** 43/10 74/4
**taking [2]** 22/17 28/10
**talk [12]** 22/5 23/4 31/5 36/23 50/24 51/13 61/14 65/3 77/8 84/7 94/9 96/7
**talked [10]** 29/7 40/9 55/7 58/18 58/24 79/24 83/5 93/24 106/11 107/6
**talking [15]** 26/1 29/8 29/14 30/13 30/18 42/9 45/25 46/22 62/1 69/1 71/2 80/1 81/11 93/1 93/3
**talks [2]** 48/14 85/23

**T**

**Tampa [1]** 16/9
**targeted [2]** 22/8 22/9
**TECHNOLOGIES [3]** 9/9 17/8 38/10
**TECHNOLOGY [1]** 12/4
**teed [1]** 19/20
**tell [4]** 43/2 44/9 47/1 68/11
**tells [1]** 38/21
**TELNYX [1]** 11/13
**TELTECH [1]** 8/18
**templates [1]** 35/17
**ten [1]** 51/7
**tens [1]** 93/19
**term [4]** 31/13 33/8 33/15 51/15
**terms [34]** 21/18 29/8 29/9 29/25 30/7 30/13 31/23 32/22 32/25 32/25 33/3 33/10 33/12 34/7 56/15 56/16 64/24 64/25 71/2 71/3 71/6 78/21 79/11 79/14 79/17 80/21 80/23 80/24 82/3 82/5 83/3 83/4 93/25 97/2
**test [3]** 61/7 66/7 70/18
**testifies [1]** 42/1
**testify [2]** 41/25 76/22
**thank [30]** 19/10 27/20 30/24 38/6 40/4 40/22 50/6 74/1 74/2 74/11 76/18 77/15 90/24 91/9 96/19 97/1 97/7 97/10 97/14 101/12 101/22 101/23 104/14 107/9 107/19 107/20 107/25 108/2 108/3 108/4
**them [51]** 20/18 21/2 21/5 21/11 21/12 21/13 22/19 24/20 25/17 26/10 26/18 29/6 29/11 32/25 35/25 37/7 37/10 37/14 37/15 38/14 38/21 39/12 40/1 41/22 42/19 44/25 50/18 51/8 52/10 55/23 57/4 65/16 66/3 68/8 70/4 70/17 71/4 71/7 72/24 77/10 78/21 85/11 85/19 85/22 87/13 90/17 90/19 92/13 93/12 95/7 101/9
**themselves [5]** 52/21 62/8 98/3 101/14 105/7
**theory [1]** 55/11
**thereafter [1]** 87/3
**therefore [1]** 51/12
**these [71]** 20/23 21/14 22/15 22/16 22/18 22/18 26/12 26/13 29/19 37/7 37/10 39/4 40/11 41/24 43/21 43/22 45/13 45/21 47/15 50/8 50/14 50/15 50/19 51/2 51/4 51/5 51/11 51/18 54/25 55/3 55/4 55/24 57/12 57/12 58/4 60/24 61/10 62/3 62/13 66/25 67/6 67/16 67/20 67/21 68/23 69/18 70/16 71/9 71/11 71/12 76/12 78/18 79/10 80/7 84/24 87/11 88/20 89/5 93/6 93/8 93/11 94/14 97/22 98/10 98/15 98/18 99/4 99/9 100/9 100/24 106/24
**they'd [1]** 84/15
**They'll [1]** 90/10
**they're [41]** 20/3 20/4 22/9 22/23 22/24 23/13 24/13 25/11 25/13 25/19 30/3 38/1 39/12 43/24 46/19 46/21 50/22 51/19 55/5 57/3 64/7 65/9 65/18 65/22 67/18 68/1 69/21 70/10 71/13 72/11 72/12 82/19 85/18 87/12 87/13 89/22 92/7 100/17 100/17 100/18 100/25
**they've [9]** 32/9 32/9 33/22 61/2 63/24 82/18 97/19 98/9 100/15
**thin [1]** 20/17
**thing [9]** 29/2 36/25 42/4 45/18 56/23 80/13 82/23 101/13 106/15
**things [17]** 21/19 22/3 22/17 23/9 24/16 26/12 29/16 38/12 51/1 56/5 59/20 78/1 80/25 81/4 84/11 91/20 94/7
**think [99]** 19/19 20/5 20/15 20/21 21/16 21/22 22/11 23/3 25/15 25/15 25/18 26/8 26/13 26/16 27/8 28/9 28/12 28/15 28/20 29/5 29/12 30/5 30/15 30/16 32/8 32/13 32/22 34/3 36/11 37/20 40/17 41/15 41/15 41/16 41/18 41/20 41/25 41/25 42/7 46/11 47/23 48/13 55/11 56/3 56/8 56/10 56/12 56/13 56/17 59/23 60/19 61/17 61/18 61/21 61/25 63/18 63/25 64/16 65/15 70/18 73/20 77/17 80/20 80/21 81/5 81/11 82/12 82/18 83/3 83/11 83/16 83/25 84/6 84/8 84/9 84/19 85/5 85/13 86/9 88/3 88/4 88/11 91/11 92/20 93/2 93/21 94/13 94/16 95/22 96/11 97/3 101/8 101/18 103/7 103/8 105/1 105/18 105/20 106/11
**thinking [1]** 89/19
**thinks [1]** 38/22
**third [2]** 59/24 86/20
**third-party [1]** 86/20
**this [92]** 19/10 19/20 20/16 20/17 20/19 21/16 22/15 23/2 23/11 23/17 25/24 26/21 28/7 30/15 30/22 32/1 32/10 33/1 34/4 35/11 35/14 35/19 38/18 39/6 39/12 41/3 41/13 42/12 44/24 45/7 47/9 47/10 49/18 50/16 52/5 53/9 54/20 55/6 55/13 55/16 56/4 57/14 59/18 59/22 59/23 60/4 61/25 62/4 62/8 62/23 63/6 63/23 67/2 68/19 68/20 68/22 70/7 70/15 70/21 70/22 70/23 71/10 79/1 79/14 79/14 79/16 79/20 80/10 80/16 81/6 82/16 82/17 82/19 84/13 85/10 85/13 86/8 89/24 92/20 93/21 93/23 94/10 94/11 99/17 99/18 99/19 99/21 100/8 101/19 104/8 105/22 106/16
**THOMSON [1]** 9/23
**though [3]** 20/25 76/7 86/1
**thought [4]** 75/10 75/11 76/6 83/23
**thousands [5]** 38/16 38/16 93/19 97/20 99/3
**three [15]** 31/17 31/22 36/21 53/1 63/12 65/10 67/4 67/9 68/4 70/13 89/4 93/25 94/14 94/16 95/6
**three-quarters [1]** 31/17
**through [22]** 19/16 23/21 29/3 29/21 30/2 30/5 30/17 31/3 35/4 41/10 51/8 51/23 54/14 58/19 58/20 62/11 73/20 79/25 85/10 91/18 98/5 101/5
**throwing [1]** 57/17
**time [38]** 23/1 23/25 26/1 26/13 28/8 28/18 29/25 30/2 30/15 31/14 32/4 32/7 32/11 32/13 33/12 33/24 34/13 35/7 35/9 37/3 41/13 51/7 51/25 54/24 62/15 63/20 71/1 84/13 84/19 91/17 93/1 93/2 93/23 95/3 96/9 102/15 106/12 107/6
**times [1]** 70/22
**timetable [2]** 94/11 95/5
**timing [2]** 21/9 54/4
**today [16]** 19/17 23/15 23/21 37/8 40/3 41/16 83/21 86/8 90/18 90/23 97/12 97/15 101/10 104/24 107/22 107/25
**together [2]** 93/19 105/20
**tomorrow [2]** 90/23 107/25
**too [6]** 20/17 21/16 56/12 62/19 85/9 96/9
**took [4]** 62/14 62/15 62/16 62/16
**tool [1]** 100/9
**top [1]** 54/10
**topic [15]** 19/10 74/13 75/3 75/3 75/5 75/22 75/23 75/25 76/3 76/6 76/17 81/6 81/13 82/7 82/17
**topic 1 [1]** 76/3
**topics [13]** 22/8 24/1 73/23 74/7 74/9 75/7 76/12 77/19 80/7 82/5 93/8 94/22 94/25
**total [1]** 70/5
**totality [8]** 22/5 43/25 44/3 46/25 47/11 49/23 79/10 99/2
**totally [1]** 54/22
**toward [1]** 95/24
**traditional [1]** 23/7
**Transcriber [1]** 108/14
**transcript [2]** 1/23 108/9
**transcription [1]** 1/23
**transmitted [4]** 37/11 51/2 99/22 100/24
**TRANSUNION [1]** 10/9
**tried [1]** 20/16
**TROUTMAN [4]** 16/14 27/23 28/1 54/15
**true [2]** 24/17 68/2
**trust [4]** 52/8 52/11 54/9 61/9
**try [7]** 19/16 21/23 61/20 71/13 101/8 104/21 107/7
**trying [14]** 20/18 21/4 39/3 41/19 45/6 46/12 47/3 47/8 48/3 49/25 53/9 56/15 72/20 99/8
**Tryon [1]** 18/3
**turn [2]** 73/22 74/7
**TWILIO [1]** 3/18
**two [18]** 22/15 23/6 33/20 39/19 39/23 44/18 46/3 46/6 52/25 54/9 62/3 62/13 68/14 88/22 94/15 103/21 104/22 105/8
**type [7]** 44/24 48/14 55/18 60/1 69/18 69/20 71/16
**types [1]** 40/11

**U**

**U.S [1]** 1/12
**U.S.C [3]** 53/11 53/14 57/2
**Uh [1]** 64/13
**Uh-huh [1]** 64/13
**ultimately [4]** 28/16 84/12 90/1 90/6
**undefined [1]** 20/24
**under [16]** 19/25 24/18 42/13 42/14 45/10 52/25 53/10 53/22 57/7 60/18 64/22 71/12 81/14 82/6 84/4 105/24
**underlying [2]** 75/12 91/1
**understand [19]** 24/8 40/5 40/19 46/5 46/21 47/3 47/11 48/3 49/2 50/4 50/4 54/19 54/20 56/2 60/25 65/25 78/14 86/6 103/20
**understanding [4]** 27/25 63/8 80/1 97/24
**understood [5]** 60/15 77/15 101/21 102/11 102/15
**unduly [1]** 101/14
**unequivocally [1]** 40/10
**unfortunately [2]** 84/23 101/15
**unilateral [1]** 79/18
**union [3]** 69/1 69/2 69/7
**unions [4]** 41/7 47/15 56/4 69/3
**unique [9]** 36/25 102/12 102/13 103/2 103/3 103/5 104/1 104/7 104/10
**UNITED [3]** 1/1 1/16 19/2
**universe [1]** 85/13
**unless [2]** 24/21 103/23
**unlike [1]** 23/11
**unlimited [2]** 41/11 41/14
**unnecessary [1]** 21/19
**untethered [1]** 56/25
**until [5]** 26/24 34/14 41/16 61/11 74/4
**unusual [2]** 46/2 61/19
**unwillingness [1]** 97/18
**up [25]** 19/20 23/1 24/5 26/5 26/9 26/9 30/19 32/8 32/22 34/11 36/18 40/13 41/16 43/7 47/1 47/15 47/20 50/16 61/19 69/19 70/13 76/5 100/9 103/19 106/12
**upon [5]** 39/4 59/8 71/10 93/15 99/2
**us [15]** 17/9 21/15 22/24 22/24 38/23 46/9 46/19 61/6 61/9 61/20 72/18 84/9 93/18 95/16 100/2
**use [8]** 20/10 33/12 34/13 48/18 49/11 75/3 78/18 100/8
**used [3]** 31/13 44/21 57/19
**using [3]** 51/16 57/3 103/19

**V**

**vacations [1]** 96/15
**vagueness [1]** 20/5
**VALASSIS [2]** 14/13 17/24
**VALUE [3]** 14/18 17/11 104/19
**various [1]** 19/16
**vary [1]** 63/9
**VEDDER [1]** 16/20
**veracity [3]** 61/7 66/7 70/18
**versions [4]** 31/23 31/23 35/8 71/4
**versus [6]** 41/20 71/2

**V**

**versus... [4]** 81/2 81/9 83/6 93/23
**very [7]** 22/1 35/14 53/10 56/24 89/22 107/9 108/1
**view [3]** 19/24 90/11 98/18
**VIOLET [2]** 5/23 16/18
**virtual [1]** 106/13
**virtue [4]** 38/15 38/22 39/3 99/9
**volume [1]** 93/16
**vs [72]** 1/4 1/9 2/3 2/8 2/12 2/17 2/21 3/3 3/8 3/13 3/17 3/22 4/3 4/8 4/13 4/17 4/22 5/3 5/8 5/13 5/17 5/22 6/3 6/8 6/12 6/17 6/21 7/3 7/8 7/13 7/17 7/22 8/3 8/8 8/12 8/17 8/21 9/3 9/8 9/13 9/17 9/22 10/3 10/8 10/12 10/17 10/21 11/3 11/8 11/12 11/17 11/21 12/3 12/8 12/13 12/17 12/22 13/3 13/8 13/12 13/17 13/22 14/3 14/8 14/12 14/17 14/21 15/3 15/8 15/13 15/17 15/22

**W**

**Wabash [1]** 17/13
**wagging [1]** 46/17
**wait [4]** 19/18 50/11 65/5 75/5
**waiting [1]** 26/24
**waiver [4]** 40/9 40/14 40/18 100/5
**walk [1]** 58/20
**walked [1]** 32/9
**want [55]** 21/2 21/7 21/15 21/23 21/24 21/25 23/4 23/12 24/6 25/10 25/14 25/22 30/6 30/19 31/6 32/24 33/17 34/13 36/10 37/15 37/19 38/4 44/4 44/20 46/8 46/15 46/17 47/22 49/23 49/25 56/19 56/21 58/16 58/20 59/4 62/22 67/8 68/11 71/7 77/11 85/9 85/10 87/17 87/18 90/7 92/4 92/12 94/23 96/1 97/22 100/1 100/10 105/9 106/15 107/14
**wanted [11]** 23/19 35/19 56/8 61/12 91/2 92/16 102/7 102/10 105/4 106/4 107/16
**wants [5]** 26/20 58/7 59/22 88/20 105/17
**wasn't [3]** 48/21 49/18 56/4
**WATKINS [1]** 17/12
**way [14]** 21/5 23/7 24/5 26/9 27/15 29/18 36/18 39/24 50/14 55/23 79/14 79/19 81/6 82/18
**ways [1]** 23/6
**we'd [4]** 87/13 90/2 102/20 106/24
**we'll [39]** 23/25 24/2 24/4 28/17 30/23 34/10 35/21 37/21 37/22 37/25 39/11 40/1 56/6 57/20 61/20 71/8 73/24 74/8 74/20 75/13 75/14 76/16 76/16 76/25 78/8 90/2 94/5 95/12 95/25 96/21 96/24 96/25 97/6 97/8 101/1 104/12 107/2 107/7 107/25
**we've [22]** 29/6 29/11 30/16 30/16 32/21 36/5 42/17 50/22 54/14 54/17 71/4 79/24 80/7 86/8 93/13 93/22 96/5 97/20 98/22 99/1 99/23 104/24
**website [3]** 33/17 79/15 79/16
**week [1]** 94/5
**weeks [5]** 89/17 89/18 94/14 94/16 95/6
**welcome [1]** 38/7
**went [3]** 37/15 37/24 41/12
**weren't [2]** 61/11 61/12
**West [1]** 16/12
**whatever [6]** 59/11 60/3 77/13 81/25 90/19 107/5
**whether [33]** 19/16 20/1 20/2 26/22 34/4 38/1 52/12 53/22 54/2 54/3 54/4 54/6 54/11 54/12 60/2 64/1 64/22 65/23 66/10 66/13 66/23 66/24 75/11 77/10 88/20 91/22 93/14 100/3 100/9 100/19 100/21 101/3 106/12
**WHITEPAGES [4]** 1/10 16/22 27/3 52/2
**who's [3]** 44/22 47/21 107/4
**whole [6]** 48/2 49/18 55/17 79/23 82/23 83/1
**wholesale [1]** 85/12
**wholesome [1]** 21/16
**whose [2]** 59/18 59/19
**why [16]** 22/11 22/12 22/25 30/25 34/9 36/17 43/20 49/10 49/10 49/13 56/15 63/19 65/24 80/15 89/16 106/21
**WILAND [1]** 13/4
**will [22]** 23/15 26/2 27/7 28/16 30/15 38/21 45/23 45/24 60/11 65/14 74/7 83/3 83/20 95/21 95/23 96/2 96/11 97/9 105/9 105/11 107/12 107/24
**WILLIAM [1]** 17/22
**willing [3]** 23/22 24/16 26/10
**window [2]** 89/1 96/22
**wish [2]** 105/9 105/12
**wished [1]** 102/16
**wishes [1]** 106/5
**withheld [10]** 20/2 24/12 27/17 29/12 83/25 84/4 86/8 92/18 93/13 93/22
**withhold [3]** 25/11 25/13 93/10
**withholding [6]** 24/13 25/8 85/19 92/12 92/19 94/1
**within [12]** 23/24 29/24 42/19 51/7 53/25 56/14 81/4 82/14 93/11 94/5 94/14 94/15
**without [1]** 42/18
**witness [23]** 21/13 21/15 21/20 26/17 41/22 41/23 50/2 51/18 51/22 55/24 61/5 63/7 63/23 64/3 65/2 66/5 66/8 76/13 79/22 80/1 80/16 83/10 106/10
**won't [2]** 87/15 94/7
**wondering [1]** 52/1
**word [1]** 76/21
**words [6]** 45/16 55/8 57/19 57/19 90/4 103/17
**work [12]** 30/5 84/21 95/25 96/2 96/24 105/11 105/18 105/20 106/9 106/24 106/25 107/3
**working [1]** 107/13
**works [2]** 79/14 79/21
**wouldn't [7]** 56/20 60/20 81/16 81/16 82/8 92/3 103/22
**writing [3]** 22/25 25/8 58/13

**Y**

**YARDI [1]** 4/9
**yeah [49]** 20/14 28/25 29/4 31/10 31/12 31/20 33/2 41/15 41/23 42/7 43/23 49/7 49/12 55/25 57/16 58/12 58/21 58/21 58/22 60/20 66/2 67/24 69/5 74/12 74/19 76/6 78/16 79/8 80/4 81/11 82/1 82/8 83/11 85/4 88/9 88/11 88/13 89/8 95/15 95/17 96/13 98/14 102/19 106/11 106/14 106/20 106/22 107/6 107/8
**Year's [1]** 32/6
**years [1]** 85/6
**yes [32]** 27/2 32/19 38/5 38/9 38/11 40/25 52/4 52/22 52/23 58/25 66/9 68/4 68/10 72/8 72/13 73/2 75/6 84/25 87/2 87/19 91/10 95/11 95/21 97/13 98/7 99/15 101/25 102/5 104/15 104/20 106/1 107/18
**yet [2]** 87/7 87/15
**York [5]** 16/3 17/3 17/3 17/11 17/11
**you [207]**
**you'd [4]** 35/12 48/16 87/5 87/8
**you'll [4]** 24/2 37/22 37/23 40/8
**you've [1]** 23/11

**Z**

**zero [1]** 89/2
**ZILLOW [1]** 9/14
**Zoom [2]** 106/13 107/1