**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ATLAS DATA PRIVACY** | **CIVIL ACTION NUMBER** |
| **CORPORATION, et al,** | |
| | **1:24-cv-04037-HB** |
| Plaintiffs, | |
| | |
| v. | |
| | **STATUS CONFERENCE** |
| **WE INFORM, LLC,** | |
| | |
| Defendants. | |

| | |
|---|---|
| **ATLAS DATA PRIVACY** | **CIVIL ACTION NUMBER** |
| **CORPORATION, et al.,** | |
| | **1:24-cv-04075-HB** |
| Plaintiffs, | |
| v. | |
| **DM GROUP, INC., et al.,** | |
| Defendants. | |

Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, New Jersey 08101
Friday, September 12, 2025
Commencing at 9:59 a.m.

**B E F O R E:**        **THE HONORABLE HARVEY BARTLE, III (EDPA)**
                **UNITED STATES DISTRICT JUDGE**

(CAPTION CONTINUED ON NEXT PAGE)

Francesca DiBella, Federal Official Court Reporter
francesca_dibella@njd.uscourts.gov
(973)776-3885
Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription

1

2   ATLAS DATA PRIVACY                 CIVIL ACTION NUMBER
    CORPORATION, et al.,
3                                      1:24-cv-04080-HB

4        Plaintiffs,

5   v.

6   DELUXE CORPORATION, et al.,

7        Defendants.

8   ATLAS DATA PRIVACY                 CIVIL ACTION NUMBER
    CORPORATION, et al,
9                                      1:24-cv-04174-HB
         Plaintiffs,
10
    v.
11
    LABELS & LISTS, INC.,
12
         Defendant.
13

14  ATLAS DATA PRIVACY                 CIVIL ACTION NUMBER
    CORPORATION, et al.,
15                                     1:24-cv-04176-HB
         Plaintiffs,
16
    v.
17
    INNOVIS DATA SOLUTIONS,
18  INC., et al.,

19       Defendants.

20

21  ATLAS DATA PRIVACY                 CIVIL ACTION NUMBER
    CORPORATION, et al,
                                       1:24-cv-04178-HB
22           Plaintiffs,

23  v.

24  ACCURATE APPEND, INC., et al.,

25           Defendants.

```
1  _____

2  ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
   CORPORATION, et al.,
3                                  1:24-cv-04256-HB
          Plaintiffs,
4  v.

5  ZILLOW, INC., et al.,

6          Defendants.
7  _____

   ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
8  CORPORATION, et al.,
                                   1:24-cv-04261-HB
9      Plaintiffs,

10 v.

11 EQUIMINE, INC.,

12     Defendant.
13 _____

   ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
14 CORPORATION, et al.,
                                   1:24-cv-04269-HB
15     Plaintiffs,
16 v.

17 THOMSON REUTERS
   ENTERPRISE CENTRE GMBH,
18     Defendant.
19 _____

   ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
20 CORPORATION, et al.,
                                   1:24-cv-04292-HB
21     Plaintiff,

22 v.

23 MELISSA DATA CORP., et al.,

24     Defendants.
25 _____
```

*United States District Court*
*District of New Jersey*

```
1   _____

2   ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
    CORPORATION, et al,
3                                   1:24-cv-04324-HB
         Plaintiffs,
4
    v.
5
    RESTORATION OF AMERICA, et al.,
6
         Defendants.
7   _____

8   ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
    CORPORATION, et al.,
9                                   1:24-cv-04383-HB
         Plaintiffs,
10  v.

11  ACCUZIP, INC., et al.,

12       Defendants.

13  _____

14  ATLAS DATA PRIVACY              CIVIL ACTION NUMBER
    CORPORATION, et al.,
15                                  1:24-cv-04345-HB
         Plaintiffs,
16
    v.
17
    i360, LLC, et al.,
18
         Defendants.
19  _____

20  ATLAS DATA PRIVACY              CIVIL ACTION NUMBER:
    CORPORATION, et al.,
21                                  1:24-cv-04380-HB
         Plaintiffs,
22
    v.
23
    GOHUNT, LLC, et al.,
24
         Defendants.
25  _____
```

*United States District Court*
*District of New Jersey*

1  _____

2  **ATLAS DATA PRIVACY**          **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**

3                                  **1:24-cv-04383-HB**

        **Plaintiffs,**

4  **v.**

5  **JOY ROCKWELL ENTERPRISES,**
   **INC., et al.,**

6
        **Defendants.**

7  _____

8  **ATLAS DATA PRIVACY**          **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**

9                                  **1:24-cv-04434-HB**

        **Plaintiffs,**

10

   **v.**

11

   **E-MERGES.COM, INC.,**

12
        **Defendant.**

13 _____

14 **ATLAS DATA PRIVACY**          **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**

15                                 **1:24-cv-04664-HB**

        **Plaintiffs,**

16

   **v.**

17

   **ROCKETREACH, LLC, et al.,**

18
        **Defendants.**

19 _____

20 **ATLAS DATA PRIVACY**              **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**

21                                     **1:24-cv-04949-HB**

        **Plaintiffs,**

22

   **v.**

23

   **BELLES CAMP COMMUNICATIONS,**

24 **INC., et al.,**

25
        **Defendants.**

   _____

*United States District Court*
*District of New Jersey*

```
1  _____

2  ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
   CORPORATION, et al.,
3                                    1:24-cv-05600-HB

4      Plaintiffs,

5  v.

6  PROPERTY RADAR, INC., et al.,

7      Defendants.
   _____

8  ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
   CORPORATION, et al.,
9                                    1:24-cv-05656-HB

       Plaintiffs,
10  v.

11 THE ALESCO GROUP, L.L.C.,

12       Defendant.
   _____

13

14 ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
   CORPORATION, et al.,
15                                   1:24-cv-05658-HB
       Plaintiffs,

16 v.

17 SEARCHBUG, INC.,

       Defendant.
18 _____

19 ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
   CORPORATION, et al.,
20                                   1:24-cv-05775-HB
       Plaintiffs,
21 v.

22 AMERILIST, INC., et al.,

23       Defendants.
   _____
24

25
```

```
1   _____

2   ATLAS DATA PRIVACY                   CIVIL ACTION NUMBER
    CORPORATION, et al.,
3                                        1:24-cv-07324-HB
            Plaintiffs,
4   v.

5   US DATA CORPORATION,

6           Defendant.

7   _____

8   ATLAS DATA PRIVACY                   CIVIL ACTION NUMBER
    CORPORATION, et al.,
9                                        1:24-cv-08075-HB
            Plaintiffs,
10  v.

11  SMARTY, LLC,

12          Defendant.

13  _____

14  ATLAS DATA PRIVACY                   CIVIL ACTION NUMBER
    CORPORATION, et al.,
15                                       1:24-cv-08451-HB
            Plaintiffs,
16  v.

17  COMPACT INFORMATION SYSTEMS, LLC,

18          Defendant.

19  _____

20  ATLAS DATA PRIVACY                   CIVIL ACTION NUMBER
    CORPORATION, et al.,
21                                       1:24-cv-11023-HB
         Plaintiffs,
22  v.

23  SPY DIALER, INC.,

24        Defendant.

25  _____
```

*United States District Court*
*District of New Jersey*

1  _____

2  **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
   **CORPORATION, et al,**
3                                            **1:24-cv-11443-HB**
4        **Plaintiffs,**

5  **v.**

6  **DELVEPOINT, LLC, et al,**

7        **Defendants.**
   _____

8  **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**
9                                            **1:24-cv-11443-HB**
10        **Plaintiff,**

11  **v.**

12  **LIGHTHOUSE LIST COMPANY, LLC,**

13        **Defendants.**
   _____

14  **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**
15                                           **1:24-cv-11443**
16        **Plaintiff,**

17  **v.**

18  **FORTNOFF FINANCIAL, LLC, et al.,**

19        **Defendants.**
   _____

20  **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
    **CORPORATION, et al.,**
21                                           **1:25-cv-00237-HB**
22        **Plaintiffs,**

    **v.**

23  **PEOPLEWHIZ, INC.,**

24        **Defendant.**
   _____

25

```
1    _____

2    ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
     CORPORATION, et al.,
3                                      1:25-CV-01480-HB

4         Plaintiffs,

5    v.

6    FIRST DIRECT, INC.,

7         Defendant.
     _____

8    ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
     CORPORATION, et al.,
9                                      1:25-cv-01517-HB

10          Plaintiffs,

11   v.

12   GREENFLIGHT VENTURE, CORP.

13          Defendant.
     _____

14   ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
     CORPORATION, et al.,
15                                     1:25-cv-02137-HB

16          Plaintiffs,

17   AGR MARKETING SOLUTIONS, LLC,

18          Defendant.
     _____

19
     ATLAS DATA PRIVACY                CIVIL ACTION NUMBER
20   CORPORATION, et al.,
                                       1:25-cv-05989-HB
21          Plaintiffs,
     v.
22
     PUBLICNSA, LLC,
23
            Defendant.
24   _____

25
```

*United States District Court*
*District of New Jersey*

1  ———————————————————

2  **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**

3                                            **1:25-cv-06863-HB**

              **Plaintiffs,**
4  **v.**

5  **REDX, LLC,**

6              **Defendant.**

7  ———————————————————

   **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
8  **CORPORATION, et al.,**

9                                            **1:25-cv-07650-HB**

              **Plaintiffs,**
   **v.**
10
   **TRUE SOFTWARE SCANDINAVIA AB,**
11
              **Defendant.**
12 ———————————————————

13 **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
   **CORPORATION, et al.,**
14                                           **1:25-cv-08617-HB**

              **Plaintiffs,**
15
   **v.**
16
   **BROOKS INTEGRATED MARKETING,**
17 **LLC, et al.,**

18             **Defendants.**

19 ———————————————————

   **ATLAS DATA PRIVACY**                    **CIVIL ACTION NUMBER**
20 **CORPORATION, et al.,**

21                                           **1:25-cv-09224-HB**

              **Plaintiffs,**
22 **v.**

23 **FREEDOMSOFT303, LLC,**

24             **Defendant.**

25 ———————————————————

*United States District Court*
*District of New Jersey*

_____

ATLAS DATA PRIVACY                    CIVIL ACTION NUMBER
CORPORATION, et al.,
                                      1:25-cv-09963-HB
        Plaintiff,

v.

STERLING DATA COMPANY, LLC,

        Defendant.
_____

ATLAS DATA PRIVACY                    CIVIL ACTION NUMBER
CORPORATION, et al.,
                                      1:25-cv-11870-HB
           Plaintiffs,

v.

SIERRA CREATIVE SYSTEMS, INC.,

           Defendant.
_____

ATLAS DATA PRIVACY                   CIVIL ACTION NUMBER
CORPORATION, et al,
                                     1:25-cv-11948-HB
           Plaintiffs,

v.

CYBO COMPANY,

           Defendant.
_____


**A P P E A R A N C E S:**

        BOIES SCHILLER FLEXNER, LLP
        BY:  ADAM R. SHAW, ESQUIRE
        30 South Pearl Street, 12th Floor
        Albany, New York 12207
        For the Plaintiffs

(Appearances continued on next page)

1    **A P P E A R A N C E S** (Cont'd):

2

3        REM LAW, LLP
         BY:  RAJIV D. PARIKH, ESQUIRE
4        1 Boland Drive, Suite 101
         West Orange, New Jersey 07052
         For the Plaintiffs
5

6        TROUTMAN PEPPER LOCKE, LLP
         BY:  MELISSA CHUDEREWICZ, ESQUIRE
7        BY:  MICHAEL A. SCHWARTZ, ESQUIRE
         301 Carnegie Center, Suite 400
8        Princeton, New Jersey 08540
         For Defendants Deluxe Corporation; DM Group, Inc.;
9        RocketReach, LLC; Property Radar, Inc.

10

         COOPER, LLC
11       BY:  RYAN  J. COOPER, ESQ.
         108 N. Union Avenue, Suite 4
12       Cranford, New Jersey 07016
         For the Defendant Labels & Lists, Inc.
13

14       BLANK ROME, LLP
         BY:  THOMAS P. CIALINO, ESQ.
15       One Logan Square
         Philadelphia, Pennsylvania 19103
16       For the Defendants Belles Camp Communications, Inc.
         and Cybo Company
17

18       WADE CLARK MULCAHY, LLP
         BY:  BRIAN T. NOEL, ESQUIRE
19       1515 Market Street
         Suite 2050
20       Philadelphia, Pennsylvania 19102
         For the Defendant Delvepoint, LLC
21

22       GREENSPOON MARDER, LLP
         By:  KELLY M. PURCARO, ESQUIRE
23       1037 Raymond Boulevard, Suite 900
         Newark, New Jersey 07102
24       For Defendants Joy Rockwell Enterprises, Inc.
         Accuzip, AGR Marketing, Alesco, Amerilist, Darkowl, REDX,
25       Searchbug, TrueSoftware, US Data

1    **A P P E A R A N C E S** (Cont'd):

2

3       CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
        By:  JOHN E. MACDONALD, ESQUIRE
4       100 Charles Ewing Boulevard, Suite 140
        Ewing, New Jersey 08628
5       For Defendants Restoration of America, Voter
        Reference Foundation LLC, and Accurate Append, Inc.

6

7       GREENBERG TRAURIG, LLP
        BY:  AARON VAN NOSTRAND, ESQUIRE
8       500 Campus Drive, Suite 400
        Florham Park, New Jersey 07932
9       For Defendants GoHunt and Brooks Integrated Marketing

10      ZWILLGEN, PLLC
        BY:  SUDHIR RAO, ESQUIRE
11      183 Madison Avenue, Suit 1601
        New York, New York 10016
12      For Defendant Lighthouse List Company, LLC, et al

13

14      THOMPSON HINE, LLP
        BY:  JENNA SCHNEIDER, ESQUIRE
15      312 Walnut Street, Site 2000
        Cincinnati, Ohio 45202
16      For Defendant Fortnoff Financial, LLC

17      RKW LAW GROUP
        BY:  H. MARK STICHEL, ESQUIRE
18      10075 Red Run Boulevard, Suite 401
        Owings Mills, Maryland 21117
19      For Defendant E-Merges.com

20      MANATT PHELPS & PHILLIPS, LLP
21      BY:  MATTHEW F. BRUNO, ESQUIRE
        7 Times Square
22      New York, New York 10036
        For Defendants Smarty, LLC and Sierra Creative Systems
23

24

25

1    <u>**A P P E A R A N C E S**</u> (Cont'd):

2

3        MULLEN COUGHLIN, LLC
         BY:  MICHAEL W. JERVIS, ESQUIRE
4        426 W. Lancaster Avenue, Suite 200
         Devon, Pennsylvania 19333
5        For Defendant PublicNSA, LLC

6        REED SMITH, LLP
         BY:  DAVID G. MURPHY, ESQUIRE
7        506 Carnegie Center, Suite 300
         Princeton, New Jersey 08540
8        For Defendant Sterling Data Company, LLC

9

10       KNUCKES KOMOSINSKI & MANFRO, LLP
         BY:  JOHN E. BRIGANDI, ESQUIRE
11       600 East Crescent Avenue, Suite 201
         Upper Saddle River, New Jersey 07677
12       For Defendant PeopleWhiz, Inc.

13       RIKER DANZIG, LLP
         BY:  OMAR MAROUF, ESQUIRE
14       7 Giralda Farms, Suite 250
         Madison, New Jersey 07940
15       For Defendant Melissa Data Corp.

16

17       BUCHANAN INGERSOL & ROONEY, P.C.
         BY:  KRISTA A. ROSE, ESQUIRE
18       50 S. 16th Street, Suite 3200
         Philadelphia, Pennsylvania 19102
19       For Defendant Zillow Group, Inc.

20       GIBBONS, P.C.
         BY:  KEVIN R. REICH, ESQUIRE
21       One Gateway Center
         Newark, New Jersey 07102
22       For Defendant Equimine, Inc.

23

24

25

```
 1    A P P E A R A N C E S  (Cont'd):

 2

 3         KAUFMAN DOLOWICH, LLP
           BY:  TIMOTHY M. ORTOLANI, ESQUIRE
 4         Court Plaza North
           25 Main Street, Suite 500
 5         Hackensack, New Jersey 07601
           For Defendant Spy Dialer, Inc.

 6

 7         LAW OFFICES OF JARED WICHNOVITZ, P.C.
           BY:  JARED M. WICHNOVITZ, P.C.
 8         50 Harrison Street, Suite 206
           P.O. Box 631
 9         Hoboken, New Jersey 07030
           For Defendant Greenflight Venture Corp.

10

11         WOOD SMITH HENNING & BERMAN, LLP
           BY:  JARED K. LEVY, ESQUIRE
12         5 Waller Avenue, Suite 200
           White Plains, New York 10601
13         For Defendants Accudata Integrated Marketing, Inc.;
           Alumnifinder; ASL Marketing, Inc., College Bound
14         Selection Service; Compact Information Systems, LLC;
           Deepsync Labs; Homedata; Student Research Group

15

16         FREEMAN MATHIS & GARY, LLP
           BY:  ANDREW W. SHEPPARD, ESQUIRE
17         3 Executive Campus, Suite 350
           Cherry Hill, New Jersey 08002
18         For Defendant First Direct, Inc.

19         BALLARD SPAHR, LLP
           BY:  MARCEL S. PRATT, ESQUIRE
20         1735 Market Street, 51st Floor
           Philadelphia, Pennsylvania 19103
21         For Defendants Thomson Reuters Enterprise Centre GMBH and
           West Publishing Corporation
22

23         STINSON, LLP
           BY:  RICHARD J. LOMUSCIO, ESQUIRE
24         140 Broadway, Suite 2330
           New York, New York 10005
25         For Defendant i360, LLC
```

*United States District Court*
*District of New Jersey*

1    **A P P E A R A N C E S** (Cont'd):

2

3          NEW JERSEY OFFICE OF ATTORNEY GENERAL
          DIVISION OF LAW, DATA PRIVACY AND CYBERSECURITY
          BY:  PATRICK J. MISALE, ESQUIRE

4          124 Halsey Street, 5th Floor
          Newark, New Jersey 07101

5          For Intervenor Attorney General of New Jersey

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Proceedings

```
 1        (PROCEEDINGS held in open court before The Honorable

 2   HARVEY BARTLE, III, United States District Judge, at

 3   9:59 a.m.)

 4            THE COURTROOM DEPUTY:  All rise.

 5            THE COURT:  You may be seated.

 6            Pursuant to the Court's order of August 25th, the

 7   purpose of our gathering today is to have a status conference

 8   to see where we go from here with all the cases.  By my

 9   calculation, I think there are 52 cases and they break down

10   into various categories.

11            We have 29 cases where all the (12)(b)(6) motions

12   have been decided and there are no other pretrial motions

13   pending.

14            There are 13 cases where the Court has before it

15   motions under Rule 12(b)(2) for lack of personal jurisdiction.

16   There's one case, the Fortnoff case, 24-4390 which has been

17   stayed pending settlement.  And there are nine cases, which

18   were filed more recently than the other cases, which have been

19   stayed.

20            So we have these various categories and they all

21   involve different issues, of course.

22            So why don't we start with the 12(b)(2) cases.  The

23   full and complete answers to interrogatories were due, I

24   think, on September the 3rd and I will ask plaintiff's counsel

25   what would you like to do going forward on those cases.
```

1          MR. SHAW:  Good morning, your Honor.

2          THE COURT:  Good morning.

3          MR. SHAW:  Adam Shaw for the plaintiffs.

4          Yes, we have gotten supplemental disclosures from

5    those parties that you ordered that from, and we'd like to

6    continue -- we'd like to continue with the personal

7    jurisdiction discovery.  We'd like to take some limited

8    depositions of these defendants and then proceed to filing a

9    motion.

10          THE COURT:  All right.  There are 13 cases.  You want

11   to take depositions in all 13 cases?

12          MR. SHAW:  Yes, your Honor.  If there's a way to --

13   we think it can be very limited and focused.  I'm not sure

14   that there's a way to combine them in any way.

15          THE COURT:  Right.

16          MR. SHAW:  Maybe there -- we would be happy to do

17   that if the defendants concede that, we're happy to do them

18   kind of same two -- two in the same day and have defendants at

19   the same location or other types of things that could get --

20   could be --

21          THE COURT:  So what would you do, 30(b)(6)

22   depositions?

23          MR. SHAW:  I think it would be 30(b)(6) and some of

24   these organizations are small enough that it would be either

25   -- 30(b)(6) is the right way to do it, yes.

1          THE COURT:  Right.

2          So what time frame do you propose?

3          MR. SHAW:  Really, based on schedules with the

4    defendants, we can get out the notice within a few days from

5    now; and, you know, over the next 30 days or so, take the

6    depositions if we can do that.

7          THE COURT:  So 30 days would take us to mid October?

8    So if we gave you until the end of October, would that --

9    counsel here for clients who have 12(b)(2) motions, any

10   objection to that time frame?

11         MR. VAN NOSTRAND:  Good morning.  Thank you, your

12   Honor.  Aaron Van Nostrand.  I represent GoHunt, and I sort of

13   coordinate some of the personal jurisdiction defendants, but

14   of course I do not speak for all of them.

15         THE COURT:  Sure.

16         MR. VAN NOSTRAND:  So we believe that the -- you've

17   given -- what's happened before the Third Circuit and the

18   certification order to the Supreme Court, which really puts

19   into cross hairs the issue of, you know, what is the mens rea

20   standard under the statute?  Is there a mens rea standard

21   under the elements of Daniel's Law?

22         Given that that has occurred, we believe that the

23   personal jurisdiction motion should be stayed pending rulings

24   from the Supreme Court; and then, once that's sent back to the

25   Third Circuit, until the Third Circuit rules regarding, you

```
 1   know, what is the standard under Daniel's Law.
 2             THE COURT:  Well, what's the --
 3             MR. VAN NOSTRAND:  The reason --
 4             THE COURT:  Yeah, what's the relevance of that to
 5   personal jurisdiction?
 6             MR. VAN NOSTRAND:  Sure.  So Atlas has taken the
 7   position that the Calder effects test under Third Circuit law
 8   applies to the personal jurisdiction motion filed by
 9   defendants.  The only way that the Calder effects test applies
10   is if this is -- Daniel's Law is an intentional tort.
11             So plaintiffs have briefed -- Atlas has briefed that
12   in their motion to compel against the personal jurisdiction
13   defendants.  The personal jurisdiction defendants have opposed
14   that motion saying, well, that's -- Daniel's Law does not
15   include an intentionality element and has relied upon your
16   Honor's ruling on the First Amendment motion that there is a
17   negligence base standard.
18             THE COURT:  Right.
19             MR. VAN NOSTRAND:  That's the exact issue that is
20   going forward before the Supreme Court right now on the
21   certification order.  Is there a mens rea requirement and what
22   is it?
23             If the Court, the Supreme Court finds that there is
24   an intentionality element, a knowledge element, under Daniel's
25   Law, then that is relevant to whether the Calder effects test
```

1    applies.

2            If the Supreme Court finds that there is

3    no intentionality element, and if there's a negligence

4    standard or no mens rea standard at all, that, of course,

5    impacts whether the *Calder* effects test applies.

6            So without knowing what the standard is under

7    Daniel's Law and what test applies to personal jurisdiction,

8    the personal jurisdiction motions before your Honor, it's --

9    it would be inefficient and unfair for defendants to move

10   forward with additional discovery, especially depositions,

11   when Mr. Shaw is saying the depositions are going to be

12   limited, but limited to what?

13           If -- you know, plaintiffs may very well want to go

14   into whether defendants had certain levels of knowledge of the

15   requirements of Daniel's Law, of other privacy statutes.

16   Certainly, there's personal jurisdictional discovery as to

17   those questions.

18           So those questions would be irrelevant if the Supreme

19   Court finds that this is not -- that Daniel's Law is not

20   intentional tort and, thus, the *Calder* effects test applies.

21           If that's the analysis, then the only questions or

22   the real relevant questions on the personal jurisdiction

23   motions are whether defendants have personally availed

24   themselves of New Jersey, whether they have contacts within

25   New Jersey, and there would be no need to get into whether

Proceedings                                    22

```
 1   defendants had knowledge of Daniel's Law or what they did
 2   after they received, what these defendants did after they
 3   received the Daniel's Law takedown request.  And that was
 4   another issue that came up in the personal jurisdiction
 5   discovery served by plaintiffs.
 6            So we believe there should be a stay of discovery and
 7   briefing on the motions until we know what the standard is
 8   under the statute and whether there is a mens rea requirement
 9   under the statute.
10            THE COURT:  What about a hybrid solution?  We go
11   forward with the discovery just so we get that completed and
12   then we could stay any further briefing pending a decision by
13   the New Jersey Supreme Court?
14            MR. VAN NOSTRAND:  Well, we're --
15            THE COURT:  In other words, it was originally
16   suggested that we stay the whole thing until the issue on
17   constitutionality was decided.  I just think that it's
18   important to try to move this along.  Obviously, we don't
19   want to cause needless expense.
20            MR. VAN NOSTRAND:  And certainly, your Honor, that is
21   the issue.  Potentially, the needless expense.
22            We've gone forward with paper discovery.  The
23   personal jurisdiction defendants have produced documents.
24   They've entered interrogatories.  We've briefed the motion to
25   compel which, you know, is -- those are all activities that
```

1  would not be necessary if the Third Circuit ultimately finds

2  that Daniel's Law is unconstitutional, so we -- but we believe

3  we've taken it as far as it reasonably makes sense to take it

4  right now.

5         We've done the paper discovery.  We've answered the

6  interrogatories.  It would be extremely burdensome to go

7  forward with these depositions.

8         And it's not only the cost of the deposition.  If

9  plaintiffs serve their 30(b)(6) notice, there's going to be

10  back-and-forth and meet-and-confers over what the scope of the

11  30(b)6 notice is.  We're talking about prepping witnesses.

12  These are all witnesses -- our clients that are not based in

13  New Jersey.  It's potentially travel costs for attorneys and

14  maybe witnesses, if plaintiffs insist on the depositions going

15  forward in New Jersey.

16         So it's not just the expenses of sitting for a

17  four-hour deposition.  It's all that preparatory work that

18  would go forward on a 30(b)(6) deposition, and where we don't

19  really know what the scope of the deposition should be because

20  we don't know what test applies on the personal jurisdiction

21  motions.

22         So if Mr. Shaw's position is that these limited

23  depositions could be taken within 45 days of today, why not

24  wait until we have a ruling from the Third Circuit; and then,

25  if the Third Circuit sends it back down to your Honor and

1   finds that Daniel's Law is constitutional, then we know what

2   the standard is and we could take the depositions on an

3   expedited basis after that.

4            THE COURT:  Mr. Shaw?

5            Does anybody else wish to speak on behalf of the

6   defendants?

7            MR. RAO:  Yes.

8            THE COURT:  All right.  Go ahead.  And then, we'll

9   hear from Mr. Shaw.

10           MR. RAO:  Good morning, your Honor.

11           THE COURT:  Good morning.

12           MR. RAO:  Sudhir Rao for defendant Lighthouse List

13  Company LLC, of ZwillGen.

14           The only point I'd add to Mr. Van Nostrand's

15  presentation is that I think there is a meaningful risk of

16  potential disputes about the scope of depositions.

17           I'll just note that at the beginning of, sort of, the

18  jurisdictional discovery period, your Honor sort of encouraged

19  plaintiffs to propound limited discovery, and what that

20  resulted in was, I would say, dozens of interrogatories and

21  requests for production that resulted, in turn, in a very

22  costly motion to compel briefing that resulted in your Honor

23  denying plaintiff's motion to compel as to all of their

24  document requests.

25           And so I think there's some reason to believe that

Proceedings

 1    there may well be disputes about the scope of the depositions

 2    plaintiffs seek to take even though they describe them as

 3    limited right now.  And I think that counts in favor of

 4    proceeding in the manner that Mr. Van Nostrand and I would

 5    like.

 6              THE COURT:  Okay.  Thank you.

 7              Mr. Shaw?

 8              MR. SHAW:  Thank you, your Honor.  Adam Shaw for the

 9    plaintiffs.

10              All of their argument presumes that we're only

11    alleging negligence here and that's something that the New

12    Jersey Supreme Court may deal with, but we've alleged willful

13    acts and, you know, punitive damages.  So we've already

14    alleged intentional conduct here, so we don't have to wait for

15    New Jersey to decide whether negligence is the standard or not

16    because, at least, as to the claims that we've alleged,

17    punitive damages, that's not going to affect it.

18              So we think the claims are going forward in any event

19    because that's what the Third Circuit said.  They didn't say

20    anything about claims that didn't deal with negligible

21    conduct.  They didn't address whether *Florida Star*, you know,

22    applies with whatever our claims are asserting, intentional

23    and willful conduct, that part of the statute.

24              In any event, I think what they're arguing for here

25    is something way short of a hybrid approach and what they're

 1   really arguing for here is a stay.  And if you look at kind of

 2   the elements of a stay, I don't think that they would meet it.

 3   I mean, your Honor's already made rulings on the

 4   constitutionality, that's already passed up.  So we don't

 5   think there's a likelihood of success on the merits of what

 6   they're doing, nor do we think the equities weigh in their

 7   favor.  We think that there's still defendants who are

 8   currently disclosing information in violation of the law.

 9          Really, the only thing they're talking about is some

10   attorney-and-client discovery time, and I think your Honor

11   knows that when you deal with stays, you know, that kind of

12   burden really doesn't get to weigh very heavily when you're

13   comparing the various burdens on a stay.

14          Now, I don't mean to suggest that you shouldn't be

15   practical and you shouldn't be efficient.  I just think that

16   what they're talking about is minimal burdens and there

17   shouldn't be some kind of formal stay, and I think your Honor

18   alluded to it.  You already tried this once before.

19          THE COURT:  Well, as I say, there's one thing about

20   discovery.  It seems to me that, at least in terms of the

21   briefing, it would make sense to wait for the certification

22   issue to be decided.

23          In other words, New Jersey Supreme Court might not

24   take it, I suspect they will, and then they'll be briefing in

25   the New Jersey Supreme Court and argument on the standard

1    liability.  So that ruling is not likely to come down, I would

2    imagine, until sometime in 2026, just based on the timing with

3    the other Daniel's Law case which the Supreme Court of New

4    Jersey had.  I think it was about three months, wasn't it,

5    between argument and decision?

6              MR. SHAW:  Yes, your Honor.

7              THE COURT:  And then, of course, there had to be the

8    briefing that has to be filed.  So we're probably talking

9    about the spring of 2026 before we know what the final

10   decision is on that.

11             MR. SHAW:  Yeah, we don't disagree with your -- the

12   assessment of the potential schedule.

13             What I think works and has worked in other

14   situations, maybe your Honor has done this in -- and Dale's

15   even been part of, is the briefing's on us.  Right?  That's

16   not going to burden the Court.  We can do the depositions.  We

17   can tee up any of the issues.  We don't think that we're going

18   to have issues on what the scope of the depositions are going

19   to be.  We think that that could be worked out fairly

20   efficiently.

21             In fact, the defendants took, you know, eight hours

22   of deposition of our client and, you know, we got to the end

23   of the deposition without having to call the Court about any

24   kind of disputes.

25             So we think we can do all kind of the legwork leading

Proceedings

1   up to presentation of the motion to your Honor.  Like I said,

2   that's on us.  They've already briefed their half of the

3   motion.  They moved under 12(b)(6).

4            THE COURT:  Well, the next briefing is yours.  You're

5   right.

6            MR. SHAW:  Yeah.  So we're -- and I think it makes

7   kind of sense to have those papers moving along.

8            Now, your Honor, as we're going through that process,

9   if you feel that there's some -- if the Court hasn't -- New

10  Jersey hasn't ruled and you feel like there's some reason to

11  kind of hold off on getting the motions presented to you, then

12  maybe there would be a reason at that time to kind of slow

13  things down.  But I think at this point it's really on us and

14  it's a minor burden, really, to these parties.

15           And again, if they are going to stand up here and say

16  well, we have to do some work, I would urge your Honor to

17  consider that in the sense of does that really merit stay and

18  I think your Honor's, you know, past this.  We tried to deal

19  with this a little bit before, this hybrid approach, when it

20  was the interlocutory appeal, the Third Circuit, we all

21  predict things are going to take time and whether we can do

22  it, and I think, you know, moving forward helps this case and

23  helps the officers that are, you know, damaged.

24           THE COURT:  Anything further?

25           MR. VAN NOSTRAND:  Yes, Aaron Van Nostrand.  Just

1    quickly, your Honor.

2              On the equities point, and I know defendants have

3    made this point before, all the defendants, my understanding

4    is, at least certainly my clients and the clients of the other

5    attorneys who I have been speaking with in the defense group

6    believe they are now in compliance with Daniel's Law, that the

7    information is not disclosed.  We have repeatedly asked Atlas

8    if they believed that any defendant is not in compliance, let

9    them know.  So the equities are not in Atlas's favor on this

10   because it's defendants' belief that the information is not

11   being disclosed any more.

12             And on the point of well, it's just money.  It's not

13   just money.  It's information that Atlas would be asking of

14   our clients, sensitive information, that could be irrelevant

15   depending on how the Supreme Court rules; information that

16   Atlas may not be entitled to if there's no mens rea

17   requirement at all or if there's a negligence-based standard

18   that the Supreme Court says applies to Daniel's Law;

19   information about, you know, what defendants did in relation

20   to privacy statutes and other jurisdictions, which is what

21   they've asked for; what the internal decision-making process

22   was on defendants about whether or not to respond to the

23   Daniel's Law request or take down the information.

24             THE COURT:  Well, some of those questions you may

25   object to regardless of what the standard is.

Proceedings

1       MR. VAN NOSTRAND:  Well, we may or may not, but if we

2  know that there's no mens rea requirement at all, then those

3  questions are not relevant to the case at all and certainly

4  not in personal jurisdiction discovery.

5       And then as far as briefing, how can we brief the

6  personal jurisdiction issue when plaintiffs are saying that

7  it's an intentional tort?

8       THE COURT:  I think you have a compelling argument

9  there.

10      MR. VAN NOSTRAND:  Yeah.

11      THE COURT:  I think the briefing ought to be stayed.

12 The question is do we do some of the legwork, the discovery

13 now so -- I mean, I got involved in this well over a year ago,

14 I've forgotten what the date was, but I think it's important

15 to move it along.  I recognize the whole house of cards could

16 fall if the Court of Appeals find the whole statute

17 unconstitutional, clearly, and that may not be the last word

18 because I would suspect there would be petitions for

19 certiorari, regardless of which way it comes out.

20      But there is some reason, I think, to keep the ball

21 moving here.  And the question is, in your case with respect

22 to personal jurisdiction, whether I put a halt now or whether

23 to allow the depositions to go forward and then I would be

24 inclined at that point to say, all right, that's enough until

25 we get more clarification either from the Third Circuit or the

Proceedings

```
 1   Court of Appeals and that's, to me, it seems to me that's the
 2   issue I'm going to grapple with.
 3            MR. VAN NOSTRAND:  I understand the desire to keep
 4   the cases moving and I think we have done that with respect to
 5   paper discovery and the interrogatories on the motions.
 6            I guess the only other point I would make is the only
 7   time that we would be saving by doing the depositions now
 8   instead of waiting until we have a ruling from the Supreme
 9   Court and the Third Circuit is a period of 45 to 60 days.
10   Plaintiffs are saying that they can serve the deposition
11   notice.  We can have meet-and-confers over the deposition
12   notice over the next one or two weeks.  If they need 30 days
13   to take I guess, you know, 12 or 13 four-hour depositions.
14            We're talking about a time period of 30 to 45 days to
15   take these depositions, which, in the scheme of things, is not
16   a terribly long time if we have to wait.  And at least at that
17   point we'll know what the playing field looks like, we will
18   know what the mens rea requirement is, we'll have a better
19   idea as to what standard applies to the personal jurisdiction
20   motions, and that will, you know, hopefully focus the parties
21   during the depositions and reduce the number of disputes
22   during the depositions, and we'll know what questions are
23   relevant and what questions are not and maybe the depositions
24   at that point won't take four hours at that point, maybe
25   they'll take two hours.  So in the scheme of things, doing the
```

Proceedings

 1    depositions now just to save 45 to 60 days on the back end

 2    doesn't seem like a terribly long time.

 3           THE COURT:  All right.  I will take that under

 4    advisement and I will rule on that topic.

 5           All right.  The next large group of cases is the one

 6    where the Rule 12(b)(6) motion have all been decided and there

 7    are no Rule 12(b)(2) motions and that comprises, I think,

 8    29 cases.

 9           So Mr. Shaw, Mr. Parikh, I will hear from you first

10    on how we move those forward.

11           MR. PARIKH:  Good morning, your Honor.  Raj Parikh on

12    behalf of the plaintiffs.

13           Your Honor, I think from our perspective and I think

14    we all anticipate the defense team is going to say that those

15    issues should be stayed as well, but we think at a minimum we

16    can start working on Rule 26 disclosures, the parties can

17    start meeting and conferring on discovery issues and come up

18    with a proposed schedule for the Court over the next, you

19    know, one or two months after Rule 26 disclosures are

20    exchanged to be able to have some type of merits discovery

21    schedule that is staged so that it can move in parallel along

22    with the briefing that deals with this mens rea issue.

23           With respect to that briefing, Judge, I think what

24    we've seen throughout is your Honor's done a great job in

25    terms of managing all these cases and moving them forward, but

Proceedings

```
 1   I don't believe we're at an inflection point right now where
 2   time being spent on some of these issues is going to be wasted
 3   time.
 4           As Mr. Shaw said, whether the Third Circuit, whether
 5   the New Jersey Supreme Court accepts this question, which I
 6   suspect we'll know within the next month, and assuming that
 7   they do accept the question and move that briefing forward.
 8           THE COURT:  You mean the New Jersey Supreme Court?
 9           MR. PARIKH:  Correct, right, so the New Jersey
10   Supreme Court right now, Judge, is getting papers from the
11   parties today.  It then makes a decision as to whether it will
12   accept the Third Circuit's certified questions.
13           THE COURT:  What is usually the time table on that?
14   Do you know?
15           MR. PARIKH:  You know, Judge, I haven't seen like a
16   specific timetable.  There was another question from the Third
17   Circuit certified to the New Jersey Supreme Court in July and
18   we haven't been able to actually, on an insurance matter, we
19   haven't been able to identify whether they have accepted or
20   rejected that question at this point.
21           So it could be, you know, 30 days.  I think given the
22   issues here, I think it will be relatively quick.
23           All that's submitted to them today from the parties
24   is a five-page letter.  So it's, you know, very kind of short.
25           THE COURT:  In other words, the parties have an
```

Proceedings

1    opportunity under the New Jersey Rules to respond to whether

2    the Court ought to accept the invitation to decide the case.

3         MR. PARIKH:  That's right, that's right, and whether

4    the questions are formulated properly and what the public

5    interest would be.

6         I suspect that all of the parties, meaning plaintiffs

7    and the defendants and the Attorney General's office, are all

8    going to encourage the Court.  I can tell you that the

9    plaintiffs are going to be saying today absolutely you should

10   take up this question, it's important, and let's move it

11   forward.

12        But as Mr. Shaw said, your Honor, that's not --

13   irrespective of how that turns out, it's not going to

14   ultimately resolve these cases because in every single one of

15   these cases, the plaintiffs have alleged that the conduct of

16   the defendants was not only negligent but was also willful and

17   purposeful.

18        And so when we talk about the mens rea element that

19   the Third Circuit has referenced in its certified order to the

20   New Jersey Supreme Court, it only deals with one subpart of

21   the statute, right?  It only deals with the part related to

22   liquidated damages and whether that's a strict liability

23   component or whether it's a negligence component.

24        The rest of the statute deals with willfulness and

25   the ability for plaintiffs to seek damages for willful

Proceedings

```
 1   conduct.  It deals with attorneys' fees and it deals with
 2   equitable relief, all of those things in addition to the
 3   liquidated damages applied in these cases.
 4         So from our perspective we can move in the same
 5   structured way that your Honor has done for the last 18 or
 6   19 months these cases have been before you, to move these
 7   other 29 cases forward in terms of merits discovery with
 8   Rule 26.
 9         THE COURT:  So what are you proposing?  You began
10   with interrogatories and initial disclosures.
11         MR. PARIKH:  Well, first I think we can do Rule 26
12   disclosures.  And once we get those done, I think the parties
13   can come up with, you know, a schedule for interrogatories and
14   document demands, right.
15         There may be, for some of the defendants, for
16   example, there may be affiliated or ancillary entities that
17   are not named in the current complaints that should be added
18   in, right, because they, in fact, are the entity that's
19   responsible for the disclosure or the collection of the
20   covered persons information as opposed to the defendant that's
21   named in the complaint.  Those are all things that we would
22   learn through that Rule 26 process; and then if we need to
23   make amended pleadings or we need to do other kind of, you
24   know, things like that, we can stage those things out so that
25   the cases move forward in an orderly way and we continue to
```

1   make progress toward the goals while this briefing is

2   happening with respect to New Jersey Supreme Court and the

3   Third Circuit.

4           THE COURT:  So what do you suggest with respect to a

5   timetable?

6           MR. PARIKH:  I think, Judge, that the parties can

7   exchange Rule 26 disclosures over the next 45 days.  Then can

8   meet and confer for 45 days after that to come up with a

9   proposed schedule, you know, essentially what would be done in

10  a Rule 16 conference, so a proposed joint discovery plan for

11  the cases that could include, you know, a set of common

12  defense interrogatories and document demands which has been

13  done in some of the other state court cases and then

14  supplementals that are specific to that defendant so that we

15  are moving things forward in an organized way.

16          Same thing from the plaintiff's side, you know,

17  interrogatories, document demands, a number of depositions,

18  etc.

19          THE COURT:  So in other words, if I would order

20  Rule 26 disclosure by a certain date and then require the

21  parties to submit a proposed schedule of further discovery by

22  a certain date and then we could see what that says and then

23  have another conference to move things forward.

24          MR. PARIKH:  That's right, Judge.  That would be our

25  proposal.

Proceedings

```
 1              THE COURT:  All right.  All right.  Let's hear from
 2     defense counsel on that subject.  Good morning.
 3              MS. CHUDEREWICZ:  Good morning, your Honor.  Melissa
 4     Chuderewicz from Troutman Pepper Locke.  I will be speaking on
 5     behalf of the defendants on this issue.
 6              Your Honor, we know that your Honor wants to move
 7     these cases forward.  However, we believe that the
 8     certification order is a significant development and that your
 9     Honor should continue the stay for these cases.  The Third
10     Circuit petition demonstrates there are serious concerns with
11     Daniel's Law and the way it was written including the absence
12     of a mens rea requirement and an application of New Jersey's
13     constitutional Avoidance Doctrine, which has been applied
14     inconsistently according to the petition.
15              Given the Third Circuit's inability to interpret
16     Daniel's Law and rule on the issues raised, the parties
17     shouldn't have to expend significant time and resources --
18              THE COURT:  I'm not sure they --
19              MS. CHUDEREWICZ:  -- which I understand --
20              THE COURT:  I don't think they would concede their
21     inability to do it.  I think there's a certification process
22     to allow the New Jersey Supreme Court to decide it.
23              MS. CHUDEREWICZ:  It is fair enough, but they have
24     moved and asked for the --
25              THE COURT:  Oh, I understand.
```

 1              MS. CHUDEREWICZ:  -- New Jersey Supreme Court to do

 2      so, your Honor, and we think that demonstrates that they have

 3      serious concerns with the statute as written and we should

 4      permit the whole process to play out.

 5              I hear what Mr. Parikh is saying where we can do

 6      Rule 26 disclosures and then we get together to discuss other

 7      discovery, but it's broader than what the New Jersey Supreme

 8      Court is going to be deciding.  This entire statute may be

 9      found unconstitutional and in which case we have now expended

10      time and money to start this process of discovery.  You can't

11      put the air back in the balloon here.  We will have started

12      down the road here and we think that it is better to stay the

13      cases, to continue the stay that your Honor put into place in

14      July in these cases.

15              And I know that if you take it under advisement, we

16      would request the opportunity to brief the stay issue.  We

17      think that it is significant, a significant issue to our

18      clients and it's important to have a full record, we believe.

19              THE COURT:  Anyone else wish to speak on the subject?

20      Yes, sir.  Thank you.

21              MR. VAN NOSTRAND:  Just briefly, your Honor.  Aaron

22      Van Nostrand again.

23              Just in response to Mr. Parikh's characterization of

24      the Third Circuit certification order.

25              The order does not only limit it to whether there's a

1    mens rea requirement under one element of Daniel's Law.  What

2    the question is:  Does Daniel's Law, N.J. Statute Annotated

3    56:8-166.1 (2024), does Daniels's Law require a mens rea for

4    any of its elements?  Not just liquidated damages.  Not just

5    one division.  Any of its elements.  So what the Third Circuit

6    is asking the Supreme Court to do, look at the statute as a

7    whole.  Do any of the elements require mens rea, not just one

8    particular provision.

9            THE COURT:  All right.  Mr. Parikh.

10           MR. PARIKH:  Thank you, your Honor.

11           THE COURT:  Wait a minute.  Any other defense

12   counsel?

13           MS. PURCARO:  Yes.

14           THE COURT:  Good morning.

15           MS. PURCARO:  Thank you, your Honor.  Kelly Purcaro,

16   Greenspoon Marder.

17           THE COURT:  Yes.

18           MS. PURCARO:  I have ten of the defendants that are

19   before you.

20           And just to continue on -- and apologies for using my

21   phone -- but to continue on with what counsel is just saying,

22   there are two questions before the Supreme Court.

23           The first question, he read it correctly.

24           And the second question is, "If so," if there's a

25   mens rea for any of the elements, "what level of mens rea is

1    required for each element?"

2        So it is a much more robust scope that the Supreme

3    Court's looking at right now in terms of the mens rea.  It's

4    not limited to just one section.

5        Separately, in terms of a balancing of the harms, I

6    feel compelled to say because a number of my clients are very,

7    very small defendants, like very small, like less than a dozen

8    employees, some less than five, it is an extreme burden for

9    them to continue on to defend the case to the point where if

10   merits discovery does start, they likely will have to close

11   shop and so -- and that's what I'm told, I don't work there,

12   but I know for my end, I am not seeing the financial

13   wherewithal for at least half of my ten to continue on into

14   individual merits discovery.  They simply would not be able to

15   do it.  And as companies, they are not permitted to appear in

16   court pro se.  They are required to have counsel.

17           THE COURT:  Right.

18           MS. PURCARO:  So it truly could destroy a number of

19   businesses, all of whom have represented that they are in full

20   compliance, to the best of their knowledge, with Daniel's Law.

21       So I would propose that if there is a concern, at

22   least with my ten, that any of them are still violating

23   Daniel's Law or there is some danger or threat or some release

24   of information that we're not aware of, to please, please let

25   me know so we can address it immediately.

Proceedings

```
 1              I would think if there were a threat to the
 2    plaintiffs, that counsel would certainly have moved for an
 3    injunction to stop whatever ongoing threat for danger there
 4    is.  I know counsel is very concerned, as we all are, for
 5    people's safety, but if there is an ongoing disclosure that's
 6    creating a safety risk, I am more than willing to meet and
 7    confer with counsel to address it if it's any of my ten
 8    clients, which is a majority of those 30 cases, but I would
 9    say that the harm and balancing it to force folks into
10    discovery process that very well may bankrupt them versus
11    maybe let's talk if there is any harm to address and address
12    that harm now again -- again, I understand that all of my
13    clients are in complete compliance, if that is not true, I
14    will address it with them immediately -- but to force us into
15    merits discovery would be truly devastating for a large
16    majority of my clients.
17              THE COURT:  Well, how about a Rule 26 initial
18    disclosure?  Would that be an undue burden?
19              MS. PURCARO:  Some of them, at least two of them, are
20    right now at the point where they probably can't continue, so
21    I don't know if they could do that unless I can work for them
22    pro bono at this point.
23              So I just want your Honor to be aware.
24              THE COURT:  Thank you very much.
25              Anyone else on the defense side before I -- Mr.
```

Proceedings

1    Parikh?

2            MR. PARIKH:  Judge, Raj Parikh for the plaintiffs.

3            So just to respond to a couple of points.

4            So your Honor has read and can read the Third Circuit

5    order.  There's lots of information in there.  Judge Bibas,

6    you know, says maybe this is the type of situation in which we

7    don't even have to worry about the mens rea requirement.

8            THE COURT:  Right.

9            MR. PARIKH:  Right?  So, you know, we trust the Third

10   Circuit's doing the legal analysis, they put a lot of effort

11   into the briefing, it was expedited.  The argument was longer

12   than most Third Circuit arguments go.

13           THE COURT:  Right.

14           MR. PARIKH:  And the panel had very interesting

15   questions, so I don't fault the Court for wanting to do the

16   right analysis.

17           I will say that, you know, about a week before the

18   order was issued, there was a District Court decision from

19   West Virginia striking down the West Virginia Daniel's Law

20   which does not have a notice requirement on it.  And that

21   Court relied very heavily on your Honor's decision.  And I

22   think that from my perspective, the Third Circuit -- and I

23   think all of us know -- that this case has the potential of

24   going up to the U.S. Supreme Court.  They want to get it

25   right.  And what better way than to go ask New Jersey Supreme

1    Court to interpret its laws.

2            Now what we do know, when defense counsel talk about,

3    well, you know, the whole law to be unconstitutional, we

4    already know that the New Jersey Supreme Court has found

5    Daniel's Law to be facially constitutional by denying

6    Mr. Kratovil's as-applied challenge.

7            What the issue is that's before the Third Circuit

8    relates to this damages provision ultimately, not necessarily

9    the injunctive provision.  So when we talk about mens rea and

10   we talk about some of these other issues, it goes to very

11   specific elements.

12           So for us, we think the law in some part, even if the

13   defendants were successful, we don't think they will be, but

14   if they were successful in the arguments they raised before

15   your Honor and they've raised before the Third Circuit and we

16   know they are going to raise before the New Jersey Supreme

17   Court, we still think the statute will survive in some

18   meaningful way which is why discovery can move forward.

19           And we're not standing here saying to your Honor we

20   want to start depositions next week because we don't think

21   that would be reasonable.  We don't think it fits within the

22   pathway that your Honor has kind of laid out for these cases

23   in an organized way.

24           So, for us, Rule 26 disclosures, a joint discovery

25   plan, another conference is what makes sense over the next

1   60 days.  We think it's something that doesn't cost a lot of

2   money.  Maybe have defendants saying we want to file a motion

3   to stay and they want to spend money on that briefing, but

4   they don't want to do some personal jurisdiction discovery,

5   they don't want to do Rule 26 disclosures, which are really

6   the baseline when we talk about discovery under the Rules

7   here.

8         The last thing I will say is, Judge, with respect to

9   the notion of, you know, which defendants are in compliance

10  and which defendants are out of compliance, some of these

11  defendants it's very difficult to check on a regular basis

12  whether they are in compliance because they've now put up

13  roadblocks, right?  There's an inability to go and use

14  technology to scrape the website or you have to get another

15  log in and password for Atlas.  Right?  They now know what our

16  investigative tools have been because of the discovery they

17  were able to take here on the remand issue, and so they've

18  made it more difficult.

19        So we would encourage any defendant that believes

20  they are in compliance to just simply certify to that, that's

21  fine, and maybe that will change our posture with respect to

22  any of these defendants in terms of even voluntarily agreeing

23  to a stay if they are going to certify that they are fully in

24  compliance.

25        We're willing to have that discussion with them.

Proceedings

```
 1              The other thing I will say, your Honor, is that for
 2   smaller defendants we have offered to every lawyer in this
 3   room that if they want to have a discussion about resolving
 4   this case, we're more than willing.
 5              THE COURT:  Well, that's what I was wondering.
 6   Parties are still able to resolve cases I hope, technically.
 7              MR. PARIKH:  We have had some successful mediations
 8   with Magistrate Judge Arpert.  He's a retired magistrate judge
 9   in a law firm in northern New Jersey.  He's mediated about a
10   dozen cases and we've had some success in those cases.  We've
11   offered it to pretty much all counsel in this room.
12              If I haven't, I will offer it here on the record that
13   we're willing to have a settlement conversation, and some
14   defendants in this room have taken us up on those discussion
15   and others have said we're not interested.
16              So, from our perspective, there's nothing in terms of
17   what we're proposing that creates an undue burden, that
18   creates any prejudice to the defendants, that would outweigh,
19   by the way, the prejudice to the plaintiffs here who have
20   filed these cases, you know, over a year and a half ago and
21   are continuing really kind of in the infancy of what this case
22   is about.
23              So obviously we think that our stage proposal makes
24   the most sense and we're happy to defer to your Honor in terms
25   of what your Honor wants to do.
```

Proceedings

1          THE COURT:  Thank you.

2          Anyone else have anything to say on the 29 cases, the

3    12(b)(6) cases.  Yes?

4          MR. VAN NOSTRAND:  Your Honor, Aaron Van Nostrand

5    again.  I won't speak on behalf of all 29.  I will speak on

6    behalf of one:  My client, GoHunt.

7          We've already certified in answers to the personal

8    jurisdiction discovery when we took down -- when my client

9    took down the information, the protective information, under

10   Daniel's Law.  We've certified to that.

11         So we think based upon that, and we've never received

12   any information from plaintiffs that they disagreed with that

13   position, they've disagreed with that sworn interrogatory

14   response.

15         So in that circumstance, from at least my client's

16   perspective, there's no danger, there's no threat of harm to

17   covered persons under Daniel's Law.

18         So at least, based upon that, there may be other

19   defendants who are in this situation, too, who have already

20   certified that they are in compliance, we think, at least my

21   client should be entitled to a stay, at least based upon what

22   Mr. Parikh just said, that if the defendant certifies that

23   they are in compliance, then plaintiffs' position may change

24   as to whether or not a stay is required.

25         So at least for my client I would ask plaintiffs to

Proceedings

1  consent to a stay and ask your Honor to order that any

2  additional discovery, at least as to my client, GoHunt, should

3  not go forward.

4        MR. RAO:  Thank you, your Honor.  Sudhir Rao of

5  Lighthouse List Company.  Just a very few quick points and

6  response to Mr. Parikh's presentation.

7        THE COURT:  Sure.

8        MR. RAO:  The first is just to reject the false

9  equivalence between wanting a move to stay personal

10 jurisdiction discovery and somehow, you know, wanting to avoid

11 further progression of these cases.  Those are two plainly

12 consistent positions in trying to protect ourselves from

13 additional discovery that we don't think is warranted.  We

14 seek to protect our rights that the proposal would otherwise

15 infringe on.

16        And the second point is that Mr. Parikh's proposal as

17 to why the cases should progress and discovery should continue

18 rests on a pretty significant assumption that offending

19 provisions in Daniel's Law could be severed.  Right?  It is

20 entirely possible that the Court might determine that if

21 that's not possible, then the statute has to be struck down in

22 its entirety.  So the sort of predicate that his argument

23 rests on assumes that, you know, the Court can perform

24 judicial surgery and preserve potentially viable portions of

25 the statute and cut out others, that's an open question, and

Proceedings

1    that's, I think, at least one of the flaws in potentially

2    proceeding in these cases and allowing discovery on portions

3    of the statute when, in fact, the entire thing might be struck

4    down.

5              THE COURT:  Thank you.

6              MS. PURCARO:  Thank you, your Honor.  Kelly Purcaro.

7              Just a couple of points I wanted to raise before your

8    Honor.

9              In terms of the potential harm to the plaintiffs and

10   the concern about moving the case forward, I would say,

11   respectfully, if the investigators for the plaintiffs cannot

12   themselves find the information of the covered persons, how is

13   there possibly a threat of harm of those covered persons'

14   information being exposed?  It's clearly not available.

15   Right?

16             Like, I don't understand how there can be a threat to

17   people of their information being disclosed, but even our

18   investigators can't figure out if they are disclosing it.

19   That is just beyond the pale.

20             This law was supposed to protect people from bad guys

21   being able to find them and hurt them.  So if the information

22   is not findable, there's no threat.

23             In terms of compliance, I represented multiple times,

24   as have other defendants, that we are in compliance.  The

25   burden is on the plaintiff to show eventually that it's more

 1  likely than not that they weren't.  We have made motions to

 2  dismiss based on an absence of any factual allegations.

 3          THE COURT:  You are arguing the merits of the case.

 4          MS. PURCARO:  But to say that these folks are going

 5  to be forced into discovery to continue on, even though it may

 6  bankrupt them, when there's no danger to anyone else and no

 7  evidence of noncompliance is egregious.

 8          THE COURT:  But, see, there are a lot of assumptions

 9  you make.  I don't know whether your clients are in

10  compliance, and I think you're acting in good faith when you

11  tell me that, but the plaintiffs have a right to find that out

12  for themselves, don't they?

13          MS. PURCARO:  Sure.  And they've represented that

14  there's noncompliance, but without specificity.

15          THE COURT:  If plaintiffs were required to take the

16  word of every defense lawyer and every case about what was

17  going on, I mean, that's not -- sort of an absurd result,

18  isn't it?

19          MS. PURCARO:  No, but if they've represented to your

20  Honor that their own investigators cannot determine whether or

21  not the information is being disclosed, how can there possibly

22  be a concern of noncompliance?

23          THE COURT:  Well, there's also a question of whether

24  you have violated the statute.  You may now be in compliance,

25  but you may not have been in compliance for a period of time.

1      MS. PURCARO:  Right.

2          THE COURT:  And the statute provides for damages even

3   though you later seen the light and are complying.  Am I right

4   about that?

5          MS. PURCARO:  Correct, so what we're talking about

6   right now is whether or not there should be a stay right now

7   and what are the risks and benefits to a stay right now.  So

8   if it was a past harm and there's no threat, but in continuing

9   on in discovery, it may actually harm these businesses when

10  there's no threat, what is the purpose for pushing through?

11         THE COURT:  Well, because they are seeking damages

12  for what had occurred in the past.

13         MS. PURCARO:  Sure.

14         THE COURT:  It's like any case.  An automobile

15  accident case, the harm has already been done.  That doesn't

16  mean you stay the case.

17         MS. PURCARO:  But the harm will remain the same when

18  it's briefed and when discovery continues, whether it's now or

19  in six months.

20         THE COURT:  But the plaintiffs claim that there have

21  been disclosures, correct --

22         MS. PURCARO:  Yes.

23         THE COURT:  -- of information about covered persons,

24  and that's the harm.  Somebody has that information.  They may

25  act upon it the next day or they may wait a year or two to act

Proceedings

1  upon it.  Right?  Am I incorrect about that?  If your client

2  has violated the statute --

3          MS. PURCARO:  Right.

4          THE COURT:  -- then they are liable, assuming it's

5  upheld.

6          MS. PURCARO:  Sure.

7          THE COURT:  And the fact that you're not doing it now

8  doesn't mean you haven't done it in the past and that you're

9  not liable for damages.

10         And as a result of that, the plaintiffs are entitled

11 to discovery to find out what your client has done.

12         MS. PURCARO:  I agree.

13         THE COURT:  Correct?

14         MS. PURCARO:  I agree.  But I don't see any harm in

15 taking the discovery at a later point when we're clear about

16 what these elements are and for which -- the mens rea for

17 each.

18         THE COURT:  Well, that's a different question.

19         MS. PURCARO:  And so I'm -- I'm not saying they are

20 not entitled to discovery.  I'm saying whether we do it now

21 and push folks into a place where they may have to close up

22 shop versus doing it later --

23         THE COURT:  And the question is --

24         MS. PURCARO -- in the balance of the equities and the

25 base of no harm to the plaintiffs --

 1          THE COURT:  Well --

 2          MS. PURCARO -- would support a stay now.

 3          THE COURT:  Well, like a lot of things in the law,

 4  there's always balancing that has to be done.

 5          MS. PURCARO:  Yes.

 6          THE COURT:  And the question is:  To what extent, if

 7  any, should the Court allow this case to go forward at this

 8  point, recognizing, obviously, that the statute could be

 9  declared unconstitutional and we all go home?

10          But I made a judgment at this time we ought to move

11  forward, so at least to some extent, I meant, I dealt with all

12  the (12)(b)(6) motions.  I mean, the argument was made by some

13  defense counsel that the whole matter be stayed until a

14  constitutional issue ought to be decided.

15          Well, I thought it was important to go forward, so

16  that's now behind us, if the statute's upheld, then we've

17  advanced the ball, we're not way behind the eight ball on

18  that.

19          MS. PURCARO:  Right.

20          THE COURT:  So that's the question.  Obviously

21  hanging over the whole of these discussions is what the Court

22  of Appeals, New Jersey Supreme Court, maybe the United States

23  Supreme Court is going to do.

24          MS. PURCARO:  Right.

25          THE COURT:  That's a judgment call that has to be

1    made.

2            One option is just we all go home and wait for maybe

3    a year before it's all worked out.  Or two years.  But in my

4    judgment we ought to at least move forward to some extent.  I

5    mean, I can't imagine that we would try any of these cases

6    until the final decision is in, but at least doing some of the

7    work I think provides some benefit, and that's the question.

8    How far should we go until the whole matter is resolved?  And

9    that's the balancing act here.  I understand it costs money.

10           On the other hand, if the statute is upheld, there

11   will be much less delay because justice delayed is justice

12   denied.

13           MS. PURCARO:  Right.

14           THE COURT:  If I had stayed this matter back in

15   February and hadn't dealt with the (12)(b)(6) motion and the

16   statute is upheld, then we would have to go through all that

17   thereafter.  Correct?

18           MS. PURCARO:  Yes.

19           THE COURT:  So now that's behind us, for better or

20   for worse.

21           MS. PURCARO:  Right.

22           And in terms of moving forward with the case, I think

23   it should move forward in a way that is expeditious and when

24   we have some of these questions answered.

25           But to another point that counsel raised about, you

Proceedings

1   know, folks wanting to spend money to brief the motion to stay

2   but not wanting to spend money on individual discovery, for my

3   clients, if I brief a motion to stay, I can divide it by ten

4   because there's ten of them.

5           THE COURT:  I'm going to say -- we're not going to

6   have any motions to stay.  This is a status conference, and

7   I'm going to make a judgment about it, and I don't need any

8   briefing on motions to stay.

9           MS. PURCARO:  But I'm responding to what counsel

10  brought up.

11          THE COURT:  I will hear your arguments, but we're not

12  going to have a lot of paper discovery.  Save your clients

13  some money.

14          MS. PURCARO:  Okay.

15          And in terms of settlement discussions, I do

16  appreciate counsel's willingness to talk, and we have spoken,

17  but there are other aspects of demands and costs for mediators

18  that also make those types of conversations very difficult to

19  move forward.

20          So if I have a client that can't afford me to come

21  before your Honor on his own, I can only come because I'm

22  dividing the cost by ten, that client can't also pay for a

23  mediator and can't afford to go into a mediation individually

24  and if the other ten -- so it's just not as easy as it sounds,

25  and I appreciate that your Honor has been looking so closely

1    at this and has issued orders that have given us information

2    to move forward.

3           And I will just reiterate that in the absence of

4    full- blown discovery, I am more than willing to work on any

5    type of compliance or any issues that may be causing any harm

6    or concern of harm to any person.

7           THE COURT:  Well, what the plaintiffs propose is

8    Rule 26 initial disclosures within a certain time period and

9    then a discovery plan.  I'm not going to sit here today and

10   order 29 cases to move full steam ahead with depositions and

11   so forth and so on or even interrogatories, but it seems to me

12   that Rule 26 disclosures may be one way of moving it forward

13   at this point and then we'll see what happens.

14          MS. PURCARO:  Thank you, your Honor.

15          THE COURT:  All right.  Thank you.

16          Anything else on what I will call the 12(b)(6) cases?

17          All right.  Now we now have the -- let's move to the

18   other two categories.  We have one case that is stayed pending

19   settlement.  I don't think we need to spend a lot time on

20   that.

21          MR. PARIKH:  That one, your Honor, we've exchanged

22   drafts so that case is going to be resolved --

23          THE COURT:  All right.

24          MR. PARIKH:  -- or we're close to it.

25          THE COURT:  All right.

Proceedings

```
 1              Yes?
 2              MS. SCHNEIDER:  I agree, your Honor.
 3              THE COURT:  All right.  Thank you.  That's the
 4    Fortnoff case.
 5              MR. PARIKH:  That is, your Honor, correct.
 6              THE COURT:  Now we have nine cases which have been
 7    stayed.  They were filed a lot later and it just seemed rather
 8    than delay the briefing on all the 12(b)(6) motions we'll just
 9    delay those for the moment.
10              Now, in some of the cases what we have done is allow
11    the parties to file their Rule 12(b)(6), relying on the
12    briefing that has been provided by other counsel unless they
13    come up with some other arguments that haven't been raised and
14    then I would quickly rule on them consistent with what I've
15    done before.
16              Now, is anybody here representing any of those nine
17    defendants?
18              MS. PURCARO:  Out of the nine stayed defendants, I
19    have three of them and one initially requested to join the
20    jurisdictional motions, but the case was stayed.  So one does
21    have jurisdictional --
22              THE COURT:  A 12(b)(2)?
23              MS. PURCARO:  Uh-hum.
24              THE COURT:  Which one is that?
25              MS. PURCARO:  That would be the True Software
```

1   Scandinavia.

2            THE COURT:  So what do the parties suggest we do with

3   those cases to sort of bring them in line with the other

4   cases?

5            MR. PARIKH:  Your Honor, I think that if there are

6   any of those nine that are personal jurisdiction issues, we

7   can serve personal jurisdiction discovery on them, kind of

8   align with what your Honor's orders have already been with

9   respect to responses on those and then move into depositions

10  on those, you know, maybe 30 days or so delayed after,

11  whatever schedule your Honor puts in for the other grouping of

12  12(b)(2)s.

13           THE COURT:  So I think that -- it's been stayed, so I

14  think the first step would be -- and I assume you're also

15  going to file the (12)(b)(6) motions, is that also correct, on

16  that?

17           MS. PURCARO:  I believe so, your Honor.

18           THE COURT:  All right.

19           MS. PURCARO:  For the other two.

20           THE COURT:  So now, with respect to the

21  Rule 12(b)(2), it seems to me the Court would simply file the

22  procedure used with the other cases that plaintiffs can -- you

23  can file -- you would join in the motion to dismiss.  Is that

24  for lack of personal --

25           MS. PURCARO:  I think we have to file a motion to

Proceedings

 1  dismiss based on jurisdictional since it's individualized.

 2          THE COURT:  That's exactly right.  And I'm just

 3  trying to expedite it whether it would be -- you could file

 4  your motion and rely on the briefing that's been filed in the

 5  other cases, I will permit you to do that, unless you come up

 6  with a more ingenious defense that nobody else has raised.

 7  You would certainly be permitted to do that, so I don't want

 8  to stifle your ingenuity.

 9          But then what I would do is then order discovery.  So

10  get that filed promptly, and I will lift the stay on that

11  case.

12          Now how about the 12 -- and you'd file (12)(b)(6)

13  motions also?

14          MS. PURCARO:  Yes.

15          THE COURT:  And you might just briefly outline in

16  your motion what the grounds are and I will permit you, if you

17  wish, to rely on briefing that's already been filed.

18          MS. PURCARO:  Yes, I think the way your Honor did it

19  previously with the joint briefing and then the ability for a

20  supplement, if necessary.

21          THE COURT:  Well, what I would do is I would, I think

22  we've done it in several cases, deny your (12)(b)(6) motions

23  unless you raise an issue that hasn't been raised and the

24  12(b)(2) would still be alive because those cases, they

25  haven't concluded the discovery on that.

Proceedings                                                      59

1          MS. PURCARO:  Right.  So I think the only one I might

2     need a supplement on is the jurisdictional.

3          THE COURT:  All right.  If you want to do that.

4          MS. PURCARO:  Yeah, I just want to double-check.

5          THE COURT:  Okay.  So how soon do you want to do

6     that?  Just so we have some time.

7          MS. PURCARO:  Within the next 21 days should be fine.

8          THE COURT:  Okay.  All right.  I will enter an order

9     on that.

10         How about the other eight cases?  First of all, are

11    they just 12(b)(6) or are they also 12(b)(2)?

12         MR. VAN NOSTRAND:  Your Honor, Aaron Van Nostrand.

13         I have one.  It is Brooks Integrated Marketing.

14         THE COURT:  Yes.

15         MR. VAN NOSTRAND:  They certainly have a 12(b)(2)

16    motion there, and I think the way that the (12)(b)(6) motions

17    have already been filed was that there was a joint brief, that

18    each individual defendant filed supplemental briefs supported

19    by certification from that client.

20         THE COURT:  So you have filed a 12(b)(6) in that

21    case?

22         MR. VAN NOSTRAND:  For another client, for my client

23    GoHunt, we have already filed the 12(b)(2).  Okay?  That case

24    was not stayed.

25         My other client, Brooks Integrated Marketing, I

Proceedings

1    believe we moved in April or May of this year, so that case

2    has been stayed and we would have a 12(b)(2) motion there.

3            THE COURT:  How about 12(b)(6)?

4            MR. VAN NOSTRAND:  Well, 12(b)(6), I think we would,

5    I guess, join in the first amendment and then your Honor would

6    first deny that given your Honor's prior ruling.  I'm not sure

7    at this point whether we have another (12)(b)(6) motion.  I

8    guess if we did, I would advocate for a stay of these cases,

9    for the continuation of the stay of these cases given what's

10   going on with the Third Circuit.  I know your Honor has

11   already, you know, denied that for the larger group of cases

12   and for the personal jurisdictional defendant cases.  I think

13   it's valid for me to argue for a stay, for a continuation of

14   the stay in this one case, but I would like to put on the

15   record that that's our position.  We believe that case should

16   be stayed as well.

17           But, if your Honor is going to rule that the case

18   should go forward, I think 21 days to file 12(b)(2) or

19   (12)(b)(6) motions is a little bit tight.  I request 45 days

20   to file --

21           THE COURT:  Well, depending on whether you want to

22   fully brief it or not or whether, as I say, I would permit you

23   to rely on the arguments that have been raised by other

24   defendants.  Clearly if you come up with a more compelling

25   argument, obviously I don't want to prevent you from doing

Proceedings

1  that.

2          MR. VAN NOSTRAND:  Yeah, I think there are some

3  specifics with respect to this case that may call for a

4  separate (12)(b)(6) motion.

5          THE COURT:  Okay.

6          MR. VAN NOSTRAND:  So in that case, we request

7  45 days to do that.  I think 21 days to join in the existing

8  personal jurisdiction motion and to file our supplemental

9  brief and certification is a little bit tight, but if that's

10 what your Honor rules, then we would comply with that time

11 frame.

12         THE COURT:  What about the other -- any other

13 defendants?

14         MR. CIALINO:  Good morning, your Honor.  Tom Cialino,

15 counsel for Cybo Company, C-y-b-o.  Case number is --

16         THE COURT:  I see it.  Cybo, yeah, right.

17         MR. CIALINO:  11948.

18         THE COURT:  Yes.

19         MR. CIALINO:  So, your Honor, I would echo what

20 Mr. Van Nostrand is saying, first by requesting that this case

21 continue to be stayed.  This is one of the later cases that

22 came across and was removed.  You ordered an immediate stay,

23 so we didn't join in any of the existing dispositive motions.

24         We would potentially file 12(b)(6).  We would

25 certainly would file a 12(b)(2) motion, and as Mr. Van

Proceedings

1    Nostrand noted, that's an inherently fact-specific motion that

2    requires declarations and specific information, so if your

3    Honor's preference is to move forward with that, we would ask

4    for 45 days to be able to join in the existing personal

5    jurisdiction motion as well as supplement it with our

6    supplemental brief, declaration, so on and so forth and

7    potentially join a (12)(b)(6) motion that was filed previously

8    as well.

9              THE COURT:  Anyone else?

10             MR. STITCHEL:  My name is Mark Stitchel in the

11   emergence.com matter, which is 24-4434, I believe.

12             THE COURT:  That's not one of the ones that was

13   stayed.

14             MR. STITCHEL:  This is one of the group of 29.

15             THE COURT:  Oh, okay.  We're back to that.

16             MR. STITCHEL:  I guess the question I have is after

17   the Court denied the 30(b)6 motions, I mean -- 12(b)(6), I'm

18   sorry.

19             THE COURT:  Yeah, yeah.

20             MR. STITCHEL:  That the Court then answered a stay so

21   we have never answered the complaint.  So at this point what

22   is the status with respect to the deadline for answering the

23   complaint?

24             THE COURT:  You raise a very good point because

25   answers have not been filed on those 29s; is that correct?

1          MR. STITCHEL:  That is correct, your Honor.

2          THE COURT:  No answers have been filed.

3          MR. PARIKH:  Yeah, that's correct, your Honor.

4          THE COURT:  So it seems to me that's something that

5   ought to be dealt with.  You have to file an answer.

6          MR. STITCHEL:  So I guess, your Honor, you will

7   address that in your order?

8          THE COURT:  Yeah, I think that's a very important

9   point.  What?  Twenty days should be enough to answer the

10  complaints?  All right.  Thank you very much for calling --

11         MR. STITCHEL:  I don't want to speak for the other

12  28, your Honor.

13         THE COURT:  No, but I think you raise a very good

14  point and I appreciate you raising it.  I don't know whether

15  parties would be required and then the Courts normally don't

16  enter orders requiring answers after denial of 12(b) motions,

17  so I assume the parties would take the initiative to do it

18  themselves, but I think, under the circumstances of these

19  cases, I think we better just enter an order requiring answers

20  to be filed.

21         MR. STITCHEL:  Thank you, your Honor.

22         THE COURT:  So it would be just the 29 cases and then

23  we hold off on the 12(b)(2) cases.

24         Yeah?

25         MR. VAN NOSTRAND:  Your Honor, Aaron van Nostrand.

Proceedings

1          I propose, since all we're talking about at this
2    point, at least the plaintiffs' proposal was just doing
3    initial disclosures at this point and negotiating or meeting
4    and conferring over a discovery plan and then having another
5    conference, why don't we see where we are at the next
6    conference to see whether it makes sense to have answers on
7    file at that point.
8          Again, it's just another expense for these 29
9    defendants to now put together answers when, again, there's
10   the appeal pending before the Third Circuit that may find the
11   statute unconstitutional which may moot the answers that are
12   going to be filed.
13         So I would propose -- I mean, we can go forward with
14   initial disclosures and meet and confer without answers being
15   filed.  Why don't we just wait until the next conference to
16   see whether it makes sense at that point for answers to be
17   filed?
18              THE COURT:  We're back to the 29 cases now.
19              MR. VAN NOSTRAND:  I know.  I know.
20              THE COURT:  We'll return to the nine in a minute.
21   All right.  Go ahead.
22              MR. BRUNO:  Our Honor, I'm one of the nine.
23              THE COURT:  Let's just deal with the 29.  All right.
24              MR. PARIKH:  These cases were filed in February of
25   2024.  This law was passed in 2020.  The idea that the

1  defendants are going to resist filing answers after this case,

2  the cases were removed in, I'd say, in March and April of

3  2024.  We are now in September of 2025.  The notion that they

4  don't want to file answers now is outrageous.  They should

5  file the answers.  We have tried to be very reasonable.  We

6  did not want to come in here and say we're ready.  If they

7  want to move forward with full-blown discovery and serve

8  depositions, you know, in the next couple of weeks, we'll do

9  it.  We're happy to do that.  We just didn't think that was a

10  reasonable proposal to your Honor given the way that the cases

11  have progressed.

12         So they should file their answers.  We're happy to do

13  Rule 26 disclosures.  We're happy to work with them on joint

14  discovery plan and come back to the Court.  It seems like that

15  is not really that much effort for all of these various

16  counsel to file those motions.

17         THE COURT:  All right.  Now we're back to the nine

18  cases, the more recent cases.

19         Yes?

20         MR. BRUNO:  Thank you, your Honor.  Matthew Bruno,

21  Manatt Phelps & Phillips, on behalf of Sierra Creative

22  Systems, Inc.  That's Case Number 25-cv-11870.

23         We remanded in June 2025.  The case has been stayed,

24  Judge.  We would join in the other rule (12)(b)(6) motions.

25  We do not intend to make a Rule 12(b)(2) motion, and just to

Proceedings

 1   keep the record, reserve our rights based on your Honor's

 2   prior rulings.

 3        THE COURT:  All right.  Let me ask plaintiffs'

 4   counsel about that.  We have stay pending nine cases and what

 5   is your recommendation as to how we should proceed with those?

 6   Normally they would have been included, but they were filed so

 7   late to get them in the briefing schedule and then we would

 8   have had to delay the argument and so forth and all the other

 9   cases.

10        MR. PARIKH:  Absolutely.  I think, Judge, that to the

11   extent the nine want to -- you know, there are seven of them

12   that plan on filing a (12)(b)(6) motion and they want to do

13   some joint submission, if there's some new novel theory, then

14   they can coordinate doing that.

15        If it's simply the facial challenge again or perhaps

16   one of the other preemption issues that have been raised and

17   they just want to preserve those things for any future appeal,

18   then I think the way your Honor dealt with some of the cases

19   that came in late but early enough that we can just do it that

20   way.  File the letter, rely upon other briefing, your Honor

21   can enter an order so it's there, and then we can move that

22   case forward on the same track as the other 29 defendants.

23        I think it sounds like there is one company or maybe

24   two that have 12(b)(2) motions, so same process.  They can,

25   you know, file whatever they need to and then move into that

Proceedings

1  track.  So instead of having the 12(b)(2) track, the 29 that

2  that will proceed to merits discovery, and then this third

3  grouping, I think our proposal ultimately is let's take those

4  nine and put them into one of the other two buckets and have

5  them move forward with everybody collectively.

6           MR. JERVIS:  Good morning, your Honor.

7           THE COURT:  Good morning.

8           MR. JERVIS:  Michael Jervis on behalf of the one of

9  the nine defendants, Public NSA, L.L.C.

10          I won't belabor the point or add too much, but we do

11 believe we have a jurisdictional issue and 12(b)(2) motion as

12 well, so I would echo the sentiments the others have raised,

13 you know, given the issues here and this could all become moot

14 based on the Appellate Court rulings, New Jersey Supreme

15 Court, Third Circuit, that this continue to be stayed.

16          If your Honor is not inclined to do so, again, we do,

17 we intend to file a 12(b)(2) motion in addition to any

18 12(b)(6) arguments, so we ask for, you know, appropriate time

19 to brief that, whether it's 45 days or whatever your Honor

20 orders.

21          THE COURT:  Of course, as I reiterated a number of

22 times, you would be permitted to rely on another briefing

23 that's been filed so you won't have to reinvent the wheel.

24          MR. JERVIS:  Yeah, on the 12(b)(6), I don't know that

25 we have anything to add.  It would mostly be, you know, any

Proceedings

```
 1   12(b)(2) issues or facts unique to our client.

 2            THE COURT:  Right.  Right.

 3            MR. JERVIS:  Thank you.

 4            THE COURT:  Anyone else wish to speak about the nine?

 5            MR. MURPHY:  David Murphy from Reed Smith.  My

 6   client's Sterling Data Company.  We are one of the nine.

 7            THE COURT:  Yes.

 8            MR. MURPHY:  Very recent case that was removed in

 9   June.  Case was immediately stayed thereafter.

10            Without waiving anything, it's very unlikely we would

11   do a 12(b)(2), but we would be categorized as probably making

12   a unique (12)(b)(6) motion.

13            I reiterate counsel's general request that the stay

14   for these cases continue through the decision on major

15   appellate issues by higher courts, but to the extent that -- I

16   wouldn't agree that necessarily every 12(b)(6) should be

17   batched in together because some clients, like mine, is also a

18   very small company, does have some unique 12(b)(6) challenges.

19            THE COURT:  Well, I'm not trying to prevent anybody

20   from developing any unique arguments.  I recognize each

21   defendant may be different, but I just want to give you the

22   opportunity to rely on the parties' briefs.

23            MR. MURPHY:  Of course, your Honor.

24            THE COURT:  I won't take offense if you do that.

25            MR. MURPHY:  We would not reinvent the wheel, nor
```

1  would it be, frankly, economical for my client to rehash

2  anything that's been addressed already.

3           Thank you, Judge.

4           THE COURT:  Thank you.

5           Mr. Parikh, you're the one who brought the cases so

6  obviously I'm concerned about orderly management of these

7  matters.  The question is whether we ought to just sort of

8  move forward with them.  Maybe obviously they'll be in a

9  different track or just continue to stay.

10          So you are representing the plaintiffs.

11          MR. PARIKH:  I am.

12          THE COURT:  So I'm interested in hearing what you

13 have to say.

14          MR. PARIKH:  Thank you, Judge.  I do think moving

15 these cases forward makes sense.  I think that, you know, it

16 seems as though some of the discovery process with the group

17 of 29 will slow down in the sense that if we're going to do it

18 kind of, you know, I will take piecemeal, although staged is

19 probably a better word for it, that we may have the

20 opportunity as things get staged out to have these nine cases

21 catch up, and so I think, to me, that's the appropriate moment

22 in time where we are.

23          Obviously, had the Third Circuit issued a decision as

24 opposed to a certification, we would be having a different

25 conversation about a lot of things.

Proceedings

1          But given the developments, I think we can now take

2    these nine cases and put those that have personal jurisdiction

3    issues on a personal jurisdiction track to catch them up with

4    those cases perhaps; and then those that don't, we can have

5    them catch up with the group of 29.

6          So, you know, if the parties need, you know, 30 days,

7    45 days, 20 days, whatever, whatever is appropriate to get

8    their motions on file, obviously, if they are just relying

9    upon the arguments that have already been fully briefed and

10   argued before the Court, then we don't expect to have to

11   respond to those in any meaningful way.

12         And to the extent there's a novel argument, then

13   we're happy to brief that and have argument before your Honor

14   with respect to that particular defendant.

15         Last, Judge, with respect to the personal

16   jurisdiction parties, you know, if they can file the personal

17   jurisdiction motions, presumably we can follow the same

18   process.  You know, your Honor can order discovery.  We'll

19   send the written discovery requests.  They can respond to

20   those, and, you know, we'll conform those to the prior rulings

21   that the Court has made unless there's some unique

22   circumstance in which we'll meet and confer and try to resolve

23   those and then we would propose to move forward with those

24   30(b)6 depositions on personal jurisdiction as well for those

25   defendants, perhaps, you know, a month or two after the first

1   grouping that we talked about earlier today.

2           THE COURT:  Anyone else have any further comments to

3   make?  Yes, sir?

4           MR. VAN NOSTRAND:  Just one more thing, your Honor.

5   I think it's been clear, since, we're putting the cases in

6   separate buckets, that for any defendant that has a personal

7   jurisdiction motion either pending or that will be filing a

8   personal jurisdiction motion, those defendants are not

9   required to serve Rule 26 disclosures or engage in the meet

10  and confer and discovery plan.  Is that your understanding?

11          THE COURT:  Yes.

12          MR. VAN NOSTRAND:  Thank you.

13          THE COURT:  And also they wouldn't have to file an

14  answer at this point.

15          MR. VAN NOSTRAND:  Okay.  Thank you.

16          THE COURT:  Yes.  Anything further?  Thank you all

17  very much for coming.

18          MR. PARIKH:  Thank you, your Honor.

19          THE COURTROOM DEPUTY:  All rise.

20          (Proceedings concluded at 11:12 a.m.)

21  _____

22          FEDERAL COURT REPORTER'S CERTIFICATE

23      I certify that the foregoing is a correct transcript from

24  the record of proceedings in the above-entitled matter.

25  /S/ FRANCESCA DiBELLA, RDR, RMR, RPR          Sept. 15, 2025
    Official Court Reporter                       Date

*United States District Court*
*District of New Jersey*

**/**

**/S** [1] - 71:25

**0**

**07016** [1] - 12:12
**07030** [1] - 15:8
**07052** [1] - 12:4
**07101** [1] - 16:4
**07102** [2] - 12:23, 14:21
**07601** [1] - 15:4
**07677** [1] - 14:11
**07932** [1] - 13:8
**07940** [1] - 14:14
**08002** [1] - 15:17
**08101** [1] - 1:16
**08540** [2] - 12:8, 14:7
**08628** [1] - 13:4

**1**

**1** [1] - 12:3
**100** [1] - 13:3
**10005** [1] - 15:24
**10016** [1] - 13:11
**10036** [1] - 13:22
**10075** [1] - 13:18
**101** [1] - 12:3
**1037** [1] - 12:23
**10601** [1] - 15:12
**108** [1] - 12:11
**11948** [1] - 61:17
**11:12** [1] - 71:20
**12** [3] - 1:16, 31:13, 58:12
**12(b** [1] - 63:16
**12(b)(2** [20] - 17:15, 17:22, 19:9, 32:7, 56:22, 57:21, 58:24, 59:11, 59:15, 60:2, 60:18, 61:25, 63:23, 65:25, 66:24, 67:1, 67:11, 67:17, 68:1, 68:11
**12(b)(2)** [1] - 59:23
**12(b)(2)s** [1] - 57:12
**12(b)(6** [14] - 32:6, 46:3, 55:16, 56:8, 56:11, 59:11, 59:20, 60:3, 60:4, 62:17, 67:18, 67:24, 68:16, 68:18
**12(b)(6)** [2] - 28:3, 61:24
**12)(b)(6** [14] - 17:11,

**52**:12, 53:15, 57:15, 58:12, 58:22, 59:16, 60:7, 60:19, 61:4, 62:7, 65:24, 66:12, 68:12
**12207** [1] - 11:23
**124** [1] - 16:4
**12th** [1] - 11:22
**13** [4] - 17:14, 18:10, 18:11, 31:13
**140** [2] - 13:3, 15:24
**15** [1] - 71:25
**1515** [1] - 12:19
**16** [1] - 36:10
**1601** [1] - 13:11
**16th** [1] - 14:17
**1735** [1] - 15:20
**18** [1] - 35:5
**183** [1] - 13:11
**19** [1] - 35:6
**19102** [2] - 12:20, 14:18
**19103** [2] - 12:15, 15:20
**19333** [1] - 14:4
**1:24-cv-04037-HB** [1] - 1:4
**1:24-cv-04075-HB** [1] - 1:10
**1:24-cv-04080-HB** [1] - 2:3
**1:24-cv-04174-HB** [1] - 2:9
**1:24-cv-04176-HB** [1] - 2:15
**1:24-cv-04178-HB** [1] - 2:21
**1:24-cv-04256-HB** [1] - 3:3
**1:24-cv-04261-HB** [1] - 3:8
**1:24-cv-04269-HB** [1] - 3:14
**1:24-cv-04292-HB** [1] - 3:20
**1:24-cv-04324-HB** [1] - 4:3
**1:24-cv-04345-HB** [1] - 4:15
**1:24-cv-04380-HB** [1] - 4:21
**1:24-cv-04383-HB** [2] - 4:9, 5:3
**1:24-cv-04434-HB** [1] - 5:9
**1:24-cv-04664-HB** [1] - 5:15
**1:24-cv-04949-HB** [1] - 5:21

**1:24-cv-05600-HB** [1] - 6:3
**1:24-cv-05656-HB** [1] - 6:9
**1:24-cv-05658-HB** [1] - 6:14
**1:24-cv-05775-HB** [1] - 6:20
**1:24-cv-07324-HB** [1] - 7:3
**1:24-cv-08075-HB** [1] - 7:8
**1:24-cv-08451-HB** [1] - 7:14
**1:24-cv-11023-HB** [1] - 7:20
**1:24-cv-11443** [1] - 8:15
**1:24-cv-11443-HB** [2] - 8:3, 8:9
**1:25-cv-00237-HB** [1] - 8:20
**1:25-CV-01480-HB** [1] - 9:3
**1:25-cv-01517-HB** [1] - 9:9
**1:25-cv-02137-HB** [1] - 9:15
**1:25-cv-05989-HB** [1] - 9:20
**1:25-cv-06863-HB** [1] - 10:3
**1:25-cv-07650-HB** [1] - 10:8
**1:25-cv-08617-HB** [1] - 10:14
**1:25-cv-09224-HB** [1] - 10:20
**1:25-cv-09963-HB** [1] - 11:3
**1:25-cv-11870-HB** [1] - 11:9
**1:25-cv-11948-HB** [1] - 11:14

**2**

**20** [1] - 70:7
**200** [2] - 14:3, 15:11
**2000** [1] - 13:14
**201** [1] - 14:10
**2020** [1] - 64:25
**2024** [3] - 39:3, 64:25, 65:3
**2025** [4] - 1:16, 65:3, 65:23, 71:25
**2026** [2] - 27:2, 27:9
**2050** [1] - 12:19
**206** [1] - 15:7
**21** [3] - 59:7, 60:18,

**61**:7
**21117** [1] - 13:18
**2330** [1] - 15:24
**24-4390** [1] - 17:16
**24-4434** [1] - 62:11
**25** [1] - 15:4
**25-cv-11870** [1] - 65:22
**250** [1] - 14:14
**25th** [1] - 17:6
**26** [15] - 32:16, 32:19, 35:8, 35:11, 35:22, 36:7, 36:20, 38:6, 41:17, 43:24, 44:5, 55:8, 55:12, 65:13, 71:9
**28** [1] - 63:12
**29** [15] - 17:11, 32:8, 35:7, 46:2, 46:5, 55:10, 62:14, 63:22, 64:8, 64:18, 64:23, 66:22, 67:1, 69:17, 70:5
**29s** [1] - 62:25

**3**

**3** [1] - 15:16
**30** [9] - 11:22, 19:5, 19:7, 31:12, 31:14, 33:21, 41:8, 57:10, 70:6
**30(b)(6** [5] - 18:21, 18:23, 18:25, 23:9, 23:18
**30(b)6** [3] - 23:11, 62:17, 70:24
**300** [1] - 14:7
**301** [1] - 12:7
**312** [1] - 13:14
**3200** [1] - 14:17
**350** [1] - 15:16
**3rd** [1] - 17:24

**4**

**4** [1] - 12:11
**400** [2] - 12:7, 13:7
**401** [1] - 13:18
**426** [1] - 14:3
**45** [11] - 23:23, 31:9, 31:14, 32:1, 36:7, 36:8, 60:19, 61:7, 62:4, 67:19, 70:7
**45202** [1] - 13:15
**4th** [1] - 1:15

**5**

**5** [1] - 15:11

**50** [2] - 14:17, 15:7
**500** [2] - 13:7, 15:4
**506** [1] - 14:7
**51st** [1] - 15:20
**52** [1] - 17:9
**56:8-166.1** [1] - 39:3
**5th** [1] - 16:4

**6**

**60** [3] - 31:9, 32:1, 44:1
**600** [1] - 14:10
**631** [1] - 15:8

**7**

**7** [2] - 13:21, 14:14

**9**

**900** [1] - 12:23
**973)776-3885** [1] - 1:23
**9:59** [2] - 1:17, 17:3

**A**

**a.m** [3] - 1:17, 17:3, 71:20
**Aaron** [6] - 19:12, 28:25, 38:21, 46:4, 59:12, 63:25
**AARON** [1] - 13:7
**AB** [1] - 10:10
**ability** [2] - 34:25, 58:19
**able** [8] - 32:20, 33:18, 33:19, 40:14, 44:17, 45:6, 48:21, 62:4
**above-entitled** [1] - 71:24
**absence** [3] - 37:11, 49:2, 55:3
**absolutely** [2] - 34:9, 66:10
**absurd** [1] - 49:17
**accept** [3] - 33:7, 33:12, 34:2
**accepted** [1] - 33:19
**accepts** [1] - 33:5
**accident** [1] - 50:15
**according** [1] - 37:14
**Accudata** [1] - 15:12
**ACCURATE** [1] - 2:24
**Accurate** [1] - 13:5
**ACCUZIP** [1] - 4:11
**Accuzip** [1] - 12:24

**act** [3] - 50:25, 53:9
**acting** [1] - 49:10
**ACTION** [41] - 1:3, 1:9, 2:2, 2:8, 2:14, 2:20, 3:2, 3:7, 3:13, 3:19, 4:2, 4:8, 4:14, 4:20, 5:2, 5:8, 5:14, 5:20, 6:2, 6:8, 6:13, 6:19, 7:2, 7:7, 7:13, 7:19, 8:2, 8:8, 8:14, 8:19, 9:2, 9:8, 9:14, 9:19, 10:2, 10:7, 10:13, 10:19, 11:2, 11:8, 11:13
**activities** [1] - 22:25
**acts** [1] - 25:13
**ADAM** [1] - 11:22
**Adam** [2] - 18:3, 25:8
**add** [3] - 24:14, 67:10, 67:25
**added** [1] - 35:17
**addition** [2] - 35:2, 67:17
**additional** [3] - 21:10, 47:2, 47:13
**address** [7] - 25:21, 40:25, 41:7, 41:11, 41:14, 63:7
**addressed** [1] - 69:2
**advanced** [1] - 52:17
**advisement** [2] - 32:4, 38:15
**advocate** [1] - 60:8
**affect** [1] - 25:17
**affiliated** [1] - 35:16
**afford** [2] - 54:20, 54:23
**ago** [2] - 30:13, 45:20
**AGR** [2] - 9:17, 12:24
**agree** [4] - 51:12, 51:14, 56:2, 68:16
**agreeing** [1] - 44:22
**ahead** [3] - 24:8, 55:10, 64:21
**aided** [1] - 1:24
**air** [1] - 38:11
**al** [60] - 1:3, 1:9, 1:12, 2:2, 2:5, 2:8, 2:14, 2:18, 2:21, 2:24, 3:2, 3:5, 3:8, 3:14, 3:20, 3:23, 4:2, 4:5, 4:8, 4:11, 4:14, 4:17, 4:20, 4:23, 5:2, 5:5, 5:8,

5:14, 5:17, 5:20, 5:24, 6:2, 6:5, 6:8, 6:14, 6:19, 6:22, 7:2, 7:8, 7:14, 7:20, 8:2, 8:5, 8:8, 8:14, 8:17, 8:20, 9:2, 9:8, 9:14, 9:20, 10:2, 10:8, 10:13, 10:17, 10:20, 11:2, 11:8, 11:14, 13:12
**Albany** [1] - 11:23
**Alesco** [1] - 12:24
**ALESCO** [1] - 6:11
**align** [1] - 57:8
**alive** [1] - 58:24
**allegations** [1] - 49:2
**alleged** [4] - 25:12, 25:14, 25:16, 34:15
**alleging** [1] - 25:11
**allow** [4] - 30:23, 37:22, 52:7, 56:10
**allowing** [1] - 48:2
**alluded** [1] - 26:18
**Alumnifinder** [1] - 15:13
**amended** [1] - 35:23
**Amendment** [1] - 20:16
**amendment** [1] - 60:5
**AMERICA** [1] - 4:5
**America** [1] - 13:4
**AMERILIST** [1] - 6:22
**Amerilist** [1] - 12:24
**analysis** [3] - 21:21, 42:10, 42:16
**ancillary** [1] - 35:16
**AND** [1] - 16:3
**ANDREW** [1] - 15:16
**Annotated** [1] - 39:2
**answer** [3] - 63:5, 63:9, 71:14
**answered** [4] - 23:5, 53:24, 62:20, 62:21
**answering** [1] - 62:22
**answers** [15] - 17:23, 46:7, 62:25, 63:2, 63:16, 63:19, 64:6, 64:9, 64:11, 64:14, 64:16, 65:1, 65:4, 65:5, 65:12
**anticipate** [1] - 32:14
**apologies** [1] -

39:20
**appeal** [3] - 28:20, 64:10, 66:17
**Appeals** [3] - 30:16, 31:1, 52:22
**appear** [1] - 40:15
**Appearances** [1] - 11:24
**Appellate** [1] - 67:14
**appellate** [1] - 68:15
**Append** [1] - 13:5
**APPEND** [1] - 2:24
**application** [1] - 37:12
**applied** [3] - 35:3, 37:13, 43:6
**applies** [10] - 20:8, 20:9, 21:1, 21:5, 21:7, 21:20, 23:20, 25:22, 29:18, 31:19
**appreciate** [3] - 54:16, 54:25, 63:14
**approach** [2] - 25:25, 28:19
**appropriate** [3] - 67:18, 69:21, 70:7
**April** [2] - 60:1, 65:2
**argue** [1] - 60:13
**argued** [1] - 70:10
**arguing** [3] - 25:24, 26:1, 49:3
**argument** [11] - 25:10, 26:25, 27:5, 30:8, 42:11, 47:22, 52:12, 60:25, 66:8, 70:12, 70:13
**arguments** [8] - 42:12, 43:14, 54:11, 56:13, 60:23, 67:18, 68:20, 70:9
**Arpert** [1] - 45:8
**as-applied** [1] - 43:6
**ASL** [1] - 15:13
**aspects** [1] - 54:17
**asserting** [1] - 25:22
**assessment** [1] - 27:12
**assume** [2] - 57:14, 63:17
**assumes** [1] - 47:23
**assuming** [2] - 33:6, 51:4
**assumption** [1] - 47:18
**assumptions** [1] - 49:8
**Atlas** [6] - 20:6,

20:11, 29:7, 29:13, 29:16, 44:15
**ATLAS** [41] - 1:3, 1:9, 2:2, 2:8, 2:14, 2:20, 3:2, 3:7, 3:13, 3:19, 4:2, 4:8, 4:14, 4:20, 5:2, 5:8, 5:14, 5:20, 6:2, 6:8, 6:13, 6:19, 7:2, 7:7, 7:13, 7:19, 8:2, 8:8, 8:14, 8:19, 9:2, 9:8, 9:14, 9:19, 10:2, 10:7, 10:13, 10:19, 11:2, 11:8, 11:13
**Atlas's** [1] - 29:9
**Attorney** [2] - 16:5, 34:7
**attorney** [1] - 26:10
**ATTORNEY** [1] - 16:2
**attorney-and-client** [1] - 26:10
**attorneys** [2] - 23:13, 29:5
**attorneys'** [1] - 35:1
**August** [1] - 17:6
**automobile** [1] - 50:14
**available** [1] - 48:14
**availed** [1] - 21:23
**Avenue** [2] - 12:11, 13:11, 14:3, 14:10, 15:11
**avoid** [1] - 47:10
**Avoidance** [1] - 37:13
**aware** [2] - 40:24, 41:23

---

**B**

**back-and-forth** [1] - 23:10
**bad** [1] - 48:20
**balance** [1] - 51:24
**balancing** [4] - 40:5, 41:9, 52:4, 53:9
**ball** [3] - 30:20, 52:17
**BALLARD** [1] - 15:19
**balloon** [1] - 38:11
**bankrupt** [2] - 41:10, 49:6
**BARTLE** [2] - 1:18, 17:2
**base** [2] - 20:17, 51:25

**based** [11] - 19:3, 23:12, 27:2, 29:17, 46:11, 46:18, 46:21, 49:2, 58:1, 66:1, 67:14
**baseline** [1] - 44:6
**basis** [2] - 24:3, 44:11
**batched** [1] - 68:17
**become** [1] - 67:13
**began** [1] - 35:9
**beginning** [1] - 24:17
**behalf** [7] - 24:5, 32:12, 37:5, 46:5, 46:6, 65:21, 67:8
**behind** [3] - 52:16, 52:17, 53:19
**belabor** [1] - 67:10
**belief** [1] - 29:10
**believes** [1] - 44:19
**BELLES** [1] - 5:23
**Belles** [1] - 12:16
**benefit** [1] - 53:7
**benefits** [1] - 50:7
**BERMAN** [1] - 15:10
**best** [1] - 40:20
**better** [6] - 31:18, 38:12, 42:25, 53:19, 63:19, 69:19
**between** [2] - 27:5, 47:9
**beyond** [1] - 48:19
**Bibas** [1] - 42:5
**bit** [3] - 28:19, 60:19, 61:9
**BLANK** [1] - 12:14
**blown** [2] - 55:4, 65:7
**BOIES** [1] - 11:21
**Boland** [1] - 12:3
**bono** [1] - 41:22
**Boulevard** [3] - 12:23, 13:3, 13:18
**Bound** [1] - 15:13
**Box** [1] - 15:8
**break** [1] - 17:9
**BRIAN** [1] - 12:18
**brief** [10] - 30:5, 38:16, 54:1, 54:3, 59:17, 60:22, 61:9, 62:6, 67:19, 70:13
**briefed** [6] - 20:11, 22:24, 28:2, 50:18, 70:9
**briefing** [24] - 22:7, 22:12, 24:22, 26:21, 26:24, 27:8, 28:4, 30:5, 30:11,

32:22, 32:23, 33:7, 36:1, 42:11, 44:3, 54:8, 56:8, 56:12, 58:4, 58:17, 58:19, 66:7, 66:20, 67:22
**briefing's** [1] - 27:15
**briefly** [2] - 38:21, 58:15
**briefs** [2] - 59:18, 68:22
**BRIGANDI** [1] - 14:10
**bring** [1] - 57:3
**broader** [1] - 38:7
**Broadway** [1] - 15:24
**Brooks** [3] - 13:8, 59:13, 59:25
**BROOKS** [2] - 10:16, 13:2
**brought** [2] - 54:10, 69:5
**Bruno** [1] - 65:20
**BRUNO** [3] - 13:21, 64:22, 65:20
**BUCHANAN** [1] - 14:16
**buckets** [2] - 67:4, 71:6
**Building** [1] - 1:15
**burden** [7] - 26:12, 27:16, 28:14, 40:8, 41:18, 45:17, 48:25
**burdens** [2] - 26:13, 26:16
**burdensome** [1] - 23:6
**businesses** [2] - 40:19, 50:9
**BY** [25] - 11:22, 12:3, 12:6, 12:7, 12:11, 12:14, 12:18, 13:7, 13:10, 13:14, 13:17, 13:21, 14:3, 14:6, 14:10, 14:13, 14:17, 14:20, 15:3, 15:7, 15:11, 15:16, 15:19, 15:23, 16:3

C

**C-y-b-o** [1] - 61:15
**calculation** [1] - 17:9
**Calder** [5] - 20:7, 20:9, 20:25, 21:5, 21:20
**Camden** [1] - 1:16

**Camp** [1] - 12:16
**CAMP** [1] - 5:23
**Campus** [2] - 13:7, 15:16
**cannot** [2] - 48:11, 49:20
**CAPTION** [1] - 1:20
**cards** [1] - 30:15
**Carnegie** [2] - 12:7, 14:7
**Case** [2] - 65:22, 68:9
**case** [39] - 17:16, 27:3, 28:22, 30:3, 30:21, 34:2, 38:9, 40:9, 42:23, 45:4, 45:21, 48:10, 49:3, 49:16, 50:14, 50:15, 50:16, 52:7, 53:22, 55:18, 55:22, 56:4, 56:20, 58:11, 59:21, 59:23, 60:1, 60:14, 60:15, 60:17, 61:3, 61:6, 61:15, 61:20, 65:1, 65:23, 66:22, 68:8
**cases** [73] - 17:8, 17:9, 17:11, 17:14, 17:17, 17:18, 17:22, 17:25, 18:10, 18:11, 31:4, 32:5, 32:8, 32:25, 34:14, 34:15, 35:3, 35:6, 35:7, 35:25, 36:11, 36:13, 37:7, 37:9, 38:13, 38:14, 41:8, 43:22, 45:6, 45:10, 45:20, 46:2, 46:3, 47:11, 47:17, 48:2, 53:5, 55:10, 55:16, 56:6, 56:10, 57:3, 57:4, 57:22, 58:5, 58:22, 58:24, 59:10, 60:8, 60:9, 60:11, 60:12, 61:21, 63:19, 63:22, 63:23, 64:18, 64:24, 65:2, 65:10, 65:18, 66:4, 66:9, 66:18, 68:14, 69:5, 69:15, 69:20, 70:2, 70:4, 71:5
**catch** [3] - 69:21, 70:3, 70:5
**categories** [3] - 17:10, 17:20, 55:18
**categorized** [1] - 68:11

**causing** [1] - 55:5
**Center** [3] - 12:7, 14:7, 14:21
**Centre** [1] - 15:21
**CENTRE** [1] - 3:17
**certain** [4] - 21:14, 36:20, 36:22, 55:8
**certainly** [8] - 21:16, 22:20, 29:4, 30:3, 41:2, 58:7, 59:15, 61:25
**CERTIFICATE** [1] - 71:22
**certification** [9] - 19:18, 20:21, 26:21, 37:8, 37:21, 38:24, 59:19, 61:9, 69:24
**certified** [6] - 33:12, 33:17, 34:19, 46:7, 46:10, 46:20
**certifies** [1] - 46:22
**certify** [3] - 44:20, 44:23, 71:23
**certiorari** [1] - 30:19
**challenge** [2] - 43:6, 66:15
**challenges** [1] - 68:18
**change** [2] - 44:21, 46:23
**characterization** [1] - 38:23
**Charles** [1] - 13:3
**check** [2] - 44:11, 59:4
**Cherry** [1] - 15:17
**CHUDEREWICZ** [5] - 12:6, 37:3, 37:19, 37:23, 38:1
**Chuderewicz** [1] - 37:4
**Cialino** [1] - 61:14
**CIALINO** [4] - 12:14, 61:14, 61:17, 61:19
**Cincinnati** [1] - 13:15
**Circuit** [27] - 19:17, 19:25, 20:7, 23:1, 23:24, 23:25, 25:19, 28:20, 30:25, 31:9, 33:4, 33:17, 34:19, 36:3, 37:10, 38:24, 39:5, 42:4, 42:12, 42:22, 43:7, 43:15, 60:10, 64:10, 67:15, 69:23
**Circuit's** [3] - 33:12,

37:15, 42:10
**circumstance** [2] - 46:15, 70:22
**circumstances** [1] - 63:18
**CIVIL** [41] - 1:3, 1:9, 2:2, 2:8, 2:14, 2:20, 3:2, 3:7, 3:13, 3:19, 4:2, 4:8, 4:14, 4:20, 5:2, 5:8, 5:14, 5:20, 6:2, 6:8, 6:13, 6:19, 7:2, 7:7, 7:13, 7:19, 8:2, 8:8, 8:14, 8:19, 9:2, 9:8, 9:14, 9:19, 10:2, 10:7, 10:13, 10:19, 11:2, 11:8, 11:13
**claim** [1] - 50:20
**claims** [4] - 25:16, 25:18, 25:20, 25:22
**clarification** [1] - 30:25
**CLARK** [1] - 12:18
**clear** [2] - 51:15, 71:5
**clearly** [3] - 30:17, 48:14, 60:24
**client** [17] - 26:10, 27:22, 46:6, 46:8, 46:21, 46:25, 47:2, 51:1, 51:11, 54:20, 54:22, 59:19, 59:22, 59:25, 68:1, 69:1
**client's** [2] - 46:15, 68:6
**clients** [14] - 19:9, 23:12, 29:4, 29:14, 38:18, 40:6, 41:8, 41:13, 41:16, 49:9, 54:3, 54:12, 68:17
**close** [3] - 40:10, 51:21, 55:24
**closely** [1] - 54:25
**Cohen** [1] - 1:15
**collection** [1] - 35:19
**collectively** [1] - 67:5
**College** [1] - 15:13
**combine** [1] - 18:14
**coming** [1] - 71:17
**Commencing** [1] - 1:17
**comments** [1] - 71:2
**common** [1] - 36:11
**COMMUNICATION**

**S** [1] - 5:23
**Communications** [1] - 12:16
**COMPACT** [1] - 7:17
**Compact** [1] - 15:13
**companies** [1] - 40:15
**Company** [7] - 12:16, 13:12, 14:8, 24:13, 47:5, 61:15, 68:6
**COMPANY** [3] - 8:11, 11:5, 11:16
**company** [2] - 66:23, 68:18
**comparing** [1] - 26:13
**compel** [4] - 20:12, 22:25, 24:22, 24:23
**compelled** [1] - 40:6
**compelling** [2] - 30:8, 60:24
**complaint** [3] - 35:21, 62:21, 62:23
**complaints** [2] - 35:17, 63:10
**complete** [2] - 17:23, 41:13
**completed** [1] - 22:11
**compliance** [17] - 29:6, 29:8, 40:20, 41:13, 44:9, 44:10, 44:12, 44:20, 44:24, 46:20, 46:23, 48:23, 48:24, 49:10, 49:24, 49:25, 55:5
**comply** [1] - 61:10
**complying** [1] - 50:3
**component** [2] - 34:23
**comprises** [1] - 32:7
**computer** [1] - 1:24
**computer-aided** [1] - 1:24
**concede** [2] - 18:17, 37:20
**concern** [4] - 40:21, 48:10, 49:22, 55:6
**concerned** [2] - 41:4, 69:6
**concerns** [2] - 37:10, 38:3
**concluded** [2] - 58:25, 71:20
**conduct** [5] - 25:14, 25:21, 25:23,

34:15, 35:1
**confer** [5] - 36:8,
41:7, 64:14, 70:22,
71:10
**conference** [8] -
17:7, 36:10, 36:23,
43:25, 54:6, 64:5,
64:6, 64:15
**CONFERENCE** [1] -
1:6
**conferring** [2] -
32:17, 64:4
**confers** [2] - 23:10,
31:11
**conform** [1] - 70:20
**consent** [1] - 47:1
**consider** [1] - 28:17
**consistent** [2] -
47:12, 56:14
**CONSTANGY** [1] -
13:2
**constitutional** [4] -
24:1, 37:13, 43:5,
52:14
**constitutionality** [2]
- 22:17, 26:4
**Cont'd** [5] - 12:1,
13:1, 14:1, 15:1,
16:1
**contacts** [1] - 21:24
**continuation** [2] -
60:9, 60:13
**continue** [16] - 18:6,
35:25, 37:9, 38:13,
39:20, 39:21, 40:9,
40:13, 41:20,
47:17, 49:5, 61:21,
67:15, 68:14, 69:9
**continued** [1] -
11:24
**CONTINUED** [1] -
1:20
**continues** [1] -
50:18
**continuing** [2] -
45:21, 50:8
**conversation** [2] -
45:13, 69:25
**conversations** [1] -
54:18
**Cooper** [1] - 1:15
**COOPER** [2] -
12:10, 12:11
**coordinate** [2] -
19:13, 66:14
**CORP** [2] - 3:23,
9:11
**Corp** [2] - 14:15,
15:9
**Corporation** [2] -

12:8, 15:21
**CORPORATION** [43]
- 1:3, 1:9, 2:2, 2:5,
2:8, 2:14, 2:21,
3:2, 3:8, 3:14,
3:20, 4:2, 4:8,
4:14, 4:20, 5:2,
5:8, 5:14, 5:20,
6:2, 6:8, 6:14,
6:19, 7:2, 7:5, 7:8,
7:14, 7:20, 8:2,
8:8, 8:14, 8:20,
9:2, 9:8, 9:14,
9:20, 10:2, 10:8,
10:13, 10:20, 11:2,
11:8, 11:14
**Correct** [1] - 51:13
**correct** [10] - 33:9,
50:5, 50:21, 53:17,
56:5, 57:15, 62:25,
63:1, 63:3, 71:23
**correctly** [1] - 39:23
**cost** [2] - 23:8, 44:1,
54:22
**costly** [1] - 24:22
**costs** [3] - 23:13,
53:9, 54:17
**COUGHLIN** [1] -
14:2
**counsel** [18] - 17:24,
19:9, 37:2, 39:12,
39:21, 40:16, 41:2,
41:4, 41:7, 43:2,
45:11, 52:13,
53:25, 54:9, 56:12,
61:15, 65:16, 66:4
**counsel's** [2] -
54:16, 68:13
**counts** [1] - 25:3
**couple** [3] - 42:3,
48:7, 65:8
**course** [6] - 17:21,
19:14, 21:4, 27:7,
67:21, 68:23
**COURT** [128] - 1:1,
17:5, 18:2, 18:10,
18:15, 18:21, 19:1,
19:7, 19:15, 20:2,
20:4, 20:18, 22:10,
22:15, 24:4, 24:8,
24:11, 25:6, 26:19,
27:7, 28:4, 28:24,
29:24, 30:8, 30:11,
32:3, 33:8, 33:13,
33:25, 35:9, 36:4,
36:19, 37:1, 37:18,
37:20, 37:25,
38:19, 39:9, 39:11,
39:14, 39:17,
40:17, 41:17,

41:24, 42:8, 42:13,
45:5, 46:1, 47:7,
48:5, 49:3, 49:8,
49:15, 49:23, 50:2,
50:11, 50:14,
50:20, 50:23, 51:4,
51:7, 51:13, 51:18,
51:23, 52:1, 52:3,
52:6, 52:20, 52:25,
53:14, 53:19, 54:5,
54:11, 55:7, 55:15,
55:23, 55:25, 56:3,
56:6, 56:22, 56:24,
57:2, 57:13, 57:18,
57:20, 58:2, 58:15,
58:21, 59:3, 59:5,
59:8, 59:14, 59:20,
60:3, 60:21, 61:5,
61:12, 61:16,
61:18, 62:9, 62:12,
62:15, 62:19,
62:24, 63:2, 63:4,
63:8, 63:13, 63:22,
64:18, 64:20,
64:23, 65:17, 66:3,
67:7, 67:21, 68:2,
68:4, 68:7, 68:19,
68:24, 69:4, 69:12,
71:2, 71:11, 71:13,
71:16, 71:22
**court** [3] - 17:1,
36:13, 40:16
**Court** [59] - 1:22,
15:3, 17:14, 19:18,
19:24, 20:20,
20:23, 21:2, 21:19,
22:13, 25:12,
26:23, 26:25, 27:3,
27:16, 27:23, 28:9,
29:15, 29:18,
30:16, 31:1, 31:9,
32:18, 33:5, 33:8,
33:10, 33:17, 34:2,
34:8, 34:20, 36:2,
37:22, 38:1, 38:8,
39:6, 39:22, 42:15,
42:18, 42:21,
42:24, 43:1, 43:4,
43:17, 47:20,
47:23, 52:7, 52:21,
52:22, 52:23,
57:21, 62:17,
62:20, 65:14,
67:14, 67:15,
70:10, 70:21,
71:25
**Court's** [2] - 17:6,
40:3
**Courthouse** [1] -
1:15

**COURTROOM** [2] -
17:4, 71:19
**Courts** [1] - 63:15
**courts** [1] - 68:15
**covered** [5] - 35:20,
46:17, 48:12,
48:13, 50:23
**Cranford** [1] - 12:12
**creates** [2] - 45:17,
45:18
**creating** [1] - 41:6
**Creative** [2] - 13:22,
65:21
**CREATIVE** [1] -
11:11
**Crescent** [1] - 14:10
**cross** [1] - 19:19
**current** [1] - 35:17
**cut** [1] - 47:25
**CYBERSECURITY**
[1] - 16:3
**Cybo** [3] - 12:16,
61:15, 61:16
**CYBO** [1] - 11:16

# D

**Dale's** [1] - 27:14
**damaged** [1] - 28:23
**damages** [10] -
25:13, 25:17,
34:22, 34:25, 35:3,
39:4, 43:8, 50:2,
50:11, 51:9
**danger** [4] - 40:23,
41:3, 46:16, 49:6
**Daniel's** [27] - 19:21,
20:1, 20:10, 20:14,
20:24, 21:7, 21:15,
21:19, 22:1, 22:3,
23:2, 24:1, 27:3,
29:6, 29:18, 29:23,
37:11, 37:16, 39:1,
39:2, 40:20, 40:23,
42:19, 43:5, 46:10,
46:17, 47:19
**Daniels's** [1] - 39:3
**DANZIG** [1] - 14:13
**Darkowl** [1] - 12:24
**DATA** [46] - 1:3, 1:9,
2:2, 2:8, 2:14,
2:17, 2:20, 3:2,
3:7, 3:13, 3:19,
3:23, 4:2, 4:8,
4:14, 4:20, 5:2,
5:8, 5:14, 5:20,
6:2, 6:8, 6:13,
6:19, 7:2, 7:5, 7:7,
7:13, 7:19, 8:2,
8:8, 8:14, 8:19,

9:2, 9:8, 9:14,
9:19, 10:2, 10:7,
10:13, 10:19, 11:2,
11:5, 11:8, 11:13,
16:3
**Data** [4] - 12:25,
14:8, 14:15, 68:6
**date** [3] - 30:14,
36:20, 36:22
**Date** [1] - 71:25
**David** [1] - 68:5
**DAVID** [1] - 14:6
**days** [24] - 19:4,
19:5, 19:7, 23:23,
31:9, 31:12, 31:14,
32:1, 33:21, 36:7,
36:8, 44:1, 57:10,
59:7, 60:18, 60:19,
61:7, 62:4, 63:9,
67:19, 70:6, 70:7
**deadline** [1] - 62:22
**deal** [5] - 25:12,
25:20, 26:11,
28:18, 64:23
**deals** [6] - 32:22,
34:20, 34:21,
34:24, 35:1
**dealt** [4] - 52:11,
53:15, 63:5, 66:18
**decide** [3] - 25:15,
34:2, 37:22
**decided** [5] - 17:12,
22:17, 26:22, 32:6,
52:14
**deciding** [1] - 38:8
**decision** [10] -
22:12, 27:5, 27:10,
29:21, 33:11,
42:18, 42:21, 53:6,
68:14, 69:23
**decision-making** [1]
- 29:21
**declaration** [1] -
62:6
**declarations** [1] -
62:2
**declared** [1] - 52:9
**Deepsync** [1] -
15:14
**defend** [1] - 40:9
**defendant** [11] -
24:12, 29:8, 35:20,
36:14, 44:19,
46:22, 59:18,
60:12, 68:21,
70:14, 71:6
**Defendant** [36] -
2:12, 3:12, 3:18,
5:12, 6:12, 6:17,
7:6, 7:12, 7:18,

7:24, 8:23, 9:6, 9:12, 9:18, 9:23, 10:6, 10:11, 10:24, 11:6, 11:12, 11:17, 12:12, 12:20, 13:12, 13:15, 13:19, 14:4, 14:8, 14:11, 14:15, 14:18, 14:22, 15:5, 15:9, 15:17, 15:25
**Defendants** [28] - 1:7, 1:13, 2:6, 2:19, 2:25, 3:6, 3:24, 4:6, 4:12, 4:18, 4:24, 5:6, 5:18, 5:25, 6:6, 6:23, 8:6, 8:12, 8:18, 10:18, 12:8, 12:16, 12:24, 13:4, 13:8, 13:22, 15:12, 15:21
**defendants** [48] - 18:8, 18:17, 18:18, 19:4, 19:13, 20:9, 20:13, 21:9, 21:14, 21:23, 22:1, 22:2, 22:23, 24:6, 26:7, 27:21, 29:2, 29:3, 29:19, 29:22, 34:7, 34:16, 35:15, 37:5, 39:18, 40:7, 43:13, 44:2, 44:9, 44:10, 44:11, 44:22, 45:2, 45:14, 45:18, 46:19, 48:24, 56:17, 56:18, 60:24, 61:13, 64:9, 65:1, 66:22, 67:9, 70:25, 71:8
**defendants'** [1] - 29:10
**defense** [10] - 29:5, 32:14, 36:12, 37:2, 39:11, 41:25, 43:2, 49:16, 52:13, 58:6
**defer** [1] - 45:24
**delay** [4] - 53:11, 56:8, 56:9, 66:8
**delayed** [2] - 53:11, 57:10
**Deluxe** [1] - 12:8
**DELUXE** [1] - 2:5
**Delvepoint** [1] - 12:20
**DELVEPOINT** [1] - 8:5
**demands** [4] - 35:14, 36:12, 36:17, 54:17
**demonstrates** [2] -

37:10, 38:2
**denial** [1] - 63:16
**denied** [3] - 53:12, 60:11, 62:17
**deny** [2] - 58:22, 60:6
**denying** [2] - 24:23, 43:5
**deposition** [8] - 23:8, 23:17, 23:18, 23:19, 27:22, 27:23, 31:10, 31:11
**depositions** [28] - 18:8, 18:11, 18:22, 19:6, 21:10, 21:11, 23:7, 23:14, 23:23, 24:2, 24:16, 25:1, 27:16, 27:18, 30:23, 31:7, 31:13, 31:15, 31:21, 31:22, 31:23, 32:1, 36:17, 43:20, 55:10, 57:9, 65:8, 70:24
**DEPUTY** [2] - 17:4, 71:19
**describe** [1] - 25:2
**desire** [1] - 31:3
**destroy** [1] - 40:18
**determine** [2] - 47:20, 49:20
**devastating** [1] - 41:15
**developing** [1] - 68:20
**development** [1] - 37:8
**developments** [1] - 70:1
**Devon** [1] - 14:4
**DIALER** [1] - 7:23
**Dialer** [1] - 15:5
**DiBella** [2] - 1:22, 71:25
**different** [5] - 17:21, 51:18, 68:21, 69:9, 69:24
**difficult** [3] - 44:11, 44:18, 54:18
**Direct** [1] - 15:17
**DIRECT** [1] - 9:5
**disagree** [1] - 27:11
**disagreed** [2] - 46:12, 46:13
**disclosed** [4] - 29:7, 29:11, 48:17, 49:21
**disclosing** [2] - 26:8, 48:18

**disclosure** [4] - 35:19, 36:20, 41:5, 41:18
**disclosures** [16] - 18:4, 32:16, 32:19, 35:10, 35:12, 36:7, 38:6, 43:24, 44:5, 50:21, 55:8, 55:12, 64:3, 64:14, 65:13, 71:9
**discovery** [58] - 18:7, 21:10, 21:16, 22:5, 22:6, 22:11, 22:22, 23:5, 24:18, 24:19, 26:10, 26:20, 30:4, 30:12, 31:5, 32:17, 32:20, 35:7, 36:10, 36:21, 38:7, 38:10, 40:10, 40:14, 41:10, 41:15, 43:18, 43:24, 44:4, 44:6, 44:16, 46:8, 47:2, 47:10, 47:13, 47:17, 48:2, 49:5, 50:9, 50:18, 51:11, 51:15, 51:20, 54:2, 54:12, 55:4, 55:9, 57:7, 58:9, 58:25, 64:4, 65:7, 65:14, 67:2, 69:16, 70:18, 70:19, 71:10
**discuss** [1] - 38:6
**discussion** [3] - 44:25, 45:3, 45:14
**discussions** [2] - 52:21, 54:15
**dismiss** [3] - 49:2, 57:23, 58:1
**dispositive** [1] - 61:23
**disputes** [4] - 24:16, 25:1, 27:24, 31:21
**District** [2] - 17:2, 42:18
**DISTRICT** [3] - 1:1, 1:1, 1:19
**divide** [1] - 54:3
**dividing** [1] - 54:22
**division** [1] - 39:5
**DIVISION** [1] - 16:3
**DM** [2] - 1:12, 12:8
**Doctrine** [1] - 37:13
**document** [4] - 24:24, 35:14, 36:12, 36:17
**documents** [1] - 22:23
**DOLOWICH** [1] - 15:2

**done** [15] - 23:5, 27:14, 31:4, 32:24, 35:5, 35:12, 36:9, 36:13, 50:15, 51:8, 51:11, 52:4, 56:10, 56:15, 58:22
**double** [1] - 59:4
**double-check** [1] - 59:4
**down** [12] - 17:9, 23:25, 27:1, 28:13, 29:23, 38:12, 42:19, 46:8, 46:9, 47:21, 48:4, 69:17
**dozen** [2] - 40:7, 45:10
**dozens** [1] - 24:20
**drafts** [1] - 55:22
**Drive** [2] - 12:3, 13:7
**due** [1] - 17:23
**during** [2] - 31:21, 31:22

# E

**E-MERGES.COM** [1] - 5:11
**E-Merges.com** [1] - 13:19
**early** [1] - 66:19
**East** [1] - 14:10
**easy** [1] - 54:24
**echo** [2] - 61:19, 67:12
**economical** [1] - 69:1
**EDPA** [1] - 1:18
**effects** [5] - 20:7, 20:9, 20:25, 21:5, 21:20
**efficient** [1] - 26:15
**efficiently** [1] - 27:20
**effort** [2] - 42:10, 65:15
**egregious** [1] - 49:7
**eight** [3] - 27:21, 52:17, 59:10
**either** [3] - 18:24, 30:25, 71:7
**element** [7] - 20:15, 20:24, 21:3, 34:18, 39:1, 40:1
**elements** [8] - 19:21, 26:2, 39:4, 39:5, 39:7, 39:25, 43:11, 51:16
**emergence.com** [1] - 62:11
**employees** [1] -

40:8
**encourage** [2] - 34:8, 44:19
**encouraged** [1] - 24:18
**end** [4] - 19:8, 27:22, 32:1, 40:12
**engage** [1] - 71:9
**enter** [4] - 59:8, 63:16, 63:19, 65:21
**entered** [1] - 22:24
**Enterprise** [1] - 15:21
**ENTERPRISE** [1] - 3:17
**Enterprises** [1] - 12:24
**ENTERPRISES** [1] - 5:5
**entire** [2] - 38:8, 48:3
**entirely** [1] - 47:20
**entirety** [1] - 47:22
**entities** [1] - 35:16
**entitled** [5] - 29:16, 46:21, 51:10, 51:20, 71:24
**entity** [1] - 35:18
**EQUIMINE** [1] - 3:11
**Equimine** [1] - 14:22
**equitable** [1] - 35:2
**equities** [4] - 26:6, 29:2, 29:9, 51:24
**equivalence** [1] - 47:9
**especially** [1] - 21:10
**ESQ** [2] - 12:11, 12:14
**ESQUIRE** [24] - 11:22, 12:3, 12:6, 12:7, 12:18, 12:22, 13:3, 13:7, 13:10, 13:14, 13:17, 13:21, 14:3, 14:6, 14:10, 14:13, 14:17, 14:20, 15:3, 15:11, 15:16, 15:19, 15:23, 16:3
**essentially** [1] - 36:9
**et** [60] - 1:3, 1:9, 1:12, 2:2, 2:5, 2:8, 2:14, 2:18, 2:21, 2:24, 3:2, 3:5, 3:8, 3:14, 3:20, 3:23, 4:2, 4:5, 4:8, 4:11, 4:14, 4:17, 4:20, 4:23, 5:2, 5:5, 5:8,

5:14, 5:17, 5:20, 5:24, 6:2, 6:5, 6:8, 6:14, 6:19, 6:22, 7:2, 7:8, 7:14, 7:20, 8:2, 8:5, 8:8, 8:14, 8:17, 8:20, 9:2, 9:8, 9:14, 9:20, 10:2, 10:8, 10:13, 10:17, 10:20, 11:2, 11:8, 11:14, 13:12
**etc** [1] - 36:18
**event** [2] - 25:18, 25:24
**eventually** [1] - 48:25
**evidence** [1] - 49:7
**Ewing** [2] - 13:3, 13:4
**exact** [1] - 20:19
**exactly** [1] - 58:2
**example** [1] - 35:16
**exchange** [1] - 36:7
**exchanged** [2] - 32:20, 55:21
**Executive** [1] - 15:16
**existing** [3] - 61:7, 61:23, 62:4
**expect** [1] - 70:10
**expedite** [1] - 58:3
**expedited** [2] - 24:3, 42:11
**expeditious** [1] - 53:23
**expend** [1] - 37:17
**expended** [1] - 38:9
**expense** [3] - 22:19, 22:21, 64:8
**expenses** [1] - 23:16
**exposed** [1] - 48:14
**extent** [6] - 52:6, 52:11, 53:4, 66:11, 68:15, 70:12
**extreme** [1] - 40:8
**extremely** [1] - 23:6

### F

**facial** [1] - 66:15
**facially** [1] - 43:5
**fact** [5] - 27:21, 35:18, 48:3, 51:7, 62:1
**fact-specific** [1] - 62:1
**facts** [1] - 68:1
**factual** [1] - 49:2
**fair** [1] - 37:23

**fairly** [1] - 27:19
**faith** [1] - 49:10
**fall** [1] - 30:16
**false** [1] - 47:8
**far** [3] - 23:3, 30:5, 53:8
**Farms** [1] - 14:14
**fault** [1] - 42:15
**favor** [3] - 25:3, 26:7, 29:9
**February** [2] - 53:15, 64:24
**FEDERAL** [1] - 71:22
**Federal** [1] - 1:22
**fees** [1] - 35:1
**few** [2] - 19:4, 47:5
**field** [1] - 31:17
**figure** [1] - 48:18
**file** [25] - 44:2, 56:11, 57:15, 57:21, 57:23, 57:25, 58:3, 58:12, 60:18, 60:20, 61:8, 61:24, 61:25, 63:5, 64:7, 65:4, 65:5, 65:12, 65:16, 66:20, 66:25, 67:17, 70:8, 70:16, 71:13
**filed** [22] - 17:18, 20:8, 27:8, 45:20, 56:7, 58:4, 58:10, 58:17, 59:17, 59:18, 59:20, 59:23, 62:7, 62:25, 63:2, 63:20, 64:12, 64:15, 64:17, 64:24, 66:6, 67:23
**filing** [4] - 18:8, 65:1, 66:12, 71:7
**final** [2] - 27:9, 53:6
**Financial** [1] - 13:15
**FINANCIAL** [1] - 8:17
**financial** [1] - 40:12
**findable** [1] - 48:22
**fine** [2] - 44:21, 59:7
**firm** [1] - 45:9
**first** [10] - 32:9, 35:11, 39:23, 47:8, 57:14, 59:10, 60:5, 60:6, 61:20, 70:25
**First** [2] - 15:17, 20:16
**FIRST** [1] - 9:5
**fits** [1] - 43:21
**five** [2] - 33:24, 40:8
**five-page** [1] - 33:24
**flaws** [1] - 48:1

**FLEXNER** [1] - 11:21
**Floor** [3] - 11:22, 15:20, 16:4
**Florham** [1] - 13:8
**Florida** [1] - 25:21
**focus** [1] - 31:20
**focused** [1] - 18:13
**folks** [4] - 41:9, 49:4, 51:21, 54:1
**follow** [1] - 70:17
**FOR** [1] - 1:1
**force** [2] - 41:9, 41:14
**forced** [1] - 49:5
**foregoing** [1] - 71:23
**forgotten** [1] - 30:14
**formal** [1] - 26:17
**formulated** [1] - 34:4
**forth** [4] - 23:10, 55:11, 62:6, 66:8
**FORTNOFF** [1] - 8:17
**Fortnoff** [3] - 13:15, 17:16, 56:4
**forward** [41] - 17:25, 20:20, 21:10, 22:11, 22:22, 23:7, 23:15, 23:18, 25:18, 28:22, 30:23, 32:10, 32:25, 33:7, 34:11, 35:7, 35:25, 36:15, 36:23, 37:7, 43:18, 47:3, 48:10, 52:7, 52:11, 52:15, 53:4, 53:22, 53:23, 54:19, 55:2, 55:12, 60:18, 62:3, 64:13, 65:7, 66:22, 67:5, 69:8, 69:15, 70:23
**Foundation** [1] - 13:5
**four** [3] - 23:17, 31:13, 31:24
**four-hour** [2] - 23:17, 31:13
**frame** [3] - 19:2, 19:10, 61:11
**FRANCESCA** [1] - 71:25
**Francesca** [1] - 1:22
**francesca_dibella @njd.uscourts. gov** [1] - 1:23
**frankly** [1] - 69:1
**FREEDOMSOFT 303** [1] - 10:23

**FREEMAN** [1] - 15:15
**Friday** [1] - 1:16
**full** [6] - 17:23, 38:18, 40:19, 55:4, 55:10, 65:7
**full-blown** [1] - 65:7
**fully** [3] - 44:23, 60:22, 70:9
**future** [1] - 66:17

### G

**GARY** [1] - 15:15
**Gateway** [1] - 14:21
**gathering** [1] - 17:7
**GENERAL** [1] - 16:2
**General** [1] - 16:5
**general** [1] - 68:13
**General's** [1] - 34:7
**GIBBONS** [1] - 14:20
**Giralda** [1] - 14:14
**given** [10] - 19:17, 19:22, 33:21, 37:15, 55:1, 60:6, 60:9, 65:10, 67:13, 70:1
**GMBH** [2] - 3:17, 15:21
**goals** [1] - 36:1
**GoHunt** [5] - 13:8, 19:12, 46:6, 47:2, 59:23
**GOHUNT** [1] - 4:23
**grapple** [1] - 31:2
**great** [1] - 32:24
**GREENBERG** [1] - 13:6
**Greenflight** [1] - 15:9
**GREENFLIGHT** [1] - 9:11
**Greenspoon** [1] - 39:16
**GREENSPOON** [1] - 12:22
**grounds** [1] - 58:16
**group** [6] - 29:5, 32:5, 60:11, 62:14, 69:16, 70:5
**GROUP** [3] - 1:12, 6:11, 13:17
**Group** [2] - 12:8, 14:18, 15:14
**grouping** [3] - 57:11, 67:3, 71:1
**guess** [6] - 31:6, 31:13, 60:5, 60:8, 62:16, 63:6

**guys** [1] - 48:20

### H

**Hackensack** [1] - 15:4
**hairs** [1] - 19:19
**half** [3] - 28:2, 40:13, 45:20
**Halsey** [1] - 16:4
**halt** [1] - 30:22
**hand** [1] - 53:10
**hanging** [1] - 52:21
**happy** [7] - 18:16, 18:17, 45:24, 65:9, 65:12, 65:13, 70:13
**harm** [15] - 41:9, 41:11, 41:12, 46:16, 48:9, 48:13, 50:8, 50:9, 50:15, 50:17, 50:24, 51:14, 51:25, 55:5, 55:6
**harms** [1] - 40:5
**Harrison** [1] - 15:7
**HARVEY** [2] - 1:18, 17:2
**hear** [5] - 24:9, 32:9, 37:1, 38:5, 54:11
**hearing** [1] - 69:12
**heavily** [2] - 26:12, 42:21
**held** [1] - 17:1
**helps** [2] - 28:22, 28:23
**HENNING** [1] - 15:10
**higher** [1] - 68:15
**Hill** [1] - 15:17
**HINE** [1] - 13:13
**Hoboken** [1] - 15:8
**hold** [2] - 28:11, 63:23
**home** [2] - 52:9, 53:2
**Homedata** [1] - 15:8
**Honor** [81] - 18:1, 18:12, 19:12, 21:8, 22:20, 23:25, 24:10, 24:18, 24:22, 25:8, 26:10, 26:17, 27:6, 27:14, 28:1, 28:8, 28:16, 29:1, 32:11, 32:13, 34:12, 35:5, 37:3, 37:6, 37:9, 38:2, 38:13, 38:21, 39:10, 39:15,

41:23, 42:4, 43:15, 43:19, 43:22, 45:1, 45:24, 45:25, 46:4, 47:1, 47:4, 48:6, 48:8, 49:20, 54:21, 54:25, 55:14, 55:21, 56:2, 56:5, 57:5, 57:11, 57:17, 58:18, 59:12, 60:5, 60:10, 60:17, 61:10, 61:14, 61:19, 63:1, 63:3, 63:6, 63:12, 63:21, 63:25, 64:22, 65:10, 65:20, 66:18, 66:20, 67:6, 67:16, 67:19, 68:23, 70:13, 70:18, 71:4, 71:18
**Honor's** [9] - 20:16, 26:3, 28:18, 32:24, 42:21, 57:8, 60:6, 62:3, 66:1
**HONORABLE** [1] - 1:18
**Honorable** [1] - 17:1
**hope** [1] - 45:6
**hopefully** [1] - 31:20
**hour** [2] - 23:17, 31:13
**hours** [3] - 27:21, 31:24, 31:25
**house** [1] - 30:15
**hum** [1] - 56:23
**hurt** [1] - 48:21
**hybrid** [3] - 22:10, 25:25, 28:19

## I

**i360** [2] - 4:17, 15:25
**idea** [2] - 31:19, 64:25
**identify** [1] - 33:19
**III** [2] - 1:18, 17:2
**imagine** [2] - 27:2, 53:5
**immediate** [1] - 61:22
**immediately** [3] - 40:25, 41:14, 68:9
**impacts** [1] - 21:5
**important** [6] - 22:18, 30:14, 34:10, 38:18, 52:15, 63:8
**inability** [3] - 37:15, 37:21, 44:13
**Inc** [14] - 12:8, 12:9, 12:12, 12:16,

12:24, 13:5, 14:11, 14:18, 14:22, 15:5, 15:12, 15:13, 15:17, 65:22
**INC** [17] - 1:12, 2:11, 2:18, 2:24, 3:5, 3:11, 4:11, 5:5, 5:11, 5:24, 6:5, 6:16, 6:22, 7:23, 8:22, 9:5, 11:11
**inclined** [1] - 30:24, 67:16
**include** [2] - 20:15, 36:11
**included** [1] - 66:6
**including** [1] - 37:11
**inconsistently** [1] - 37:14
**incorrect** [1] - 51:1
**individual** [3] - 40:14, 54:2, 59:18
**individualized** [1] - 58:1
**individually** [1] - 54:23
**inefficient** [1] - 21:9
**infancy** [1] - 45:21
**inflection** [1] - 33:11
**INFORM** [1] - 1:6
**information** [23] - 26:8, 29:7, 29:10, 29:13, 29:14, 29:15, 29:19, 29:23, 35:20, 40:24, 42:5, 46:9, 46:12, 48:12, 48:14, 48:17, 48:21, 49:21, 50:23, 50:24, 55:1, 62:2
**INFORMATION** [1] - 7:17
**Information** [1] - 15:13
**infringe** [1] - 47:15
**ingenious** [1] - 58:6
**ingenuity** [1] - 58:8
**INGERSOL** [1] - 14:16
**inherently** [1] - 62:1
**initial** [5] - 35:10, 41:17, 55:8, 64:3, 64:14
**initiative** [1] - 63:17
**injunction** [1] - 41:3
**injunctive** [1] - 43:9
**INNOVIS** [1] - 2:17
**insist** [1] - 23:14
**instead** [2] - 31:8, 67:1

**insurance** [1] - 33:18
**Integrated** [4] - 13:8, 15:12, 59:13, 59:25
**INTEGRATED** [1] - 10:16
**intend** [2] - 65:25, 67:17
**intentional** [5] - 20:10, 21:20, 25:14, 25:22, 30:7
**intentionality** [3] - 20:15, 20:24, 21:3
**interest** [1] - 34:5
**interested** [2] - 45:15, 69:12
**interesting** [1] - 42:14
**interlocutory** [1] - 28:20
**internal** [1] - 29:21
**interpret** [2] - 37:15, 43:1
**interrogatories** [10] - 17:23, 22:24, 23:6, 24:20, 31:5, 35:10, 35:13, 36:12, 36:17, 55:11
**interrogatory** [1] - 46:13
**Intervenor** [1] - 16:5
**investigative** [1] - 44:16
**investigators** [3] - 48:11, 48:18, 49:20
**invitation** [1] - 34:2
**involve** [1] - 17:21
**involved** [1] - 30:13
**irrelevant** [2] - 21:18, 29:14
**irrespective** [1] - 34:13
**issue** [17] - 19:19, 20:19, 22:4, 22:16, 22:21, 26:22, 30:6, 31:2, 32:22, 37:5, 38:16, 38:17, 43:7, 44:17, 52:14, 58:23, 67:11
**issued** [3] - 42:18, 55:1, 69:23
**issues** [16] - 17:21, 27:17, 27:18, 28:15, 32:17, 33:2, 33:22, 37:16, 43:10, 55:5, 57:6, 66:16, 67:13, 68:1,

68:15, 70:3

## J

**JARED** [3] - 15:6, 15:7, 15:11
**JENNA** [1] - 13:14
**JERSEY** [2] - 1:1, 16:2
**Jersey** [43] - 1:16, 12:4, 12:8, 12:12, 12:23, 13:4, 13:8, 14:7, 14:11, 14:14, 14:21, 15:4, 15:8, 15:17, 16:4, 16:5, 21:24, 21:25, 22:13, 23:13, 23:15, 25:12, 25:15, 26:23, 26:25, 27:4, 28:10, 33:5, 33:8, 33:9, 33:17, 34:1, 34:20, 36:2, 37:22, 38:1, 38:7, 42:25, 43:4, 43:16, 45:9, 52:22, 67:14
**Jersey's** [1] - 37:12
**Jervis** [1] - 67:8
**JERVIS** [5] - 14:3, 67:6, 67:8, 67:24, 68:3
**job** [1] - 32:24
**JOHN** [2] - 13:3, 14:10
**join** [8] - 56:19, 57:23, 60:5, 61:7, 61:23, 62:4, 62:7, 65:24
**joint** [6] - 36:10, 43:24, 58:19, 59:17, 65:13, 66:13
**JOY** [1] - 5:5
**Joy** [1] - 12:24
**Judge** [14] - 17:2, 32:23, 33:10, 33:15, 36:6, 36:24, 42:5, 44:8, 45:8, 65:24, 66:10, 69:3, 69:14, 70:15
**judge** [2] - 42:2, 45:8
**JUDGE** [1] - 1:19
**judgment** [4] - 52:10, 52:25, 53:4, 54:7
**judicial** [1] - 47:24
**July** [2] - 33:17, 38:14
**June** [2] - 65:23,

68:9
**jurisdiction** [32] - 17:15, 18:7, 19:13, 19:23, 20:5, 20:8, 20:12, 20:13, 21:7, 21:8, 21:22, 22:4, 22:23, 23:20, 30:4, 30:6, 30:22, 31:19, 44:4, 46:8, 47:10, 57:6, 57:7, 61:8, 62:5, 70:2, 70:3, 70:16, 70:17, 70:24, 71:7, 71:8
**jurisdictional** [8] - 21:16, 24:18, 56:20, 56:21, 58:1, 59:2, 60:12, 67:11
**jurisdictions** [1] - 29:20
**justice** [2] - 53:11

## K

**KAUFMAN** [1] - 15:2
**keep** [3] - 30:20, 31:3, 66:1
**Kelly** [2] - 39:15, 48:6
**KELLY** [1] - 12:22
**KEVIN** [1] - 14:20
**kind** [15] - 18:18, 26:1, 26:11, 26:17, 27:24, 27:25, 28:7, 28:11, 28:12, 33:24, 35:23, 43:22, 45:21, 57:7, 69:18
**knowing** [1] - 21:6
**knowledge** [4] - 20:24, 21:14, 22:1, 40:20
**knows** [1] - 26:11
**KNUCKES** [1] - 14:9
**KOMOSINSKI** [1] - 14:9
**Kratovil's** [1] - 43:6
**KRISTA** [1] - 14:17

## L

**L.L.C** [2] - 6:11, 67:9
**Labels** [1] - 12:12
**LABELS** [1] - 2:11
**Labs** [1] - 15:14
**lack** [2] - 17:15, 57:24
**laid** [1] - 43:22
**Lancaster** [1] - 14:3
**large** [2] - 32:5, 41:15

**larger** [1] - 60:11
**last** [4] - 30:17, 35:5, 44:8, 70:15
**late** [2] - 66:7, 66:19
**Law** [28] - 19:21, 20:1, 20:10, 20:14, 20:25, 21:7, 21:15, 21:19, 22:1, 22:3, 23:2, 24:1, 27:3, 29:6, 29:18, 29:23, 37:11, 37:16, 39:1, 39:2, 39:3, 40:20, 40:23, 42:19, 43:5, 46:10, 46:17, 47:19
**LAW** [4] - 12:2, 13:17, 15:6, 16:3
**law** [8] - 20:7, 26:8, 43:3, 43:12, 45:9, 48:20, 52:3, 64:25
**laws** [1] - 43:1
**lawyer** [2] - 45:2, 49:16
**leading** [1] - 27:25
**learn** [1] - 35:22
**least** [18] - 25:16, 26:20, 29:4, 31:16, 40:13, 40:22, 41:19, 46:15, 46:18, 46:20, 46:21, 46:25, 47:2, 48:1, 52:11, 53:4, 53:6, 64:2
**legal** [2] - 42:10
**legwork** [2] - 27:25, 30:12
**less** [3] - 40:7, 40:8, 53:11
**letter** [2] - 33:24, 66:20
**level** [1] - 39:25
**levels** [1] - 21:14
**LEVY** [1] - 15:11
**liability** [2] - 27:1, 34:22
**liable** [2] - 51:4, 51:9
**lift** [1] - 58:10
**light** [1] - 50:3
**LIGHTHOUSE** [1] - 8:11
**Lighthouse** [3] - 13:12, 24:12, 47:5
**likelihood** [1] - 26:5
**likely** [3] - 27:1, 40:10, 49:1
**limit** [1] - 38:25
**limited** [8] - 18:7, 18:13, 21:12, 23:22, 24:19, 25:3, 40:4

**line** [1] - 57:3
**liquidated** [3] - 34:22, 35:3, 39:4
**List** [3] - 13:12, 24:12, 47:5
**LIST** [1] - 8:11
**LISTS** [1] - 2:11
**Lists** [1] - 12:12
**LLC** [28] - 1:6, 4:17, 4:23, 5:17, 7:11, 7:17, 8:5, 8:11, 8:17, 9:17, 9:22, 10:5, 10:17, 10:23, 11:5, 12:9, 12:10, 12:20, 13:5, 13:12, 13:15, 13:22, 14:2, 14:4, 14:8, 15:13, 15:25, 24:13
**LLP** [18] - 11:21, 12:2, 12:6, 12:14, 12:18, 12:22, 13:2, 13:6, 13:13, 13:20, 14:6, 14:9, 14:13, 15:2, 15:10, 15:15, 15:19, 15:23
**location** [1] - 18:19
**Locke** [1] - 37:4
**LOCKE** [1] - 12:6
**log** [1] - 44:15
**Logan** [1] - 12:15
**LOMUSCIO** [1] - 15:23
**look** [2] - 26:1, 39:6
**looking** [2] - 40:3, 54:25
**looks** [1] - 31:17

**M**

**MACDONALD** [1] - 13:3
**Madison** [2] - 13:11, 14:14
**Magistrate** [1] - 45:8
**magistrate** [1] - 45:8
**Main** [1] - 15:4
**major** [1] - 68:14
**majority** [2] - 41:8, 41:16
**management** [1] - 69:6
**managing** [1] - 32:25
**Manatt** [1] - 65:21
**MANATT** [1] - 13:20
**MANFRO** [1] - 14:9
**manner** [1] - 25:4
**MARCEL** [1] - 15:19
**March** [1] - 65:2
**Marder** [1] - 39:16

**MARDER** [1] - 12:22
**MARK** [1] - 13:17
**Mark** [1] - 62:10
**Market** [2] - 12:19, 15:20
**MARKETING** [2] - 9:17, 10:16
**Marketing** [6] - 12:24, 13:8, 15:12, 15:13, 59:13, 59:25
**MAROUF** [1] - 14:13
**Maryland** [1] - 13:18
**MATHIS** [1] - 15:15
**matter** [6] - 33:18, 52:13, 53:8, 53:14, 62:11, 71:24
**matters** [1] - 69:7
**Matthew** [1] - 65:20
**MATTHEW** [1] - 13:21
**mean** [11] - 26:3, 26:14, 30:13, 33:8, 49:17, 50:16, 51:8, 52:12, 53:5, 62:17, 64:13
**meaning** [1] - 34:6
**meaningful** [3] - 24:15, 43:18, 70:11
**meant** [1] - 52:11
**mechanical** [1] - 1:24
**mediated** [1] - 45:9
**mediation** [1] - 54:23
**mediations** [1] - 45:7
**mediator** [1] - 54:23
**mediators** [1] - 54:17
**meet** [8] - 23:10, 26:2, 31:11, 36:8, 41:6, 64:14, 70:22, 71:9
**meet-and-confers** [2] - 23:10, 31:11
**meeting** [2] - 32:17, 64:3
**MELISSA** [2] - 3:23, 12:6
**Melissa** [2] - 14:15, 37:3
**mens** [20] - 19:19, 19:20, 20:21, 21:4, 22:8, 29:16, 30:2, 31:18, 32:22, 34:18, 37:12, 39:1, 39:3, 39:7, 39:25, 40:3, 42:7, 43:9,

51:16
**MERGES.COM** [1] - 5:11
**Merges.com** [1] - 13:19
**merit** [1] - 28:17
**merits** [8] - 26:5, 32:20, 35:7, 40:10, 40:14, 41:15, 49:3, 67:2
**Michael** [1] - 67:8
**MICHAEL** [2] - 12:7, 14:3
**mid** [1] - 19:7
**might** [5] - 26:23, 47:20, 48:3, 58:15, 59:1
**Mills** [1] - 13:18
**mine** [1] - 68:17
**minimal** [1] - 26:16
**minimum** [1] - 32:15
**minor** [1] - 28:14
**minute** [2] - 39:11, 64:20
**MISALE** [1] - 16:3
**Mitchell** [1] - 1:15
**moment** [2] - 56:9, 69:21
**money** [9] - 29:12, 29:13, 38:10, 44:2, 44:3, 53:9, 54:1, 54:2, 54:13
**month** [2] - 33:6, 70:25
**months** [4] - 27:4, 32:19, 35:6, 50:19
**moot** [2] - 64:11, 67:13
**morning** [12] - 18:1, 18:2, 19:11, 24:10, 24:11, 32:11, 37:2, 37:3, 39:14, 61:14, 67:6, 67:7
**most** [2] - 42:12, 45:24
**mostly** [1] - 67:25
**motion** [36] - 18:9, 19:23, 20:8, 20:12, 20:14, 20:16, 22:24, 24:22, 24:23, 28:1, 28:3, 32:6, 44:2, 53:15, 54:1, 54:3, 57:23, 57:25, 58:4, 58:16, 59:16, 60:2, 60:7, 61:4, 61:8, 61:25, 62:1, 62:5, 62:7, 62:25, 66:12, 67:11, 67:17, 68:12, 71:7, 71:8

**motions** [31] - 17:11, 17:12, 17:15, 19:9, 21:8, 21:23, 22:7, 23:21, 28:11, 31:5, 31:20, 32:7, 49:1, 52:12, 54:6, 54:8, 56:8, 56:20, 57:15, 58:13, 58:22, 59:16, 60:19, 61:23, 62:17, 63:16, 65:16, 65:24, 66:24, 70:8, 70:17
**move** [29] - 21:9, 22:18, 30:15, 32:10, 32:21, 33:7, 34:10, 35:4, 35:6, 35:25, 36:23, 37:6, 43:18, 47:9, 52:10, 53:4, 53:23, 54:19, 55:2, 55:10, 55:17, 57:9, 62:3, 65:7, 66:21, 66:25, 67:5, 69:8, 70:23
**moved** [4] - 28:3, 37:24, 41:2, 60:1
**moving** [10] - 28:7, 28:22, 30:21, 31:4, 32:25, 36:15, 48:10, 53:22, 55:12, 69:14
**MR** [82] - 18:1, 18:3, 18:12, 18:16, 18:23, 19:3, 19:11, 19:16, 20:3, 20:6, 20:19, 22:14, 22:20, 24:7, 24:10, 24:12, 25:8, 27:6, 27:11, 28:6, 28:25, 30:1, 30:10, 31:3, 32:11, 33:9, 33:15, 34:3, 35:11, 36:6, 36:24, 38:21, 39:10, 42:2, 42:9, 42:14, 45:7, 46:4, 47:4, 47:8, 55:21, 55:24, 56:5, 57:5, 59:12, 59:15, 59:22, 60:4, 61:2, 61:6, 61:14, 61:17, 61:19, 62:10, 62:14, 62:16, 62:20, 63:1, 63:3, 63:6, 63:11, 63:21, 63:25, 64:19, 64:22, 64:24, 65:20, 66:10, 67:6, 67:8, 67:24, 68:3, 68:5, 68:8, 68:23,

68:25, 69:11, 69:14, 71:4, 71:12, 71:15, 71:18

**MS** [46] - 37:3, 37:19, 37:23, 38:1, 39:13, 39:15, 39:18, 40:18, 41:19, 48:6, 49:4, 49:13, 49:19, 50:1, 50:5, 50:13, 50:17, 50:22, 51:3, 51:6, 51:12, 51:14, 51:19, 51:24, 52:2, 52:5, 52:19, 52:24, 53:13, 53:18, 53:21, 54:9, 54:14, 55:14, 56:2, 56:18, 56:23, 56:25, 57:17, 57:19, 57:25, 58:14, 58:18, 59:1, 59:4, 59:7

**MULCAHY** [1] - 12:18

**MULLEN** [1] - 14:2

**multiple** [1] - 48:23

**MURPHY** [5] - 14:6, 68:5, 68:8, 68:23, 68:25

**Murphy** [1] - 68:5

### N

**N.J** [1] - 39:2

**name** [1] - 62:10

**named** [2] - 35:17, 35:21

**necessarily** [2] - 43:8, 68:16

**necessary** [2] - 23:1, 58:20

**need** [9] - 21:25, 31:12, 35:22, 35:23, 54:7, 55:19, 59:2, 66:25, 70:6

**needless** [2] - 22:19, 22:21

**negligence** [6] - 20:17, 21:3, 25:11, 25:15, 29:17, 34:23

**negligence-based** [1] - 29:17

**negligent** [1] - 34:16

**negligible** [1] - 25:20

**negotiating** [1] - 64:3

**never** [2] - 46:11, 62:21

**NEW** [2] - 1:1, 16:2

**new** [1] - 66:13

**New** [52] - 1:16, 11:23, 12:4, 12:8, 12:12, 12:23, 13:4, 13:8, 13:11, 13:22, 14:7, 14:11, 14:14, 14:21, 15:4, 15:8, 15:12, 15:17, 15:24, 16:4, 16:5, 21:24, 21:25, 22:13, 23:13, 23:15, 25:11, 25:15, 26:23, 26:25, 27:3, 28:9, 33:5, 33:8, 33:9, 33:17, 34:1, 34:20, 36:2, 37:12, 37:22, 38:1, 38:7, 42:25, 43:4, 43:16, 45:9, 52:22, 67:14

**Newark** [3] - 12:23, 14:21, 16:4

**next** [15] - 11:24, 19:5, 28:4, 31:12, 32:5, 32:18, 33:6, 36:7, 43:20, 43:25, 50:25, 59:7, 64:5, 64:15, 65:8

**NEXT** [1] - 1:20

**nine** [16] - 17:17, 56:6, 56:16, 56:18, 57:6, 64:20, 64:22, 65:17, 66:4, 66:11, 67:4, 67:9, 68:4, 68:6, 69:20, 70:2

**nobody** [1] - 58:6

**NOEL** [1] - 12:18

**noncompliance** [3] - 49:7, 49:14, 49:22

**normally** [2] - 63:15, 66:6

**North** [1] - 15:3

**northern** [1] - 45:9

**NOSTRAND** [25] - 13:7, 19:11, 19:16, 20:3, 20:6, 20:19, 22:14, 22:20, 28:25, 30:1, 30:10, 31:3, 38:21, 46:4, 59:12, 59:15, 59:22, 60:4, 61:2, 61:6, 63:25, 64:19, 71:4, 71:12, 71:15

**Nostrand** [9] - 19:12, 25:4, 28:25, 38:22, 46:4, 59:12, 61:20, 62:1, 63:25

**Nostrand's** [1] -

24:14

**note** [1] - 24:17

**noted** [1] - 62:1

**nothing** [1] - 45:16

**notice** [6] - 19:4, 23:9, 23:11, 31:11, 31:12, 42:20

**notion** [2] - 44:9, 65:3

**novel** [2] - 66:13, 70:12

**NSA** [1] - 67:9

**number** [6] - 31:21, 36:17, 40:6, 40:18, 61:15, 67:21

**NUMBER** [41] - 1:3, 1:9, 2:2, 2:8, 2:14, 2:20, 3:2, 3:7, 3:13, 3:19, 4:2, 4:8, 4:14, 4:20, 5:2, 5:8, 5:14, 5:20, 6:2, 6:8, 6:13, 6:19, 7:2, 7:7, 7:13, 7:19, 8:2, 8:8, 8:14, 8:19, 9:2, 9:8, 9:14, 9:19, 10:2, 10:7, 10:13, 10:19, 11:2, 11:8, 11:13

**Number** [1] - 65:22

### O

**object** [1] - 29:25

**objection** [1] - 19:10

**obviously** [9] - 22:18, 45:23, 52:8, 52:20, 60:25, 69:6, 69:8, 69:23, 70:8

**occurred** [2] - 19:22, 50:12

**October** [2] - 19:7, 19:8

**OF** [5] - 1:1, 4:5, 15:6, 16:2, 16:3

**offending** [1] - 47:18

**offense** [1] - 68:24

**offer** [1] - 45:12

**offered** [2] - 45:2, 45:11

**office** [1] - 34:7

**OFFICE** [1] - 16:2

**officers** [1] - 28:23

**OFFICES** [1] - 15:6

**Official** [1] - 1:22, 71:25

**Ohio** [1] - 13:15

**OMAR** [1] - 14:13

**ON** [1] - 1:20

**once** [3] - 19:24, 26:18, 35:12

**One** [2] - 12:15, 14:21

**one** [34] - 17:16, 26:19, 31:12, 32:5, 32:19, 34:14, 34:20, 39:1, 39:5, 39:7, 40:4, 46:6, 48:1, 53:2, 55:12, 55:18, 55:21, 56:19, 56:20, 56:24, 59:1, 59:13, 60:14, 61:21, 62:12, 62:14, 64:22, 66:16, 66:23, 67:4, 67:8, 68:6, 69:5, 71:4

**ones** [1] - 62:12

**ongoing** [2] - 41:3, 41:5

**open** [2] - 17:1, 47:25

**opportunity** [4] - 34:1, 38:16, 68:22, 69:20

**opposed** [3] - 20:13, 35:20, 69:24

**option** [1] - 53:2

**Orange** [1] - 12:4

**order** [18] - 17:6, 19:18, 20:21, 34:19, 36:19, 37:8, 38:24, 38:25, 42:5, 42:18, 47:1, 55:10, 58:9, 59:8, 63:7, 63:19, 66:21, 70:18

**ordered** [2] - 18:5, 61:22

**orderly** [2] - 35:25, 69:6

**orders** [4] - 55:1, 57:8, 63:16, 67:20

**organizations** [1] - 18:24

**organized** [2] - 36:15, 43:23

**originally** [1] - 22:15

**ORTOLANI** [1] - 15:3

**otherwise** [1] - 47:14

**ought** [7] - 30:11, 34:2, 52:10, 52:14, 53:4, 63:5, 69:7

**ourselves** [1] - 47:12

**outline** [1] - 58:15

**outrageous** [1] -

65:4

**outweigh** [1] - 45:18

**Owings** [1] - 13:18

**own** [2] - 49:20, 54:21

### P

**P.C** [4] - 14:16, 14:20, 15:6, 15:7

**P.O** [1] - 15:8

**page** [2] - 11:24, 33:24

**PAGE** [1] - 1:20

**pale** [1] - 48:19

**panel** [1] - 42:14

**paper** [4] - 22:22, 23:5, 31:5, 54:12

**papers** [2] - 28:7, 33:10

**parallel** [1] - 32:21

**PARIKH** [23] - 12:3, 32:11, 33:9, 33:15, 34:3, 35:11, 36:6, 36:24, 39:10, 42:2, 42:9, 42:14, 45:7, 55:21, 55:24, 56:5, 57:5, 63:3, 64:24, 66:10, 69:11, 69:14, 71:18

**Parikh** [8] - 32:9, 32:11, 38:5, 39:9, 42:1, 42:2, 46:22, 69:5

**Parikh's** [2] - 38:23, 47:6, 47:16

**Park** [1] - 13:8

**part** [4] - 25:23, 27:15, 34:21, 43:12

**particular** [2] - 39:8, 70:14

**parties** [19] - 18:5, 28:14, 31:20, 32:16, 33:11, 33:23, 33:25, 34:6, 35:12, 36:6, 36:21, 37:16, 45:6, 56:11, 57:2, 63:15, 63:17, 70:6, 70:16

**parties'** [1] - 68:22

**passed** [2] - 26:4, 64:25

**password** [1] - 44:15

**past** [4] - 28:18, 50:8, 50:12, 51:8

**pathway** [1] - 43:22

**PATRICK** [1] - 16:3

**pay** [1] - 54:22

**Pearl** [1] - 11:22
**pending** [8] - 17:13, 17:17, 19:23, 22:12, 55:18, 64:10, 66:4, 71:7
**Pennsylvania** [5] - 12:15, 12:20, 14:4, 14:18, 15:20
**people** [2] - 48:17, 48:20
**people's** [1] - 41:5
**PEOPLEWHIZ** [1] - 8:22
**PeopleWhiz** [1] - 14:11
**PEPPER** [1] - 12:6
**Pepper** [1] - 37:4
**perform** [1] - 47:23
**perhaps** [3] - 66:15, 70:4, 70:25
**period** [5] - 24:18, 31:9, 31:14, 49:25, 55:8
**permit** [4] - 38:4, 58:5, 58:16, 60:22
**permitted** [3] - 40:15, 58:7, 67:22
**person** [1] - 55:6
**personal** [35] - 17:15, 18:6, 19:13, 19:23, 20:5, 20:8, 20:12, 20:13, 21:7, 21:8, 21:16, 21:22, 22:4, 22:23, 23:20, 30:4, 30:6, 30:22, 31:19, 44:4, 46:7, 47:9, 57:6, 57:7, 57:24, 60:12, 61:8, 62:4, 70:2, 70:3, 70:15, 70:16, 70:24, 71:6, 71:8
**personally** [1] - 21:23
**persons** [4] - 35:20, 46:17, 48:12, 50:23
**persons'** [1] - 48:13
**perspective** [5] - 32:13, 35:4, 42:22, 45:16, 46:16
**petition** [2] - 37:10, 37:14
**petitions** [1] - 30:18
**Phelps** [1] - 65:21
**PHELPS** [1] - 13:20
**Philadelphia** [4] - 12:15, 12:20, 14:18, 15:20
**Phillips** [1] - 65:21
**PHILLIPS** [1] - 13:20

**phone** [1] - 39:21
**piecemeal** [1] - 69:18
**place** [2] - 38:13, 51:21
**plainly** [1] - 47:11
**Plains** [1] - 15:12
**plaintiff** [1] - 48:25
**Plaintiff** [4] - 3:21, 8:9, 8:15, 11:3
**plaintiff's** [3] - 17:24, 24:23, 36:16
**Plaintiffs** [39] - 1:4, 1:10, 2:3, 2:9, 2:15, 2:22, 3:3, 3:9, 3:15, 4:3, 4:9, 4:15, 4:21, 5:3, 5:9, 5:15, 5:21, 6:3, 6:9, 6:15, 6:20, 7:3, 7:9, 7:15, 7:21, 8:3, 8:21, 9:3, 9:9, 9:15, 9:21, 10:3, 10:9, 10:14, 10:21, 11:9, 11:15, 11:23, 12:4
**plaintiffs** [31] - 18:3, 20:11, 21:13, 22:5, 23:9, 23:14, 24:19, 25:2, 25:9, 30:6, 31:10, 32:12, 34:6, 34:9, 34:15, 34:25, 41:2, 42:2, 45:19, 46:12, 46:25, 48:9, 48:11, 49:11, 49:15, 50:20, 51:10, 51:25, 55:7, 57:22, 69:10
**plaintiffs'** [3] - 46:23, 64:2, 66:3
**plan** [7] - 36:10, 43:25, 55:9, 64:4, 65:14, 66:12, 71:10
**play** [1] - 38:4
**playing** [1] - 31:17
**Plaza** [1] - 15:3
**pleadings** [1] - 35:23
**PLLC** [1] - 13:10
**point** [31] - 24:14, 28:13, 29:2, 29:3, 29:12, 30:24, 31:6, 31:17, 31:24, 33:1, 33:20, 40:9, 41:20, 41:22, 47:16, 51:15, 52:8, 53:25, 55:13, 60:7, 62:21, 62:24, 63:9, 63:14,

64:2, 64:3, 64:7, 64:16, 67:10, 71:14
**points** [3] - 42:3, 47:5, 48:7
**portions** [2] - 47:24, 48:2
**position** [5] - 20:7, 23:22, 46:13, 46:23, 60:15
**positions** [1] - 47:12
**possible** [2] - 47:20, 47:21
**possibly** [2] - 48:13, 49:21
**posture** [1] - 44:21
**potential** [4] - 24:16, 27:12, 42:23, 48:9
**potentially** [6] - 22:21, 23:13, 47:24, 48:1, 61:24, 62:7
**practical** [1] - 26:15
**PRATT** [1] - 15:19
**predicate** [1] - 47:22
**predict** [1] - 28:21
**preemption** [1] - 66:16
**preference** [1] - 62:3
**prejudice** [2] - 45:18, 45:19
**preparatory** [1] - 23:17
**prepping** [1] - 23:11
**presentation** [3] - 24:15, 28:1, 47:6
**presented** [1] - 28:11
**preserve** [2] - 47:24, 66:17
**presumably** [1] - 70:17
**presumes** [1] - 25:10
**pretrial** [1] - 17:12
**pretty** [2] - 45:11, 47:18
**prevent** [2] - 60:25, 68:19
**previously** [2] - 58:19, 62:7
**Princeton** [2] - 12:8, 14:7
**PRIVACY** [42] - 1:3, 1:9, 2:2, 2:8, 2:14, 2:20, 3:2, 3:7, 3:13, 3:19, 4:2, 4:8, 4:14, 4:20, 5:2, 5:8, 5:14,

5:20, 6:2, 6:8, 6:13, 6:19, 7:2, 7:7, 7:13, 7:19, 8:2, 8:8, 8:14, 8:19, 9:2, 9:8, 9:14, 9:19, 10:2, 10:7, 10:13, 10:19, 11:2, 11:8, 11:13, 16:3
**privacy** [2] - 21:15, 29:20
**pro** [2] - 40:16, 41:22
**procedure** [1] - 57:22
**proceed** [3] - 18:8, 66:5, 67:2
**proceeding** [2] - 25:4, 48:2
**Proceedings** [1] - 1:24, 71:20
**proceedings** [1] - 71:24
**PROCEEDINGS** [1] - 17:1
**process** [10] - 28:8, 29:21, 35:22, 37:21, 38:4, 38:10, 41:10, 66:24, 69:16, 70:18
**produced** [2] - 1:24, 22:23
**production** [1] - 24:21
**progress** [2] - 36:1, 47:17
**progressed** [1] - 65:11
**progression** [1] - 47:11
**promptly** [1] - 58:10
**properly** [1] - 34:4
**Property** [1] - 12:9
**PROPERTY** [1] - 6:5
**PROPHETE** [1] - 13:2
**proposal** [7] - 36:25, 45:23, 47:14, 47:16, 64:2, 65:10, 67:3
**propose** [6] - 19:2, 40:21, 55:7, 64:1, 64:13, 70:23
**proposed** [4] - 32:18, 36:9, 36:10, 36:21
**proposing** [2] - 35:9, 45:17
**propound** [1] - 24:19

**protect** [3] - 47:12, 47:14, 48:20
**protective** [1] - 46:9
**provided** [1] - 56:12
**provides** [2] - 50:2, 53:7
**provision** [2] - 39:8, 43:8, 43:9
**provisions** [1] - 47:19
**Public** [1] - 67:9
**public** [1] - 34:4
**PublicNSA** [1] - 14:4
**PUBLICNSA** [1] - 9:22
**Publishing** [1] - 15:21
**punitive** [2] - 25:13, 25:17
**PURCARO** [42] - 12:22, 39:13, 39:15, 39:18, 40:18, 41:19, 48:6, 49:4, 49:13, 49:19, 50:1, 50:5, 50:13, 50:17, 50:22, 51:3, 51:6, 51:12, 51:14, 51:19, 51:24, 52:2, 52:5, 52:19, 52:24, 53:13, 53:18, 53:21, 54:9, 54:14, 55:14, 56:18, 56:23, 56:25, 57:17, 57:19, 57:25, 58:14, 58:18, 59:1, 59:4, 59:7
**Purcaro** [2] - 39:15, 48:6
**purpose** [2] - 17:7, 50:10
**purposeful** [1] - 34:17
**Pursuant** [1] - 17:6
**push** [1] - 51:21
**pushing** [1] - 50:10
**put** [9] - 30:22, 38:11, 38:13, 42:10, 44:12, 60:14, 64:9, 67:4, 70:2
**puts** [2] - 19:18, 57:11
**putting** [1] - 71:5

**Q**

**questions** [13] - 21:17, 21:18,

21:21, 21:22, 29:24, 30:3, 31:22, 31:23, 33:12, 34:4, 39:22, 42:15, 53:24
**quick** [2] - 33:22, 47:5
**quickly** [2] - 29:1, 56:14

**R**

**Radar** [1] - 12:9
**RADAR** [1] - 6:5
**raise** [5] - 43:16, 48:7, 58:23, 62:24, 63:13
**raised** [10] - 37:16, 43:14, 43:15, 53:25, 56:13, 58:6, 58:23, 60:23, 66:16, 67:12
**raising** [1] - 63:14
**Raj** [2] - 32:11, 42:2
**RAJIV** [1] - 12:3
**Rao** [2] - 24:12, 47:4
**RAO** [6] - 13:10, 24:7, 24:10, 24:12, 47:4, 47:8
**rather** [1] - 56:7
**Raymond** [1] - 12:23
**RDR** [1] - 71:25
**rea** [20] - 19:19, 19:20, 20:21, 21:4, 22:8, 29:16, 30:2, 31:18, 32:22, 34:18, 37:12, 39:1, 39:3, 39:7, 39:25, 40:3, 42:7, 43:9, 51:16
**read** [3] - 39:23, 42:4
**ready** [1] - 65:6
**real** [1] - 21:22
**really** [12] - 19:3, 19:18, 23:19, 26:1, 26:9, 26:12, 28:13, 28:14, 28:17, 44:5, 45:21, 65:15
**reason** [5] - 20:3, 24:25, 28:10, 28:12, 30:20
**reasonable** [3] - 43:21, 65:5, 65:10
**reasonably** [1] - 23:3
**received** [3] - 22:2, 22:3, 46:11
**recent** [2] - 65:18,

68:8
**recently** [1] - 17:18
**recognize** [2] - 30:15, 68:20
**recognizing** [1] - 52:8
**recommendation** [1] - 66:5
**record** [5] - 38:18, 45:12, 60:15, 66:1, 71:24
**recorded** [1] - 1:24
**Red** [1] - 13:18
**reduce** [1] - 31:21
**REDX** [2] - 10:5, 12:24
**REED** [1] - 14:6
**Reed** [1] - 68:5
**Reference** [1] - 13:5
**referenced** [1] - 34:19
**regarding** [1] - 19:25
**regardless** [1] - 29:25, 30:19
**regular** [1] - 44:11
**rehash** [1] - 69:1
**REICH** [1] - 14:20
**reinvent** [1] - 67:23, 68:25
**reiterate** [2] - 55:3, 68:13
**reiterated** [1] - 67:21
**reject** [1] - 47:8
**rejected** [1] - 33:20
**related** [1] - 34:21
**relates** [1] - 43:8
**relation** [1] - 29:19
**relatively** [1] - 33:22
**release** [1] - 40:23
**relevance** [1] - 20:4
**relevant** [4] - 20:25, 21:22, 30:3, 31:23
**relied** [2] - 20:15, 42:21
**relief** [1] - 35:2
**rely** [6] - 58:4, 58:17, 60:23, 66:20, 67:22, 68:22
**relying** [2] - 56:11, 70:8
**REM** [1] - 12:2
**remain** [1] - 50:17
**remand** [1] - 44:17
**remanded** [1] - 65:23
**removed** [3] - 61:22, 65:2, 68:8

**repeatedly** [1] - 29:7
**Reporter** [2] - 1:22, 71:25
**REPORTER'S** [1] - 71:22
**represent** [1] - 19:12
**represented** [4] - 40:19, 48:23, 49:13, 49:19
**representing** [2] - 56:16, 69:10
**request** [6] - 22:3, 29:23, 38:16, 60:19, 61:6, 68:13
**requested** [1] - 56:19
**requesting** [1] - 61:20
**requests** [3] - 24:21, 24:24, 70:19
**require** [3] - 36:20, 39:3, 39:7
**required** [6] - 40:1, 40:16, 46:24, 49:15, 63:15, 71:9
**requirement** [9] - 20:21, 22:8, 29:17, 30:2, 31:18, 37:12, 39:1, 42:7, 42:20
**requirements** [1] - 21:15
**requires** [1] - 62:2
**requiring** [2] - 63:16, 63:19
**Research** [1] - 15:14
**reserve** [1] - 66:1
**resist** [1] - 65:1
**resolve** [3] - 34:14, 45:6, 70:22
**resolved** [2] - 53:8, 55:22
**resolving** [1] - 45:3
**resources** [1] - 37:17
**respect** [13] - 30:21, 31:4, 32:23, 36:2, 36:4, 44:8, 44:21, 57:9, 57:20, 61:3, 62:22, 70:14, 70:15
**respectfully** [1] - 48:11
**respond** [5] - 29:22, 34:1, 42:3, 70:11, 70:19
**responding** [1] - 54:9
**response** [3] - 38:23, 46:14, 47:6

**responses** [1] - 57:9
**responsible** [1] - 35:19
**rest** [1] - 34:24
**RESTORATION** [1] - 4:5
**Restoration** [1] - 13:4
**rests** [2] - 47:18, 47:23
**result** [2] - 49:17, 51:10
**resulted** [3] - 24:20, 24:21, 24:22
**retired** [1] - 45:8
**return** [1] - 64:20
**Reuters** [1] - 15:21
**REUTERS** [1] - 3:16
**RICHARD** [1] - 15:23
**rights** [2] - 47:14, 66:1
**RIKER** [1] - 14:11
**rise** [2] - 17:4, 71:19
**risk** [2] - 24:15, 41:6
**risks** [1] - 50:7
**River** [1] - 14:11
**RKW** [1] - 13:17
**RMR** [1] - 71:25
**road** [1] - 38:12
**roadblocks** [1] - 44:13
**robust** [1] - 40:2
**ROCKETREACH** [1] - 5:17
**RocketReach** [1] - 12:9
**Rockwell** [1] - 12:24
**ROCKWELL** [1] - 5:5
**ROME** [1] - 12:14
**room** [3] - 45:3, 45:11, 45:14
**ROONEY** [1] - 14:16
**ROSE** [1] - 14:17
**RPR** [1] - 71:25
**Rule** [22] - 17:15, 32:6, 32:7, 32:16, 32:19, 35:8, 35:11, 35:22, 36:7, 36:10, 36:20, 38:6, 41:17, 43:24, 44:5, 55:8, 55:12, 56:11, 57:21, 65:13, 65:25, 71:9
**rule** [5] - 32:4, 37:16, 56:14, 60:17, 65:24
**ruled** [1] - 28:10
**Rules** [2] - 34:1,

44:6
**rules** [3] - 19:25, 29:15, 61:10
**ruling** [5] - 20:16, 23:24, 27:1, 31:8, 60:6
**rulings** [5] - 19:23, 26:3, 66:2, 67:14, 70:20
**Run** [1] - 13:18
**RYAN** [1] - 12:11

**S**

**Saddle** [1] - 14:11
**safety** [2] - 41:5, 41:6
**save** [2] - 32:1, 54:12
**saving** [1] - 31:7
**Scandinavia** [1] - 57:1
**SCANDINAVIA** [1] - 10:10
**schedule** [8] - 27:12, 32:18, 32:21, 35:13, 36:9, 36:21, 57:11, 66:7
**schedules** [1] - 19:3
**scheme** [2] - 31:15, 31:25
**SCHILLER** [1] - 11:21
**SCHNEIDER** [2] - 13:14, 56:2
**SCHWARTZ** [1] - 12:7
**scope** [6] - 23:10, 23:19, 24:16, 25:1, 27:18, 40:2
**scrape** [1] - 44:14
**se** [1] - 40:16
**Searchbug** [1] - 12:25
**SEARCHBUG** [1] - 6:16
**seated** [1] - 17:5
**second** [2] - 39:24, 47:16
**section** [1] - 40:4
**see** [9] - 17:8, 36:22, 49:8, 51:14, 55:13, 61:16, 64:5, 64:6, 64:16
**seeing** [1] - 40:12
**seek** [3] - 25:2, 34:25, 47:14
**seeking** [1] - 50:11
**seem** [1] - 32:2
**Selection** [1] - 15:13

**send** [1] - 70:19
**sends** [1] - 23:25
**sense** [10] - 23:3, 26:21, 28:7, 28:17, 43:25, 45:24, 64:6, 64:16, 69:15, 69:17
**sensitive** [1] - 29:14
**sent** [1] - 19:24
**sentiments** [1] - 67:12
**separate** [2] - 61:4, 71:6
**separately** [1] - 40:5
**Sept** [1] - 71:25
**September** [3] - 1:16, 17:24, 65:3
**serious** [2] - 37:10, 38:3
**serve** [5] - 23:9, 31:10, 57:7, 65:7, 71:9
**served** [1] - 22:5
**Service** [1] - 15:13
**set** [1] - 36:11
**settlement** [4] - 17:17, 45:13, 54:15, 55:19
**seven** [1] - 66:11
**several** [1] - 58:22
**severed** [1] - 47:19
**SHAW** [11] - 11:22, 18:1, 18:3, 18:12, 18:16, 18:23, 19:3, 25:8, 27:6, 27:11, 28:6
**Shaw** [9] - 18:3, 21:11, 24:4, 24:9, 25:7, 25:8, 32:9, 33:4, 34:12
**Shaw's** [1] - 23:22
**SHEPPARD** [1] - 15:16
**shop** [2] - 40:11, 51:22
**short** [2] - 25:25, 33:24
**show** [1] - 48:25
**side** [2] - 36:16, 41:25
**SIERRA** [1] - 11:11
**Sierra** [2] - 13:22, 65:21
**significant** [5] - 37:8, 37:17, 38:17, 47:18
**simply** [4] - 40:14, 44:20, 57:21, 66:15
**single** [1] - 34:14

**sit** [1] - 55:9
**Site** [1] - 13:14
**sitting** [1] - 23:16
**situation** [2] - 42:6, 46:19
**situations** [1] - 27:14
**six** [1] - 50:19
**slow** [2] - 28:12, 69:17
**small** [4] - 18:24, 40:7, 68:18
**smaller** [1] - 45:2
**Smarty** [1] - 13:22
**SMARTY** [1] - 7:11
**Smith** [1] - 68:5
**SMITH** [3] - 13:2, 14:6, 15:10
**Software** [1] - 56:25
**SOFTWARE** [1] - 10:10
**solution** [1] - 22:10
**SOLUTIONS** [2] - 2:17, 9:17
**sometime** [1] - 27:2
**soon** [1] - 59:5
**sorry** [1] - 62:18
**sort** [7] - 19:12, 24:17, 24:18, 47:22, 49:17, 57:3, 69:7
**sounds** [2] - 54:24, 66:23
**South** [1] - 11:22
**SPAHR** [1] - 15:19
**speaking** [2] - 29:5, 37:4
**specific** [5] - 33:16, 36:14, 43:11, 62:1, 62:2
**specificity** [1] - 49:14
**specifics** [1] - 61:3
**spend** [4] - 44:3, 54:1, 54:2, 55:19
**spent** [1] - 33:2
**spoken** [1] - 54:16
**spring** [1] - 27:9
**Spy** [1] - 15:5
**SPY** [1] - 7:23
**Square** [2] - 12:15, 13:21
**stage** [2] - 35:24, 45:23
**staged** [3] - 32:21, 69:18, 69:20
**stand** [1] - 28:15
**standard** [14] - 19:20, 20:1, 20:17, 21:4, 21:6, 22:7,

24:2, 25:15, 26:25, 29:17, 29:25, 31:19
**standing** [1] - 43:19
**Star** [1] - 25:21
**start** [6] - 17:22, 32:16, 32:17, 38:10, 40:10, 43:20
**started** [1] - 38:11
**state** [1] - 36:13
**States** [2] - 17:2, 52:22
**STATES** [2] - 1:1, 1:19
**status** [3] - 17:7, 54:6, 62:22
**STATUS** [1] - 1:6
**Statute** [1] - 39:2
**statute** [21] - 19:20, 22:8, 22:9, 25:23, 30:16, 34:21, 34:24, 38:3, 38:8, 39:6, 43:17, 47:21, 47:25, 48:3, 49:24, 50:2, 51:2, 52:8, 53:10, 53:16, 64:11
**statute's** [1] - 52:16
**statutes** [2] - 21:15, 29:20
**stay** [36] - 22:6, 22:12, 22:16, 26:1, 26:2, 26:13, 26:17, 28:17, 37:9, 38:12, 38:13, 38:16, 44:3, 44:23, 46:21, 46:24, 47:1, 47:9, 50:6, 50:7, 50:16, 52:2, 54:1, 54:3, 54:6, 54:8, 58:10, 60:8, 60:9, 60:13, 60:14, 61:22, 62:20, 66:4, 68:13, 69:9
**stayed** [20] - 17:17, 17:19, 19:23, 30:11, 32:15, 52:13, 53:14, 55:18, 56:7, 56:18, 56:20, 57:13, 59:24, 60:2, 60:16, 61:21, 62:13, 65:23, 67:15, 68:9
**stays** [1] - 26:11
**steam** [1] - 55:10
**stenography** [1] - 1:24
**step** [1] - 57:14
**STERLING** [1] - 11:5

**Sterling** [2] - 14:8, 68:6
**STICHEL** [1] - 13:17
**stifle** [1] - 58:8
**still** [5] - 26:7, 40:22, 43:17, 45:6, 58:24
**STINSON** [1] - 15:23
**STITCHEL** [8] - 62:10, 62:14, 62:16, 62:20, 63:1, 63:6, 63:11, 63:21
**Stitchel** [1] - 62:10
**stop** [1] - 41:3
**Street** [8] - 11:22, 12:19, 13:14, 14:17, 15:4, 15:7, 15:20, 16:4
**Streets** [1] - 1:15
**strict** [1] - 34:22
**striking** [1] - 42:19
**struck** [2] - 47:21, 48:3
**structured** [1] - 35:5
**Student** [1] - 15:14
**subject** [2] - 37:2, 38:19
**submission** [1] - 66:13
**submit** [1] - 36:21
**submitted** [1] - 33:23
**subpart** [1] - 34:20
**success** [2] - 26:5, 45:10
**successful** [3] - 43:13, 43:14, 45:7
**Sudhir** [2] - 24:12, 47:4
**SUDHIR** [1] - 13:10
**suggest** [3] - 26:14, 36:4, 57:2
**suggested** [1] - 22:16
**Suit** [1] - 13:11
**Suite** [18] - 12:3, 12:7, 12:11, 12:19, 12:23, 13:3, 13:7, 13:18, 14:3, 14:7, 14:10, 14:14, 14:17, 15:4, 15:7, 15:11, 15:16, 15:24
**supplement** [3] - 58:20, 59:2, 62:5
**supplemental** [4] - 18:4, 59:18, 61:8, 62:6
**supplementals** [1] - 36:14
**support** [1] - 52:2

**supported** [1] - 59:18
**supposed** [1] - 48:20
**Supreme** [33] - 19:18, 19:24, 20:20, 20:23, 21:2, 21:18, 22:13, 25:12, 26:23, 26:25, 27:3, 29:15, 29:18, 31:8, 33:5, 33:8, 33:10, 33:17, 34:20, 36:2, 37:22, 38:1, 38:7, 39:6, 39:22, 40:2, 42:24, 42:25, 43:4, 43:16, 52:22, 52:23, 67:14
**surgery** [1] - 47:24
**survive** [1] - 43:17
**suspect** [4] - 26:24, 30:18, 33:6, 34:6
**sworn** [1] - 46:13
**Systems** [3] - 13:22, 15:13, 65:22
**SYSTEMS** [2] - 7:17, 11:11

T

**table** [1] - 33:13
**takedown** [1] - 22:3
**team** [1] - 32:14
**technically** [1] - 45:6
**technology** [1] - 44:14
**tee** [1] - 27:17
**ten** [8] - 39:18, 40:13, 40:22, 41:7, 54:3, 54:4, 54:22, 54:24
**terms** [12] - 26:20, 32:25, 35:7, 40:3, 40:5, 44:22, 45:16, 45:24, 48:9, 48:23, 53:22, 54:15
**terribly** [2] - 31:16, 32:2
**test** [7] - 20:7, 20:9, 20:25, 21:5, 21:7, 21:20, 23:20
**THE** [130] - 1:1, 1:18, 6:11, 17:5, 18:2, 18:10, 18:15, 18:21, 19:1, 19:7, 19:15, 20:2, 20:4, 20:18, 22:10, 22:15, 24:4, 24:8, 24:11, 25:6, 26:19,

27:7, 28:4, 28:24, 29:24, 30:8, 30:11, 32:3, 33:8, 33:13, 33:25, 35:9, 36:4, 36:19, 37:1, 37:18, 37:20, 37:25, 38:19, 39:9, 39:11, 39:14, 39:17, 40:17, 41:17, 41:24, 42:8, 42:13, 45:5, 46:1, 47:7, 48:5, 49:3, 49:8, 49:15, 49:23, 50:2, 50:11, 50:14, 50:20, 50:23, 51:4, 51:7, 51:13, 51:18, 51:23, 52:1, 52:3, 52:6, 52:20, 52:25, 53:14, 53:19, 54:5, 54:11, 55:7, 55:15, 55:23, 55:25, 56:3, 56:6, 56:22, 56:24, 57:2, 57:13, 57:18, 57:20, 58:2, 58:15, 58:21, 59:3, 59:5, 59:8, 59:14, 59:20, 60:3, 60:21, 61:5, 61:12, 61:16, 61:18, 62:9, 62:12, 62:15, 62:19, 62:24, 63:2, 63:4, 63:8, 63:13, 63:22, 64:18, 64:20, 64:23, 65:17, 66:3, 67:7, 67:21, 68:2, 68:4, 68:7, 68:19, 68:24, 69:4, 69:12, 71:2, 71:11, 71:13, 71:16, 71:19
**themselves** [4] - 21:24, 48:12, 49:12, 63:18
**theory** [1] - 66:13
**thereafter** [2] - 53:17, 68:9
**they've** [9] - 22:24, 28:2, 29:21, 43:15, 44:12, 44:17, 46:13, 49:13, 49:19
**Third** [30] - 19:17, 19:25, 20:7, 23:1, 23:24, 23:25, 25:19, 28:20, 30:25, 31:9, 33:4, 33:12, 33:16, 34:19, 36:3, 37:9, 37:15, 38:24, 39:5, 42:4, 42:9, 42:12, 42:22, 43:7, 43:15,

60:10, 64:10, 67:15, 69:23
**third** [1] - 67:2
**THOMAS** [1] - 12:14
**THOMPSON** [1] - 13:13
**THOMSON** [1] - 3:16
**Thomson** [1] - 15:21
**threat** [9] - 40:23, 41:1, 41:3, 46:16, 48:13, 48:16, 48:22, 50:8, 50:10
**three** [1] - 27:4, 56:19
**throughout** [1] - 32:24
**tight** [2] - 60:19, 61:9
**timetable** [2] - 33:16, 36:5
**timing** [1] - 27:2
**TIMOTHY** [1] - 15:3
**today** [7] - 17:7, 23:23, 33:11, 33:23, 34:9, 55:9, 71:1
**together** [3] - 38:6, 64:9, 68:17
**Tom** [1] - 61:14
**took** [3] - 27:21, 46:8, 46:9
**tools** [1] - 44:16
**topic** [1] - 32:4
**tort** [3] - 20:10, 21:20, 30:7
**toward** [1] - 36:1
**track** [5] - 66:22, 67:1, 69:9, 70:3
**transcript** [2] - 1:24, 71:23
**transcription** [1] - 1:24
**TRAURIG** [1] - 13:6
**travel** [1] - 23:13
**tried** [3] - 26:18, 28:18, 65:5
**TROUTMAN** [1] - 12:6
**Troutman** [1] - 37:4
**True** [1] - 56:25
**TRUE** [1] - 10:10
**true** [1] - 41:13
**TrueSoftware** [1] - 12:25
**truly** [2] - 40:18, 41:15
**trust** [1] - 42:9
**try** [3] - 22:18, 53:5, 70:22

**trying** [3] - 47:12, 58:3, 68:19
**turn** [1] - 24:21
**turns** [1] - 34:13
**Twenty** [1] - 63:9
**two** [15] - 18:18, 31:12, 31:25, 32:19, 39:22, 41:19, 47:11, 50:25, 53:3, 55:18, 57:19, 66:24, 67:4, 70:25
**type** [3] - 32:20, 42:6, 55:5
**types** [2] - 18:19, 54:18

## U

**U.S** [2] - 1:15, 42:24
**uh-hum** [1] - 56:23
**ultimately** [4] - 23:1, 34:14, 43:8, 67:3
**unconstitutional** [6] - 23:2, 30:17, 38:9, 43:3, 52:9, 64:11
**under** [18] - 17:15, 19:20, 19:21, 20:1, 20:7, 20:24, 21:6, 22:8, 22:9, 28:3, 32:3, 34:1, 38:15, 39:1, 44:6, 46:9, 46:17, 63:18
**undue** [2] - 41:18, 45:17
**unfair** [1] - 21:9
**Union** [1] - 12:11
**unique** [5] - 68:1, 68:12, 68:18, 68:20, 70:21
**UNITED** [2] - 1:1, 1:19
**United** [2] - 17:2, 52:22
**unless** [5] - 41:21, 56:12, 58:5, 58:23, 70:21
**unlikely** [1] - 68:10
**up** [20] - 22:4, 26:4, 27:17, 28:1, 28:15, 32:17, 34:10, 35:13, 36:8, 42:24, 44:12, 45:14, 51:21, 54:10, 56:13, 58:5, 60:24, 69:21, 70:3, 70:5
**upheld** [4] - 51:5, 52:16, 53:10, 53:16
**Upper** [1] - 14:11

**urge** [1] - 28:16
**US** [2] - 7:5, 12:25

## V

**valid** [1] - 60:13
**VAN** [25] - 13:7, 19:11, 19:16, 20:3, 20:6, 20:19, 22:14, 22:20, 28:25, 30:1, 30:10, 31:3, 38:21, 46:4, 59:12, 59:15, 59:22, 60:4, 61:2, 61:6, 63:25, 64:19, 71:4, 71:12, 71:15
**Van** [7] - 19:12, 24:14, 28:25, 38:22, 46:4, 59:12, 61:20
**van** [1] - 25:4, 61:25, 63:25
**various** [4] - 17:10, 17:20, 26:13, 65:15
**VENTURE** [1] - 9:11
**Venture** [1] - 15:9
**versus** [2] - 41:10, 51:22
**viable** [1] - 47:24
**violated** [2] - 49:24, 51:2
**violating** [1] - 40:22
**violation** [1] - 26:8
**Virginia** [2] - 42:19
**voluntarily** [1] - 44:22
**Voter** [1] - 13:4

## W

**WADE** [1] - 12:18
**wait** [8] - 23:24, 25:14, 26:21, 31:16, 39:11, 50:25, 53:2, 64:15
**waiting** [1] - 31:8
**waiving** [1] - 68:10
**Waller** [1] - 15:11
**Walnut** [1] - 13:14
**wants** [2] - 37:6, 45:25
**warranted** [1] - 47:13
**wasted** [1] - 33:2
**WE** [1] - 1:6
**website** [1] - 44:14
**week** [2] - 42:17, 43:20
**weeks** [2] - 31:12, 65:8

**weigh** [2] - 26:6, 26:12
**West** [4] - 12:4, 15:21, 42:19
**wheel** [2] - 67:23, 68:25
**wherewithal** [1] - 40:13
**White** [1] - 15:12
**whole** [9] - 22:16, 30:15, 30:16, 38:4, 39:7, 43:3, 52:13, 52:21, 53:8
**WICHNOVITZ** [2] - 15:6, 15:7
**willful** [4] - 25:12, 25:23, 34:16, 34:25
**willfulness** [1] - 34:24
**willing** [5] - 41:6, 44:25, 45:4, 45:13, 55:4
**willingness** [1] - 54:16
**wish** [4] - 24:5, 38:19, 58:17, 68:4
**witnesses** [3] - 23:11, 23:12, 23:14
**wondering** [1] - 45:5
**WOOD** [1] - 15:10
**word** [3] - 30:17, 49:16, 69:19
**words** [4] - 22:15, 26:23, 33:25, 36:19
**works** [1] - 27:13
**worry** [1] - 42:7
**worse** [1] - 53:20
**written** [3] - 37:11, 38:3, 70:19

## Y

**year** [5] - 30:13, 45:20, 50:25, 53:3, 60:1
**years** [1] - 53:3
**York** [8] - 11:23, 13:11, 13:22, 15:12, 15:24

## Z

**Zillow** [1] - 14:18
**ZILLOW** [1] - 3:5
**ZTHE** [1] - 17:4
**ZwillGen** [1] - 24:13

**ZWILLGEN** [1] - 13:10